IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 16-3384

---

John Zimmerman,
Plaintiff-Appellee

v.

Thomas W. Corbett et al.,
Defendants-Appellants

---

Appeal from the Denial of Motion for Judgment on the Pleadings
U.S. District Court for the Middle District of Pennsylvania

---

## Brief of Appellants

---

Lavery Law

Josh Autry, Esquire
PA Bar No. 208459
Frank J. Lavery, Jr., Esquire
PA Bar No. 42370
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108-1245
Phone:  (717) 233-6633
Fax:  (717) 233-7003
jautry@laverylaw.com
Attorney for Defendants-
Appellants

Date: October 25, 2016

# Table of Contents

I.  JURISDICTION ................................................................. 1

    A.  District Court's jurisdiction: ....................................... 1

    B.  This Court's jurisdiction: ........................................... 1

    C.  Timeliness of appeal: ................................................. 3

II.  ISSUES   ....................................................................... 4

III.  RELATED CASES AND PROCEEDINGS ..................................... 7

IV.  CONCISE STATEMENT OF THE CASE ..................................... 10

    A.  Relevant procedural history: ...................................... 10

    B.  Relevant facts ......................................................... 11

V.  STANDARD OF REVIEW: ..................................................... 14

VI.  SUMMARY OF ARGUMENT: ................................................ 16

VII.  ARGUMENT: .................................................................. 19

    A.  Defendants can immediately appeal denial of judgment on the pleadings where, as here, the defendant raises purely legal questions of immunity from suit. ........................................... 19

    B.  To deny qualified immunity, binding precedent in 2009 must have made clear that Defendants violated Plaintiff's rights...... ............................................................................ 21

i

C.  The law was not clear in 2009 that *Brady* can be violated without a trial and conviction. ................................................. 26

D.  The law was not clear in 2009 that destruction of proffer notes violates due process. ................................................. 28

E.  The law was not clear in 2009 that any allegedly falsified or destroyed evidence was exculpatory. ...................................... 33

F.  The law was not clear in 2009 that the notes were impeachment evidence. .......................................................... 35

G.  The law was not clear in 2009 that Plaintiff was seized. ........ 37

    1.  Binding precedent does not establish that Plaintiff's prosecution violated the Fourth Amendment simply because he was arrested. ............................................. 37

    2.  Binding precedent does not establish that Plaintiff's prosecution violated the Fourth Amendment simply because he was released on unsecured bail. ................ 41

H.  Any reasonable agent would have believed probable cause existed. ................................................................... 44

I.  The agents did not initiate the prosecution. ............................ 47

J.  Agents Fiore and Speaks' actions are presumed reasonable. 48

K.  It is implausible that Defendants fabricated evidence *before the grand jury was empaneled.* ................................................ 49

L.  It is implausible that then-AG Corbett personally directed fabrication or destruction of evidence. ..................................... 50

VIII. CONCLUSION ............................................................................ 52

COMBINED CERTIFICATIONS...........................................................53

## Table of Authorities

### Cases

*Anderson v. Creighton*, 483 U.S. 635 (1987) .................................... 23, 24

*Ankele v. Hambrick*, 286 F. Supp. 2d 485 (E.D. Pa. 2003) .............. 38, 43

*Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60
    (3d Cir. 2011) .................................................................................. 14, 21

*Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011) ..................................... 23, 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................. 14, 21, 50, 51

*Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad
    Obligatorio v. Flores Galarza*, 484 F.3d 1 (1st Cir. 2007) .............. 2, 19

*Bartow v. Thomas*, 2014 WL 2993786 (W.D. Pa. July 2, 2014) ............. 38

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) .................... 14, 15, 21, 22

*Benard v. Washington Cty.*, 465 F.Supp.2d 461 (W.D. Pa. 2006).......... 38

*Black v. Montgomery Cty.*, 2015 WL 5568388
    (E.D. Pa. Sept. 21, 2015) ................................................................ 43, 44

*Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435
    (5th Cir. 2015) ................................................................................... 1, 19

*Boseman v. Upper Providence Twp.*, 2016 WL 344460
    (E.D. Pa. Jan. 28, 2016)........................................................... 38, 43, 44

*Brady v. Maryland*, 383 U.S. 83 (1963) ........................................ passim

*Brosseau v. Haugen*, 543 U.S. 194 (2004)............................................... 23

*Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011)............................ 1, 19

*Calipo v. Butler Cty.*, 2012 WL 517331 (W.D. Pa. Feb. 15, 2012).......... 38

*Carroll v. Carman*, 135 S. Ct. 348 (2014) ............................. 25, 28, 41, 42

*City & Cnty. of San Francisco v. Sheehan*, 135 S.Ct. 1765 (2015)......... 23

*City & Cnty. of San Francisco v. Sheehan*, 2015 WL 2340839,
    -- S.Ct. -- (May 18, 2015) ............................................................. 24, 42

*Collins v. Jones*, 2015 WL 790055 (E.D. Pa. Feb. 24, 2015).................. 43

*Com. v. Feese*, 79 A.3d 1101 (Pa. Super.) ............................... 8, 12, 28, 32

*Com. v. Lawson*, 2015 WL 6114513 (Pa. Super. July 30, 2015) ............. 36

*Com. v. LeBlanc*, 2015 WL 6663637 (Pa. Super. Sept. 2, 2015) ............ 36

*Com. v. Simmons*, 662 A.2d 621 (Pa. 1995) ...................................... 35, 37

*Daugherty v. Campbell*, 935 F.2d 780 (6th Cir. 1991) ....................... 2, 19

*DiBella v. Borough of Beachwood*, 407 F.3d 599 (3d Cir. 2005) ............. 41

*Dinoia v. Cumbo*, 2015 WL 6739114 (D.N.J. Nov. 4, 2015) ................... 38

*Esposito v. Galli*, 2006 WL 2322487 (M.D. Pa. Aug. 9, 2006) ................ 43

*Finch v. Peterson*, 622 F.3d 725 (7th Cir. 2010) ................................. 2, 19

*Flagg v. Wynder*, 2008 WL 861498 (E.D. Pa. Mar. 27, 2008) ................ 35

*Flores v. Satz*, 137 F.3d 1275 (11th Cir. 1998) ..................................... 27

*Gallo v. City of Phila.*, 161 F.3d 217 (3d Cir. 1998) ............................... 41

*Gilles v. Davis*, 427 F.3d 197 (3d Cir. 2005) ......................................... 23

*Golya v. Golya*, 2007 WL 2301085 (M.D. Pa. Aug. 9, 2007) ............. 43, 44

*Gorromeo v. Zachares*, 15 F. App'x 555 (9th Cir. 2001) ..................... 2, 20

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ........................................... 23

*Hunter v. Bryant*, 502 U.S. 224, 112 S. Ct. 534,
   116 L. Ed. 2d 589 (1991). .................................................................. 23

*Johnson v. Knorr*, 477 F.3d 75 (3d Cir. 2007) ....................................... 41

*Jones v. Barth*, 2015 WL 221079 (E.D. Pa. Jan. 15, 2015) .. 38, 39, 40, 43

*Lane v. Franks*, 134 S. Ct. 2369 (2014) ........................................... 25, 42

*Livers v. Schenck*, 700 F.3d 340 (8th Cir. 2012) .................................... 27

*Luck v. Mount Airy No. 1,* 901 F. Supp. 2d 547 (M.D. Pa. 2012) ........... 38

*Lum v. Bank of Am.*, 361 F.3d 217 (3d Cir. 2004) ............................ 15, 22

*Malley v. Briggs*, 475 U.S. 335, 106 S. Ct. 1092,
   89 L. Ed. 2d 271 (1986) ............................................................... 46, 49

*McCune v. City of Grand Rapids*, 842 F.2d 903 (6th Cir.1988) ............. 27

*Michtavi v. Scism*, 808 F.3d 203 (3d Cir. 2015) ..................................... 25

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ....................... 1, 2, 3, 19, 20, 21

*Monteiro v. City of Elizabeth*, 436 F.3d 397 (3d Cir. 2006)...............3, 21

*Morgan v. Gertz*, 166 F.3d 1307 (10th Cir. 1999)...................................27

*Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist.*,
   423 F.3d 153 (2d Cir. 2005)....................................................................2, 19

*Muhammad v. Wainwright*, 839 F.2d 1422 (11th Cir. 1987) ............2, 20

*Mullenix v. Luna*, 136 S.Ct. 305 (Nov. 9, 2015)..........................24, 25, 42

*Mustafa v. Superintendent, SCI Dallas*, 2004 WL 1078500
   (E.D. Pa. May 13, 2004) ..........................................................................35

*Occupy Columbia v. Haley*, 738 F.3d 107 (4th Cir. 2013) .................1, 19

*Orsatti v. N.J. State Police*, 71 F.3d 480 (3d Cir. 1995) ........................49

*Patel v. Searles*, 305 F.3d 130 (2d Cir. 2002) .....................................2, 19

*Penberth v. Krajnak,* 2008 WL 509174 (M.D. Pa. Feb. 21, 2008)..........39

*Penberth v. Krajnak*, 347 F. App'x 827 (3d Cir. 2009) .....................38, 40

*Plumhoff v. Rickard*, 134 S. Ct. 2012 (2014)...........................................24

*Reichle v. Howards*, 132 S. Ct. 2088 (2012)................................... passim

*Reilly v. Vadlamudi*, 680 F.3d 617 (6th Cir. 2012) .............................1, 19

*Revell v. Port Auth. of NY, NJ*, 598 F.3d 128 (3d Cir. 2010) ...........14, 21

*Rogala v. District of Columbia*, 161 F.3d 44 (D.C.Cir.1998) .................27

*Saucier v. Katz*, 533 U.S. 194 (2001) ..................................................3, 20

*Schultz v. Hughesville Borough*, 2011 WL 3273076
   (M.D. Pa. July 29, 2011 ...........................................................................43

*Sheehan*, 135 S.Ct. 1765 (Ninth Circuit)................................................25

*Startzell v. City of Philadelphia*, 533 F.3d 183 (3d Cir. 2008) ..............45

*Stolarik v. City of Wilkes-Barre*, 2013 U.S. Dist. LEXIS 155788
   (M.D. Pa. Oct. 30, 2013) ..........................................................................47

*Taylor v. Barkes*, 135 S.Ct. 2042 (2015) .........................................25, 42

*Taylor v. Waters*, 81 F.3d 429 (4th Cir.1996) ........................................27

*United States v. Myers*, 308 F.3d 251 (3d Cir. 2002) .............................45

*Wallace v. Kato*, 549 U.S. 384 (2007).....................................................40

*White v. Glenn*, 2014 WL 5431200 (E.D. Pa. Oct. 27, 2014) ................. 38

*Wiecek v. City of Phila*, 2016 WL 524092
   (E.D. Pa. Feb. 10, 2016) .................................................... 38, 42

*Wilson v. Russo*, 212 F.3d 781 (3d Cir. 2000) ........................................ 46

*Wiltz v. Middlesex Cnty. Office of Prosecutor*, 249 F. App'x 944 (3d Cir. 2007) ................................................................................. 38

*Wright v. City of Phila.*, 409 F.3d 595 (3d Cir. 2005) ........................... 46

*Zion v. Nassan*, 556 F. App'x 103 (3d Cir. 2014) ............................... 1, 19

## Statutes

18 Pa.C.S. §5101 ..................................................................................... 45

18 Pa.C.S. §5105 ..................................................................................... 45

## Rules

Pa.R.Crim.P. 524 ................................................................................... 44

## Constitutional Provisions

28 U.S.C. §1291 .................................................................................. 2, 20

28 U.S.C. §1331 ....................................................................................... 1

28 U.S.C. §1343 ....................................................................................... 1

42 U.S.C. §1983 ....................................................................................... 1

# I.    Jurisdiction

## A.    District Court's jurisdiction:

Plaintiff bring claims under 42 U.S.C. §1983, asserting violations of the U.S. Constitution. The District Court had jurisdiction over claims that arise under federal laws generally, 28 U.S.C. §1331, and more specifically over claims asserting violations of the Constitution, 28 U.S.C. §1343.

## B.    This Court's jurisdiction:

"[T]he denial of a substantial claim of absolute immunity is an order appealable before final judgment, for the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985). Immediate appeal is available from a motion for judgment from the pleadings that raises such a purely legal defense of immunity from suit. *Zion v. Nassan*, 556 F. App'x 103, 109 (3d Cir. 2014). *See also Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 438 (5th Cir. 2015); *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013); *Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012); *Brown v. Montoya*, 662 F.3d 1152, 1162 & n.4 (10th Cir. 2011); *Finch v. Peterson*, 622 F.3d 725,

1

728 (7th Cir. 2010); *Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza*, 484 F.3d 1, 13 (1st Cir. 2007); *Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005); *Patel v. Searles*, 305 F.3d 130, 133 (2d Cir. 2002); *Daugherty v. Campbell*, 935 F.2d 780, 783 (6th Cir. 1991); *Muhammad v. Wainwright*, 839 F.2d 1422, 1423 & n.3 (11th Cir. 1987). *See Gorromeo v. Zachares*, 15 F. App'x 555, 556 (9th Cir. 2001).

In addition to absolute immunity questions, Defendants properly file this appeal from the District Court's determination that they violated Plaintiff's clearly established rights, and thus the District Court's denial of qualified immunity. In *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985), the Supreme Court held that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." "The entitlement is an <u>immunity from suit</u> rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 526 (emphasis by Supreme Court).

Thus, "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). This Court has emphasized, "The Supreme Court has strongly urged that the legal question of qualified immunity be decided before trial in order to preserve its protections." *Monteiro v. City of Elizabeth*, 436 F.3d 397, 400 n.1 (3d Cir. 2006).

In such appeals, "the appealable issue is a purely legal one: whether the facts alleged (by the plaintiff, or, in some cases, the defendant) support a claim of violation of clearly established law." *Mitchell*, 472 U.S. at n.9. Accordingly, Defendants appeal the purely legal question of whether Plaintiff's rights were clearly established.

## C.   <u>Timeliness of appeal:</u>

The District Court entered its order on July 15, 2016. App'x 40a. Defendants timely appealed to this Court on August 12, 2016. App'x 1a.

## II.    Issues

A.    Can an official immediately appeal the qualified immunity question as to whether the law is clearly established? Yes.

[This Court's jurisdiction could not have been raised below because the very nature of the question does not present itself until appeal.]

B.    Did binding precedent clearly establish in 2009 that *Brady* can be violated without a trial and conviction? No.

[This issue was raised by moving for judgment on the pleadings (App'x 140a) and supporting briefs (App'x 162-63, 380-82a) as well as by seeking to stay discovery (App'x 145-46a). The District Court ruled against Defendants. App'x 40a (Order); App'x 36-37a (Opinion).]

C.    Did binding precedent clearly establish in 2009 that destruction of proffer notes violates due process? No.

[This issue was raised by moving for judgment on the pleadings (App'x 140-41a) and supporting briefs (App'x 163-68, 383a) as well as by seeking to stay discovery (App'x 145-46a). The District Court ruled against Defendants. App'x 40a (Order); App'x 35-37a (Opinion).]

D.    Did binding precedent clearly establish in 2009 that any allegedly falsified or destroyed evidence was exculpatory? No.

[This issue was raised by moving for judgment on the pleadings (App'x 140-41a) and supporting briefs (App'x 168-70, 383-84a) as well as by seeking to stay discovery (App'x 145-46a). The District Court ruled against Defendants. App'x 40a (Order); App'x 35-37a (Opinion).]

E.    Did binding precedent clearly establish in 2009 that that the notes were impeachment evidence? No.

[This issue was raised by moving for judgment on the pleadings (App'x 140-41a) and supporting briefs (App'x 170-72,  383-84a) as well as by seeking to stay discovery (App'x 145-46a). The District Court ruled against Defendants. App'x 40a (Order); App'x 35-37a (Opinion).]

4

F.    Did binding precedent clearly establish in 2009 that a prosecution can violate the Fourth Amendment when someone is arrested and released on unsecured bail? No.

[This issue was raised by moving for judgment on the pleadings (App'x 142a) and supporting briefs (App'x 172-73, 384-85a) as well as by seeking to stay discovery (App'x 145-46a). The District Court ruled against Defendants. App'x 40a (Order); App'x 34-35a (Opinion).]

H.    Would any reasonable agent would have believed probable cause existed when the male conspirator called from Plaintiff's office desk phone line and Plaintiff was typically at his desk? Yes.

[This issue was raised by moving for judgment on the pleadings (App'x 141-42a) and supporting briefs (App'x 174-76, 385-87a) as well as by seeking to stay discovery (App'x 145-46a). The District Court ruled against Defendants. App'x 40a (Order); App'x 38-39a (Opinion).]

I.    Can agents be held independently responsible for initiation of a prosecution when it is alleged that they worked in tandem with the prosecutors? No.

[This issue was raised by moving for judgment on the pleadings (App'x 141-42a) and supporting briefs (App'x 176-77, 387-88a) as well as by seeking to stay discovery (App'x 145-46a). The District Court ruled against Defendants. App'x 40a (Order); App'x 35a (Opinion).]

J.    Is an agent's probable cause determination presumed reasonable when prosecutors and judges agree? Yes.

[This issue was raised by moving for judgment on the pleadings (App'x 142a) and supporting briefs (App'x 177-78, 388-89a) as well as by seeking to stay discovery (App'x 145-46a). The District Court ruled against Defendants. App'x 40a (Order); App'x 38-39a (Opinion).]

K.    Does Plaintiff make any plausible claim of fabrication of evidence before empaneling the Grand Jury when his charges are for obstructing the Grand Jury? No.

[This issue was raised by moving for judgment on the pleadings (App'x 141a) and supporting briefs (App'x 178-79, 389-90a) as well as by

seeking to stay discovery (App'x 145-46a). The District Court ruled against Defendants. App'x 40a (Order); App'x 35a (Opinion).]

L.    Does Plaintiff make any non-conclusory allegation to show that then-AG Corbett directed any fabrication or destruction of evidence? No.

[This issue was raised by moving for judgment on the pleadings (App'x 141a) and supporting briefs (App'x 179-80, 390a) as well as by seeking to stay discovery (App'x 145-46a). The District Court ruled against Defendants. App'x 40a (Order); App'x 35a (Opinion).]

III.    Related Cases and Proceedings

This case has not been before this court previously. This case centers around the criminal charges brought against Plaintiff in *Commonwealth v. Zimmerman*, 2524 CR 2010 (Dauphin County), for obstructing a subpoena issued by the 28th Statewide Investigating Grand Jury.

In a Presentment, the Grand Jury recommended charges against Plaintiff and many others. Plaintiff divides the charges into 1) "Computergate," a conspiracy by state legislators to devote public resources for political ends; and 2) "Boxgate," an effort to move boxes of political materials out of a legislative building to thwart a Grand Jury subpoena. The charges against Plaintiff were for Boxgate.

Computergate charges were brought against former Pennsylvania Speaker of the House John Perzel, former House Majority Chairman of the Appropriations Committee Brett Feese, and several members of Perzel's staff (including Plaintiff) and Feese's staff. Boxgate charges were brought against Perzel, Feese, Plaintiff, and Perzel's Chief of Staff Paul Towhey.

7

The criminal cases were set for a joint trial, but the Court severed the Boxgate charges for a trial to take place after the Computergate trial. During or before the Computergate trial, Perzel (2589 CR 2010), and Towhey, 2588 CR 2010 (Dauphin County), took plea deals that included dismissal of the Boxgate charges.

Feese was convicted of the Computergate charges at trial (2585 CR 2010 and 1927 CR 2011) as was Jill Seaman, a member of his staff (2586 CR 2010 and 1926 CR 2011). The Boxgate charges against Feese and Plaintiff were dropped by the Commonwealth on November 17, 2011.

Feese appealed the Computergate verdict, which was affirmed on appeal. *Com. v. Feese*, 79 A.3d 1101 (Pa. Super.), reargument denied (2013), appeal denied, 94 A.3d 1007 (Pa. 2014). Feese and Seaman each filed suit in the District Court against, inter alia, Defendant Corbett, alleging violation of their civil rights, but the cases were dismissed. *Feese v. Corbett*, 1:13-cv-1578, and *Seaman v. Corbett,* 1:13-cv-1579 (M.D. Pa.).

Feese has since sought post-conviction relief, which the Court of Common Pleas of Dauphin County has entered an order of intent to

deny the petition (2585 CR 2010 and 1927 CR 2011). Perzel has also sought post-conviction relief, which was denied. (2589 CR 2010). The Pennsylvania Superior Court affirmed the denial of relief (1382 MDA 2014). Perzel has sought review from the Pennsylvania Supreme Court, and that request is pending (535 MAL 2015).

Defendants are not aware of any other case or proceeding that is in any way related, completed, pending, or about to be presented before this court or any other court or agency, state or federal.

## IV.    Concise Statement of the Case

### A.    <u>Relevant procedural history:</u>

Ruling on Defendants' motion to dismiss, the District Court on February 12, 2015, dismissed several of Plaintiff's claims due to absolute prosecutorial immunity. App'x 26a. Plaintiff's remaining claims are that 1) prosecutors and agents threatened witnesses before the grand jury proceedings began, 2) prosecutors and agents destroyed proffer notes, and 3) agents maliciously prosecuted Plaintiff without probable cause. App'x 26a.

Defendants moved for judgment on the pleadings as to the remaining claims and raised qualified immunity, which the District Court denied on July 15, 2016. App'x 40a. Defendants timely appealed on August 12, 2016. App'x 1a. Defendants claim on appeal that the District Court should have granted them immunity. Defendants only raise the purely legal question of whether, accepting Plaintiff's allegations as true, they are entitled to immunity.

Plaintiff has filed an unopposed request in the District Court to certify the February 12, 2015, Order for consolidated appeal with the July 15, 2016, Order. App'x 392-99a. The District Court has not yet

ruled upon Plaintiff's motion. As a result, Defendants do not herein challenge the merits of the partial grant and denial of absolute immunity by the District Court in the February 12, 2015, Order. However, Defendants are fully prepared to brief the issue if certified by the District Court or at this Court's request.

### B.    Relevant facts

The grand jury issued a subpoena to the House Republican Caucus on February 25, 2008, for campaign material. 222a. A man called House Republican Campaign Committee from Plaintiff's phone line to say that a delivery of boxes of campaign material would be made, App'x 62a ¶69, 71-72a ¶114(d) and 74-75a ¶115(f), Plaintiff was normally at his desk, App'x 81a ¶146, and campaign material was then moved to HRCC, App'x 62a ¶69.

During the grand jury proceedings, witness proffer notes were destroyed pursuant to OAG policy when witnesses testified before the grand jury. *See* App'x 70-72a ¶114. Judge Lewis opinions on notes

(App'x 187-214a); *Com. v. Feese*, 79 A.3d 1101 (Pa. Super.), reargument denied (2013), appeal denied, 94 A.3d 1007 (Pa. 2014).[1]

After, the grand jury recommended the charges against Plaintiff, and Agent Fiore charged Plaintiff with obstruction of justice, hindering prosecution, and conspiracy to each. 231-36a. Plaintiff claims that notes do not exist for meetings with three grand jury witnesses against him: Nathan Fineman (the messenger who moved boxes within Representative Perzel's office), Lori Lochetto (Perzel's secretary who had boxes moved to Perzel's office and then to HRCC), and George Matthews (the HRCC employee who testified that a man called to tell him to expect a delivery of boxes). App'x 70-72a ¶114. At no point does Plaintiff explain how the proffer notes of these witnesses would have helped him.

Judge Wenner found probable cause to file charges (App'x 231-32a), Judge Wenner then declined to dismiss the case at Plaintiff's preliminary hearing (App'x 238a), and Judge Lewis also declined to

---

[1]Plaintiff erroneously states that Judge Lewis dismissed the Boxgate charges for his co-defendants, which Plaintiff states resulted from the destruction of notes. App'x 83a ¶154-55. Actually, Judge Lewis held (and the Superior Court agreed) that the destruction of any notes did not violate the law or OAG policy. Judge Lewis opined about the prudence behind the practice. At the guilty plea or sentencing for every co-defendant, the Commonwealth dropped the Boxgate charges.

dismiss the case on a habeas motion (App'x 216a). The OAG later dropped the Boxgate charges against Plaintiff after the Computergate pleas and successful trial.

## V.    Standard of Review:

As with all pure matters of law, this Court "exercise(s) plenary review over the District Court's qualified immunity rulings." *Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 69 (3d Cir. 2011). "A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim, is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth. of NY, NJ*, 598 F.3d 128, 134 (3d Cir. 2010). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The claim must be "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between

14

possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* This Court is "not bound to accept as true a legal conclusion couched as a factual allegation" *Id.* (quoting *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679.

In ruling upon a motion to dismiss, the Court can also consider "exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). "The purpose of this rule is to avoid the situation where a plaintiff, with a legally deficient claim that is based on a particular document, can avoid dismissal of that claim by failing to attach the relied upon document." *Id.*

15

## VI.   Summary of Argument:

Defendants are entitled to qualified immunity because the law was not clearly established in 2009 that, even accepting Plaintiff's allegations, they violated the Constitution. Plaintiff's primary claim is that the prosecutors and agents destroyed proffer notes from meetings with witnesses after those witnesses testified before the Grand Jury, because any witness statements were memorialized in the transcript.

Such note destruction—in accordance with OAG policy—does not violate due process. The law was not clear then (and is not now) that *Brady* and its progeny can be violated, absent a trial. Because Plaintiff's case was dropped, he was never denied the right to present any exculpatory evidence or witnesses or impeach witnesses against him. Had Plaintiff gone to trial, Defendants could have used allegedly fabricated evidence against him or Plaintiff could have presented allegedly withheld exculpatory evidence. As it stands, Plaintiff has not suffered a deprivation of *Brady*, which is a trial right at its core.

In a co-Defendant's case, the state trial and appellate courts held that the note destruction did not violate due process. Defendants cannot be liable for agreeing with state judiciary that oversees them—

16

especially where no federal precedent calls those cases into question. Moreover, the notes would have been unusable for impeachment under state law. Plaintiff does not even allege what, if any, exculpatory evidence the notes could have contained.

Nor does Plaintiff allege a Fourth Amendment seizure under the clearly established law in 2009. Plaintiff was arrested and then released on unsecured bail. This Court has never—in a published decision— addressed whether a prosecution under such circumstance is a "seizure" under the Fourth Amendment. However, in two unpublished cases, this Court has held that an arrest is not sufficient.

The law is not clear that release on unsecured bail implicates the Fourth Amendment, because in 2009 this Court had never addressed that question. A number of District Courts have, and they have each decided that unsecured bail is no deprivation of liberty or property. As a result, Defendants are entitled to qualified immunity because it was not clearly established that the Fourth Amendment even applies.

For probable cause, any reasonable agent would have believed probable cause existed when a male conspirator called from Plaintiff's office desk phone line and Plaintiff was typically at his desk. Further,

17

the agent's probable cause determination is presumed reasonable when prosecutors and judges agree. Finally, Plaintiff does not make any non-conclusory allegation to show that then-AG Corbett directed any fabrication or destruction of evidence.

## VII.  Argument:

### A. <u>Defendants can immediately appeal denial of judgment on the pleadings where, as here, the defendant raises purely legal questions of immunity from suit.</u>

Initially, "the denial of a substantial claim of absolute immunity is an order appealable before final judgment, for the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985). Immediate appeal is available from a motion for judgment on the pleadings that raises such a purely legal defense of immunity from suit. *Zion v. Nassan*, 556 F. App'x 103, 109 (3d Cir. 2014). *See also Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 438 (5th Cir. 2015); *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013); *Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012); *Brown v. Montoya*, 662 F.3d 1152, 1162 & n.4 (10th Cir. 2011); *Finch v. Peterson*, 622 F.3d 725, 728 (7th Cir. 2010); *Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza*, 484 F.3d 1, 13 (1st Cir. 2007); *Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005); *Patel v. Searles*, 305 F.3d 130, 133 (2d Cir. 2002); *Daugherty v. Campbell*, 935 F.2d 780, 783 (6th Cir. 1991);

*Muhammad v. Wainwright*, 839 F.2d 1422, 1423 & n.3 (11th Cir. 1987).

*See Gorromeo v. Zachares*, 15 F. App'x 555, 556 (9th Cir. 2001).

In addition to absolute immunity questions, Defendants properly file this appeal from the District Court's determination that they violated Plaintiff's clearly established rights, and thus the District Court's denial of qualified immunity. In *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985), the Supreme Court held that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." "The entitlement is an <u>immunity from suit</u> rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 526 (emphasis by Supreme Court).

Thus, "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). This Court has emphasized, "The Supreme Court has strongly urged that the legal question of qualified

immunity be decided before trial in order to preserve its protections."

*Monteiro v. City of Elizabeth*, 436 F.3d 397, 400 n.1 (3d Cir. 2006).

In such appeals, "the appealable issue is a purely legal one:

whether the facts alleged (by the plaintiff, or, in some cases, the

defendant) support a claim of violation of clearly established law."

*Mitchell*, 472 U.S.at n.9. Accordingly, Defendants appeal the purely

legal question of whether Plaintiff's rights were clearly established.

### B. To deny qualified immunity, binding precedent in 2009 must have made clear that Defendants violated Plaintiff's rights.

This Court "exercise(s) plenary review over the District Court's

qualified immunity rulings." *Argueta v. U.S. Immigration & Customs

Enf't*, 643 F.3d 60, 69 (3d Cir. 2011).[2] Turning to that purely legal

---

[2]    "A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth. of NY, NJ*, 598 F.3d 128, 134 (3d Cir. 2010). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).
    The claim must be "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely

question, the law is not clearly established that *Brady* can be violated without a trial and conviction, the destruction of proffer notes violates due process, any allegedly falsified or destroyed evidence was exculpatory, Plaintiff could have used the proffer notes for impeachment anyway, that Plaintiff suffered a seizure, that probable cause was lacking to charge Plaintiff, or that Defendants lacked probable cause to charge Plaintiff. *Brady v. Maryland*, 383 U.S. 83 (1963).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."

---

consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* This Court is "not bound to accept as true a legal conclusion couched as a factual allegation" *Id.* (quoting *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679.

In ruling upon a motion to dismiss, the Court can also consider "exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). "The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document." *Id.*

*Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011). "The qualified immunity standard 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Gilles v. Davis*, 427 F.3d 197, 203 (3d Cir. 2005) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

Officials have qualified immunity so long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts consider "the state of the existing law at the time of the alleged violation and the [specific] circumstances confronting the officer." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d. Cir. 2010).

The law is "clearly established" when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that [his conduct] violates that right." *Anderson v. Creighton*, 483 U.S. 635, 649 (1987). "'[T]he right allegedly violated must be established, 'not as a broad general proposition,' *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam), but in a 'particularized' sense so that the 'contours'

23

of the right are clear to a reasonable official, [*Anderson*, 483 U.S. at

640]." *Reichle v. Howards*, 132 S. Ct. 2088, 2094 (2012).

The Supreme Court reiterated last year, "Qualified immunity is

no immunity at all if clearly established law can simply be defined as

the right to be free from unreasonable searches and seizures." *City &*

*Cnty. of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1776 (2015). In

recent years, the Supreme Court has made clear that the analysis must

be fact-specific. *See also Mullenix v. Luna*, 136 S.Ct. 305, 308 (Nov. 9,

2015) (per curiam) (Analysis "must be undertaken in light of the specific

context of the case… Such specificity is especially important in the

Fourth Amendment context, where the Court has recognized that it is

sometimes difficult for an officer to determine how the relevant legal

doctrine, here excessive force, will apply to the factual situation the

officer confronts.") (citations omitted); *Plumhoff v. Rickard*, 134 S.Ct.

2012, 2023 (2014) ("[D]oing so avoids the crucial question whether the

official acted reasonably in the particular circumstances that he or she

faced."); *al-Kidd*, 131 S. Ct. at 2084 ("We have repeatedly told courts…

not to define clearly established law at a high level of generality. The

general proposition, for example, that an unreasonable search or

seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") (citations omitted). *See also Michtavi v. Scism*, 808 F.3d 203, 207 (3d Cir. 2015).

In other words, not only must the constitutional standard be clearly established, but <u>the case law must be clear enough to show the Defendants that they, in fact, violated the Constitution</u>. To defeat qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (per curiam) (unanimous). The Court further grants qualified immunity on questions where judges disagree: "[i]f judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." *Reichle*, 132 S.Ct. at 2096 (citation omitted).

The Supreme Court has repeatedly found that qualified immunity shields officials, where circuit precedent is unclear on the point or distinguishable. *Mullenix*, 136 S.Ct. at 308-12; *Taylor v. Barkes*, 135 S.Ct. 2042 (2015) (per curiam) (unanimous); *Sheehan*, 135 S.Ct. 1765; *Carroll*, 135 S.Ct. at 350; *Lane v. Franks*, 134 S.Ct. 2369, 2383 (2014)

(unanimous); *Reichle*, 132 S.Ct. at 2094. As will be explained below,
Defendants did not violate any clearly established law.

### C. <u>The law was not clear in 2009 that *Brady* can be violated without a trial and conviction.</u>

The District Court on the motion to dismiss decided what <u>factual allegations</u> against Plaintiff's prosecutors may survive absolute immunity. Defendants properly ask whether the remaining factual allegations form <u>a viable cause of action</u>.

The District Court dismissed all allegations against Plaintiff's prosecutors for their probable cause determination—a necessary element to malicious prosecution. If absolute immunity means anything, it certainly means that Plaintiff cannot indirectly prove a claim that is barred directly. If Plaintiff's prosecutors are (as the District Court held) immune for their probable cause determination, then Plaintiff does not get to skip that element of malicious prosecution; rather, Plaintiff must show a different cause of action based upon the remaining factual allegations—specifically, a cause of action that doesn't require him to prove an element for which the prosecutors retain absolute immunity.

The District Court only left <u>two</u> factual allegations against Plaintiff's prosecutors: 1) that they fabricated evidence before the empaneling of the grand jury, and 2) they destroyed material, exculpatory evidence. These factual allegations only implicate the Constitution to the extent Defendants could have violated *Brady* and its progeny. Neither theory supports a *Brady* violation under the clearly established law because Plaintiff had no trial or conviction.

Turning to those allegations, it was not clearly established in 2009 that *Brady* can be violated without a trial and conviction. In fact, the clear weight of authority bars *Brady* claims without a trial and conviction. *Livers v. Schenck*, 700 F.3d 340, 359 (8th Cir. 2012); *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999); *Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998); *Rogala v. District of Columbia*, 161 F.3d 44, 55–56 (D.C.Cir.1998) (per curiam); *Taylor v. Waters*, 81 F.3d 429, 435–36 & n. 5 (4th Cir.1996); *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir.1988).

The same holds true for the alleged destruction of impeachment evidence because Plaintiff could not impeach witnesses who never testified at trial against him. *See Com. v. Feese*, 79 A.3d 1101, 1113 (Pa.

27

Super. 2013) ("In any event, neither Haines, Culp, nor Cherry McGill actually testified against Appellant at his trial. Thus, any value of prior inconsistent statements as impeachment material was rendered moot by their absence."). Because Plaintiff did not have a trial, much less a conviction, Plaintiff cannot bring claims for fabrication or destruction of evidence. At a minimum, it was not "beyond debate" in 2009 that fabrication or destruction of evidence violated Plaintiff's rights absent a trial or conviction. *Carroll*, 135 S.Ct. at 350.

### D. The law was not clear in 2009 that destruction of proffer notes violates due process.

The destruction of the notes as required by official OAG policy in no way violates clearly established law under *Brady*, and the Superior Court affirmed Judge Lewis's decision saying so. *See* Judge Lewis opinions on notes (App'x 183-214a); *Com. v. Feese*, 79 A.3d 1101 (Pa. Super.), reargument denied (2013), appeal denied, 94 A.3d 1007 (Pa. 2014). Put simply, the practice of destroying proffer notes is not a clearly unconstitutional practice such that the prosecutors and agents should have known that the Constitution required them to violate the OAG policy requiring said destruction.

Although Plaintiff did not file any motion alleging prosecutorial misconduct after severance of his case, all of his co-defendants did. In ruling on their motion, Judge Lewis extensively reviewed the questions of whether the destruction of proffer notes violated due process and held that "no due process violation took place." App'x 185a. Although Judge Lewis's decision is not binding on Plaintiff or this Court, his conclusion and the Superior Court's decision to affirm show that the prosecutors and agents acted reasonably when they followed OAG policy to destroy the proffer notes.

Judge Lewis explained why the destruction of the proffer notes, required by OAG policy, did not constitute a *Brady* violation:

> This court wishes to emphasize that the destruction of the notes is not inherently improper. Given the dramatic and negative connotation of the phrase "destruction of evidence," it is important to bear in mind that the destruction of such notes by investigators in a criminal matter is a common, and prudent, practice. Such notes are very often shorthand and incomplete in nature, intended to serve only as an aid to the investigator in the preparation of his or her formal report. **Little good would be served, and much confusion and administrative difficulty would be created, by a rule requiring preservation and disclosure of both the**

29

**investigative report and the rough notes which underlie it.**

In this instance, this court finds that the Commonwealth did not miscarry its obligations under *Brady* by executing its policy with respect to the proffer notes. There is no evidence of record to suggest materially exculpatory information was suppressed or lost. Inasmuch as Defendants contend the notes might have provided evidence of prior inconsistent statements made by potential Commonwealth witnesses, this court finds that such evidence is preserved in the Report of Investigation and the notes of testimony of the grand jury proceedings. Indeed, the examples of prior inconsistent statements included by Defendants in their Motion demonstrate the fertile basis for cross examination supplied.

This court acknowledges the argument made by Defendants that not all the proffer interviews conducted were properly memorialized in the Report of Investigation and that the grand jury transcripts do not adequately capture possible underlying inconsistent statements.

However, Defendants will have broad latitude on cross examination to explore any such statements and present issues of credibility to the jury.

App'x 185-86a (emphasis added).

Judge Lewis later reiterated during Brett Feese's appeal:

[L]ittle good would be served, and much confusion and administrative difficulty would be created, by a rule requiring preservation and disclosure of both the investigative report and the rough notes which underlie it. …

The Appellant was provided with the Grand Jury transcripts of 94 witnesses which included witnesses who testified at trial. Defense counsel had ample opportunities to cross-examine witnesses based on inconsistent statements made before the Grand Jury and counsel exercised those opportunities. This Court finds that the materials disclosed to the defense were sufficient to survive a claim of a *Brady* violation. …

In disposing of the Joint Motion, this Court heard oral argument, reviewed the authority submitted by the parties, and reviewed the case record. This Court determined that a per se *Brady* violation had not occurred as the notes had been destroyed in accordance with OAG internal policy. Additionally, the evidence of record did not indicate that *Brady* material had been lost or suppressed. The Order stated that the defense would be afforded broad latitude on cross-examination during the trial and was afforded such latitude. Therefore, this Court finds that it appropriately determined that an evidentiary had not been warranted in disposition of the Joint Motion. …

The Court extensively evaluated the newly-disclosed documents to determine which of the

suppressed materials would have been
admissible, and, if admissible, would have been
favorable to the defendant and material to the
outcome of the trial.

However, as previously expressed in this opinion,
the evidence of record here did not indicate that
*Brady* materials had been lost or suppressed. The
defense was supplied with the OAG's ROI along
with the Grand Jury transcripts of the testimony
of 94 witnesses that included the transcript of
each trial witness.

App'x 195a, 198-200a.

On appeal, the Superior Court agreed, after quoting the OAG

policy, that "the OAG policy <u>requires</u> the destruction of interview notes

once details have been memorialized in the ROI, with the noted

exception of signed and dated witness statements, and substantially

verbatim memorializations of witness statements." *Feese*, 79 A.3d at

1110 (emphasis by Court). Under these rulings, it is clear that the

prosecutors and agents did not violate clearly established law when

they destroyed proffer notes as required by OAG policy. In fact, the

clear law shows that their actions were reasonable. Plaintiff disagrees

with these rulings, but Defendants cannot be held liable "for picking the

32

losing side of a controversy" between learned judges. *Reichle*, 132 S.Ct. at 2096.

### E. The law was not clear in 2009 that any allegedly falsified or destroyed evidence was exculpatory.

Plaintiff does not explain what witnesses falsified their testimony against him at the prosecutors and agents' behest, much less plausibly show how the altered testimony would have made a difference at his trial (if he had one). Plaintiff mostly complains of exculpatory witnesses within his knowledge that he believes the prosecutors and agents should have presented before the grand jury, but Plaintiff does not show a *Brady* violation because he could have called every exculpatory witness at his trial.

Nor does Plaintiff show how the destroyed proffer notes would have been exculpatory for him. Notably, unlike every single co-defendant, Plaintiff did not challenge the destruction of the notes or make any *Brady* claim at all in his criminal case.

On Feese's appeal, the Superior Court recognized that the destroyed proffer notes could not have prevented the use of exculpatory witnesses because Feese could still call the witnesses to testify:

33

> To the extent that they could have provided
> exculpatory testimony, there is nothing of record
> to indicate why these witnesses could not have
> been called by the defense, particularly since the
> transcripts of the Grand Jury were clearly
> available to the defense before trial, and these
> particular excerpts from the Grand Jury
> testimony were set forth in the defendants' Joint
> Motion to Dismiss and, thus, known to Appellant
> prior to his trial. It is only the prior statements,
> and not the witnesses, that would have been
> rendered unavailable if the OAG destroyed
> interview notes related to those witnesses.

*Feese*, 79 A.3d at n.7. The same holds true for Plaintiff. Plaintiff does

not plausibly show how the notes would have helped him.

In paragraph 114, Plaintiff claims that notes do not exist for

meetings with three grand jury witnesses against him: Nathan

Fineman (the messenger who moved boxes within Representative

Perzel's office), Lori Lochetto (Perzel's secretary who had boxes moved

to Perzel's office and then to the House Republican Campaign

Committee), and George Matthews (the HRCC employee who testified

that a man called telling him to expect a delivery of boxes). App'x 70-

72a. At no point does Plaintiff explain how the proffer notes of these

witnesses would have helped him at trial (if he had one). Thus, Plaintiff

does not plead a *Brady* violation. Defendants violated no precedent by their actions in 2009 and are entitled to qualified immunity.

**F.** **The law was not clear in 2009 that the notes were impeachment evidence.**

The law is not clearly established that Plaintiff could have used the proffer notes for impeachment purposes. In Pennsylvania, "A written report which is only a summary of the words of the victim and not verbatim notes from the victim cannot be used to impeach the witness on cross-examination since it would be unfair to allow a witness to be impeached on a police officer's interpretation of what was said rather than the witness' verbatim words." *Com. v. Simmons*, 662 A.2d 621, 638 (Pa. 1995). *See also Flagg v. Wynder*, 2008 WL 861498, at *13-14 (E.D. Pa. Mar. 27, 2008) (citing *Simmons*); *Mustafa v. Superintendent, SCI Dallas*, 2004 WL 1078500, at *4 (E.D. Pa. May 13, 2004) *R&R adopted*, 2004 WL 1490399 (June 30, 2004).

In a recent, albeit unpublished opinion, the Superior Court strongly rejected an identical claim as "baseless":

> Instantly, the prosecutor's notes could not be used as impeachment evidence as a prior inconsistent statement because the notes were not verbatim. *Simmons, supra; Commonwealth v. Woods*, 710 A.2d 626, 630 (Pa.Super.1998)

35

> (summary of a witness' statement is inadmissible as impeachment evidence unless witness adopted that statement as his own); Pa.R.E. 613. Similarly, the prosecutor's notes could not be used as substantive evidence. *Commonwealth v. Lively*, 610 A.2d 7, 10 (Pa.1992) ("a prior inconsistent statement may be used as substantive evidence only when the statement is given under oath at a formal legal proceeding; or the statement had been reduced to a writing signed and adopted by the witness; or a statement that is a contemporaneous verbatim recording of the witness's statements."); Pa.R.E. 803.1. Moreover, the notes… are plainly work product and do not even bear any semblance of transcribed interviews with witnesses. … Appellant's claims to the contrary are baseless and border on frivolous. Thus, the prosecutor's handwritten notes were not improperly withheld.

*Com. v. LeBlanc*, 2015 WL 6663637, at *3-4 (Pa. Super. Sept. 2, 2015).

*See also Com. v. Lawson*, 2015 WL 6114513, at *6 (Pa. Super. July 30, 2015) ("The court properly prohibited defense counsel from trying to impeach Officer Sampson's credibility with statements the officer did not make or adopt.").

These unpublished Superior Court decisions are not binding on this Court, but they show that the agents and prosecutors acted reasonably in believing that—under the clearly established law—the

36

proffer notes were not impeachment material. Under *Simmons*, which is binding, the prosecutors and agents did not violate clear law in destroying notes that Plaintiff could not use for impeachment even if he had a trial.

### G. The law was not clear in 2009 that Plaintiff was seized.

Plaintiff was released on unsecured bail.[3] In other words, he didn't have to pay anything to the Court to be released prior to trial. Under this Court's precedent, it was unclear in 2009 and is still unclear today whether Plaintiff's prosecution with unsecured bail violated the Fourth Amendment.

### 1. Binding precedent does not establish that Plaintiff's prosecution violated the Fourth Amendment simply because he was arrested.

It is not clearly established that Plaintiff suffered a constitutional seizure as a result of his prosecution. This Court has recognized that an arrest alone cannot support a malicious prosecution claim:

> While Wiltz's complaint does allege that she was arrested, it does not allege that she was incarcerated, required to post bond, maintain contact with Pretrial Services, refrain from traveling, or that she endured any other "post-

---

[3] https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-22-CR-0002524-2010

indictment" deprivation of liberty as a result of
the legal proceedings.

*Wiltz v. Middlesex Cnty. Office of Prosecutor*, 249 F.App'x 944, 949 (3d

Cir. 2007). *See also Penberth v. Krajnak*, 347 F.App'x 827, 829 (3d Cir.

2009) (arrest <u>and</u> 35-40 minute detention insufficient).

The District Courts have agreed that an arrest alone is

insufficient. *Wiecek v. City of Phila*, 2016 WL 524092, at *1 & n.1 (E.D.

Pa. Feb. 10, 2016) (arrest not enough); *Boseman v. Upper Providence

Tp.*, 2016 WL 344460, at *11 (E.D. Pa. Jan. 28, 2016) (same); *Dinoia v.

Cumbo*, 2015 WL 6739114, at *3 (D.N.J. Nov. 4, 2015) (same); *Jones v.

Barth*, 2015 WL 221079, at *4 (E.D. Pa. Jan. 15, 2015) (same); *White v.

Glenn*, 2014 WL 5431200, at n.4 (E.D. Pa. Oct. 27, 2014) (same); *Bartow

v. Thomas*, 2014 WL 2993786, at *5 (W.D. Pa. July 2, 2014) (same);

*Luck v. Mount Airy No. 1,* 901 F.Supp.2d 547, 556 (M.D. Pa. 2012)

(same); *Calipo v. Butler Cty.*, 2012 WL 517331, at *3-4 (W.D. Pa. Feb.

15, 2012) (same); *Benard v. Washington Cty.*, 465 F.Supp.2d 461, 469

(W.D. Pa. 2006) (same); *Ankele v. Hambrick*, 286 F.Supp.2d 485, 497

(E.D. Pa. 2003) (same), *aff'd*, 136 F.App'x 551 (3d Cir. 2005).

Plaintiff may argue that the difference is that his arrest came

after the filing of criminal charges, but the clearly established law did

not show such a distinction in 2009. *See Penberth v. Krajnak,* 2008 WL 509174, at *13 (M.D. Pa. Feb. 21, 2008) (no seizure where arrested after filing of charges), *aff'd,* 347 F.App'x at 829. As in *Penberth*, the Court in *Jones*, 2015 WL 221079, at *4, found no seizure by a prosecution even though the plaintiff was arrested by warrant. The Court in *Taylor v. Mazzone*, 2016 WL 4272266, at n.6 (E.D. Pa. Aug. 12, 2016), recently rejected the argument that the prosecution would have been a seizure if the arrest happened pursuant to a warrant: "Even if Taylor's hour-and-a-half detention were a consequence of a legal proceeding, such a brief detention—without more—does not constitute a deprivation of liberty under the Fourth Amendment."

Further, such a standard would punish an official who seeks a warrant. According to such a standard, an official who arrests without a warrant is only potentially liable for false arrest whereas an official who seeks and obtains judicial approval of probable cause to arrest is potentially liable for <u>two</u> seizures: one for false arrest and another for malicious prosecution.

This is no small punishment as the statute of limitations for false arrest begins to run on the date of arrest but the statute of limitations

for a malicious prosecution claim does not begin to run until the termination of prosecution. *See Wallace v. Kato*, 549 U.S. 384 (2007).

This case highlights the inequity. In this case, Plaintiff filed suit on November 14, 2013, almost four years after his November 12, 2009, arrest. *See* App'x 41a, 57a. Plaintiff is naturally time-barred from bringing a false arrest claim and could not sue Defendants if he was arrested without first filing charges. As Plaintiff filed suit (barely) within two years of November 17, 2011, when the charges were dropped, App'x 58a, Plaintiff, under a rule that penalizes officials who file charges before an arrest, could sue Defendants for malicious prosecution and false arrest only because Defendants sought judicial approval.

In any event, this Court need not decide the question. It suffices to say that this Court has never held that a prosecution can violate the Fourth Amendment simply because of an arrest, whether before or after filing a criminal complaint. This Court's decision in *Penberth* certainly did not find such a timing distinction significant. *See* 2008 WL 509174, at *13 (no seizure where arrested after filing of charges), *aff'd*, 347 F.App'x at 829. Nor did the Court in *Jones*, 2015 WL 221079, at *4. As a

result, the question of whether a prosecution can violate the Fourth

Amendment simply because of an arrest is certainly not "beyond

debate." *Carroll*, 135 S.Ct. at 350.

### 2. Binding precedent does not establish that Plaintiff's prosecution violated the Fourth Amendment simply because he was released on unsecured bail.

Unlike a person who <u>posts</u> bail, Plaintiff did not sacrifice any

money or other property as collateral for his release. Only "existing

<u>precedent</u>" can establish law, *Carroll*, 135 S.Ct. at 350, and this Court's

precedent had not addressed the question in 2009 of whether unsecured

bail seizes a person. *See Johnson v. Knorr*, 477 F.3d 75, 85 n. 14 (3d Cir.

2007) (2 days incarceration is seizure); *DiBella v. Borough of*

*Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005) (no seizure where

Plaintiffs "never arrested," "posted bail," "free to travel," and "not have

to report to Pretrial Services"); *Gallo v. City of Phila.*, 161 F.3d 217, 222

(3d Cir. 1998) (seizure where Plaintiff "had to post a $10,000 bond,"

"contact Pretrial Services on a weekly basis, and he was prohibited from

traveling outside New Jersey and Pennsylvania," but noted that it was

a "close question"). None of these cases addressed whether the Fourth

Amendment can be violated by a prosecution after an arrest of someone released on unsecured bail with no further restrictions.

The Supreme Court has repeatedly in recent years found that qualified immunity shields officers where, as here, circuit precedent is unclear or distinguishable. *Mullenix*, 136 S.Ct. at 308-12; *Taylor v. Barkes*, 135 S.Ct. 2042 (2015) (*per curiam*) (unanimous) (this Court's precedent not sufficiently clear); *Sheehan*, 135 S.Ct. 1765 (prior Ninth Circuit cases distinguishable); *Carroll*, 135 S.Ct. at 350 (per curiam) (unanimous) (reversing this Court because prior decisions of this Court did not make clear that officer violated Fourth Amendment); *Lane v. Franks*, 134 S.Ct. 2369, 2383 (2014) (unanimous) (Eleventh Circuit decisions not sufficiently clear); *Reichle*, 132 S.Ct. at 2094 (Tenth Circuit cases unclear).

Notably, Courts have found no seizure in similar cases. For example, in *Wiecek*, 2016 WL 524092, at *1 & n.1, the Court recently found no seizure by the prosecution where plaintiff was arrested <u>and</u> posted bail. This Court has never had occasion to address whether unsecured bail implicates the Fourth Amendment, but several lower courts have. Those courts, to address the question, have repeatedly held

that <u>unsecured</u> bail does not implicate the Fourth Amendment at all.

*See Boseman*, 2016 WL 344460, at *11; *Black v. Montgomery Cty.*, 2015

WL 5568388, at *3 (E.D. Pa. Sept. 21, 2015); *Collins v. Jones*, 2015 WL

790055, at *9 (E.D. Pa. Feb. 24, 2015); *Jones*, 2015 WL 221079, at *4;

*Schultz v. Hughesville Borough*, 2011 WL 3273076, at *8 (M.D. Pa. July

29, 2011); *Golya v. Golya*, 2007 WL 2301085, at *7 (M.D. Pa. Aug. 9,

2007); *Esposito v. Galli*, 2006 WL 2322487, at *9 (M.D. Pa. Aug. 9,

2006); *Ankele v. Hambrick*, 286 F. Supp. 2d 485, 497 (E.D. Pa. 2003)

*aff'd*, 136 F.App'x 551 (3d Cir. 2005).

As no less than <u>eight</u> Court decisions have held, unsecured bail is

not even a factor that supports finding a seizure, much less a

determinative factor. Once again, Defendants cannot be held liable "for

picking the losing side of a controversy" between learned judges.

*Reichle*, 132 S. Ct. at 2096

The reasoning of these Courts is hard to question. Unlike secured

bail, a person on unsecured bail doesn't actually post any money.

"Release on Unsecured Bail Bond is '[r]elease conditioned upon the

defendant's written agreement to be liable for a fixed sum of money <u>if</u>

he or she fails to appear as required or fails to comply with the

conditions of the bail bond. <u>No money or other form of security is deposited.</u>'" *Black*, 2015 WL 5568388, at n.2 (emphasis added) (quoting Pa.R.Crim.P. 524). Thus, as the Court in *Golya*, explained, "To be sure, Plaintiff was released on a $5,000 unsecured bail bond. Nevertheless, Plaintiff was not required to post money or other collateral...." 2007 WL 2301085 at *6. In other words, Plaintiff didn't actually post anything.

It is not clearly established that the combination of an arrest and unsecured bail can cause a prosecution to violate the Fourth Amendment either. *Boseman*, 2016 WL 344460, at *11 (arrest and unsecured bail not a seizure); *Jones*, 2015 WL 221079, at *4 (same). As these cases demonstrate, the law is not clearly established that Plaintiff suffered a seizure under any reading of the facts.

Plaintiff also alleges that he had to surrender his passport, but the law is not clearly established that requiring pre-approval for international travel or restricting travel to within the United States is a Fourth Amendment seizure. Plaintiff was free to move about the country. Accordingly, Plaintiff cannot show that he suffered a Fourth Amendment seizure under the clearly established law.

### H. <u>Any reasonable agent would have believed probable cause existed.</u>

The grand jury issued a subpoena to the House Republican Caucus on February 25, 2008, for campaign material. 222a. Plaintiff concedes that a man called the House Republican Campaign Committee from Plaintiff's phone line to tell the HRCC to expect a delivery of boxes of campaign material, App'x 62a ¶69, 71-72a ¶114(d) and 74-75a ¶115(f), Plaintiff was normally at his desk, App'x 81a ¶146, and boxes of campaign material were then moved to HRCC, App'x 62a ¶69. The agents clearly had probable cause to believe he obstructed justice, 18 Pa.C.S. §5101, hindered prosecution, 18 Pa.C.S. §5105, and conspired to do so, 18 Pa.C.S. §903.

Plaintiff must show "lack of probable cause." *Startzell v. City of Philadelphia*, 533 F.3d 183, 204 (3d Cir. 2008). "[T]he establishment of probable cause as to any one charge is sufficient to defeat [Plaintiff's] Fourth Amendment claims." *Id.* at n.14. This Court has explained:

> Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested.

*U.S. v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). "A police officer may be liable for civil damages for an arrest if 'no reasonable competent officer'

would conclude that probable cause exists." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (quoting *Malley*, 475 U.S. at 341).

Because "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction, ... the evidentiary standard for probable cause is significantly lower than the standard which is required for conviction." *Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005). The evidence here clearly meets this low bar.

Plaintiff's claims of innocence "do not go to the appropriate probable cause inquiry." *Griffin v. Walbert*, 2012 U.S. Dist. LEXIS 4961, *22 (M.D. Pa. Jan. 17, 2012). In *Griffin*, the Court, recognizing the objective standard for probable cause, held that claims of improper motive could not give rise to an inference that the officers lacked probable cause to arrest:

> Plaintiff's well-pleaded facts may point to unseemly behavior on the part of some public officials and questionable motivation for actions taken, but, within the relevant legal framework, they do not even create an inference of misconduct which would entitle the Plaintiff to relief.

*Id.* at *22-23.

46

Whether Plaintiff is actually guilty is not for this Court to decide. The fact is that the agents had reason to believe that Plaintiff violated the law. *See also Stolarik v. Wilkes-Barre*, 2013 U.S. Dist. LEXIS 155788, *12 (M.D. Pa. Oct. 30, 2013) ("Stolarik might have turned out to be correct, but at the time of the arrest it was reasonable for an officer confronted with these facts to discount Stolarik's statements as self-serving.").

## I. <u>The agents did not initiate the prosecution</u>.

In ruling on the motion to dismiss, the District Court held "an officer may… be considered to have initiated a criminal proceeding if he or she knowingly provided false information <u>to the prosecutor</u> or otherwise <u>interfered with the prosecutor's informed discretion</u>." *Zimmerman* , 2015 WL 539783, at *10 (emphasis added) (citation omitted).

Notably, the destruction of notes could not possibly fall within this exception and the prosecutors and agents destroyed the notes pursuant to OAG policy. It is implausible that the agents destroyed the notes without prosecutor knowledge; in fact, Plaintiff found out that the notes were destroyed <u>from the prosecutors</u>.

47

As for falsification of evidence, Plaintiff does not allege that the agents provided false information <u>to the prosecutors</u> or otherwise interfered with prosecutorial discretion. Rather, Plaintiff alleges the opposite: that the agents worked in tandem with the prosecutors to provide false information to the Court.

It is simply implausible that the agents duped the prosecutors in any way into taking Plaintiff's case; to the contrary, Plaintiff claims that the prosecutors were in on it. Accordingly, the agents cannot be liable for malicious <u>prosecution</u> under the clearly established law.

**J. <u>Agents Fiore and Speaks' actions are presumed reasonable.</u>**

The law presumes that Agents Fiore and Speaks acted reasonably. This Court has held that, "a police officer who relies in good faith on a prosecutor's legal opinion that the arrest is warranted under the law is presumptively entitled to qualified immunity from Fourth Amendment claims premised on a lack of probable cause." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 255-56 (3d Cir. 2010). Likewise, in the case of an arrest warrant approved by a judge, "only where the warrant application is 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable,' will the officer lose the shield of

immunity." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). *See also Kelly*, 622 F.3d at 254-55 (recognizing *Malley* is still good law).

The basis for arrest was confirmed when Judge Wenner initially found probable cause to file charges (App'x 231-32a), Judge Wenner later declined to dismiss the case at a preliminary hearing (App'x 238a), and Judge Lewis also declined to dismiss the case on a habeas motion (App'x 216a). As the District Court has recognized, these determinations are "very strong evidence" of probable cause. *Zimmerman*, 2015 WL 539783, at *5. For qualified immunity purposes, these determinations are enough to show that Agents Fiore and Speaks are not clearly incompetent—a very low bar. Plaintiff does not overcome their presumption of reasonableness under *Kelly.*

### K. It is implausible that Defendants fabricated evidence *before the grand jury was empaneled.*

The District Court initially found "that a fuller record is necessary before it can decide whether the prosecutorial defendants are entitled to [absolute] immunity on claims that they fabricated evidence <u>prior to the initiation of the grand jury proceedings</u>." *Zimmerman*, 2015 WL 539783, at *8 (emphasis added). However, it is clear that all evidence against

49

Plaintiff surfaced after the grand jury proceedings began as Plaintiff was charged with moving boxes to hide evidence in violation of February 25th, 2008, <u>grand jury subpoena</u>. App'x 222a, 229a. Accordingly, since the February 2008 grand jury subpoena existed prior to any of the alleged unconstitutional actions, the prosecutors are absolutely immune for all claims of evidence fabrication.

### L. <u>It is implausible that then-AG Corbett personally directed fabrication or destruction of evidence.</u>

In paragraphs 87-90, Plaintiff asserts in a conclusory fashion that then-AG Corbett and not-yet AG Kelly directed the fabrication and destruction of evidence. App'x 65-66a. These allegations cannot survive under *Iqbal*. The Court in *Iqbal* rejected similar conclusory allegations that AG Ashcroft and FBI Director Mueller directed Iqbal's harsh treatment for discriminatory reasons. 556 U.S. at 680-81. Plaintiff's conclusory allegations of knowledge and direction must also fail.

Plaintiff's allegations are implausible. Notably, Plaintiff lumps Corbett and Kelly in these paragraphs as one in the same even though, as the District Court has recognized, Kelly did not become AG until years after Plaintiff was charged. Plaintiff does not claim that Corbett participated in witness interviews or personally destroyed notes.

Therefore, Plaintiff simply does not show that Corbett knew of exculpatory or fabricated evidence. With no idea what level of involvement Corbett has, Plaintiff simply guesses (as he guessed with Kelly). These conclusory allegations cannot suffice under *Iqbal*.

## VIII. Conclusion

For these reasons, Defendants respectfully request that this Court reverse and remand with instruction to dismiss the case.

Respectfully submitted,

s/ Josh Autry
Lavery Law
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
PA Bar No. 208459
jautry@laverylaw.com

Date: October 25, 2016     Attorney for Defendants-Appellants

s/ Frank J. Lavery, Jr.
Lavery Law
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
PA Bar No. 208459
flavery@laverylaw.com

Date: October 25, 2016     Attorney for Defendants-Appellants

## Combined Certifications

 I certify that:

1.    I am a member in good standing of the Bar of this Court.

2.    The type face is Century, 14-point font and proportionally spaced.

3.    This brief complies with the type-volume limitation imposed by Fed.R.A.P. 32(a)(7)(B). This brief contains 9,676 words of proportionally spaced text. I relied on the word count of Microsoft Word, the word-processing system used to prepare the brief, to obtain this number. The font is Century, 14-point font.

4.    The text of the electronic version of this filing, which has been emailed to the Court, is identical to the text of the hard copies that have been sent to the Clerk's Office. The electronic copy has been scanned with the most recent version of Malwarebytes.

5.    On this date, a copy of this filing was served by this Court's electronic case filing system and also addressed to:

Devon M. Jacob, Esquire

                                    s/ Josh Autry

Dated: October 25, 2016