# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

No.: 16-3384

---

John Zimmerman,
Plaintiff-Appellees

v.

Thomas W. Corbett, et al.,
Defendants-Appellants

---

## APPENDIX VOLUME I OF APPELLANTS

---

LAVERY LAW

By:   <u>s/Joshua M. Autry</u>
        Joshua M. Autry, Esquire
        225 Market Street, Suite 304
        P.O. Box 1245
DATE:  October 25, 2016      Harrisburg, PA 17108-1245
        (717) 233-6633 (telephone)
        (717) 233-7003 (facsimile)
        Atty No. PA 208459
        jautry@laverylaw.com
        Atty for Defendants-Appellants

# CONTENTS OF APPENDIX

## VOLUME I

Notice of Appeal ...................................................................... 1a

Memorandum regarding Order on Motion to Dismiss ........................... 3a

Order regarding Motion to Dismiss ...................................... 26a

Order denying Motion for Reconsideration .......................................... 27a

Memorandum regarding Order on Motion for Judgment on the
Pleadings ....................................................................... 30a

Order regarding Motion for Judgment on the Pleadings ..................... 40a

## VOLUME II

Middle District, Docket No. 1:13-CV-02788, Docket Sheet.................. 41a

Plaintiff's Amended Complaint............................................................ 52a

Defendants' Answer to Plaintiff's Amended Complaint ...................... 93a

Defendants' Motion for Judgment on the Pleadings .......................... 139a

Concurred in Motion to Partially Stay Discovery ............................. 145a

Defendants' Brief in Support of Motion for Judgment on the Pleadings

........................................................................................ 149a

Order Staying Depositions................................................................ 239a

Plaintiff's Brief in Opposition to Motion for Judgment on the Pleadings

................................................................................................ 240a

Defendants' Reply Brief in Support of Motion for Judgment on the
Pleadings ........................................................................ 380a

Plaintiff's Motion to Amend Order .................................................... 392a

IN THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| John R. Zimmerman, | : | 1:13-cv-2788 |
| Plaintiff | : | |
| v. | : | Judge Kane |
| Thomas W. Corbett, Frank G. Fina, | : | |
| K. Kenneth Brown, Michael A. Sprow, | : | |
| Anthony J. Fiore, and Gary E. Speaks, | : | |
| Defendants | : | Jury Trial Demanded |

## Notice of Appeal

Notice is hereby given that Defendants hereby appeal to the United States Court of Appeals for the Third Circuit from the Order entered regarding Defendants' Motion for Judgment on the Pleadings on July 15, 2016, by Judge Yvette Kane.

Respectfully submitted,

Lavery Law

s/ Frank J. Lavery, Jr.
Pennsylvania Bar No. 42370
s/ Josh Autry
Pennsylvania Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108-1245
(717) 233-6633 (p); (717) 233-7003 (f)
flavery@laverylaw.com
jautry@laverylaw.com

Date: August 12, 2016       Counsel for Defendants

## Certificate of Service

I certify that on this date, I served a true and correct copy of this filing through this Court's electronic case filing system to Devon M. Jacob, Esquire.

s/ Amyra Wagner
Legal Assistant for Josh Autry

Date: August 12, 2016

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN R. ZIMMERMAN,** | : | |
| **Plaintiff** | : | |
| | : | No. 1:13-cv-02788 |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **THOMAS W. CORBETT, et al.** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the Court is a motion to dismiss Plaintiff's amended complaint, filed by

Defendants Thomas W. Corbett, Linda L. Kelly, Frank G. Fina, K. Kenneth Brown, II, Michael

A. Sprow, Anthony J. Fiore, and Gary E. Speaks. (Doc. No. 21.) For the reasons that follow, the

Court will grant the motion in part, and deny it in part.

## I. BACKGROUND[1]

Plaintiff John R. Zimmerman's complaint concerns criminal charges that he alleges were

politically motivated, and which were ultimately dropped. (See, e.g., Doc. No. 21 at 168, 191.)

Plaintiff John R. Zimmerman was a member of the staff of Republican John M. Perzel, who

represented the 172nd Legislative District in the Pennsylvania House of Representatives. (Doc.

No. 20 ¶¶ 12, 31-32.) Perzel became Speaker of the House in 2003, a position which he held

until the Republicans lost control of the House in the 2006 election. (Id. ¶ 14.) Plaintiff avers

that Defendant Thomas W. Corbett wanted Perzel to support him for Governor in the 2010

election, and Plaintiff arranged a meeting between the men in December 2007. (Id. ¶ 17, 20.)

Perzel, who also intended to run for governor, refused to back Corbett. (Id. ¶¶ 22-24.)

---

[1] The following background is taken from the allegations of Plaintiff's amended complaint (Doc. No. 20).

1

3a

In July 2008, Corbett, in his capacity as Attorney General of Pennsylvania, announced the filing of criminal charges against 12 ranking Democrats in a scandal subsequently dubbed "Bonusgate." (Doc. No. 20 ¶ 26.) Plaintiff claims that "Bonusgate" was Corbett's "Achilles heel," because he was accused of political partisanship and targeting Democrats. (Id. ¶¶ 27-28.) According to Plaintiff, Corbett's Public Corruption Unit thereafter turned its sights to the Republican Caucus, specifically Perzel. (Id. ¶ 29.) The investigation into Perzel centered on the alleged use of Caucus employees for campaign work, unlawful contracts with consultants, and an alleged attempt to falsify evidence to mislead investigators. (Id. ¶ 30.) As described by Plaintiff, the investigation into Perzel yielded two scandals: "Computergate" and "Boxgate." (Id. ¶¶ 32-34.) Plaintiff was implicated in the latter scandal, "Boxgate," which he avers, "related to the movement of boxes that contained three year old blank campaign letterhead and unaddressed return envelopes; essentially, junk." (Id. ¶ 35.)

The "Boxgate" investigation was ultimately presented to a grand jury overseen by Judge Barry F. Feudale, the then-supervising grand jury judge in Harrisburg, Pennsylvania. (Doc. No. 20 ¶ 110.) Plaintiff alleges that the Defendants "coached and intimidated witnesses during an investigation to ensure that the desired political goal could be achieved," and "manipulated and threatened grand jury witnesses to ensure that [the] witnesses testified in a manner that would result in the Defendants obtaining a specific desired presentment from the grand jury." (Id. ¶¶ 112, 168.) Plaintiff also alleges that the Defendants destroyed exculpatory investigation notes. (Id. ¶ 113.) Plaintiff further avers that the Defendants knowingly presented false information, failed to correct the record, and failed to present exculpatory evidence to the grand jury. (Id. ¶ 114.)

2

4a

On November 12, 2009, Corbett announced the Grand Jury presentments and the filing of criminal charges against ten ranking Republicans, including Plaintiff. (Doc. No. 20 ¶ 116.) The four charged in "Boxgate"-related charges were Plaintiff, Perzel, Paul Towhey and Brett Freese. (Id. ¶ 36.) Specifically, Zimmerman was charged with Hindering Apprehension or Prosecution, in violation of 18 Pa.C.S. § 5105, Obstructing Administration of Law or Other Governmental Functions, in violation of 18 Pa.C.S. § 5101, and two counts of Criminal Conspiracy. (Id. ¶ 120.) Plaintiff contends that the criminal complaint contains false statements and that the affidavit of probable cause is deficient. (Id. ¶¶ 122-24.) Both were signed and sworn to by Defendant Fiore. (Id. ¶ 125.) Plaintiff also alleges that "Corbett and the Defendants" displayed Zimmerman's picture on a poster of Defendants, arranged for Zimmerman to be on television doing a "perp-walk" (id. ¶ 117), and "staged the arraignment process to provide a photo opportunity for the Corbett administration." (Id. ¶ 133.)

Plaintiff's Preliminary Hearing was conducted on May 25, 2010. (Doc. No. 20 ¶ 140.) At the hearing, Defendants K. Kenneth Brown, II and Michael A. Sprow acted as the prosecutors. (Id. ¶ 141.) Plaintiff alleges that Sprow and Brown failed to present exculpatory evidence at the hearing. (Id. ¶ 142-48.) Plaintiff also alleges that Defendants Speaks and Fina, both of whom testified, knowingly failed to testify as to crucial facts. (Id. ¶¶ 142-43.)

On June 13, 2011, in the Perzel criminal case, Defendant Fina informed Common Pleas President Judge Richard Lewis that the Office of the Attorney General had destroyed witness and proffer notes. (Id. ¶ 151.) As a result, Judge Lewis dropped all criminal charges against alleged co-conspirators Perzel, Freese, and Towhey related to the movement of the boxes. (Id. ¶ 154.) However, Zimmerman's criminal case had been previously severed from his co-

3

5a

Defendants', and was not before Judge Lewis. (Id. ¶ 155.) Plaintiff alleges that thereafter, despite knowing that the "'Boxgate' charges had been dismissed and that there was not a shred of evidence to support the charges against Zimmerman, the Defendants who had the authority to dismiss the frivolous criminal charges against [Plaintiff], maliciously did not do so." (Id. ¶ 157.) Plaintiff avers that he accordingly "sat criminally charged in a conspiracy of one" for the next 72 days, until November 17, 2011, when the Defendants voluntarily dismissed the criminal charges. (Id. ¶¶ 163-64.)

On November 14, 2013, Plaintiff filed a complaint in this Court pursuant to 42 U.S.C. § 1983, alleging that the Defendants maliciously prosecuted him in violation of the Fourth and Fourteenth Amendments. (Doc. No. 1.) On February 24, 2014, after the Defendants indicated that they intended to file a motion to dismiss the complaint, the Court stayed the action pending resolution of the motion. (Doc. No. 14.) On March 10, 2014, Defendants filed their motion to dismiss the complaint. (Doc. No. 15.)

Rather than filing a brief in opposition to that motion, Plaintiff filed an amended complaint on May 7, 2014. (Doc. No. 20.) Plaintiff's amended complaint reaffirms his malicious prosecution claim under Section 1983, and adds a state law malicious prosecution claim. (Id.) Named as Defendants are (1) Thomas W. Corbett, who served as Attorney General of Pennsylvania; (2) Linda L. Kelly, who served as Attorney General of Pennsylvania following Corbett;[2] (3) Frank G. Fina, who served as the Chief Deputy Attorney General; (4) K. Kenneth Brown, II, who served as a Senior Deputy Attorney General; (5) Michael A Sprow, who served

---

[2] Kelly became Attorney General for the Commonwealth of Pennsylvania on May 23, 2011. (Id. ¶¶ 163-64.)

as a Senior Deputy Attorney General; (6) Anthony J. Fiore, who served as a Special Agent in the

Attorney General's Office and as the Director of the Bureau of Investigations for the Office of

Inspector General for the Commonwealth of Pennsylvania; and (7) Gary E. Speaks, who served

as a Special Agent in the Attorney General's office.  (Id.)  On May 21, 2014, the Defendants

filed a new motion to dismiss the complaint.  (Doc. No. 21.)  The motion is fully briefed and ripe

for disposition.

## II.    LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of

the claim and the grounds upon which it rests.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232

(3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible

right to relief.  Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires

"only a short and plain statement of the claim showing that the pleader is entitled to relief," a

complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its

"failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all

factual allegations in the complaint and all reasonable inferences that can be drawn from them,

viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618

F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic

Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under

Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of

pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is

5

facially plausible.  Id.  Accordingly, to determine the sufficiency of a complaint under Twombly

and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following

steps a district court must take when determining the sufficiency of a complaint under Rule

12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any

conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and

(3) determine whether any "well-pleaded factual allegations" contained in the complaint

"plausibly give rise to an entitlement for relief."  See Santiago v. Warminster Twp., 629 F.3d

121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

## III.   DISCUSSION

Count one of Plaintiff's complaint raises a Section 1983 malicious prosecution claim.

The elements of such a claim are: (1) the defendants initiated a criminal proceeding; (2) the

criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without

probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the

plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the

concept of seizure as a consequence of a legal proceeding.  DiBella v. Borough of Beachwood,

407 F.3d 599, 601 (3d Cir. 2005).  Count two alleges malicious prosecution under Pennsylvania

law.  To bring such a claim, a Plaintiff must similarly show that "the defendants instituted

proceedings without probable cause, with malice, and that the proceedings were terminated in

favor of the plaintiff."  Cosmas v. Bloomingdales Bros., 660 A.2d 83, 85 (Pa. Super. Ct. 1995).

In moving to dismiss Plaintiff's complaint, the Defendants bring five distinct arguments:

(1) the claims of malicious prosecution fail as a matter of law because two judges found probable

cause for the charges against Plaintiff; (2) the Defendants are entitled to absolute immunity for

actions taken within their prosecutorial duties; (3) Defendants Kelly and Corbett should be dismissed due to a lack of personal involvement; (4) Defendants Fiore and Speaks should be dismissed because the complaint does not allege that either initiated a criminal proceeding; and (5) sovereign immunity bars Plaintiff's claim under Pennsylvania law.  The Court will address these arguments in turn.

### A.    Probable cause as a matter of law

Defendants argue that Plaintiff's complaint must be dismissed because he cannot establish that his criminal proceeding was initiated without probable cause, a necessary element of his malicious prosecution claims.  (Doc. No. 24 at 12.)  According to Defendants, Judge Werner found at Plaintiff's preliminary hearing that the Commonwealth had met its prima facie burden despite Plaintiff's objections regarding a lack of probable cause.  (See Doc. No. 21-1, Attachment A.)  Defendants also indicate that Dauphin County Judge Lewis denied Plaintiff's motion to quash, in which Plaintiff again sought to challenge the existence of probable cause. (See id., Attachments B, C.)  Defendants contend that because these two judges independently found probable cause, probable cause has therefore been established as a matter of law.[3]  (Doc. No. 24 at 14.)  Plaintiff argues that while such prior determinations are evidence of probable cause, they are not dispositive.  (Doc. No. 27 at 8.)

---

[3] Although in ruling upon a motion to dismiss courts are generally bound to considering only the allegations contained in the complaint, courts may also consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  The Court will therefore consider the Defendants' evidence of the prior probable cause determinations, although they are matters outside Plaintiff's pleading.

Probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the [the individual] had committed or was committing an offense." Radich v. Goode, 886 F.2d 1391, 1395-96 (3d Cir. 1989). Courts should make their probable cause determination on the "totality of the circumstances . . . [which means] that a court should not isolate pieces of evidence when it determines whether there was probable cause for a prosecution." Halsey v. Pfeiffer, 750 F.3d 273, 301-02 (3d Cir. 2014) (internal citation omitted). The United States Court of Appeals for the Third Circuit has noted that the question of probable cause in a Section 1983 damages suit is generally one for the jury. Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998). However, is it appropriate for a court to find probable cause as a matter of law "if taking all of [the plaintiff's] allegations as true and resolving all inferences in her favor, a reasonable jury could not find a lack of probable cause for [plaintiff's arrest]." Id. (denying summary judgment on malicious prosecution claim).

The Court agrees with Plaintiff that although the earlier probable cause determinations cited by Defendants are "weighty evidence" of probable cause, these determinations are not conclusive evidence of probable cause that precludes Plaintiff's Section 1983 and state law malicious prosecution claims. For example, the Third Circuit has held that "the common law presumption raised by a magistrate's prior finding that probable cause exists does not apply to section 1983 actions." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 789 (3d Cir. 2000)[4]; see Pardue v. Gray, 136 F. App'x 529, 533 (3d Cir. 2005) (affirming grant of summary judgment

---

[4] See also Marshall v. Penn Twp., Pa., 458 F. App'x 178, 181 n.4 (3d Cir. 2012) (citing Merkle for the proposition that although the charge "proceeding to trial following a preliminary hearing would at least suggest the existence of probable cause for that charge . . . it would not establish a presumption of probable cause").

where the lower court "cited the independent findings of the District Attorney and magistrate as evidence that <u>supported</u>, rather than <u>compelled</u>, a finding of probable cause") (emphasis added). Along these lines, multiple Courts in this district have rejected the argument that an earlier finding of probable cause at a preliminary hearing establishes probable cause as a matter of law. See, e.g., <u>Kline v. Hall</u>, No. 12-1727, 2013 WL 1775061, at *5 (M.D. Pa. Apr. 25, 2013) ("[A] finding of probable cause at a preliminary hearing is only 'weighty evidence' that there was probable cause; it is not conclusive."); <u>Bingaman v. Buhay</u>, No. 06-2144, 2007 WL 707026, at *5 (M.D. Pa. Mar. 2, 2007) (denying motion to dismiss Pennsylvania state law malicious prosecution claim because "[t]he finding of probable cause at a preliminary hearing may be evidence of probable cause, but it does not have the same preclusive effect as a conviction that has not been overturned"). The Pennsylvania Superior Court has reached similar conclusions. See, e.g., <u>Cosmas v. Bloomingdales Bros.</u>, 660 A.2d 83, 86 (Pa. Super. 1995) ("It is true that a holding-over [for trial] represents a decision by a neutral and experienced judicial officer that the prosecution has made out a <u>prima</u> <u>facie</u> case . . . . [a] determination of a <u>prima</u> <u>facie</u> case, however, does not necessarily equal a finding of probable cause such as will bar an action for malicious prosecution.").

Thus, although the prior probable cause determinations cited by Defendants – at a preliminary hearing, and upon his motion to quash – are very strong evidence in favor of a finding of probable cause, the Court finds that they are not determinative at this stage. The amended complaint alleges that Plaintiff's criminal proceeding was initiated without probable cause, and the Court cannot determine at this time that no probable cause existed as a matter of law. This is consistent with the Third Circuit's "totality of the circumstances" approach to the

question of probable cause.  See Halsey, 750 F.3d at 302 ("A court should measure the

cumulative weight of all of the evidence [concerning probable cause] and account for reasonable

inferences that can be drawn from it.").  Accordingly, the Court will deny the motion to dismiss

on these grounds.

### B.     Absolute immunity

Defendants argue that they are "absolutely immune from suit for actions taken within

their prosecutorial duties."  (Doc. No. 24 at 7.)  Accordingly, except where otherwise

specifically noted, this section concerns the immunity of the "prosecutorial Defendants:"

Corbett, Kelly, Fina, Brown and Sprow.[5]  They contend that absolute immunity extends to the

decision to initiate a criminal proceeding and that accordingly, they are entitled to immunity on

Plaintiff's malicious prosecution claims.  Plaintiff argues that the prosecutorial Defendants are

not entitled to absolute immunity for actions taken in an investigatory role or outside the scope

of their professional duties, including actions before the Pennsylvania grand jury.

Prosecutors are absolutely immune from civil liability for all activities "intimately

associated with the judicial phase of the criminal process."  Imbler v. Pachtman, 424 U.S. 409,

430 (1976).  "But a person is not immune from suit for every wrong he commits just because he

happens to be employed as a prosecutor: the inquiry focuses on the nature of the function

performed, not the identity of the actor who performed it."  Schneyder v. Smith, 653 F.3d 313,

332 (3d Cir. 2011).  Accordingly, "acts undertaken by a prosecutor in preparing for the initiation

---

[5] As the Defendants concede (Doc. No. 24 at 25), the remaining Defendants, Speaks and
Fiore, did not act as prosecutors but, instead, as Special Agents; for example, they are alleged to
have performed investigative tasks as well as having testified before the grand jury.  (See Doc.
No. 20.)  In Section III.D, infra, the Court will discuss to what extent the amended complaint
states a claim against Special Agents Speaks and Fiore.

of judicial proceedings or for trial, and which occur in the course of his role as an advocate for

the State, are entitled to the protections of absolute immunity." <u>Yarris v. Cnty. of Delaware</u>, 465

F.3d 129, 135 (quoting <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 273 (1993)). This includes

immunity for "initiating a prosecution and . . . presenting the State's case." <u>Imbler</u>, 424 U.S. at,

431. In contrast, "absolute immunity does not extend to '[a] prosecutor's administrative duties

and those investigatory functions that do not relate to an advocate's preparation for the initiation

of a prosecution or for judicial proceedings.'" <u>Yarris</u>, 465 F.3d at135 (quoting <u>Buckley</u>, 509 U.S.

at 273). Accordingly, to determine whether absolute prosecutorial immunity applies, a "court

must ascertain just what conduct forms the basis for the plaintiff's cause of action, and it must

then determine what function (prosecutorial, administrative, investigative, or something else

entirely) that act served." <u>Schneyder</u>, 653 F.3d at 332.

### 1.      Immunity applies to the primary allegations against the Defendants

Accepting as true the allegations in the amended complaint, the Court finds that the

principal allegations concern actions taken by the prosecutorial Defendants in their roles as

advocates and are accordingly barred by absolute immunity. First, although Plaintiff attempts to

characterize his complaint differently, the gravamen of Plaintiff's complaint is that the

Defendants pursued charges against him for political and retaliatory purposes, despite a total lack

of probable cause, and even though they possessed knowledge of that evidentiary deficiency. As

a general rule, such claims are simply not actionable, as the decision to pursue charges is at the

core of a prosecutor's role as advocate. <u>See</u> <u>Imbler</u>, 424 U.S. at 430-31. Plaintiff similarly

cannot maintain his action based on the allegations that even after "knowing . . . that there was

not a shred of evidence to support the charges . . . the Defendants who had the authority to

11

dismiss the frivolous criminal charges . . . maliciously did not do so." (Doc. No. 20 ¶ 157.) As with the decision to initiate charges, the decision whether or not to dismiss a pending criminal case is unquestionably within a prosecutor's role as advocate.[6] It is irrelevant that Plaintiff alleges that the Defendants conspired to maliciously prosecute Plaintiff, and that they allegedly had ulterior, political motives. See Kulwicki v. Dawson, 969 F.2d 1454, 1464 (3d Cir. 1992) ("Consideration of personal motives is directly at odds with the Supreme Court's simple functional analysis of prosecutorial immunity . . . . The Court has explicitly stated that even groundless charges are protected, in the interest of maintaining vigorous prosecution of crime.") Rose v. Bartle, 871 F.2d 331, 347 (3d Cir. 1989) ("Engaging in an illegal conspiracy does not affect [prosecutorial] immunity.").

With a few exceptions, Plaintiff's additional specific allegations against the Prosecutorial Defendants are similarly barred by the doctrine of absolute immunity.[7] This includes the allegations that the Defendants knowingly presented false information, failed to correct the record, and failed to present exculpatory evidence to the grand jury (see Doc. No. 20 ¶ 115), as

---

[6] The Court is also skeptical that a failure to dismiss already-initiated charges would constitute "initiating a prosecution" for purposes of a malicious prosecution action.

[7] Plaintiff also makes allegations that, following the announcement of the Grand Jury presentments and the filing of criminal charges, the Defendants "displayed [Plaintiff's] picture on a poster of Defendants" and arranged for Plaintiff to be on television doing a "perp-walk." (See Doc. No. 20 ¶¶ 116, 181.) Plaintiff is correct that absolute immunity may not apply to a prosecutor's out-of-court statements to the media. See Buckley, 509 U.S. at 278. Nevertheless, the Court finds that allegations that Defendants staged a "perp-walk" following initiation of charges does not tie into Plaintiff's claims of malicious prosecution, as he does not allege that the "perp-walk" had the effect of causing his wrongful prosecution. See Miller v. Meyer, No. 14-101, 2014 WL 5448348, at *8 (S.D. Ohio Oct. 23, 2014) (finding that the plaintiff's allegations that the defendant prosecutors made false statements to the media fell outside the scope of Plaintiff's malicious prosecution claim where Plaintiff did "not allege that the statements caused a wrongful investigation, prosecution, conviction, or incarceration").

well as the allegations that the Defendants "misrepresented and misled the Court into believing that probable cause existed" during various hearings and proceedings during the pendency of the case (see id. ¶¶ 147-48, 174).  See Yarris, 465 F.3d at 137 ("It is well settled that prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, so long as they did so while functioning in their prosecutorial capacity.").  These allegations relate to Defendants' presentation of the state's case against Plaintiff and their appearances in court; all are within the prosecutor's role as advocate, and the prosecutorial defendants are thus entitled to immunity on such claims.  See Kalina v. Fletcher, 522 U.S. 118, 126 (1997) (noting that "a prosecutors' appearance in court in support of an application for a search warrant or the presentation of evidence at that hearing were protected by absolute immunity"); Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992) ("[Prosecutors are entitled to immunity for] activity taken while in court, such as the presentation of evidence or legal argument, as well as selected out-of-court behavior intimately associated with the judicial phases of litigation.") (internal quotations omitted).  Similarly, Defendants special agents Speaks and Fiore – although not alleged to have acted as prosecutors – are immune from claims arising out of their allegedly false or misleading testimony.  See Rehberg v. Paulk, 132 S. Ct. 1497, 1506 (2012) ("[G]rand jury witnesses . . . enjoy the same immunity as witnesses at trial.  This means that a grand jury witness has absolute immunity from any [Section] 1983 claim based on the witness' testimony . . . this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony.").

   Plaintiff attempts to sidestep the immunity issue in part by arguing that Defendants are not immune from their activities concerning the grand jury.  (Doc. No. 27 at 11.)  Plaintiff

contends that the grand jury in this matter was "investigative" grand jury rather than an "indicting" grand jury, because grand juries in Pennsylvania do not have the power to issue indictments.  See 42 Pa.C.S. § 4548.  This distinction does not alter the immunity analysis.  As the Court discussed above, a prosecutor's activity before a grand jury is entitled to absolute immunity.  See, e.g., Burns v. Reed, 500 U.S. 478, 490 n.6 (1991) (noting that "there is widespread agreement among the Courts of Appeals that prosecutors are absolutely immune from liability under [Section] 1983 for their conduct before grand juries").  That a Pennsylvania grand jury merely has the power to recommend charges, rather than to indict, is irrelevant; the function of the prosecutor in either scenario is the same: to present the state's case and evidence.  See Buckley, 509 U.S. at 273 ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.")  As Defendants note, Plaintiff's argument asks the Court to conclude that prosecutors are not immune for the activities before Pennsylvania grand juries.  Such a conclusion threatens to hinder a prosecutor's ability to present the state's evidence, and therefore runs counter to the well-established justifications behind the doctrine of prosecutorial immunity.  See Imbler, 424 U.S. at 427-28 (observing that a lack of absolute immunity for prosecutors would "disserve the broader public interest" by, inter alia, "prevent[ing] the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system."); see also Hughes v. Long, 242 F.3d 121, 125 (3d Cir. 2001) ("The 'functional approach' [to prosecutorial immunity] . . .  evaluates the effect that exposure to particular forms of liability would likely have on the appropriate exercise

14

16a

of that function.").[8]

### 2. Actions for which the Court cannot at this time determine whether absolute immunity applies

Although it is clear that most of the allegations in the complaint are subject to dismissal as protected by absolute immunity, the amended complaint also makes certain allegations for which the Court cannot yet determine what level of immunity applies. See Forsyth v. Kleindienst, 599 F.2d 1203, 1215 (3d Cir. 1979) ("[A] limited factual inquiry may in some cases be necessary to determine in what role the challenged function was exercised."). Specifically, Plaintiff avers that the Defendants acted as both prosecutors and criminal investigators, that the Defendants "maniupulated and threatened prospective grand jury witnesses to ensure that witnesses testified in a manner that would result in the Defendants obtaining a specific desired presentment from the grand jury," and that the Defendants "coached and intimidated witnesses during an investigation to ensure that the desired political goal could be achieved." (See Doc. No. 20 ¶¶ 111-12, 168.) Based on these allegations, it is not clear whether the conduct alleged implicates a prosecutorial or investigative function. The Court therefore cannot dismiss these allegations on the basis of absolute immunity.

For example, in Buckley, the Supreme Court held that absolute immunity did not apply to claims that the Defendant prosecutors "conspired to manufacture false evidence that would link

---

[8] The Court also observes that the "investigative" functions for which prosecutors are merely entitled to qualified, rather than absolute, immunity generally refers to those actions of a prosecutor that are traditionally reserved for police officers or detectives. See Buckley, 509 U.S. at 274. Presenting the state's case before Pennsylvania's grand jury is not analogous to the investigative functions normally performed by detectives and police officers. Rather, it is uniquely prosecutorial and within in the realm of activity protected by absolute immunity.

17a

his boot with the bootprint the murderer left on the front door . . . [by shopping] for experts until they found one who would provide the opinion they sought."  509 U.S. at 272.  The Supreme Court considered the factual circumstances and concluded that these allegations – arising from behavior well before the empaneling of the grand jury – concerned actions that were investigatory rather than prosecutorial.  Id. at 275 (observing that prosecutors were not acting as advocates where "their mission at [the time of the alleged activity] was entirely investigative in character").  In contrast, the Court notes that there is also precedent for the proposition that interviews generating evidence for use in grand jury proceedings may still be an activity protected by absolute immunity.  See Rose, 871 F.2d at 344 ("[S]olicitations [of testimony for use in the grand jury proceedings] are encompassed within the preparation necessary to present a case' and therefore are immunized as involving the prosecutors' advocacy functions.") (internal quotations omitted); Rehberg v. Paulk, 611 F.3d 828, 842 (11th Cir. 2010) aff'd, 132 S. Ct. 1497 (2012) (granting motion to dismiss allegations that prosecutors conspired to make up and present false testimony to the grand jury as protected by absolute immunity).  Accordingly, based on the limited factual context in the amended complaint, the Court cannot at this time divine the nature of the Defendants' role while allegedly engaging in this activity.  Thus, in this instance, the Court finds that a fuller record is necessary before it can decide whether the prosecutorial defendants are entitled to immunity on claims that they fabricated evidence prior to the initiation of the grand jury proceedings.  See Frankel v. Disciplinary Bd. of Supreme Court of Pennsylvania, No. 05-01450, 2005 WL 2994354, at *2-3 (E.D. Pa. Nov. 8, 2005) (denying motion to dismiss claim against prosecutors because it was unclear based on the complaint whether the allegations that defendant "made misrepresentations to and threatened witnesses and

18a

potential witnesses" occurred in a prosecutorial or investigative role). Thus, although the Court will not dismiss the claims regarding the fabrication of witness testimony and the intimidation of witnesses at this time, the Defendants may re-assert the immunity argument at summary judgment.

In summation, the Court finds that the gravamen of Plaintiff's complaint against the prosecutorial Defendants in Plaintiff's amended complaint relates to conduct protected by absolute immunity. To the extent the complaint can be read to allege that the Defendants "initiated the criminal proceeding" against Plaintiff by manufacturing evidence during an investigation prior to the grand jury proceedings, it is not clear, absent the development of the facts, that Defendants will be entitled to immunity. District courts have allowed similar claims to proceed under a malicious prosecution theory. See Diaz-Colon v. Toledo-Davila, 922 F. Supp. 2d 189, 207 (D.P.R. 2013) (denying motion to dismiss malicious prosecution claim which alleged that "prosecutors . . . fabricated evidence before any of the plaintiffs in this case were arrested"); Miller v. Meyer, No. 14-101, 2014 WL 5448348, at *9 (S.D. Ohio Oct. 23, 2014) (denying motion to dismiss malicious prosecution claim where defendant prosecutor acted as an investigator, rather than as a prosecutor, when she manufactured evidence against the plaintiffs); Patterson v. Burge, 328 F. Supp. 2d 878, 901 (N.D. Ill. 2004) (denying defendant prosecutors' motion to dismiss Illinois state law malicious prosecution claim to the extent is was based on "their participation in his coercive interrogation and the fabrication of evidence . . . suggest[ing] that [the defendants] were functioning as investigators rather than prosecutors when they committed the violations"). Lastly, the Court will also not dismiss Plaintiff's claims to the extent Plaintiff premises it on the Defendants' alleged destruction of exculpatory evidence;

17

19a

namely, the destruction of allegedly exculpatory investigation notes.  Such allegations are not protected by absolute immunity.[9]  (Doc. No. 20 ¶ 114); see Odd v. Malone, 538 F.3d 202, 211 (3d Cir. 2008) (citing Yarris, 465 F.3d at 136-37) ("[P]rosecutors never enjoy absolute immunity for deliberately destroying exculpatory evidence.").

### C.    Defendants Corbett and Kelly

Defendants also argue that Defendants Corbett and Kelly should be dismissed from this case because the amended complaint fails to sufficiently allege their personal involvement in the malicious prosecution.  (Doc. No. 24 at 19.)  Plaintiff contends that the amended complaint contains detailed factual allegations against both Defendants that are sufficient at the pleading stage of the litigation.  (Doc. No. 27 at 14.)  It is well-established that a plaintiff may not base a Section 1983 action solely upon a theory of respondeat superior; a defendant must have personal involvement in the alleged wrongs.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

As an initial matter, and consistent with the Court's discussion in Section III.B, supra, the Court finds that Defendants Corbett and Kelly, both former Attorneys General, are entitled to absolute prosecutorial immunity for all but two of the claims alleged in the amended complaint.

However, the Complaint also alleges that the "Defendants manipulated and threatened prospective grand jury witnesses," and the Court must accept this allegation as true, and construe it in a light most favorable to the Plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  The Court concluded, as discussed in Section III.B., supra, that it could not at this time determine whether the prosecutorial Defendants are entitled to absolute immunity

---

[9] Whether the alleged destruction of evidence in this case constitutes "initiating a prosecution" for purposes of a malicious prosecution action is not a question the Court can decide at this time.

18

for such a claim.  Regarding Defendant Corbett, this averment sets forth that all Defendants –

which the Court construes as inclusive of Defendant Corbett in his then-capacity as Attorney

General –  participated in the manufacturing of evidence prior in preparation for the grand jury

proceedings.  The Court finds that this is sufficient to allege the personal involvement of

Defendant Corbett regarding the manipulation of witnesses, and the Court will not dismiss him

on this basis.

Regarding Defendant Kelly, however,  there are no factual allegations in the amended

complaint that otherwise link Defendant Kelly with the proceedings prior to 2011.  As the

complaint itself shows, Kelly did not become the Attorney General for the Commonwealth until

May 23, 2011 (Doc. No. 20 ¶ 149), approximately a year-and-a-half <u>after</u> the announcement of

the grand jury presentments and the filing of criminal charges against Plaintiff.  Accordingly, the

complaint does not adequately allege Kelly's involvement with the alleged manipulation of

grand jury witnesses.  No fair reading of the amended complaint alleges that Defendant Kelly

"initiated the criminal proceedings" against Plaintiff; indeed, Plaintiff does not allege her

involvement until the waning months of the criminal case against Plaintiff.  The Court will

therefore dismiss the malicious prosecution claims against Defendant Kelly.

### D.	Defendants Anthony J. Fiore and Gary E. Speaks

Defendants additionally contend that Defendants Fiore and Speaks, both Special Agents

within the Pennsylvania Attorney General's office, should be dismissed from the complaint

because Plaintiff fails to allege that either Defendant "initiated a criminal prosecution," the first

19

21a

element of Plaintiff's malicious prosecution claims.[10]  (Doc. No. 24 at 24.)  Plaintiff contends

that he has adequately pled the involvement of both Speaks and Fiore in the initiation of the

underlying criminal proceedings.  (Doc. No. 27 at 18.)  "Although prosecutors rather than police

officers are generally responsible for initiating criminal proceedings, an officer may, however,

be considered to have initiated a criminal proceeding if he or she knowingly provided false

information to the prosecutor or otherwise interfered with the prosecutor's informed discretion "

Gatter v. Zappile, 67 F. Supp. 2d 515, 521 (E.D. Pa. 1999) (internal quotations omitted).

The Court concludes that it cannot dismiss either Fiore or Speaks as Defendants at this

time.  As with Defendant Corbett, the Court reads Plaintiff's amended complaint as alleging that

both Fiore and Speaks were involved in the alleged fabrication of evidence prior to the grand

jury proceedings, and with the alleged destruction of exculpatory evidence.  The Court finds that

these allegations are sufficient to allege that both agents were involved in "initiating a

prosecution."  See Telepo v. Palmer Twp., 40 F. Supp. 2d 596, 610 (E.D. Pa. 1999) aff'd, 242

F.3d 371 (3d Cir. 2000) ("A person can be liable for malicious prosecution if he fail[s] to

disclose exculpatory evidence to prosecutors, make[s] false or misleading reports to the

prosecutor, omit[s] material information from the reports, or otherwise interfere[s] with the

prosecutor's ability to exercise independent judgment' in deciding whether to prosecute.")

(internal quotations omitted).    Moreover, Fiore signed the criminal complaint and affidavit of

probable cause, which Plaintiff alleges contains false or misleading statements.  (Doc. No. 20 ¶

170.)  This is further grounds for concluding that the amended complaint states on its face that

_____

[10]  As noted in Section III.B.1, supra, the Court finds that Defendants special agents
Speaks and Fiore are immune from liability for allegations that they gave false testimony.  See
Rehberg v. Paulk, 132 S. Ct. 1497, 1506 (2012)

Defendant Fiore initiated the prosecution.[11]  See Llerando-Phipps v. City of New York, 390 F.

Supp. 2d 372, 383 (S.D.N.Y. 2005) ("In malicious prosecution cases brought against police

officers, plaintiffs have demonstrated that officers initiated criminal proceedings by having the

plaintiff arraigned, by filling out complaining and corroborating affidavits, and by signing felony

complaints.")  Accordingly, the Court will not dismiss Defendants Speaks or Fiore.

### E.  Sovereign Immunity

Lastly, Defendants argue that the state law malicious prosecution claim should be

dismissed because all Defendants are entitled to sovereign immunity on this claim pursuant to

the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA").  (Doc. No. 24 at 26.)

Plaintiff counters that he has alleged that the Defendants engaged in willful misconduct and

acted outside the scope of their employment.  (Doc. No. 27 at 23.)  The PPSTCA extends

immunity to employees of local agencies acting within the scope of their duties unless their

action falls into one of the eight enumerated categories of negligence, none of which Plaintiff

contends applies here.  See 42 Pa.C.S. § 8522.  However, the PPSTCA also strips an employee

of immunity if he or she engages in conduct that is found to constitute "a crime, actual fraud or

willful misconduct."  42 Pa.C.S. § 8550.

The Court agrees with Plaintiff that the Court cannot conclude at this time that sovereign

immunity applies to bar Plaintiff's state law claims.  First, the amended complaint alleges willful

misconduct in the form of the intentional malicious prosecution.  Second, the Court finds that it

---

[11]  The Defendants do not address what level of immunity, if any, would apply to
Plaintiff's claim that Fiore – a special agent within the attorney general's office, rather than a
prosecutor – signed an affidavit of probable cause and criminal complaint that contains false and
misleading statements.  Accordingly, the Court will not at this time make any immunity
determinations concerning this claim against Fiore.

cannot conclude as a matter of law that the allegations in the amended complaint arise entirely within the scope of Defendants' duties.  See Larsen v. State Employees' Ret. Sys., 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008) ("Sovereign immunity also applies to Commonwealth employees in both their official and individual capacities, so long as the employees are 'acting with the scope of their duties.'").  Although the amended complaint arises out of the Defendants' investigation and prosecution of Plaintiff, activities which obviously arise within the job duties of the various Defendants, it also repeatedly alleges that the Defendants acted for political and retaliatory reasons (see, e.g., Doc. No. 20 ¶ 191).  See Mitchell v. Luckenbill, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010) ("Conduct of an employee is within the scope of employment if it is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; it is actuated, at least in part, by a purpose to serve the employer [.]")  Therefore, the Court agrees with Plaintiff that it would be premature to conclude as a matter of law that the allegations in the amended complaint arise solely within the scope of Defendants' duties.  See Robus v. Pennsylvania Dep't of Corr., No. 04-2175, 2006 WL 2060615, at *8 (E.D. Pa. July 20, 2006) (denying motion to dismiss on basis of sovereign immunity because "it can be reasonably inferred from the amended complaint that personal concerns alone motivated [the defendant's] actions [and therefore] the amended complaint adequately alleges that [the defendant] acted outside the scope of his duty").  Therefore, the Court will deny the motion on these grounds, although Defendants may re-assert the sovereign immunity defense to Plaintiff's state law malicious prosecution claim after development of the record.

IV. **CONCLUSION**

The Court will dismiss all claims against Defendant Linda Kelly with prejudice.  The

Court will not dismiss Plaintiff's malicious prosecution claims against the other Defendants to

the extent that they are premised on allegations that (1) the Defendants manufactured witness

testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory

evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit

of probably cause that contained false and misleading statements.  In all other respects, the

malicious prosecution claims are dismissed with prejudice as barred by immunity.  An order

consistent with this memorandum follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN R. ZIMMERMAN,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:13-cv-02788** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **THOMAS W. CORBETT, et al.** | : | |
| **Defendants** | : | |

## ORDER

     **AND NOW**, on this 10th day of February 2015, **IT IS HEREBY ORDERED THAT**

Defendants' motion to dismiss (Doc. No. 21) is **GRANTED IN PART** and **DENIED IN PART**

as follows:

    1.    Defendant Linda L. Kelly is **DISMISSED WITH PREJUDICE**;

    2.    Plaintiff's malicious prosecution claims in Counts One and Two against the remaining Defendants are **NOT DISMISSED** to the extent that they are premised on allegations that (1) the Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements; in all other respects, Plaintiff's malicious prosecution claims in Counts One and Two are **DISMISSED WITH PREJUDICE**; and,

    3.    Defendants may raise their immunity arguments at summary judgment, following development of the factual record in this case.

                          S/ Yvette Kane_____
                          Yvette Kane, District Judge
                          United States District Court
                          Middle District of Pennsylvania

26a

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN R. ZIMMERMAN,          :
    Plaintiff                :
                        :      No. 1:13-cv-02788
    v.                    :
                        :      (Judge Kane)
THOMAS W. CORBETT, et al.     :
    Defendants             :

<u>ORDER</u>

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On November 14, 2013, Plaintiff filed a complaint in this Court pursuant to 42 U.S.C. §
1983, alleging that the Defendants maliciously prosecuted him in violation of the Fourth and
Fourteenth Amendments.  (Doc. No. 1.)  Plaintiff later filed an amended complaint on May 7,
2014.  (Doc. No. 20.)  On May 21, 2014, the Defendants filed a motion to dismiss the complaint.
(Doc. No. 21.)  In relevant part, the Defendants asked the Court to dismiss the complaint on the
grounds that the prosecutorial defendants were protected by absolute prosecutorial immunity.
(See Doc. No. 24.)  Plaintiff countered that absolute immunity did not apply regarding any of the
prosecutorial defendants' actions before the Pennsylvania grand jury, because the Pennsylvania
grand jury was "investigative" and did not have the power to issue indictments.  (See Doc. No.
27.)  On February 10, 2015, the Court granted the motion in part, rejected Plaintiff's argument,
and dismissed those allegations that pertain to the activities before the Pennsylvania grand jury
as shielded by absolute prosecutorial immunity.  (Doc. Nos. 29, 30.)

On April 28, 2015, Plaintiff filed a motion for reconsideration of the Court's order.  (Doc.
No. 38.)  He contends that the Court's finding regarding prosecutorial immunity and the

1

27a

Pennsylvania grand jury constituted a "clear error of law,"[1] and reiterates that because the Pennsylvania grand jury was merely an "investigating" grand jury – that is, a grand jury without the power to indict – the prosecutorial defendants' activity before the jury is not entitled to absolute prosecutorial immunity under the United States Supreme Court's decision in Buckley v. Fitzsimmons, 509 U.S. 259, 274 (1993).  (Doc. No. 39.)

Prosecutors are absolutely immune from civil liability for all activities "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976).  "But a person is not immune from suit for every wrong he commits just because he happens to be employed as a prosecutor: the inquiry focuses on the nature of the function performed, not the identity of the actor who performed it." Schneyder v. Smith, 653 F.3d 313, 332 (3d Cir. 2011).  Absolute immunity does not extend to '[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.'" Yarris v. Cnty. of Delaware, 465 F.3d 129, 135 (3d Cir. 2006) (quoting Buckley, 509 U.S. at 273).

The Court will deny Plaintiff's motion.  The Court has already addressed and rejected Plaintiff's argument.  See Pahler v. City of Wilkes-Barre, 207 F. Supp. 2d 341, 355 (M.D. Pa. 2001) ("Mere disagreement with the court is a ground for an appeal, not a motion for

---

[1]  A motion for reconsideration "is a device of limited utility. It may be used only to seek remediation of manifest errors of law or fact or to present newly discovered precedent or evidence which, if discovered previously, might have [affected] the court's decision." Pahler v. City of Wilkes-Barre, 207 F. Supp. 2d 341, 355 (M.D. Pa. 2001) aff'd, 31 F. App'x 69 (3d Cir. 2002).  District courts "should grant such motions sparingly because of their interest in finality of judgment." Id.

reconsideration.").  Additionally, Plaintiff identifies no clear error of law in the Court's findings

and analysis concerning this issue in its original memorandum.  (See Doc. No. 29 at 13-15.)

Contrary to Plaintiff's assertion, the Court finds nothing in <u>Buckley</u> to stand for the proposition

that prosecutors are not entitled to absolute immunity for their activities before a grand jury,

even one, like Pennsylvania's, that apparently does not have the power to issue an indictment.

Although the Court will not rehash its entire analysis here (<u>see id.</u>), it reiterates that the <u>Buckley</u>

Court, in defining those "investigative" functions for which absolute immunity does not apply to

prosecutors, specifically noted that absolute immunity does not apply where prosecutors are

performing those investigative functions "normally performed by a detective or police officer."

<u>Buckley</u>, 509 U.S. at 273.  However, presenting the state's case before Pennsylvania's grand jury

"is not analogous to the investigative functions normally performed by detectives and police

officers . . . . [r]ather, it is uniquely prosecutorial and within [] the realm of activity protected by

absolute immunity."  (Doc. No. 29 at 15 n.8)

       **ACCORDINGLY**, this 22nd  day of June 2015, **IT IS HEREBY ORDERED THAT**

Plaintiff's motion for reconsideration (Doc. No. 38) is **DENIED**.

                              s/ Yvette Kane
                              Yvette Kane, District Judge
                              United States District Court
                              Middle District of Pennsylvania

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN R. ZIMMERMAN, | : | |
|     Plaintiff | : | |
| | : | No. 1:13-cv-02788 |
|     v. | : | |
| | : | (Judge Kane) |
| THOMAS W. CORBETT, et al., | : | |
|     Defendants | : | |

**MEMORANDUM**

Before the Court is Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Doc. No. 47.) For the following reasons, the Court will deny Defendants' motion.

I. **BACKGROUND**

The above-captioned case stems from criminal charges filed against Plaintiff John R. Zimmerman and nine other Republican employees of the Pennsylvania House of Representatives on November 12, 2009. (Doc. No. 1 ¶¶ 32-34, 116, 120.) The charges followed an investigation of public corruption (see id. at ¶¶ 29-30), later characterized and reported as "Boxgate" and "Computergate" (id. ¶ 34). Plaintiff maintains that he was charged in the "Boxgate" conspiracy, described as the movement of boxes that contained "three year old blank campaign letterhead" and envelopes. (Id. ¶¶ 35-36.) Plaintiff alleges that then-Attorney General Thomas W. Corbett filed criminal charges against Zimmerman and the nine other Republicans in response to criticism that Corbett engaged in partisan politics in the exercise of prosecutorial discretion. (Id. ¶¶ 26, 28, 32-33, 39.) Plaintiff also alleges that the criminal charges were initiated without probable cause. (See id. ¶¶ 27-35, 39, 89, 168, 172-73, 178-79.) The charges filed against Plaintiff were voluntarily dismissed on November 17, 2011. (Id. ¶¶ 38, 164, 172.)

1

30a

On November 14, 2013, Plaintiff Zimmerman filed a complaint in this Court pursuant to 42 U.S.C. § 1983, alleging that Defendants Thomas W. Corbett, Linda L. Kelly, Frank G. Fina, K. Kenneth Brown, II, Michael A Sprow, Anthony J. Fiore, and Gary E. Speaks maliciously prosecuted him in violation of the Fourth and Fourteenth Amendments to the United States Constitution.  (Doc. No. 1.)  In an amended complaint, filed on May 7, 2014, Plaintiff repleaded his malicious prosecution claim under the Fourth and Fourteenth Amendments and added a malicious prosecution claim under Pennsylvania law.  (Doc. No. 20.)

On May 21, 2014, Defendants filed a motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 21.)  On February 10, 2015, the Court granted in part and denied in part Defendants' Rule 12(b)(6) motion to dismiss.  (Doc. Nos. 29, 30.)  The Court dismissed Linda L. Kelly from the suit because Plaintiff failed to adequately allege her involvement.  (Doc. Nos. 29 at 19; 30.)  The Court also dismissed numerous allegations against the remaining Defendants as barred by absolute immunity.  (Doc. No. 29 at 11-15, 17).  However, the Court denied the motion to dismiss Plaintiff's malicious prosecution claims – under either the Fourth and Fourteenth Amendments or Pennsylvania law – to the extent that the claims are premised on allegations that:

> (1) the Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

(Doc. No. 30.)  In the accompanying order, the Court stated that "Defendants may raise their immunity arguments at summary judgment, following development of the factual record in this case."  (Id.)

On March 12, 2015, Defendants filed an answer to the amended complaint, and Plaintiff submitted an amended joint case management plan.  (Doc. Nos. 32, 33.)  Close of fact discovery

31a

was scheduled for December 22, 2015.  (Doc. No. 36.)  On November 30, 2015, Defendants filed

the present motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure

12(c).  (Doc. No. 47.)  The motion for judgment on the pleadings urges the Court to grant

Defendants qualified immunity on the remaining claims.  (Id.)  Plaintiff filed a brief in

opposition to the pending motion on January 26, 2016 (Doc. No. 55), and Defendant filed a reply

brief thereto on February 9, 2016 (Doc. No. 56).  The present motion is now ripe for disposition.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the

pleadings after the pleadings are closed but within such time as to not delay the trial.  Fed. R.

Civ. P. 12(c).  A Rule 12(c) motion is proper only "when all the material allegations of fact are

admitted in the pleadings and only questions of law remain."  Inst. for Sci. Info., Inc. v. Gordon

& Breach, Sci. Publishers, Inc., 931 F.2d 1002, 1005 (3d Cir. 1991) (internal citation omitted).

"A court will grant a motion for judgment on the pleadings if the movant establishes that there

are no issues of material fact, and that he is entitled to judgment as a matter of law."  Allstate

Prop. & Cas. Ins. Co. v. Squires, 667 F.3d 388, 390 (3d Cir. 2012) (internal citations and

quotations omitted).  "In considering a motion for judgment on the pleadings, a court must

accept all of the allegations in the pleadings of the party against whom the motion is addressed as

true and draw all reasonable inferences in favor of the non-moving party."  Id.

## III.   DISCUSSION

Defendants move the Court to grant the present motion on the basis of qualified

immunity.  (Doc. No. 47 ¶ 4.)  Plaintiff opposes the motion on the grounds that material facts

remain disputed and that the motion prematurely claims immunity.  (See Doc. No. 55 at 2, 6-8.)

The Court addresses the following in turn: (1) the doctrine of qualified immunity; (2) whether

Plaintiff's allegations in the amended complaint make out a constitutional violation; (3) Defendants' efforts to frame the right at issue; and (4) whether Defendants Anthony J. Fiore and Gary E. Speaks are presumptively entitled to qualified immunity.

The doctrine of qualified immunity protects "government officials performing discretionary functions" by "shield[ing them] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, a district court undertakes the following two-pronged inquiry:

> First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right. … Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citing Saucier, 533 U.S. 194, 121).

The Court will begin its qualified immunity analysis with the first prong. The Court must decide whether the facts Plaintiff Zimmerman has alleged – accepting the allegations as true and drawing all reasonable inferences in his favor – make out a violation of a constitutional right. As explained below, Plaintiff has alleged a Fourth Amendments malicious prosecution claim. (Doc. No. 20 ¶ 183.) Accordingly, the Court will decide whether Plaintiff's allegations make out a Fourth Amendment malicious prosecution claim.

### A. Whether Plaintiff alleged a violation of a constitutional right

Defendants challenge whether Plaintiff Zimmerman has adequately pleaded his malicious prosecution claim under the Fourth Amendment. In particular, Defendants contend that Plaintiff fails to adequately allege a Fourth Amendment seizure. (Doc. Nos. 47 ¶ 9; 49 at 24-25.)

4

33a

"To prevail on a Fourth Amendment malicious prosecution claim under section 1983, a plaintiff must establish that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Halsey v. Pfeiffer, 750 F.3d 273, 296-97 (3d Cir. 2014) (quoting Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007)).

"Where the malicious prosecution claim sounds in the Fourth Amendment, the plaintiff 'must show some deprivation of liberty consistent with the concept of 'seizure.''" Johnson v. Knorr, 477 F.3d 75, 85 n.14 (3d Cir. 2007) (citing Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998)). In making this determination, courts consider whether a plaintiff was physically detained, faced travel restrictions, posted bail, or was subjected to "mandatory pretrial services check-ins." Perkins v. Staskiewicz, No. 08-1651, 2010 WL 2510191, at *4 (M.D. Pa. June 17, 2010) (collecting cases).

Here, the amended complaint alleges that Plaintiff was handcuffed and fingerprinted at the police station, subjected to a perp walk, surrendered his passport, was arraigned, was subject to a "$1,000 unsecured bail," and "suffered an ongoing deprivation of liberty … as a consequence of being subject to bail conditions and having his passport confiscated." (Doc. No. 20 ¶¶ 126, 130-136, 181.) At this stage, accepting all of the allegations in the amended complaint as true, the Court is persuaded that Plaintiff adequately alleges a Fourth Amendment seizure. See DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005) ("Pretrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure"); cf. Perkins, 2010 WL 2510191, at *4.

34a

Accordingly, in light of this determination as well as the prior order denying Defendants'

Rule 12(b)(6) motion (Doc. Nos. 29, 30),[1] the Court finds that – at this stage in the proceedings –

Plaintiff's amended complaint makes out a violation of a constitutional right.  <u>Saucier</u>, 533 U.S.

at 200-01.  Accordingly, the Court turns to the second prong of the qualified immunity analysis.

### B. Whether the right at issue is clearly established

Having determined that Plaintiff alleged a constitutional violation, the Court turns the

second prong of the qualified immunity analysis.  At this stage, the court "must decide whether

the <u>right at issue</u> was 'clearly established' at the time of defendant's alleged misconduct."

<u>Pearson</u>, 555 U.S. at 232 (emphasis added).

"To be clearly established, a right must be sufficiently clear that every reasonable official

would have understood that what he is doing violates that right."  <u>Taylor v. Barkes</u>, 135 S. Ct.

2042, 2044 (2015) (internal citations and quotations omitted).  A case "directly on point" is not

required, though "existing precedent must have placed the statutory or constitutional question

beyond debate."  <u>Id.</u>  Here, Defendants bear the burden of persuasion that a reasonable official

"would not have known, under the circumstances, that the conduct was illegal."  Model Civ. Jury

Instr. 3rd Cir. 4.2 (2015); <u>see</u> <u>Halsey v. Pfeiffer</u>, 750 F.3d 273, 288 (3d Cir. 2014); <u>Burns v. PA

Dep't of Corr.</u>, 642 F.3d 163, 176 (3d Cir. 2011).

---

[1] In large part, Defendants attack the adequacy of Plaintiff's pleadings by urging the Court to reconsider arguments previously rejected in the Rule 12(b)(6) motion as meritless or premature.  (Doc. Nos. 29, 49.)  For example, Defendants argue that "the prosecutors are absolutely immune for all claims of evidence fabrication" (<u>see</u> Doc. Nos. 29 at 17; 49 at 31), challenge whether Plaintiff stated a claim against Defendant Corbett (Doc. Nos. 24 at 19; 29 at 18-19; 49 at 31-32), and contest whether Plaintiff "plausibly plead[ed] that [Agent Fiore] misled the prosecutors into taking the case" (Doc. Nos. 24; 29 at 19-21; 47 ¶ 8; 49 at 29), or adequately alleged that Defendants intimidated witnesses prior to the grand jury proceedings (Doc. Nos. 29 at 15-16; 47 ¶ 7).  At this stage and absent further development of the factual record, the Court declines to reconsider Defendants' previously adjudicated arguments.

35a

However, prior to deciding whether a right was "clearly established," this Court must identify the right at issue. Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 638 (3d Cir. 2015). The Third Circuit has suggested that courts frame the right at issue in a "particularized" and "relevant[] sense," considering "the case's specific context, not as a broad general proposition." Id. (internal citations and quotations omitted). Accordingly, the Court begins by addressing Defendants' efforts to frame the right at issue.

**1.  Framing the constitutional right at issue**

Defendants challenge, inter alia, whether it is clear that Brady v. Maryland, 373 U.S. 83 (1963), applies without a trial and conviction and whether the destruction of proffer notes in accordance with policy violates clearly established law. (Doc. No. 47 ¶¶ 5-6; see Doc. No. 49 at 14-24, 28-29.) Plaintiff responds that he did not assert a Brady claim or a procedural due process claim. (Doc. No. 55 at 3, 6-9.) As explained below, the Court finds that Defendants' Brady arguments fail to address the constitutional right at issue.

Here, the amended complaint alleges a malicious prosecution claim under the Fourth and Fourteenth Amendments and a malicious prosecution claim under Pennsylvania law.[2] As a general matter, the "constitutional right at issue in the context of a § 1983 malicious prosecution claim is the Fourth Amendment right to be free from unreasonable seizures." Boydston v. Isom, 224 F. App'x 810, 814 (10th Cir. 2007). A Brady claim is distinct from a malicious prosecution claim, see Poventud v. City of New York, 750 F.3d 121, 137 & n.20 (2d Cir. 2014), as it involves "different constitutional rights and, critically, [entails] different elements of recovery," Mazzetti v. Bellino, 57 F. Supp. 3d 1262, 1269 (E.D. Cal. 2014) (internal citations omitted).

---

[2] Although this Court dismissed numerous allegations in the complaint pursuant to absolute immunity, the Court declined to dismiss Plaintiff's malicious prosecution claims, inter alia, to the extent that they were premised on "Defendants' alleged destruction of exculpatory evidence." (See Doc. No. 29 at 10, 17-18, 23.)

Therefore, even without defining the proper scope and contours of the Fourth Amendment right at issue, the Court disagrees that the right at issue directly implicates <u>Brady v. Maryland</u>. <u>See</u> <u>Golodner</u>, 770 F.3d at 206. Plaintiff's passing reference to <u>Brady</u> in the complaint does not change the analysis. (Doc. No. 20 ¶ 114.)

Defendants' efforts to define the right allegedly violated as a due process right are unpersuasive.[3] (Doc. No. 49 at 14-24.) As such, the Court declines to decide whether the purported <u>Brady</u> or due process right was "clearly established" at the time of the alleged misconduct. Instead, the Court turns to Defendants' qualified immunity arguments concerning Defendants Anthony J. Fiore and Gary E. Speaks.

**2. Whether Fiore and Speaks are presumptively entitled to qualified immunity**

Defendants also contend that Anthony J. Fiore and Gary E. Speaks are entitled to qualified immunity because "any reasonable agent would have believed probable cause existed." (<u>See</u> Doc. Nos. 47 ¶ 8; 49 at 26-28, 29-30.) Specifically, Defendants argue that Agents Fiore and Speaks are presumptively entitled to qualified immunity under the Third Circuit's <u>Kelly v. Borough of Carlisle</u> decision.[4] (<u>See</u> Doc. Nos. 49 at 29-30; 49-7 at 1.) Plaintiff responds that Agents Fiore and Speaks cannot "rely on legal advice that is based on their destruction of

---

[3] In the alternative, were the Court to construe Defendants' <u>Brady</u> arguments as challenging the "malice" element of Plaintiff's malicious prosecution claims, the Court remains unpersuaded. Defendants appear to argue, in the alternative, that Plaintiff cannot prove an element of his malicious prosecution claims – i.e., malice – because it is not clearly established that destruction of exculpatory evidence violates <u>Brady v. Maryland</u> under the circumstances. (Doc. No. 56 at 2-3 & n.1; <u>see</u> Doc. No. 55 at 3 & n.2.) A Rule 12(c) motion is properly granted only "when all the material allegations of fact are admitted in the pleadings and only questions of law remain." <u>Inst. for Sci. Info., Inc.</u>, 931 F.2d at 1005. Here, the Court declines to resolve "question[s] of fact as to malice" at this preliminary stage, <u>see</u> <u>Cameron v. City of New York</u>, 598 F.3d 50, 69 (2d Cir. 2010), particularly where Defendants summarily deny Plaintiff's allegation that Defendants destroyed exculpatory evidence. (Doc. Nos. 20 ¶ 114; 33 ¶ 114.)

[4] Defendants also contend that their probable cause basis was "confirmed" when Judge Wenner declined to dismiss the case against Zimmerman at a preliminary hearing. (<u>See</u> Doc. Nos. 49 at 29-30; 49-7 at 1.)

exculpatory evidence, fabrication of evidence, and provision of misleading or false statements in sworn filings."  (Doc. No. 55 at 13-14.)

    In <u>Kelly v. Borough of Carlisle</u>, the Third Circuit held that a "police officer who relies in good faith on a prosecutor's legal opinion that the arrest is warranted under the law is presumptively entitled to qualified immunity from Fourth Amendment claims premised on a lack of probable cause."  622 F.3d 248, 255-56 (3d Cir. 2010).  "That reliance must itself be objectively reasonable, however, because a wave of the prosecutor's wand cannot magically transform an unreasonable probable cause determination into a reasonable one."  <u>Id.</u> at 256 (internal citations omitted).

    Here, as this Court previously noted, the Court construes the amended complaint as "alleging that both Fiore and Speaks were involved in the alleged fabrication of evidence prior to the grand jury proceedings, and with the alleged destruction of exculpatory evidence."  (Doc. No. 29 at 20.)  Again, without defining the exact scope and contours of the right at issue, the Court concludes that Defendants have not satisfied their burden of persuasion that Fiore and Speaks are entitled to qualified immunity.  <u>Halsey v. Pfeiffer</u>, 750 F.3d 273, 288 (3d Cir. 2014).  The Court is guided by Third Circuit's conclusion in <u>Halsey v. Pfeiffer</u> that a reasonable investigator would have understood that "knowingly us[ing] fabricated evidence to bring about [a] prosecution or to help secure [a] conviction, particularly if the investigators themselves had fabricated the evidence," would violate a defendant's constitutional rights.  <u>Id.</u> at 295-96.

    Therefore, accepting as true Plaintiff's allegations, the Court is not persuaded that a reasonable officer would not have known that the alleged conduct was illegal.  <u>See</u> <u>Dix v. City of Phila.</u>, No. 15-532, 2015 WL 4624248, at *6 (E.D. Pa. Aug. 3, 2015) (rejecting defendants' qualified immunity argument where defendants allegedly "manufactured probable cause to arrest

and prosecute plaintiff"). Defendants have not met their burden of showing that Defendants Fiore and Speaks are entitled to qualified immunity. <u>Burns</u>, 642 F.3d at 176.

## IV. CONCLUSION

For the reasons stated above, the Court will deny Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Doc. No. 47.) As the Court previously stated in its February 10, 2015 memorandum and order, Defendants may reassert their immunity arguments at summary judgment.

39a

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN R. ZIMMERMAN,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:13-cv-02788** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **THOMAS W. CORBETT, <u>et</u> <u>al.</u>** | : | |
| **Defendants** | : | |

## <u>ORDER</u>

**AND NOW,** on this 15th day of July 2016, **IT IS HEREBY ORDERED THAT**

Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure

12(c) (Doc. No. 47), is **DENIED WITHOUT PREJUDICE**.  Defendants may raise their

immunity arguments at summary judgment, following development of the factual record in this

case.

40a

## Combined Certifications

I certify that:

1.    I am a member in good standing of the Bar of this Court.

2.    The text of the electronic version of this filing, which has been emailed to the Court, is identical to the text of the hard copies that have been sent to the Clerk's Office. The electronic copy has been scanned with the most recent version of Malwarebytes.

3.    On this date, a copy of this filing was served by this Court's electronic case filing system and also addressed as follows:

Devon Jacob, Esquire

s/ Josh Autry

Dated: October 25, 2016