UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No.: 16-3384

John Zimmerman,
Plaintiff-Appellees

v.

Thomas W. Corbett, et al.,
Defendants-Appellants

APPENDIX VOLUME II OF
APPELLANTS

LAVERY LAW

By:   s/Joshua M. Autry
      Joshua M. Autry, Esquire
      225 Market Street, Suite 304
      P.O. Box 1245
DATE:  October 25, 2016       Harrisburg, PA 17108-1245
      (717) 233-6633 (telephone)
      (717) 233-7003 (facsimile)
      Atty No. PA 208459
      jautry@laverylaw.com
      Atty for Defendants-Appellants

# CONTENTS OF APPENDIX

## VOLUME I

Notice of Appeal ...................................................................... 1a

Memorandum regarding Order on Motion to Dismiss .......................... 3a

Order regarding Motion to Dismiss ...................................... 26a

Order denying Motion for Reconsideration ......................................... 27a

Memorandum regarding Order on Motion for Judgment on the
Pleadings ..................................................................... 30a

Order regarding Motion for Judgment on the Pleadings .................... 40a

## VOLUME II

Middle District, Docket No. 1:13-CV-02788, Docket Sheet .................. 41a

Plaintiff's Amended Complaint ............................................... 52a

Defendants' Answer to Plaintiff's Amended Complaint ...................... 93a

Defendants' Motion for Judgment on the Pleadings .......................... 139a

Concurred in Motion to Partially Stay Discovery ............................. 145a

Defendants' Brief in Support of Motion for Judgment on the Pleadings

....................................................................... 149a

Order Staying Depositions ................................................ 239a

Plaintiff's Brief in Opposition to Motion for Judgment on the Pleadings ......................................................................................... 240a

Defendants' Reply Brief in Support of Motion for Judgment on the Pleadings .......................................................................... 380a

Plaintiff's Motion to Amend Order .................................................... 392a

# United States District Court
## Middle District of Pennsylvania (Harrisburg)
## CIVIL DOCKET FOR CASE #: 1:13-cv-02788-YK-KM

Zimmerman v. Corbett et al                       Date Filed: 11/14/2013
Assigned to: Honorable Yvette Kane               Jury Demand: Plaintiff
Referred to: Magistrate Judge Karoline Mehalchick   Nature of Suit: 440 Civil Rights: Other
Cause: 42:1983 Civil Rights Act                  Jurisdiction: Federal Question

**Plaintiff**

**John R. Zimmerman**                 represented by   **Devon M. Jacob**
                                                       Jacob Litigation
                                                       P.O. Box 837
                                                       Mechanicsburg, PA 17055-0837
                                                       (717) 796-7733
                                                       Email: djacob@jacoblitigation.com
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Thomas W. Corbett**                 represented by   **Amy Zapp**
                                                       PA Office of the Attorney General
                                                       Special Litigation Section
                                                       16th Floor - Strawberry Sq.
                                                       Harrisburg, PA 17120
                                                       717-787-6348
                                                       Fax: 717-783-5431
                                                       Email: azapp@attorneygeneral.gov
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Frank J. Lavery , Jr.**
                                                       Lavery Faherty
                                                       P.O. Box 1245
                                                       225 Market Street
                                                       Suite 304
                                                       Harrisburg, PA 17108-1245
                                                       717-233-6633
                                                       Fax: 17172337003
                                                       Email: flavery@laverylaw.com
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Joshua M. Autry**
                                                       Lavery Faherty
                                                       225 Market Street
                                                       Suite 304
                                                       Harrisburg, PA 17101
                                                       717-233-6633

41a

Fax: 717-2337003
Email: jautry@laverylaw.com
*ATTORNEY TO BE NOTICED*

**Lindsey A. Bedell**
PA Office of Attorney General
Strawberry Square
15th Floor
Harrisburg, PA 17120
717-772-3561
Fax: 717-772-4526
Email: lbedell@attorneygeneral.gov
*TERMINATED: 10/28/2015*
*ATTORNEY TO BE NOTICED*

**Timothy P. Keating**
Commonwealth of Pennsylvania Board of
Probation and Parole
1101 S. Front St. Suite
Suite 5600
Harrisburg, PA 17104
717-787-8126
Email: timkeating@pa.gov
*TERMINATED: 10/28/2015*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Linda L. Kelly**
*TERMINATED: 02/10/2015*

represented by **Amy Zapp**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua M. Autry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lindsey A. Bedell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy P. Keating**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Frank G. Fina**

represented by **Amy Zapp**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Frank J. Lavery , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua M. Autry**

42a

(See above for address)
*ATTORNEY TO BE NOTICED*

**Lindsey A. Bedell**
(See above for address)
*TERMINATED: 10/28/2015*
*ATTORNEY TO BE NOTICED*

**Timothy P. Keating**
(See above for address)
*TERMINATED: 10/28/2015*
*ATTORNEY TO BE NOTICED*

**Defendant**

**K. Kenneth Brown, II**                represented by   **Amy Zapp**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Frank J. Lavery , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua M. Autry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lindsey A. Bedell**
(See above for address)
*TERMINATED: 10/28/2015*
*ATTORNEY TO BE NOTICED*

**Timothy P. Keating**
(See above for address)
*TERMINATED: 10/28/2015*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Michael A. Sprow**                represented by   **Amy Zapp**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Frank J. Lavery , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua M. Autry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lindsey A. Bedell**
(See above for address)
*TERMINATED: 10/28/2015*
*ATTORNEY TO BE NOTICED*

43a

**Timothy P. Keating**
(See above for address)
*TERMINATED: 10/28/2015*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Anthony J. Fiore**                    represented by  **Amy Zapp**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Frank J. Lavery , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua M. Autry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lindsey A. Bedell**
(See above for address)
*TERMINATED: 10/28/2015*
*ATTORNEY TO BE NOTICED*

**Timothy P. Keating**
(See above for address)
*TERMINATED: 10/28/2015*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Gary E. Speaks**                    represented by  **Amy Zapp**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Frank J. Lavery , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua M. Autry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lindsey A. Bedell**
(See above for address)
*TERMINATED: 10/28/2015*
*ATTORNEY TO BE NOTICED*

**Timothy P. Keating**
(See above for address)
*TERMINATED: 10/28/2015*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|

44a

| 11/14/2013 | 1 | COMPLAINT against All Defendants ( Filing fee $400, Receipt Number 0314-2936586), filed by John R. Zimmerman. (Attachments: # 1 Civil Cover Sheet)(aaa) (Entered: 11/14/2013) |
| 11/14/2013 | 2 | Summons Issued as to All Defendants and provided TO ATTORNEY ELECTRONICALLY VIA ECF for service on Defendant(s)in the manner prescribed by Rule 4 of the Federal Rules of Civil Procedure. (NOTICE TO ATTORNEYS RECEIVING THE SUMMONS ELECTRONICALLY: You must print the summons and the attachment when you receive it in your e-mail and serve them with the complaint on all defendants in the manner prescribed by Rule 4 of the Federal Rules of Civil Procedure). (Attachments: # 1 Summons Packet) (aaa) (Entered: 11/14/2013) |
| 11/15/2013 | 3 | LETTER addressed to counsel Re: Case Assignment and Procedures.Signed by Honorable Yvette Kane on Nov. 14, 2013. (sc) (Entered: 11/15/2013) |
| 12/16/2013 | 4 | WAIVER OF SERVICE Returned by John R. Zimmerman. K. Kenneth Brown, II waiver sent on 12/10/2013, answer due 2/10/2014; Thomas W. Corbett waiver sent on 12/10/2013, answer due 2/10/2014; Anthony J. Fiore waiver sent on 12/10/2013, answer due 2/10/2014; Gary E. Speaks waiver sent on 12/10/2013, answer due 2/10/2014; Michael A. Sprow waiver sent on 12/10/2013, answer due 2/10/2014. (Jacob, Devon) (Entered: 12/16/2013) |
| 01/13/2014 | 5 | SCHEDULING ORDER: - IT IS HEREBY ORDERED that a Case Management Conference is set for 2/21/2014 at 09:30 AM. Pltfs cnsl shall initiate the call. The Joint Case Mgmt Plan is due by 2/14/14.Signed by Honorable Yvette Kane on 1/13/2014. (sc) (Entered: 01/13/2014) |
| 01/14/2014 | 6 | NOTICE of Appearance by Timothy P. Keating on behalf of K. Kenneth Brown, II, Thomas W. Corbett, Frank G. Fina, Anthony J. Fiore, Linda L. Kelly, Gary E. Speaks, Michael A. Sprow (Keating, Timothy) (Entered: 01/14/2014) |
| 01/15/2014 | 7 | WAIVER OF SERVICE Returned by John R. Zimmerman. Frank G. Fina waiver sent on 12/10/2013, answer due 2/10/2014. (Jacob, Devon) (Entered: 01/15/2014) |
| 01/15/2014 | 8 | WAIVER OF SERVICE Returned by John R. Zimmerman. Linda L. Kelly waiver sent on 12/10/2013, answer due 2/10/2014. (Jacob, Devon) (Entered: 01/15/2014) |
| 01/17/2014 | 9 | NOTICE of Appearance by Lindsey A. Bierzonski on behalf of K. Kenneth Brown, II, Thomas W. Corbett, Frank G. Fina, Anthony J. Fiore, Linda L. Kelly, Gary E. Speaks, Michael A. Sprow (Bierzonski, Lindsey) (Entered: 01/17/2014) |
| 01/31/2014 | 10 | MOTION for Extension of Time to File Answer re 1 Complaint by K. Kenneth Brown, II, Thomas W. Corbett, Frank G. Fina, Anthony J. Fiore, Linda L. Kelly, Gary E. Speaks, Michael A. Sprow. (Attachments: # 1 Proposed Order)(Bierzonski, Lindsey) (Entered: 01/31/2014) |
| 02/05/2014 | 11 | ORDER - IT IS ORDERED that the 10 Motion for Extension of Time to Answer is GRANTED. Defendants response to Plaintiffs Complaint must be filed by March 10, 2014.Signed by Honorable Yvette Kane on 2/5/14. (sc) (Entered: 02/05/2014) |
| 02/14/2014 | 12 | CASE MANAGEMENT PLAN *Prepared Jointly* by John R. Zimmerman. (Jacob, Devon) (Entered: 02/14/2014) |
| 02/24/2014 | 14 | ORDER STAYING CASE - IT IS ORDERED that the above case is stayed pending resolution of the motion to dismiss. A status telephone conferencewill be held on April 29, 2014, at 9:30 a.m. Plaintiffs counsel shall initiate this conference call. Signed by Honorable Yvette Kane on 2/24/14. (rc) (Entered: 02/24/2014) |
| 02/24/2014 | | Set Hearings: Status Conference set for 4/29/2014 at 09:30 AM before Honorable Yvette |

| | | |
|---|---|---|
| | | Kane. (rc) (Entered: 02/24/2014) |
| 03/10/2014 | 15 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Motion for Summary Judgment* by K. Kenneth Brown, II, Thomas W. Corbett, Frank G. Fina, Anthony J. Fiore, Linda L. Kelly, Gary E. Speaks, Michael A. Sprow. (Attachments: # 1 Proposed Order) (Bierzonski, Lindsey) (Entered: 03/10/2014) |
| 03/24/2014 | 16 | BRIEF IN SUPPORT re 15 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Motion for Summary Judgment* filed by K. Kenneth Brown, II, Thomas W. Corbett, Frank G. Fina, Anthony J. Fiore, Linda L. Kelly, Gary E. Speaks, Michael A. Sprow. (Attachments: # 1 Exhibit(s), # 2 Unpublished Opinion(s))(Bierzonski, Lindsey) (Entered: 03/24/2014) |
| 04/07/2014 | 17 | First MOTION for Extension of Time to File Appropriate Response to the Motion of Defendants to Dismiss by John R. Zimmerman. (Attachments: # 1 Certificate of Concurrence, # 2 Proposed Order)(Jacob, Devon) (Entered: 04/07/2014) |
| 04/08/2014 | 18 | ORDER - IT IS ORDERED that the 17 First MOTION for Extension of Time to File Appropriate Response to the Motion 15 of Defendants to Dismiss is GRANTED. On or before 5/7/2014 Pltf shall file an appropriate response to the Dfts mtn to dismiss. Signed by Honorable Yvette Kane on 4/8/14. (sc) (Entered: 04/08/2014) |
| 04/14/2014 | 19 | SCHEDULING ORDER: IT IS HEREBY ORDERED that the Case Management Conference is RESCHEDULED to 6/11/2014 at 10:00 AM. Pltf's cnsl shall initiate the call. Signed by Honorable Yvette Kane on 4/14/14. (sc) (Entered: 04/16/2014) |
| 05/07/2014 | 20 | AMENDED COMPLAINT against All Defendants, filed by John R. Zimmerman.(Jacob, Devon) (Entered: 05/07/2014) |
| 05/21/2014 | 21 | MOTION TO DISMISS AMENDED COMPLAINT 20 FOR FAILURE TO STATE A CLAIM FILED by K. Kenneth Brown, II, Thomas W. Corbett, Frank G. Fina, Anthony J. Fiore, Linda L. Kelly, Gary E. Speaks, Michael A. Sprow. (Attachments: # 1 Proposed Order)(pjr) (Entered: 05/21/2014) |
| 06/02/2014 | 22 | ORDER - IT IS HEREBY ORDERED THAT the Status Telephone Conference scheduled on June 11, 2014, is CANCELLED.Signed by Honorable Yvette Kane on 6/2/14. (sc) (Entered: 06/02/2014) |
| 06/02/2014 | 23 | ORDER - IT IS HEREBY ORDERED that the 15 Motion to Dismiss for Failure to State a Claim is DISMISSED AS MOOT. Signed by Honorable Yvette Kane on 6/2/14. (sc) (Entered: 06/02/2014) |
| 06/04/2014 | 24 | BRIEF IN SUPPORT re 21 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by K. Kenneth Brown, II, Thomas W. Corbett, Frank G. Fina, Anthony J. Fiore, Linda L. Kelly, Gary E. Speaks, Michael A. Sprow. (Attachments: # 1 Exhibit(s), # 2 Unpublished Opinion(s))(Bierzonski, Lindsey) (Entered: 06/04/2014) |
| 06/24/2014 | 25 | MOTION for Extension of Time to File *Brief in Opposition to Defendants' Motion to Dismiss* by John R. Zimmerman. (Attachments: # 1 Proposed Order, # 2 Certificate of Concurrence)(Jacob, Devon) (Entered: 06/24/2014) |
| 06/24/2014 | 26 | ORDER - IT IS ORDERED that the 25 Motion for Extension of Time to File a Response to the Motion to Dismiss is GRANTED. Signed by Honorable Yvette Kane on 6/24/2014. (sc) (Entered: 06/24/2014) |
| 06/30/2014 | 27 | BRIEF IN OPPOSITION re 21 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by John R. Zimmerman.(Jacob, Devon) (Entered: 06/30/2014) |
| 07/17/2014 | 28 | REPLY BRIEF re 21 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed |

| | | |
|---|---|---|
| | | by K. Kenneth Brown, II, Thomas W. Corbett, Frank G. Fina, Anthony J. Fiore, Linda L. Kelly, Gary E. Speaks, Michael A. Sprow.(Bierzonski, Lindsey) (Entered: 07/17/2014) |
| 02/10/2015 | 29 | MEMORANDUM (Order to follow as separate docket entry).Signed by Honorable Yvette Kane on 2/10/15. (sc) (Entered: 02/10/2015) |
| 02/10/2015 | 30 | ORDER (memorandum filed previously as separate docket entry) - IT IS ORDERED that Defts' 21 MOTION TO DISMISS is GRANTED IN PART AND DENIED IN PART as follows: 1) Dft Linda L. Kelly is DISMISSED WITH PREJUDICE. 2) Pltfs' malicious prosecution claims in Counts 1 and 2 are DISMISSED IN PART as noted in the order. 3)Dfts may raise their immunity arguments at sumjgm. Signed by Honorable Yvette Kane on 2/10/15. (sc) (Entered: 02/10/2015) |
| 02/10/2015 | 31 | SCHEDULING ORDER: IT IS HEREBY ORDERED that a Case Management Conference is set for 3/17/2015 at 11:30 AM. A joint revised case mgmt plan is due by 3/12/15. Pltf's cnsl shall initiate the call. Signed by Honorable Yvette Kane on 2/10/15. (sc) (Entered: 02/10/2015) |
| 03/12/2015 | 32 | REQUEST FOR ENTRY OF DEFAULT by John R. Zimmerman. (Attachments: # 1 Proposed Order)(Jacob, Devon) (Entered: 03/12/2015) |
| 03/12/2015 | 33 | ANSWER to 20 Amended Complaint by K. Kenneth Brown, II, Thomas W. Corbett, Frank G. Fina, Anthony J. Fiore, Gary E. Speaks, Michael A. Sprow.(Keating, Timothy) (Entered: 03/12/2015) |
| 03/12/2015 | 34 | CASE MANAGEMENT PLAN *Amended* by John R. Zimmerman. (Jacob, Devon) (Entered: 03/12/2015) |
| 03/30/2015 | 36 | ORDER - STANDARD CASE MANAGEMENT TRACK - IT IS ORDERED THAT THE FOLLOWING DEADLINES NOW APPLY: Discovery due by 12/22/2015. Jury Selection & Trial set for 7/11/2016 AT 09:30 AM in Harrisburg - Courtroom 4 before Honorable Yvette Kane. Pretrial Conference set for 6/28/2016 AT 02:00 PM in Harrisburg - Chambers 4 before Honorable Yvette Kane. SEE ORDER FOR MORE DEADLINES. Signed by Honorable Yvette Kane on 3/27/2015. (sc) (Entered: 03/30/2015) |
| 03/31/2015 | 37 | Letter from Timothy Keating to Judge Kane . (Keating, Timothy) (Entered: 03/31/2015) |
| 04/28/2015 | 38 | MOTION for Reconsideration re 29 Memorandum (Order to follow as separate docket entry), 30 Order (memorandum filed previously as separate docket entry), Add and Terminate Parties, Terminate Motions,,, by John R. Zimmerman. (Attachments: # 1 Certificate of Nonconcurrence, # 2 Proposed Order)(Jacob, Devon) (Entered: 04/28/2015) |
| 04/28/2015 | 39 | BRIEF IN SUPPORT re 38 MOTION for Reconsideration re 29 Memorandum (Order to follow as separate docket entry), 30 Order (memorandum filed previously as separate docket entry), Add and Terminate Parties, Terminate Motions,,, filed by John R. Zimmerman.(Jacob, Devon) (Entered: 04/28/2015) |
| 05/06/2015 | 40 | BRIEF IN OPPOSITION re 38 MOTION for Reconsideration re 29 Memorandum (Order to follow as separate docket entry), 30 Order (memorandum filed previously as separate docket entry), Add and Terminate Parties, Terminate Motions,,, filed by K. Kenneth Brown, II, Thomas W. Corbett, Frank G. Fina, Anthony J. Fiore, Gary E. Speaks, Michael A. Sprow. (Attachments: # 1 Unpublished Opinion(s))(Bierzonski, Lindsey) (Entered: 05/06/2015) |
| 05/19/2015 | 41 | REPLY BRIEF re 38 MOTION for Reconsideration re 29 Memorandum (Order to follow as separate docket entry), 30 Order (memorandum filed previously as separate docket entry), Add and Terminate Parties, Terminate Motions,,, filed by John R. Zimmerman. (Jacob, Devon) (Entered: 05/19/2015) |

| | | |
|---|---|---|
| 06/22/2015 | 42 | ORDER - IT IS HEREBY ORDERED THAT Plaintiffs motion for reconsideration (Doc. No. 38) is DENIED. 38 29 30 Signed by Honorable Yvette Kane on 6/22/15. SEE ORDER. (sc) (Entered: 06/22/2015) |
| 10/14/2015 | 43 | NOTICE of Appearance by Frank J. Lavery, Jr on behalf of All Defendants (Lavery, Frank) (Entered: 10/14/2015) |
| 10/14/2015 | 44 | NOTICE of Appearance by Joshua M. Autry on behalf of All Defendants (Autry, Joshua) (Entered: 10/14/2015) |
| 10/28/2015 | 45 | WITHDRAWAL OF ATTORNEY APPEARANCE - Attorney Timothy P. Keating terminated on behalf of Defendants. (Keating, Timothy) (Entered: 10/28/2015) |
| 10/28/2015 | 46 | WITHDRAWAL OF ATTORNEY APPEARANCE - Attorney Lindsey A. Bierzonski terminated on behalf of Defendants. (Bierzonski, Lindsey) (Entered: 10/28/2015) |
| 11/30/2015 | 47 | MOTION for Judgment on the Pleadings by K. Kenneth Brown, II, Thomas W. Corbett, Frank G. Fina, Anthony J. Fiore, Gary E. Speaks, Michael A. Sprow. (Attachments: # 1 Exhibit(s) ex 1 Judge Lewis pretrial decision on notes, # 2 Exhibit(s) ex 2 Judge Lewis opinion during appeal on notes, # 3 Exhibit(s) ex 3 habeas decision, # 4 Certificate of Nonconcurrence Certificate of Non-concurrence, # 5 Proposed Order Proposed Order) (Autry, Joshua) (Entered: 11/30/2015) |
| 11/30/2015 | 48 | MOTION to Stay *Discovery* by K. Kenneth Brown, II, Thomas W. Corbett, Frank G. Fina, Anthony J. Fiore, Gary E. Speaks, Michael A. Sprow. (Attachments: # 1 Certificate of Concurrence Certificate of Concurrence, # 2 Proposed Order Proposed Order)(Autry, Joshua) (Entered: 11/30/2015) |
| 12/14/2015 | 49 | BRIEF IN SUPPORT re 47 MOTION for Judgment on the Pleadings filed by K. Kenneth Brown, II, Thomas W. Corbett, Frank G. Fina, Anthony J. Fiore, Linda L. Kelly, Gary E. Speaks, Michael A. Sprow. (Attachments: # 1 Exhibit(s) ex 1 Judge Lewis pretrial decision on notes, # 2 Exhibit(s) ex 2 Judge Lewis opinion during appeal on notes, # 3 Exhibit(s) ex 3 habeas decision, # 4 Exhibit(s) ex 4 2008.2.25 subpoena, # 5 Exhibit(s) ex 5 2008.2.29 subpoena, # 6 Exhibit(s) ex 6 criminal complaint, # 7 Exhibit(s) ex 7 Judge Wenner decision)(Autry, Joshua) (Entered: 12/14/2015) |
| 12/15/2015 | 50 | ORDER - IT IS ORDERED that the Court stays depositions pending resolution of the Mtn for Jgm on the Pleadings. The parties shall continue to engage in written discovery. 48 Signed by Honorable Yvette Kane on 12/15/15.(sc) (Entered: 12/15/2015) |
| 12/30/2015 | 51 | First MOTION for Extension of Time to File Brief *in Opposition to Defendants' Motion for Judgment on the Pleadings* filed by John R. Zimmerman. (Attachments: # 1 Certificate of Concurrence, # 2 Proposed Order)(Jacob, Devon) (Entered: 12/30/2015) |
| 01/04/2016 | 52 | ORDER - IT IS ORDERED that the 51 Motion for Extension of Time to File Response/Reply to the 47 MOTION for Judgment on the Pleadings is GRANTED and the Brief in Opposition is now due by 1/15/2016. Signed by Honorable Yvette Kane on 1/4/16 (sc) (Entered: 01/04/2016) |
| 01/14/2016 | 53 | Second MOTION for Extension of Time to File Brief to 52 Order on Motion for Extension of Time to File Response/Reply Briefs, 47 MOTION for Judgment on the Pleadings filed by John R. Zimmerman. (Attachments: # 1 Certificate of Concurrence, # 2 Proposed Order)(Jacob, Devon) (Entered: 01/14/2016) |
| 01/15/2016 | 54 | ORDER - IT IS ORDERED that the 53 Motion for Extension of Time to File Response/Reply re 47 MOTION for Judgment on the Pleadings is GRANTED and the Brief in Opposition is due on or before 1/26/2016. Signed by Honorable Yvette Kane on 1/15/16. (sc) (Entered: 01/15/2016) |

| 01/26/2016 | 55 | BRIEF IN OPPOSITION re 47 MOTION for Judgment on the Pleadings filed by John R. Zimmerman. (Attachments: # 1 Exhibit(s) 1, # 2 Exhibit(s) 2, # 3 Exhibit(s) 3)(Jacob, Devon) (Entered: 01/26/2016) |
| --- | --- | --- |
| 02/09/2016 | 56 | REPLY BRIEF re 47 MOTION for Judgment on the Pleadings filed by K. Kenneth Brown, II, Thomas W. Corbett, Frank G. Fina, Anthony J. Fiore, Linda L. Kelly, Gary E. Speaks, Michael A. Sprow.(Autry, Joshua) (Entered: 02/09/2016) |
| 06/01/2016 | 57 | Letter from Devon M. Jacob, Esquire RE Discovery Dispute (Failure to Respond to Interrogatories and Requests for the Production of Documents for Seven Months, 106 Pages of Objections, and Objections to Subpoenas for Records) and Requesting Conference Call for the Purpose of Obtaining Authorization to File Motion to Compel . (Jacob, Devon) (Entered: 06/01/2016) |
| 06/07/2016 | 58 | ORDER REFERRING case to Chief Magistrate Judge Carlson for referral of Discovery dispute matters to U.S. Magistrate Judge. Signed by Honorable Yvette Kane on 6/7/16. (sc) (Entered: 06/07/2016) |
| 06/08/2016 | 59 | ORDER REFERRING CASE to Magistrate Judge Karoline Mehalchick for the purpose of addressing a discovery dispute. (Docs. 57-58.) Signed by Magistrate Judge Martin C. Carlson on June 8, 2016. (kjn) (Entered: 06/08/2016) |
| 06/09/2016 | 60 | SCHEDULING ORDER: Telephone Discovery Conference set for 6/17/2016 10:00 AM before Magistrate Judge Karoline Mehalchick.Signed by Magistrate Judge Karoline Mehalchick on 6/9/2016. (cw) (Entered: 06/09/2016) |
| 06/14/2016 | 61 | SCHEDULING ORDER: Telephone Discovery Conference set for 6/28/2016 02:00 PM before Magistrate Judge Karoline Mehalchick. Signed by Magistrate Judge Karoline Mehalchick on 6/14/2016. (cw) (Entered: 06/14/2016) |
| 06/27/2016 | 62 | Letter from Frank J. Lavery, Jr. *in response to Plaintiff's letter of June 1, 2016 raising discovery issues.* (Lavery, Frank) (Entered: 06/27/2016) |
| 06/29/2016 | 64 | ORDER - IT IS HEREBY ORDERED THAT: 1. Counsel for the Defendants is directed to produce Bates stamped copies of all documents currently in its possession that relate to the request for documents at issue in this action to counsel for the Plaintiff no later than Friday, July 8, 2016; 2. The above-captioned parties, the Office of the Attorney General, and the Commonwealth of Pennsylvania are directed to submit to the Court briefing on the issue of grand jury privilege, with a specific emphasis on the scope of the privilege, what materials are entitled to the presumption of grand jury privilege, and the interplay between state and federal rules regarding grand jury privilege. 1 These briefs are to be no more than ten (10) pages in length and shall be filed on or before Friday, July 15, 2016; 3. A telephonic discovery conference is scheduled for July 27, 2016 at 10:30 a.m., for the purpose of addressing any unresolved objections to the outstanding discovery requests and presenting further arguments on the issue of grand jury privilege. Telephone Conference set for 7/27/2016 10:30 AM before Magistrate Judge Karoline Mehalchick. Signed by Magistrate Judge Karoline Mehalchick on 6/29/2016. (cw) (Entered: 06/29/2016) |
| 06/30/2016 | 65 | COURT REPORTER NOTES OF PROCEEDINGS filed by L. Boyanowski, RMR, CRR of Teleconference before Judge Mehalchick on 6/28/16. In accordance with 28 U.S.C. Section 753(b), I certify that these original notes are a true and correct record of proceedings in the United States District Court for the Middle District of PA before Judge Mehalchick on 6/28/16. By s/ L. Boyanowski, RMR, CRR. (Court Reporter Notes are viewable by court staff only). (cr5, ) (Entered: 06/30/2016) |
| 07/13/2016 | 66 | Praecipe Entry of Appearance , filed by K. Kenneth Brown, II, Thomas W. Corbett, Frank G. Fina, Anthony J. Fiore, Linda L. Kelly, Gary E. Speaks, Michael A. Sprow.(Zapp, Amy) (Entered: 07/13/2016) |

49a

| 07/13/2016 | 67 | BRIEF by Michael A. Sprow, Linda L. Kelly, Anthony J. Fiore, Thomas W. Corbett, Gary E. Speaks, Frank G. Fina, K. Kenneth Brown, II. Amendment to 64 Order, Set Hearings,,,,,,,,, *Memorandum of the Office of Attorney General Addressing Grand Jury Privilege*, filed by Michael A. Sprow, Linda L. Kelly, Anthony J. Fiore, Thomas W. Corbett, Gary E. Speaks, Frank G. Fina, K. Kenneth Brown, II. Related document: 64 Order, Set Hearings,,,,,,,,. (Attachments: # 1 Appendix Appendix A, # 2 Appendix Appendix B, # 3 Certificate of Service)(Zapp, Amy) (Entered: 07/13/2016) |
|---|---|---|
| 07/15/2016 | 68 | MEMORANDUM OF LAW by K. Kenneth Brown, II, Thomas W. Corbett, Frank G. Fina, Anthony J. Fiore, Linda L. Kelly, Gary E. Speaks, Michael A. Sprow re 64 Order, Set Hearings,,,,,,,, . (Attachments: # 1 Exhibit(s), # 2 Exhibit(s), # 3 Exhibit(s), # 4 Exhibit(s), # 5 Exhibit(s), # 6 Exhibit(s))(Lavery, Frank) (Entered: 07/15/2016) |
| 07/15/2016 | 69 | MEMORANDUM (Order to follow as separate docket entry).Signed by Honorable Yvette Kane on 7/15/16. (sc) (Entered: 07/15/2016) |
| 07/15/2016 | 70 | ORDER (memorandum filed previously as separate docket entry) - IT IS ORDERED that the 47 MOTION for Judgment on the Pleadings is DENIED WITHOUT PREJUDICE. Defendants may raise their immunity arguments at summary judgment, following development of the factual record in this case.Signed by Honorable Yvette Kane on 7/15/16. (sc) (Entered: 07/15/2016) |
| 07/15/2016 | 71 | MEMORANDUM OF LAW by John R. Zimmerman re 64 Order, Set Hearings,,,,,,,, . (Attachments: # 1 Exhibit(s) 1 Subpoena to Commonwealth, # 2 Exhibit(s) 2 Subpoena to OAG, # 3 Exhibit(s) 3 Interrogatories, # 4 Exhibit(s) 4 Request for the Production of Documents, # 5 Exhibit(s) 5 Objections from OAG and Commonwealth, # 6 Exhibit(s) 6 106 Pages of Supplemental Objections by Defendants)(Jacob, Devon) (Entered: 07/15/2016) |
| 08/12/2016 | 73 | NOTICE OF APPEAL in Non-Prisoner Case as to 70 Order (memorandum filed previously as separate docket entry), Terminate Motions,, 69 Memorandum (Order to follow as separate docket entry) by K. Kenneth Brown, II, Thomas W. Corbett, Frank G. Fina, Anthony J. Fiore, Linda L. Kelly, Gary E. Speaks, Michael A. Sprow. Filing Fee and Docket Fee PAID. Filing fee $ 505, receipt number 0314-3839968. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (Autry, Joshua) (Entered: 08/12/2016) |
| 08/16/2016 | 74 | COURT REPORTER NOTES OF PROCEEDINGS filed by L. Boyanowski, RMR, CRR of Telephone Conference before Judge Mehalchick on 7/27/16. In accordance with 28 U.S.C. Section 753(b), I certify that these original notes are a true and correct record of proceedings in the United States District Court for the Middle District of PA before Judge Mehalchick on 7/27/16. By s/ L. Boyanowski, RMR, CRR. (Court Reporter Notes are viewable by court staff only). (cr5, ) (Entered: 08/16/2016) |
| 08/25/2016 | 75 | MOTION for Certificate of Appealability by John R. Zimmerman. (Attachments: # 1 Certificate of Nonconcurrence, # 2 Proposed Order)(Jacob, Devon) (Entered: 08/25/2016) |
| 09/08/2016 | 76 | BRIEF IN SUPPORT re 75 MOTION for Certificate of Appealability filed by John R. Zimmerman.(Jacob, Devon) (Entered: 09/08/2016) |

**PACER Service Center**

**Transaction Receipt**

10/25/2016 10:59:03

| PACER Login: | lf0382:2708416:0 | Client Code: | |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 1:13-cv-02788-YK-KM |
| Billable Pages: | 11 | Cost: | 1.10 |

51a

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN R. ZIMMERMAN,** | : **Civil Action No.: 1:13-cv-2788** |
| **Plaintiff,** | : **(Filed: 11/14/2013)** |
| | : |
| **v.** | : **District Judge: Yvette Kane** |
| | : |
| **THOMAS W. CORBETT,** | : **CIVIL ACTION – LAW** |
| **LINDA L. KELLY,** | : |
| **FRANK G. FINA,** | : |
| **K. KENNETH BROWN, II,** | : **JURY TRIAL DEMANDED** |
| **MICHAEL A. SPROW,** | : |
| **ANTHONY J. FIORE, and** | : |
| **GARY E. SPEAKS,** | : |
| **Defendants.** | : |

## AMENDED COMPLAINT

**AND NOW** comes the Plaintiff, John R. Zimmerman, by and through his undersigned counsel, Devon M. Jacob, Esquire, and the law firm of Jacob Litigation, and avers as follows:

### JURISDICTION AND VENUE

1.      This action is brought pursuant to 42 U.S.C. § 1983.

2.      Jurisdiction is founded upon 28 U.S.C. § § 1331, 1343, and 1367.

1

52a

3.     Venue is proper in this Court, as all parties are located within the Middle District of Pennsylvania, and the cause of action arose in the Middle District of Pennsylvania.

## PARTIES

4.     Plaintiff is John R. Zimmerman, an adult individual who lives in Dauphin County, Pennsylvania.

5.     Defendant, Thomas W. Corbett, is an adult individual, who during all relevant times, served as either the Attorney General in the Office of Attorney General or Governor of the Commonwealth of Pennsylvania. All of Defendant Corbett's actions or inactions were taken under color of state law. He is sued in his individual capacity.

6.     Defendant, Linda L. Kelly, is an adult individual, who during all relevant times, served as the Attorney General in the Office of Attorney General of the Commonwealth of Pennsylvania. All of Defendant Kelly's actions or inactions were taken under color of state law. She is sued in her individual capacity.

7.     Defendant, Frank G. Fina, is an adult individual, who during all relevant times, served as the Chief Deputy Attorney General in the Office of Attorney General of the Commonwealth of Pennsylvania. All of Defendant Fina's actions or inactions were taken under color of state law. He is sued in his individual capacity.

8.      Defendant, K. Kenneth Brown, II, is an adult individual, who during all relevant times, served as Senior Deputy Attorney General in the Office of Attorney General of the Commonwealth of Pennsylvania. All of Defendant Brown's actions or inactions were taken under color of state law. He is sued in his individual capacity.

9.      Defendant, Michael A. Sprow, is an adult individual, who during all relevant times, served as a Senior Deputy Attorney General in the Office of Attorney General of the Commonwealth of Pennsylvania. All of Defendant Sprow's actions or inactions were taken under color of state law. He is sued in his individual capacity.

10.     Defendant, Anthony J. Fiore, is an adult individual, who during all relevant times, served as a Special Agent in the Office of Attorney General for the Commonwealth of Pennsylvania or as the Director of the Bureau of Investigations for the Office of Inspector General for the Commonwealth of Pennsylvania. All of Defendant Fiore's actions or inactions were taken under color of state law. He is sued in his individual capacity.

11.     Defendant, Gary E. Speaks, is an adult individual, who during all relevant times, served as a Special Agent in the Office of Attorney General of the Commonwealth of Pennsylvania. All of Defendant Speak's actions or inactions were taken under color of state law. He is sued in his individual capacity.

54a

## **Background**

12.   John M. Perzel ("Perzel"), a member of the Republican Party, represented northeast Philadelphia (172nd Legislative District) in the Pennsylvania House of Representatives.

13.   In 2000, Democratic challenger Mark Chilutti ("Chilutti") came within 92 votes of unseating Perzel, which many believe caused Perzel to devise a plan to make sure that he remained on a trajectory to the Governor's mansion.

14.   In 2003, following the death of the then Speaker of the House, Representative Matthew J. Ryan, Perzel became the Speaker of the House; a position which he would hold until the Republicans lost control of the House in the 2006 election.

15.   In 2007, The Patriot News reported that members of the Democratic caucus received bonuses for campaign related work performed on state time.

16.   As a result, then Attorney General Tom Corbett was forced to conduct an investigation into the actions of the Legislature.

17.   In September of 2007, Perzel asked Zimmerman to arrange a meeting with Corbett.

18.   Zimmerman arranged the meeting for mid-afternoon on October 2, 2007, at Raspberry's, which is located in the Hilton Harrisburg, on Second Street, in

Harrisburg, Pennsylvania.

19.   Those in attendance at the meeting were Perzel; Towhey; Brian Preski, Perzel's former Chief of Staff; Corbett; and Brian Nutt, Corbett's Chief of Staff and Campaign Manager.

20.   At the time, both Corbett and Perzel intended to run for Governor in 2010.

21.   Perzel had been weakened by the Chilutti challenge, 2005 pay raise scandal, and the 2006 shift in power in the House.

22.   Corbett wanted Perzel to back him for Governor in 2010.

23.   Perzel, however, believed that if the Republican Caucus won back the majority in the house in 2008, he had a chance at becoming Governor in 2010.

24.   Perzel refused to back Corbett for Governor.

25.   Preski, however, agreed to host a fundraiser for Corbett on December 11, 2007, in Philadelphia.

26.   In July of 2008, Corbett announced the filing of criminal charges against 12 ranking Democrats in what would become known as "Bonusgate."

27.   After three years of investigation and only capturing Democrats in an investigation that had been forced upon him, "Bonusgate" became an Achilles heel for Corbett.

28.    Corbett was accused of targeting Democrats in partisan politics, which threatened his aspirations of becoming Governor.

29.    Corbett's Public Corruption Unit turned its sights to the Republican caucus, specifically to Perzel.

30.    The Perzel investigation centered on the alleged use of caucus employees for campaign work; alleged unlawful contracts with consultants GCR; Washington, D.C. based Aristotle Inc.; and Washington state-based Labels & Lists Inc.; and an alleged attempt to falsify evidence to mislead investigators about the prospective defendants' involvement in criminal activity.

31.    On September 15, 2009, Corbett announced that he was running for Governor.

32.    On November 12, 2009, Corbett announced the grand jury presentments and the filing of criminal charges against 10 ranking Republicans, Perzel and his staff (one legislator and nine staff members), in what is now commonly referred to as "Computergate."

33.    Zimmerman was one of the nine staff members arrested.

34.    While the group of 10 are commonly lumped together under the "Computergate" label, in actuality, there were two purported scandals: "Computergate" and "Boxgate."

6

57a

35.     "Boxgate" related to the movement of boxes that contained three year old blank campaign letterhead and unaddressed return envelopes; essentially, junk.

36.     The four charged in the "Boxgate" conspiracy were Brett Feese, John Perzel, Paul Towhey and John Zimmerman.

37.     By July 31, 2009, the "Boxgate" conspiracy related charges had been dismissed against Zimmerman's three alleged co-conspirators.

38.     Zimmerman, however, sat criminally charged in a conspiracy of one, for an additional 72 days, until November 17, 2011.

39.     The elimination of Perzel's entire team in a single set of arrests cleared the path for Corbett's run for Governor and addressed the claims that Corbett was engaging in partisan politics.

40.     Corbett's public corruption probe is now the subject of an investigation being conducted by Pennsylvania Attorney General Kathleen G. Kane to determine whether Corbett shifted public resources away from the Jerry Sandusky criminal investigation, to the public corruption probe, in the hope of obtaining convictions, to prevent his campaign for Governor from being derailed.

## The Alleged Cover Up and Related Investigation

41.     The Pennsylvania State Capitol Complex ("Complex"), located in downtown Harrisburg, Pennsylvania, is the administrative hub of the government of

the Commonwealth of Pennsylvania.

42.    The State Capitol Building ("Capital") sits at the center of the Complex, which is comprised of numerous state buildings that house government officials and agencies.

43.    In February of 2008, Room 414 of the Capital was commonly referred to as "Perzel's Office."

44.    Despite being referred to as "Perzel's Office," or a "Room," Room 414 actually consisted of a cluster of eight rooms and the woman's restroom.

45.    Both Perzel's and Representative Sandra J. Major's offices were located in Room 414.

46.    During business hours, the door to Room 414 stood wide open.

47.    Essentially, anyone in the Capital could walk into Room 414.

48.    When a visitor enters Room 414, they would be entering a room containing a large conference room to their left, an open doorway in the wall directly in front of them, and a receptionist's desk off to their right.

49.    If the visitor walked through the doorway directly in front of them, they would enter a second room where they would see Zimmerman's desk to their left and Lochetto's desk to their right; both desks facing the wall containing the doorway that they had just walked through.

8

50. To the visitor's right, in a location behind Lochetto's desk, the visitor would see the door to Perzel's private office.

51. When Zimmerman sat at his desk and looked up, he could see the wall in front of him, and to his left he could see the receptionist's desk through the doorway; however, he could not see the front door to Room 414 or the conference room.

52. One of the state buildings in the Complex is the K. Leroy Irvis Office Building ("Irvis Office Building").

53. In February of 2008, Room B-2 of the Irvis Office Building served as a storage room for both the Democratic and Republican caucuses.

54. On Monday, February 25, 2008, Perzel's former secretary, Lori Lochetto, acting on orders from Perzel's former Chief of Staff, Paul Towhey, moved approximately nine boxes from Room B-2 to Room 414.

55. Lochetto told the Defendants that she accompanied the boxes to Perzel's office.

56. Nathan Fineman, the messenger who moved the boxes, told the Defendants that he placed the boxes outside of Perzel's office.

57. Since the entirety of Room 414 (which housed eight offices and the woman's room) was generally known and referred to as "Perzel's Office,"

9

Lochetto's and Fineman's statements regarding where they placed the boxes had many possible meanings.

58.    Importantly, none of the possible interpretations would include, "inside the office shared by Zimmerman and Lochetto."

59.    Moreover, the Defendants did not locate during their criminal investigation, or produce for the grand jury, a single witness who placed Zimmerman in the vicinity of the boxes either before or during their movement.

60.    Likewise, during the course of the criminal investigation and prosecution of the criminal Defendants, neither Lochetto nor Fineman ever informed the Defendants, other investigators or prosecutors, or the grand jury, that they saw Zimmerman on February 25, 2008; nor could they have, as Zimmerman was not present when the boxes were moved, and at the time, had no knowledge of same.

61.    On Tuesday, February 26, 2008, Lochetto, again acting on orders from Towhey, moved additional boxes from Room B-2 to Room 414.

62.    Lochetto claims that the second set of boxes contained campaign material.

63.    The "campaign material" in question would later be discovered to be blank three year old letterhead and blank envelopes; again, junk.

64.    Charles Snyder was the messenger who moved the second set of boxes.

65. Snyder admits that Lochetto accompanied him while he placed the boxes in an unidentified inner office in Room 414.

66. Since Room 414 housed eight offices, Snyder's statement could have been interpreted eight different ways.

67. Lochetto claims that the second set of boxes were placed in Perzel's private office.

68. During the course of the criminal investigation and prosecution of the criminal Defendants, neither Lochetto nor Snyder ever informed the Defendants, other investigators or prosecutors, or the grand jury, that they saw Zimmerman on February 26, 2008; nor could they have, as Zimmerman was not present when the boxes were moved, and had no knowledge of same.

69. On Wednesday, February 27, 2008, Lochetto, again acting on orders from Towhey, moved four boxes of campaign material from Room 414 to the House Republican Campaign Committee ("HRCC") office, which is located on Third Street, in Harrisburg, Pennsylvania.

70. Lochetto claims that the boxes were in Perzel's private office.

71. Jared Graybill, however, the messenger who moved the third set of boxes, claims that Lochetto directed him to an unidentified room in Room 414 to obtain the boxes, which he was never asked by the Defendants to identify.

72.    During the course of the criminal investigation and prosecution of the criminal Defendants, neither Lochetto nor Graybill ever informed the Defendants, other investigators or prosecutors, or the grand jury, that they saw Zimmerman on February 27, 2008; nor could they have, as Zimmerman was not present when the boxes were moved, and had no knowledge of same.

73.    On February 29, 2008, at around mid-morning, Lochetto, despite being scheduled off of work, appeared in Room 414 with a messenger, and moved eight boxes into Towhey's office and six boxes into Perzel's private office.

74.    This is the first time that Zimmerman became aware that boxes with unknown contents were in Room 414.

75.    Lochetto never spoke with Zimmerman, and left within minutes of her arrival.

76.    At around 3:00 PM, on the same date, Jill Seaman, from the Republican Caucus Legal Office, called Zimmerman and asked if he saw any boxes.

77.    Zimmerman advised Seaman that Lochetto had moved boxes earlier that date.

78.    At around 3:15 PM the same date, Brett Feese, Chief Counsel for the Republican Caucus, called Zimmerman and asked him to secure the boxes in one

12

63a

room because agents from the Pennsylvania Office of Attorney General wanted to inspect the boxes.

79.    At around 4:00 on the same date, Seaman called Zimmerman to advise him that if the agents decided to inspect the boxes that night, he might be called back to the Capitol.

80.    On February 29, 2008, two attorneys from a private law firm representing the House Republican Caucus; an unknown Capitol Police Officer; Seaman; Towhey, who arrived later in the evening; and Zimmerman, observed as Chief Deputy Attorney General Frank Fina and Special Agent Gary Speaks inspected the boxes.

81.    Unbelievably, despite the importance of the matter to the criminal investigation, neither Fina nor Speaks videotaped the inspection or obtained written or recorded statements from the persons who observed the inspection of the boxes.

82.    On March 25, 2008, Fiore and Special Agent Tim Shaffer, interviewed Mark D. Miller, the Director of Messenger Services.

83.    Miller explained that only special messenger requests, outside of the regularly scheduled pick-ups and deliveries, were recorded in the messenger log.

84. This fact is very significant because if Lochetto asked a messenger to move boxes when the messenger arrived during his/her regular schedule, there would be no record of the movement of the boxes in the messenger log.

85. The messenger log contained a notation indicating that on February 25, 2008, Miller went to Room 414, for an apparent special messenger request.

86. However, during an interview on January 29, 2009, Miller advised Fiore that he did not recall going to Room B-2, Room 414, and the HRCC, during the week of February 25, 2008.

87. Defendants Corbett and Kelly had actual knowledge of, directed, and acquiesced in, the Zimmerman investigation and the conduct of their Co-defendants related to same.

88. Importantly, Defendants Corbett and Kelly had contemporaneous knowledge of the details of the ongoing investigation and their Co-defendants' related wrongdoing, and direct supervisory authority over their Co-defendants.

89. Specifically, Defendants Corbett and Kelly knew that their Co-defendants were misusing the criminal justice system to implement and achieve Defendant Corbett's political agenda.

90.    Defendants Corbett and Kelly had an appreciable opportunity to intervene to stop the wrongdoing, and to protect Zimmerman, but decided instead to participate in causing, or permit, the constitutional injury to occur.

## The Grand Jury Process Generally

91.    To understand how the Defendants manipulated the Perzel Grand Jury, an understanding of the Grand Jury Process in Pennsylvania is required.

92.    In Pennsylvania, the Attorney General often uses a multicounty investigating grand jury to investigate suspected drug trafficking, insurance fraud, Medicaid fraud, organized crime or public corruption.

93.    A grand jury convened under Pennsylvania law is comprised of a group of 23 citizens charged with investigating suspected unlawful conduct.

94.    The grand jury has the power to issue subpoenas to compel persons to appear before it to answer questions.

95.    A person served with a subpoena who refuses to appear or to testify may be held in contempt and jailed.

96.    If a prosecutor believes that a subpoenaed witness is likely to make a legitimate claim that his/her testimony would be self-incriminating, the prosecutor may apply to the supervising judge of the grand jury for an order of immunity.

15

97.   If granted, a witness must present and testify or face being found in contempt and jailed.

98.   A grand jury also has the power to subpoena documents.

99.   Prosecutors who present evidence to a grand jury swear not to disclose matters occurring before the grand jury.

100.   The only lawful means through which grand jury proceedings can be made public is through a testifying witness, who has the right to disclose his/her testimony to anyone.

101.   The prosecutor begins the grand jury session by posing questions to the witness.

102.   When the prosecutor finishes asking questions, individual jurors may, and often do, question the witness.

103.   When a prosecutor has no further evidence, the jurors are asked to consider a "presentment" recommending that specific persons be charged with specific crimes.

104.   After considering this request, the grand jury may ask to hear more evidence or may question the content of the presentment.

16

67a

105. If the grand jury agrees to consider a presentment, prosecutors prepare a draft document that summarizes the evidence the grand jury heard, and sets out specific, recommended charges.

106. If twelve or more of the 23 jurors agree, the presentment is "returned" and submitted to the supervising judge for approval.

107. After the judge's review, the presentment is typically sealed until the prosecutor is ready to file criminal charges.

108. Under Pennsylvania law, a prosecutor is not required to follow the grand jury's recommendation that criminal charges be filed.

109. Essentially, unlike other states, Pennsylvania does not have grand juries that have the authority to issue indictments.

## The Perzel Grand Jury

110. The "Computergate" investigation was presented to a grand jury, overseen by Judge Barry F. Feudale, the then supervising grand jury judge in Harrisburg, Pennsylvania.

    a. In 2013, the Supreme Court of Pennsylvania sided with Attorney General Kathleen Kane in her request to have Judge Feudale removed from his position as the supervising grand jury judge.

    b. It is believed that the removal was requested in part because Judge Feudale sent an Email to Fina demeaning Kane and Kelly, and calling Kane's investigation into how the Attorney General's Office (run by

17

68a

Corbett) pursued the Sandusky investigation "patent in its political intent."

   c. It is troubling to say the least that the supervising grand jury judge, who is supposed to preside over the grand jury in an independent judicial capacity, is exchanging *ex parte* email communication with a prosecutor who appears before the grand jury, regarding an investigation that could be presented to the grand jury.

111. The Defendants wore two hats: criminal investigators and prosecutors.

   a. By way of example, Fina served both as a criminal investigator on the night of February 29, 2008, and as a prosecutor before the grand jury on numerous occasions in 2008 and 2009.

   b. The Defendants either participated directly in, or directed, the criminal investigation related to Zimmerman.

112. The Defendants manipulated and threatened prospective grand jury witnesses to ensure that witnesses testified in a manner that would result in the Defendants obtaining a specific desired presentment from the grand jury.

   a. Specifically, witnesses were threatened with criminal prosecution if they did not cooperate with the Defendants, and offered immunity if they agreed to cooperate.

   b. Of the approximately 200 witnesses involved in the underlying incidents, a majority of the witnesses were offered immunity in exchange for their testimony.

   c. One specific witness was called into the Attorney General's office eight times to discuss his anticipated grand jury testimony.

18

69a

    d. During a proffer session with Zimmerman, Deputy Attorney General Patrick J. Blessington screamed at Zimmerman, repeatedly used the word "fuck," and accused Zimmerman falsely of participating in a cover up without any factual basis for same.

    e. The threatening of witnesses to obtain cooperation was commonplace at the Attorney General's Office and occurred in this case.

    f. In a related criminal investigation, a chair was thrown by an investigator, and a pregnant lady was threatened that her baby would be taken from her.

113. The Office of Attorney General, and not Judge Feudale or jurors, ran the grand jury.

    a. By way of example, on September 30, 2009, Fina and Blessington abruptly cut off the grand jury's questioning of Fiore about who had access to Room 414 at the Capital, and ended the session, despite the jury's right to question the witness.

    b. Ultimately, the grand jury had to wait until October 29, 2009, to discover the answer to their question, i.e., that video footage that would have told the entire story from the security camera outside of Room 414 was curiously not available due to the apparent misdirection of the camera.

114. The Defendants either destroyed, caused to be destroyed, or permitted to be destroyed, exculpatory evidence in the form of original investigation notes.

    a. The investigation notes were destroyed, many without even summaries of the notes having been prepared.

19

70a

     i. The destruction of exculpatory evidence in the form of original investigation notes is a clear violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

     ii. As a result of this <u>Brady</u> violation, the Defendants testified before the grand jury from summaries of investigation notes and/or from memory.

b. By way of example, on September 30, 2009, Blessington questioned Fineman, the messenger on February 25, 2008, before the grand jury in the presence of Fina and Brown.

     i. When Fineman could not remember where within Room 414 he delivered the boxes, Blessington referred to a previous meeting with Fineman and reminded Fineman that he delivered the boxes to a location outside of Perzel's Office.

     ii. There are no investigation notes, summaries, or other record of the referenced prior meeting.

     iii. Moreover, Blessington knew that simply referring to "Perzel's Office" without clarification is misleading.

c. By way of further example, on October 30, 2009, during Lochetto's grand jury testimony, Fina referenced a previous meeting for which there are no investigation notes or summaries.

d. On May 25, 2010, during Zimmerman's preliminary hearing, Brown questioned Fiore about a phone call received by the HRCC sometime during February 25-27, 2008, from an unknown male regarding boxes that would arrive (as reported by HRCC employee, George Matthews).

     i. Fiore testified that Matthews had received a call but could not identify the caller.

    ii. Fiore's testimony is curious to say the least, since there are no investigation notes or summaries related to an interview of Matthews, and on October 29, 2011, Fiore testified before the grand jury that he was not present during Matthews' grand jury testimony.

115.   The Defendants knowingly presented false information, failed to correct the record, or knowingly failed to present exculpatory evidence in their possession to the grand jury:

    a. The Defendants knew that the messenger log book contained a notation indicating that on February 25, 2008, Miller went to Room 414 of the Capital but never presented this evidence to the grand jury.

    b. On October 2, 2009, Fina advised the grand jury that on February 29, 2008, Speaks and he had to wait for Towhey to arrive to open his office (in Room 414 of the Capital) for investigators, giving the impression that Towhey and Zimmerman were not cooperating with investigators, when in fact Fina knew that the delay was caused by Fina's late after hours request to inspect the boxes and the resulting need for Towhey to travel from Philadelphia to Harrisburg in a snowstorm.

    c. The allegations in part against Zimmerman were that the unlawful conspiracy was hatched or furthered during four phone calls between the two men on the night of February 29, 2008.

        i. On June 27, 2008, Fina correctly admitted before the grand jury that on February 29, 2008, Zimmerman was present with investigators when numerous rooms were inspected in the Irvis Office Building, which undermined the conspiracy related charge.

21

72a

ii. On October 2, 2009, however, Fina incorrectly stated before the grand jury that on February 29, 2008, Zimmerman did not join investigators until around 8:00 PM, when the investigation team arrived at Room 414; thereby giving the misimpression that Zimmerman had time to conspire with Towhey.

iii. Upon hearing Fina's false statement, Speaks confirmed the false statement instead of correcting it.

iv. Neither Speaks nor Fina ever corrected their false statements before the grand jury and never advised the grand jury that they were with Zimmerman on February 29, 2008, witnessed the four telephone calls in question, and knew that the telephone calls were solely related to the following:

**6:32 PM** (4 minutes) Towhey called Zimmerman to inform him of his trip to the Capitol.

**6:42 PM** (2 minutes) Towhey called Zimmerman to inform him of the snow, and asked that the agents be informed that he would be late. He wanted the inspectors to wait for him.

**8:17 PM** (2 minutes) Zimmerman called Towhey to ask where he was in his travels. Towhey also informed Zimmerman that he forgot his security badge and would need assistance in obtaining entry to the Capital.

**8:36 PM** (2 minutes) Towhey called Zimmerman to tell him he was approaching the Capitol and would need to be let into the building.

d. On October 29, 2009, Brown led the questioning of Fiore before the grand jury.

i. The questioning occurred after Zimmerman had already testified before the grand jury about what he had observed on February 29, 2008, when Lochetto appeared in Room 414 and moved the 14 boxes.

22

73a

ii.  In response to a juror's question, Fiore responded that the movement of boxes on February 29, 2008, was not recorded in the messenger log.

iii.  Neither Brown nor Fiore, however, explained to the grand jury that per Miller, such matters would not have been recorded in the messenger log.

iv.  Moreover, there is no record that the Defendants ever presented Snyder as a witness to the grand jury.

e.  On October 30, 2009, Lochetto appeared (with immunity) before the grand jury.

   i.  Fina asked Lochetto if she had worked a full day on February 29, 2008.

   ii.  Lochetto answered no.

   iii.  Fina asked Lochetto if she had worked a half day on February 29, 2008.

   iv.  Lochetto answered no, and explained that she was off of work that day.

   v.  Unbelievably, Fina purposefully never asked Lochetto, if despite being off from work on February 29, 2008, if she had gone to Room 414 at any time on February 29, 2008, to move the 14 boxes.

f.  The Defendants presented a theory to the grand jury that since the unknown male caller who advised the HRCC that a delivery would be arriving made the call using Zimmerman's telephone line, the caller must have been Zimmerman.

   i.  The Defendants withheld from the grand jury the fact that Zimmerman's telephone line could be accessed on the

23

74a

receptionist's and Towhey's telephones, and likely on other telephones in Room 414.

ii. The Defendants withheld from the grand jury the fact that literally anyone in the Capital building (including but not limited to, capital police, the cleaning crew, Sandra Majors' staff of three, and a receptionist), had unfettered access to Room 414 and could have placed the call to the HRCC from multiple phones using Zimmerman's telephone line, and could have moved the boxes in question.

iii. The Defendants withheld from the grand jury the fact that the call was likely placed by Miller during his special trip to Room 414 as noted in the messenger log.

iv. The Defendants withheld from the grand jury the fact that multiple witnesses contradicted Lochetto's version of the events, i.e., that the boxes in question were placed in Perzel's private office on a date prior to February 29, 2008, the date that she actually moved the boxes into Perzel's private office.

v. The Defendants withheld from the grand jury the fact that if Zimmerman was sitting at his desk, he could not see the front door to Room 414 or the conference room (where the boxes were likely located until Lochetto moved them on February 29, 2008).

vi. The Defendants withheld from the grand jury the fact that Lochetto's and Zimmerman's presence or absence from the Capital could have been tracked, at least in part, through the access card system for the parking garage.

vii. On October 29, 2009, despite the fact that no evidence existed to support the claim, Fiore testified that the boxes in question were next to Zimmerman's desk.

## The Presentment, Criminal Charges, and Arraignment

116.   On November 12, 2009, Corbett announced, on state-wide television, the Grand Jury presentments and filing of criminal charges against 10 Republicans, including Zimmerman.

117.   Moreover, Corbett and the Defendants displayed Zimmerman's picture on a poster of Defendants, and arranged for Zimmerman to be on television doing a "perp-walk."

118.   Corbett and the Defendants knowingly wrongfully communicated to the world that Zimmerman (1) had engaged in criminal conduct, and (2) had engaged in criminal conduct related in any way to "Computergate."

119.   One or more of the Defendants drafted the Presentment that served as the basis for the criminal charges.

120.   Zimmerman was criminally charged with (1) Hindering Apprehension or Prosecution (18 Pa.C.S. § 5105), a felony of the third degree, (2) Obstructing Administration of Law or Other Governmental Function (18 Pa.C.S. § 5101), a misdemeanor of the second degree, (3) Criminal Conspiracy (Hindering Apprehension or Prosecution) (18 Pa.C.S. § 903), a felony of the third degree, and (4) Criminal Conspiracy (Obstructing Administration of Law or Other Governmental Function) (18 Pa.C.S. § 903), a misdemeanor of the second degree.

25

121. As a result of the criminal charges filed against him, Zimmerman faced a maximum sentence of 18 years of incarceration, and $40,000 in fines.

122. The Criminal Complaint contains the following false statements purportedly meant to explain the nature of the criminal charges:

> On or about diverse dates between February 25-29, 2008, in Dauphin County, Pennsylvania, the above named defendant, while employed by the Commonwealth of Pennsylvania, intentionally hindered prosecution by concealing or destroying evidence of a crime by having boxes which were the subject of at least one statewide investigating grand jury subpoena moved from their original location to the Speaker Emeritus office area in the State Capital, then having those boxes moved to the House Republican Campaign Committee offices or otherwise hidden from discovery by the grand jury, thereby committing the offence of Hindering Apprehension or prosecution.

> On or about diverse dates between February 25-29, 2008, in Dauphin County, Pennsylvania, the above named defendant, while employed by the Commonwealth of Pennsylvania, intentionally hindered prosecution by concealing or destroying evidence of a crime by having boxes which were the subject of at least one statewide investigating grand jury subpoena moved from their original location to the Speaker Emeritus office area in the State Capital, then having those boxes moved to the House Republican Campaign Committee offices or otherwise hidden from discovery by the grand jury, thereby committing the offence of Obstructing administration of law or other governmental function.

> On or about diverse dates between February 25-29, 2008, in Dauphin County, Pennsylvania, the above named defendant agreed with Brett O. Feese and/or John M. Perzel and/or Paul E. Towhey and/or other individuals to intentionally hindered prosecution by concealing or destroying evidence of a crime by having boxes which were the subject of at least one statewide investigating grand jury subpoena moved from their original location to the Speaker Emeritus office area in the State

26

Capital, then having those boxes moved to the House Republican Campaign Committee offices or otherwise hidden from discovery by the grand jury, thereby committing the offence of Criminal conspiracy.

123.   The Affidavit of Probable Cause is woefully deficient in that it fails to identify the elements of the various crimes charged, fails to identify facts to support the elements of crimes charged, merely refers the reader to the attached Presentment with assurances from the affiant that probable cause exists to support the crimes charged:

> Your Affiant has been conducting an investigation of allegations of public corruption within the Pennsylvania Legislature.  The OAG's investigation has utilized Statewide Investigating Grand Juries and as a result: the Twenty-Eighth Statewide Investigating Grand Jury has issued Presentment No. 7, which was accepted by Order of the Honorable Barry F. Feudale, Jr., Grand Jury Supervising Judge.  This Presentment, which is attached to this affidavit and incorporated by reference, recommends charges be filed by the Attorney General or his designee against the defendant.

> Your Affiant has reviewed the above cited Presentment and finds that the factual findings described therein correspond to the OAG investigative findings. Your Affiant has reviewed the sworn testimony given by the witnesses before the Grand Jury and finds that the testimony is consistent with the information contained within the Presentment.   Your Affiant has reviewed the evidence presented to the Grand Jury and find [sic] that it comports with the results of the OAG investigative efforts and findings as to the allegations contained in this Police Criminal Complaint.

> Your Affiant believes and therefore avers, based upon the above facts, that there is probable cause to believe that the defendant, John R. Zimmerman, committed the acts detailed in this Police Criminal

27

78a

Complaint and all attachments in violation of Pennsylvania law and that warrants should issue for the arrest of the Defendant.

124.   The 186-page Presentment fails to identify or explain Zimmerman's purported criminal conduct, and in fact, only mentions his name three times.

125.   On November 12, 2009, Fiore signed and swore to the Criminal Complaint and Affidavit of Probable Cause, which essentially alleged nothing.

126.   Upon receipt of the Criminal Complaint and Affidavit of Probable Cause, District Justice William C. Wenner issued a warrant for Zimmerman's arrest.

127.   The Affidavit of Probable Cause was further defective in that it failed to contain any of the exculpatory evidence discussed herein and possessed by the affiant and Defendants when the Affidavit was signed and presented.

128.   Any member of the bar of the Commonwealth of Pennsylvania or properly trained law enforcement officer would know that the Criminal Complaint and Affidavit of Probable Cause did not state the requisite probable cause for the crimes charged, and that the warrant that issued pursuant to same could not be relied upon in good faith.

129.   The Defendants knew that probable cause did not exist to criminally charge Zimmerman with any crimes.

130.   Zimmerman was given a time to show up for his arraignment.

28

79a

131.   After voluntarily presenting at the Lower Paxton Police Station to be fingerprinted and photographed, Zimmerman was handcuffed and placed in the backseat of a police cruiser with a police officer next to him.

132.   Zimmerman was then transported to District Justice Wenner's office for his arraignment.

133.   The Defendants staged the arraignment process to provide a photo opportunity for the Corbett administration.

134.   The media was positioned in front of District Justice Wenner's office, and each criminal Defendant, including Zimmerman, was paraded handcuffed in front of the cameras.

135.   Plaintiff was arraigned and bail was set at $1,000 unsecured bail.

136.   Plaintiff was forced to surrender his passport, which was not returned until the criminal charges were voluntarily dismissed two years later.

137.   On February 3, 2010, Plaintiff discovered that the press office for the Office of Attorney General had purposefully placed his arraignment photo on its website in place of the photograph of a criminal drug defendant in a 2007 press release.

138.   Plaintiff's then attorney sent a letter to the Office of Attorney General requesting that Zimmerman's photograph be removed and asking for an explanation and an apology.

139.   While the letter did not receive the courtesy of a response, the photograph was removed and replaced with the original photograph.

## **Preliminary Hearing**

140.   On May 25, 2010, Plaintiff's Preliminary Hearing was conducted before District Justice Wenner.

141.   Brown and Sprow were the prosecutors.

142.   Both Speaks and Fina knowingly failed to testify that on February 29, 2008, Zimmerman was with them for approximately three hours during the entire inspection.

143.   Speaks and Fina also knowingly failed to testify that the phone calls in question occurred while Zimmerman was in their presence on February 29, 2008, and that the calls related to the arrangements for the inspection of the boxes.

144.   Sprow presented Lochetto as a witness.

145.   Lochetto testified that the boxes were placed in Perzel's private office.

146.   Lochetto also testified that Zimmerman was usually at his desk (which was not located in Perzel's private office).

147.   The Commonwealth possessed evidence that vitiated probable cause but failed to present the evidence at the preliminary hearing as required.

   a.   Specifically, the Commonwealth, through Sprow and Brown, failed to present the testimony of the three messengers who moved the boxes for Lochetto and whose testimony would have contradicted her testimony.

   b.   Sprow and Brown failed to present evidence regarding the floor plan for Room 414 or explaining what persons who frequent the Capital meant by "Perzel's Office."

   c.   Sprow and Brown failed to present evidence regarding the multitude of telephones that had Zimmerman's telephone line installed on them.

   d.   Sprow and Brown failed to present evidence regarding Miller's special trip to Room 414 during the relevant period of time as indicated in the messenger log.

148.   As a result of Sprow's and Brown's selective presentation of evidence during the preliminary hearing and the withholding of exculpatory evidence, Zimmerman's criminal charges were bound over for trial.

## The Destruction of Investigation Notes and Related Sanction

149.   On May 23, 2011, Linda L. Kelly became the Attorney General for the Commonwealth of Pennsylvania, and became the highest ranking Pennsylvania

31

82a

official with policymaking and decision-making authority to oversee the criminal case against Zimmerman.

150.   Kelly had full knowledge of, and personal involvement in directing, all aspects of the Zimmerman ongoing investigation and prosecution.

151.   On June 13, 2011, at a pre-trial hearing in the Perzel criminal matter, Fina informed Common Pleas President Judge Richard Lewis that the Office of Attorney General had destroyed witness and proffer notes.

152.   One or more of the Defendants directed and/or participated in the destruction of exculpatory witness and proffer notes.

153.   The destruction of these notes violated Office of Attorney General policy, Judge Lewis's Order to produce the documents, and federal case law.

154.   As a result, Judge Lewis dropped all criminal charges against Perzel, Feese and Towhey, related to the alleged movement of the boxes.

155.   Defendant Zimmerman's criminal case, however, had been previously severed, and was not before Judge Lewis at that time.

156.   Therefore, the box related criminal charges against Zimmerman were not dismissed.

157.   Despite knowing that the "Boxgate" charges had been dismissed against Zimmerman's alleged co-conspirators and that there was not a shred of

evidence to support the charges against Zimmerman, the Defendants who had the authority to dismiss the frivolous criminal charges against Zimmerman, maliciously did not do so.

## The Dismissal and Vindication

158.   As a result of this malicious criminal prosecution, Zimmerman was portrayed by the Defendants as a criminal in the media across the entire Commonwealth.

159.   He was ostracized from the community and lost numerous friends.

160.   Once indicted, the Defendants continued to maliciously prosecute Zimmerman.

161.   Since Zimmerman maintained his innocence, unlike co-defendants who had been criminally charged, the Defendants showed him no leniency or mercy.

162.   For over two years, the Defendants refused to dismiss the criminal charges against Zimmerman, even after Judge Lewis dismissed the related conspiracy charges involving co-defendants.

163.   Essentially, for an additional 72 days, Zimmerman sat criminally charged in a conspiracy of one.

33

164.    On November 17, 2011, after destroying his career and reputation, without comment, the Defendants voluntarily dismissed the criminal charges against Zimmerman.

## COUNT I

**Plaintiff v. Defendants**
**Fourth and Fourteenth Amendments – Malicious Prosecution**
**Pursuant to 42 U.S.C. § 1983**

165.    Paragraphs 1-164 are incorporated herein by reference.

166.    To prevail on a Section 1983 malicious prosecution claim, a Plaintiff must establish that: (1) Defendant(s) initiated a criminal proceeding; (2) the criminal proceeding ended in Plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) Defendant acted maliciously or for a purpose other than bringing plaintiffs to justice; and (5) Plaintiffs suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. See DiBella v. Borough of Beachwood, 407 F.3d 599 (3d Cir. 2005); Estate of Smith v. Marasco, 318 F.3d 497 (3d Cir. 2003).

167.    **Element 1:** The Defendants collectively initiated a criminal proceeding against Zimmerman as follows:

168.    The Defendants coached and intimidated witnesses during an investigation to ensure that the desired political goal could be achieved.

34

85a

169.   Moreover, the Defendants destroyed exculpatory evidence, so that the evidence could not be presented to a Grand Jury or defense counsel.

170.   Defendant Fiore signed, as the affiant, a Criminal Complaint and Affidavit of Probable Cause that failed to identify the elements of the crimes charged, failed to identify facts in support of the crimes charged, failed to identify the destroyed exculpatory evidence that had been possessed by the Defendants, and contained false or misleading statements.

171.   The Defendants each acted as discussed herein to misled the Court into permitting the initiation of, and the continuance of, a criminal proceeding against Zimmerman by failing to timely disclose all available evidence and by misrepresenting facts to the Court.

172.   **Element 2:** On November 17, 2011, the Defendants voluntarily dismissed the criminal charges against Zimmerman because there was no evidence to support the charges and Zimmerman's political purpose had been served.

173.   **Element 3:** The criminal charges asserted against Zimmerman were not supported by probable cause.

174.   Moreover, during both the preliminary hearing and suppression hearing the Defendants misrepresented and misled the Court into believing that probable cause existed, in the manner and for the reasons described and explained above.

175.   Importantly, at no point in time prior to the dismissal of the frivolous criminal charges asserted against him did Zimmerman have a full and fair opportunity to litigate the probable cause issue in any state court proceeding.

176.   Therefore, there has never been a dispositive state court probable cause determination. See Dubas v. Olyphant Police Dep't., 2012 U.S. Dist. LEXIS 56568 at * 20-24 (M.D.Pa. 2012).

177.   **Element 4:** The Defendants orchestrated the procurement of a Grand Jury Presentment and filed criminal charges against Zimmerman maliciously, and not for the purpose of bringing him to justice for violations of Pennsylvania criminal law.

178.   Rather the Defendants orchestrated the procurement of a Grand Jury Presentment and filed criminal charges against Zimmerman to prevent him from being a witness on behalf of other criminal Defendants, to retaliate against him for his political affiliation and loyalty to Perzel, to retaliate against him for refusing to commit perjury, and to help bring balance to the number of Republicans and Defendants who were criminally charged.

179.   Essentially, the grand jury presentment and warrant for Zimmerman's arrest were obtained by providing a sham process and not the required procedural due process, deceit, fraud, perjury, and other corrupt means.

180. The Defendants waited until the eve of Zimmerman's trial to voluntarily dismiss the criminal charges against him because they knew that a trial would expose their malicious prosecution of Zimmerman and result in an acquittal.

181. **Element 5:** In the course of being maliciously prosecuted, Zimmerman was taken into physical custody, forced to engage in a "perp-walk," and suffered an ongoing deprivation of liberty consistent with the concept of seizure as a consequence of being subject to bail conditions and having his passport confiscated.

182. The Defendants' prosecutorial duties do not include (1) conducting and manipulating criminal investigations, (2) coaching or intimidating witnesses, (3) destroying exculpatory evidence, or (4) prosecuting persons for political or personal means.

183. The Defendants' conduct violated Zimmerman's rights pursuant to the Fourth and Fourteenth Amendments to the Federal Constitution.

184. As a direct and proximate result of the malicious prosecution, Zimmerman suffered and will continue to suffer embarrassment, humiliation, financial harm, physical and psychological harm, and pain and suffering, some or all of which may be permanent.

37

185.   As a direct and proximate result of the malicious prosecution of Zimmerman, he has incurred attorneys' fees and other costs associated with his defense.

## COUNT II

### Plaintiff v. Defendants
### State Law Claim – Malicious Prosecution

186.   Paragraphs 1-185 are incorporated herein by reference.

187.   The Defendants' conduct violated Zimmerman's rights pursuant to Pennsylvania state law prohibiting malicious prosecution.

188.   While the Defendants acted under color of state law, the Defendants acted outside the scope of their employment because the Defendants' job duties did not include the actions discussed herein.

189.   Specifically, the Defendants' job duties did not include coaching and intimidating witnesses, destroying exculpatory evidence, filing criminal charges that are not supported by the requisite probable cause, providing false testimony, and misusing the Court system and process for personal or political gain.

190.   The Defendants' aforementioned conduct was not engaged in for the benefit of their employer, the Commonwealth of Pennsylvania.

191.   To the contrary, the aforementioned conduct was engaged in for the Defendants' personal and political gain.

192.   As a direct and proximate result of the malicious prosecution, Zimmerman suffered and will continue to suffer embarrassment, humiliation, financial harm, physical and psychological harm, and pain and suffering, some or all of which may be permanent.

193.   As a direct and proximate result of the malicious prosecution, Zimmerman has incurred attorneys' fees and other costs associated with his defense.

**WHEREFORE**, Zimmerman, respectfully requests the following relief:

A.   That the Court provide him with a federal jury trial;

B.   That judgment be entered in his favor and against the Defendants;

C.   That the Court declare that the Defendants' actions violated his constitutional rights;

D.   That the Plaintiff be provided with a name-clearing hearing;

E.   That the Court award him compensatory damages;

F.   That the Court award him punitive damages;

G.   That the Court award him his attorney's fees, costs and interest; and

H.   That the Court award such other financial or equitable relief as is reasonable and just.

39

90a

Respectfully Submitted,

_____                                    **Date:   May 7, 2014**
**DEVON M. JACOB, ESQUIRE**
Pa. Sup. Ct. I.D. 89182
Counsel for Plaintiff

**JACOB LITIGATION**
P.O. Box 837, Mechanicsburg, Pa. 17055-0837
717.796.7733 | djacob@jacoblitigation.com

91a

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN R. ZIMMERMAN,** | : **Civil Action No.: 1:13-cv-2788** |
| **Plaintiff,** | : **(Filed: 11/14/2013)** |
| | : |
| **v.** | : **District Judge: Yvette Kane** |
| | : |
| **THOMAS W. CORBETT, et al.,** | : **CIVIL ACTION – LAW** |
| **Defendants.** | : **JURY TRIAL DEMANDED** |

## CERTIFICATE OF SERVICE

I hereby certify that on the date listed below I electronically filed the foregoing with the Court using the CM/ECF system, which sent notification of such filing to the following person(s) at the following email addresses:

**Lindsey A. Bierzonski, Esquire**
Email: lbierzonski@attorneygeneral.gov

**Timothy P. Keating, Esquire**
Email: tkeating@attorneygeneral.gov


_____        **Date:  May 7, 2014**
**DEVON M. JACOB, ESQUIRE**

41

92a

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN R. ZIMMERMAN,** | : | |
| Plaintiff | : | |
| | : | **No. 1:13-cv-2788** |
| **v.** | : | |
| | : | **Honorable Yvette Kane** |
| **THOMAS W. CORBETT, LINDA L.** | : | |
| **KELLY, FRANK G. FINA, K.** | : | |
| **KENNETH BROWN, MICHAEL A.** | : | **Electronically Filed Document** |
| **SPROW, ANTHONY J. FIORE AND** | : | |
| **GARY E. SPEAKS,** | : | |
| Defendants | : | |

## ANSWER TO PLAINTIFF'S AMENDED COMPLAINT

1.     This is a conclusion of law to which no response is required.

2.     This is a conclusion of law to which no response is required.

3.     This is a conclusion of law to which no response is required.

4.     Admitted.

5.     Admitted.

6.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

7.     Admitted.

93a

8.      Admitted.

9.      Admitted.

10.     Admitted.

11.     Admitted.

12.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

13.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

14.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore

signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

15.     This paragraph makes reference to written documents, such written documents speak for themselves.

16.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

17.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

18.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore

signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

19.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

20.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

21.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

22.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

23.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

24.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

25.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining

Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

26.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

27.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

28.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore

signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

29.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

30.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

31.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

32.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

33.     Admitted that Plaintiff was arrested.

34.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

35.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

36.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

37.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

38.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

39.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining

Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

40.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

41.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

42.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore

signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

43. No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

44. No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

45. No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

46.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

47.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

48.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

49.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining

Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

50.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

51.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

52.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore

signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

53.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

54.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

55.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

56.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

57.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

58.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

59.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining

Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

60.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

61.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

62.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore

signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

63.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

64.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

65.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

109a

66.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

67.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

68.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

69.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining

Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

70.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

71.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

72.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore

signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

73.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

74.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

75.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

76.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

77.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

78.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

79.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining

Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

80.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

81.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

82.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore

signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

83.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

84.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

85.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

115a

86.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

87.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

88.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

89.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining

Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

90.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

91.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

92.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore

signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

93.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

94.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

95.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

96.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

97.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

98.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

99.     No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining

Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

100.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

101.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

102.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore

signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

103.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

104.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

105.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

106.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

107.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

108.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

109.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining

Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

110.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

111.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

112.   Denied.

113.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the

123a

grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

114. Denied.

115. No response No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

116. No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

117. No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore

signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

118.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

119.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

120.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

121.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

122.   This paragraph makes reference to written documents, such written documents speak for themselves.

123.   Denied.

124.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

125.   Denied

126.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore

signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

127. Denied.

128. Denied.

129. Denied.

130. No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

131. No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

132. No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the

grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

133.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

134.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

135.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore

signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

136.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

137.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

138.    No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

139.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

140.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

141.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

142.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining

Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

143.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

144.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

145.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore

signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

146.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

147.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

148.   No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

149.  No response required.

150.  No response required.

151.  No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

152.  Denied that any Defendants improperly destroyed exculpatory witness and proffer notes.

153.  Denied that any destruction of any notes was improper.

154.  No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

155.  No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the

133a

grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

156. No response required due to this Court's Order of February 10, 2015, stating that the only issues in this matter concern whether the remaining Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, destroyed exculpatory evidence, and that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements.

157. Denied.

158. Denied.

159. Denied.

160. Denied.

161. Denied.

162. Admitted that the Defendants did not seek to dismiss the civil charges.

163. Denied.

164. Denied.

165. No response required.

166. This is a conclusion of law to which no response is required.

167. Denied.

134a

168. Denied.

169. Denied.

170. Denied.

171. Denied.

172. Denied.

173. Denied.

174. Denied.

175. Denied.

176. This is a conclusion of law to which no response is required.

177. Denied.

178. Denied.

179. Denied.

180. Denied.

181. Denied.

182. Admitted.

183. This is a conclusion of law to which no response is required.

184. Denied.

185. Denied.

186. No response required.

187. This is a conclusion of law to which no response is required.

188. Denied that the Defendants acted improperly.

189. Denied that Defendants did these things.

190. Denied that Defendants engaged in any misconduct.

191. Denied.

192. Denied.

193. Denied.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state any claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Defendants are immune from liability by virtue of absolute, qualified,

official, governmental, state sovereign, and/or any other immunity.

## THIRD AFFIRMATIVE DEFENSE

Some or all of Plaintiffs' claims are barred by the statute of limitations,

failure to exhaust his administrative remedies and/or statutory bars to recovery.

## FOURTH AFFIRMATIVE DEFENSE

Some or all of Plaintiffs' claims may be barred by the doctrines of estoppel,

waiver, and/or laches.

Respectfully submitted,

KATHLEEN G. KANE
Attorney General

By:  *s/Timothy P. Keating*
TIMOTHY P. KEATING
Senior Deputy Attorney General
Attorney ID #44874

*s/Lindsey A. Bierzonski*
LINDSEY A. BIERZONSKI
Deputy Attorney General
Attorney ID #308158

KENNETH L. JOEL
Chief Deputy Attorney General
Chief, Civil Litigation Section

Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
Phone: (717) 705-8580
Fax:    (717) 772-4526
tkeating@attorneygeneral.gov
lbierzonski@attorneygeneral.gov

Date:  March 12, 2015                    *Counsel for Defendants*

137a

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN R. ZIMMERMAN,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:13-cv-2788** |
| **v.** | : | |
| | : | **Honorable Yvette Kane** |
| **THOMAS W. CORBETT, LINDA L.** | : | |
| **KELLY, FRANK G. FINA, K.** | : | |
| **KENNETH BROWN, MICHAEL A.** | : | **Electronically Filed Document** |
| **SPROW, ANTHONY J. FIORE AND** | : | |
| **GARY E. SPEAKS,** | : | |
| **Defendants** | : | |

## CERTIFICATE OF SERVICE

I, Timothy P. Keating, Senior Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on March 12, 2015, I caused to be served a true and correct copy of the foregoing document titled Answer to Plaintiff's Amended Complaint to the following:

**VIA ECF:**

**Devon M. Jacob**
Jacob Litigation
P.O. Box 837
Mechanicsburg, PA  17055-0837
djacob@jacoblitigation.com
*Counsel for Plaintiff*

 *s/Timothy P. Keating*
**TIMOTHY P. KEATING**
Senior Deputy Attorney General

138a

IN THE MIDDLE DISTRICT OF PENNSYLVANIA

John R. Zimmerman,         :   1:13-cv-2788
       Plaintiff        :
       v.           :   Judge Kane
Thomas W. Corbett, Frank G. Fina, :
K. Kenneth Brown, Michael A. Sprow, :
Anthony J. Fiore, and Gary E. Speaks,:
       Defendants    :   Jury Trial Demanded

## Motion for Judgment on the Pleadings

Defendants seek judgment on the pleadings:

1.    Plaintiff Zimmerman filed the current action on November 14, 2013, alleging various constitutional violations committed in connection with his arrest and criminal charges in November 2009.

2.    As a result of a ruling by this Court on a Motion to Dismiss, the Court dismissed several of the claims against the Defendants (doc. 29).

3.    Zimmerman's remaining claims are that 1) Defendants threatened witnesses during the investigation phase and before the grand jury proceedings began, 2) Defendants destroyed notes, and 3) Agent Fiore maliciously prosecuted Zimmerman without probable cause.

1

139a

4.     Defendants are entitled to qualified immunity on all remaining claims based upon the pleadings.

5.     It is not clear that a *Brady* claim is actionable without a trial and conviction. In fact, the clear weight of authority bars a *Brady* claim without a trial or conviction. *Livers v. Schenck*, 700 F.3d 340, 359 (8th Cir. 2012); *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999); *Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998); *Rogala v. District of Columbia*, 161 F.3d 44, 55–56 (D.C.Cir.1998) (per curiam); *Taylor v. Waters*, 81 F.3d 429, 435–36 & n. 5 (4th Cir.1996); *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir.1988).

6.     In any event, the destruction of the notes as required by official OAG policy in no way violated clearly established law under *Brady*, and the Superior Court affirmed Judge Lewis's decision saying so. *See* Judge Lewis opinions on notes (ex. 1-2); *Com. v. Feese*, 79 A.3d 1101 (Pa. Super.), reargument denied (2013), appeal denied, 94 A.3d 1007 (Pa. 2014).[1] Further, Zimmerman does not show how the notes

---

[1]Zimmerman erroneously states that Judge Lewis dismissed the Boxgate charges for Zimmerman's co-defendants, which Zimmerman states resulted from the destruction of notes. AC ¶154-55. Actually, Judge Lewis held (and the Superior Court agreed) that the destruction of any notes did not violate the law or OAG policy. Judge Lewis opined about the prudence behind the practice. At the guilty

would have been exculpatory <u>for him</u>. Notably, unlike every single co-defendant, Zimmerman did not challenge the destruction of the notes or make any *Brady* claim at all in his criminal case.

7.    As to the alleged "threats" to witnesses, Zimmerman makes no allegation of how witnesses materially changed their testimony against Zimmerman. Further, it does not violate clearly established law to offer uncooperative witnesses immunity or threaten criminal conspirators and accomplices with prosecution. It is also clear that the threats claim cannot survive this Court's 12(b)(6) ruling because the grand jury was always in existence while Boxgate was being investigated. Indeed, the Boxgate grand jury investigation occurred only because boxes of materials were relocated in an attempt to thwart a grand jury subpoena.[2]

8.    Turning to the pure malicious prosecution claim against Agent Fiore as the affiant, Zimmerman does not plausibly plead that the agent misled the prosecutors into taking the case or that Agent

---

plea or sentencing for every co-defendant, the Commonwealth dropped the Boxgate charges.

[2]Zimmerman's timeline is implausible and, in fact, impossible. Zimmerman claims that Governor Corbett decided to prosecute Representative Perzel and other Republicans after backlash for the Bonusgate prosecution announced in July 2008. AC ¶27-29. However, the Boxgate charges stem from a grand jury subpoena to Perzel's office in <u>February</u> 2008.

141a

Fiore lacked probable cause. As for the former, Zimmerman actually pleads the opposite: that the prosecutors were in on it. As for the latter, Agent Fiore's actions are presumed reasonable because a prosecutor and Judge Wenner determined that he has probable cause for the charges before Zimmerman's arrest. After his arrest, Zimmerman challenged the sufficiency of the Commonwealth's evidence before Judges Wenner and Lewis, and both Judges held that the Commonwealth had a prima facie basis for the charges, which is weighty evidence of probable cause. *See* Judge Lewis habeas opinion (ex. 3). Zimmerman has not pled any plausible facts that defeat probable cause.

9.      Finally, a number of courts have held that an arrest alone is not a sufficient Fourth Amendment seizure to support a malicious prosecution claim, absent significant bail restrictions. Zimmerman had to surrender his passport, but the law is not clear that this would be a sufficient seizure.

For these reasons, this Court should enter judgment for
defendants.

Respectfully,

Lavery Law

s/ Frank J. Lavery, Jr.
Pennsylvania Bar No. 42370

s/ Josh Autry
Pennsylvania Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
flavery@laverylaw.com
jautry@laverylaw.com

Date: November 30, 2015          Counsel for Defendants

143a

## Certificate of Service

I certify that today I served a true and correct copy through this Court's electronic filing system to Devon M. Jacob, Esquire at djacob@jacoblitigation.com.

<div align="right">

s/ Amyra Wagner
Legal assistant for Josh Autry

</div>

Date: November 30, 2015

IN THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| John R. Zimmerman, | : | 1:13-cv-2788 |
| Plaintiff | : | |
| v. | : | Judge Kane |
| Thomas W. Corbett, Frank G. Fina, | : | |
| K. Kenneth Brown, Michael A. Sprow, | : | |
| Anthony J. Fiore, and Gary E. Speaks, | : | |
| Defendants | : | Jury Trial Demanded |

## Concurred-in Motion to Partially Stay Discovery

Defendants ask this Court to partially stay discovery:

1.      As a result of a ruling by this Court on Defendants' motion to dismiss, the Court dismissed several of the claims against the Defendants (doc. 29). In a motion for judgment on the pleadings related to the remaining claims, Defendants raise the defense of qualified immunity.

2.      Because resolution of this dispositive motion could limit or eliminate the need for costly discovery, Defendants ask this Court to partially stay discovery while the motion is pending, and Plaintiff concurs. Specifically, the parties have agreed to continue to engage in written discovery, but postpone depositions.

3.      This Court should grant this motion because qualified immunity is a protection <u>from</u> burdensome discovery. *Ashcroft v. Iqbal*,

556 U.S. 662, 671-72 (2009); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982).

4.    This Court should grant this motion even if it were not for the qualified immunity defense because the motion for judgment on the pleadings could eliminate the need for discovery or limit the scope of discovery. For this reason, this Court routinely grants stays pending resolution of motions to dismiss,[1] and the Third Circuit has endorsed this practice. *Levey v. Brownstone Inv. Grp.*, 590 F. App'x 132, 137 (3d Cir. 2014); *Mann v. Brenner*, 375 F. App'x 232, 239 (3d Cir. 2010); *See also Mitchell v. McNeil*, 487 F.3d 374, 379 (6th Cir.2007). This Court recently recognized that the same principle apply to stays pending

---

[1] *Wills v. US*, 2014 WL 5443083 (M.D. Pa. Oct. 24, 2014); *Ryder v. Bartholomew*, 2014 WL 2195385, at *3 (M.D. Pa. May 27, 2014); *W. v. Shultz*, 2013 WL 5438297, at *8 (M.D. Pa. Sept. 27, 2013); *Stephens v. Clash*, 2013 WL 6065323, at n.11 (M.D. Pa. Nov. 18, 2013); *Flores v. DOC*, 2013 WL 2250214, at *1 (M.D. Pa. May 22, 2013); *Spencer v. Wetzel*, 2012 WL 2930228, at *2 (M.D. Pa. July 18, 2012); *Jordan v. Beard*, 2012 WL 833023, at *8 (M.D. Pa. Mar. 12, 2012); *Ball v. Hartman*, 2010 WL 146319, at *5 (M.D. Pa. Jan. 11, 2010) *aff'd*, 396 F. App'x 823 (3d Cir. 2010); *Ball v. Oden*, 2010 WL 598653, at *8 (M.D. Pa. Feb. 17, 2010) *aff'd*, 396 F. App'x 886 (3d Cir. 2010); *Babalola v. Donegal Mut. Ins.*, 2008 WL 5278393 (M.D. Pa. Dec. 18, 2008). *See also Barbieri v. Wells Fargo*, 2012 WL 3089373, at *5 (E.D. Pa. July 27, 2012); *Weisman v. Mediq*, 1995 WL 273678, at *2 (E.D. Pa. May 3, 1995).

146a

resolution of a motion for judgment on the pleadings. *Lane v. Walsh*, 2015 WL 3866043, at *2 (M.D. Pa. June 23, 2015).

    5.    No brief is required because all parties concur in this motion.

For these reasons, this Court should stay depositions until this Court rules on the motion for judgment on the pleadings.

<div style="margin-left:40%">

Respectfully,

Lavery Law

s/ Frank J. Lavery, Jr.
Pennsylvania Bar No. 42370

s/ Josh Autry
Pennsylvania Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
flavery@laverylaw.com
jautry@laverylaw.com
Counsel for Defendants

</div>

Date: November 30, 2015

147a

## Certificate of Service

I certify that today I served a true and correct copy through this Court's electronic filing system to Devon M. Jacob, Esquire at djacob@jacoblitigation.com.

<div align="right">

s/ Amyra Wagner
Legal assistant for Josh Autry

</div>

Date: November 30, 2015

IN THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| John R. Zimmerman, | : | 1:13-cv-2788 |
| Plaintiff | : | |
| v. | : | Judge Kane |
| Thomas W. Corbett, Frank G. Fina, | : | |
| K. Kenneth Brown, Michael A. Sprow, | : | |
| Anthony J. Fiore, and Gary E. Speaks, | : | |
| Defendants | : | Jury Trial Demanded |

## Brief in Support of
## <u>Motion for Judgment on the Pleadings</u>

Respectfully submitted,

Lavery Law

<u>s/ Frank J. Lavery, Jr.</u>
Pennsylvania Bar No. 42370

<u>s/ Josh Autry</u>
PA Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
jautry@laverylaw.com
Counsel for Defendants

Date: December 14, 2015

149a

# Table of Contents

Table of Authorities....................................................................... iii

I.   Statement of the Case:............................................................1

 A.   Procedural History:..........................................................1

 B.   Facts:................................................................................1

II.  Question Presented:...............................................................3

III. Argument: ..............................................................................3

 A.   Plaintiff must plead facts that plausibly show why he is entitled
      to relief. ..........................................................................3

 B.   Plaintiff must show that Defendants violated clearly established
      law. ..................................................................................5

 C.   The law is not clear that *Brady* can be violated without a trial
      and conviction. ...............................................................8

 D.   The law is not clear that destruction of proffer notes violates due
      process. ............................................................................9

 E.   The law is not clear that any allegedly falsified or destroyed
      evidence was exculpatory. ...........................................14

 F.   The law is not clear that the notes were impeachment evidence.
      16

 G.   The law is not clear that Plaintiff was seized. ............18

 H.   Any reasonable agent would have believed probable cause
      existed. ..........................................................................20

 I.   The agents did not initiate the prosecution. ...............22

 J.   Agents Fiore and Speaks's actions are presumed reasonable. ...23

 K.   It is implausible that Defendants fabricated evidence *before the
      grand jury was empaneled.*...........................................24

 L.   It is implausible that then-AG Corbett knew of fabrication or
      destruction of evidence. ..............................................25

IV.   Conclusion: ...................................................................... 26

Certification of Counsel .......................................................... 27

Certificate of Service ............................................................. 28

# Table of Authorities

## Cases

*Anderson v. Creighton*, 483 U.S. 635 (1987). ...........................................6

*Ankele v. Hambrick*, 286 F. Supp. 2d 485 (E.D. Pa. 2003) ...................19

*Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011) .........................................5, 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................3, 26

*Bartow v. Thomas*, 2014 WL 2993786 (W.D. Pa. July 2, 2014) ............18

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007)....................................3, 4

*Bingaman v. Bingaman*, 2009 U.S. Dist. LEXIS 68448
 (M.D. Pa. Aug. 5, 2009) .......................................................................5

*Black v. Montgomery Cty.*, 2015 WL 5568388
 (E.D. Pa. Sept. 21, 2015)....................................................................19

*Brosseau v. Haugen*, 543 U.S. 194 (2004)...............................................6

*Carroll v. Carman*, 135 S. Ct. 348 (2014) ..............................................8

*City & Cnty. of San Francisco v. Sheehan*, 135 S.Ct. 1765 (2015).......7, 8

*Collins v. Jones*, 2015 WL 790055 (E.D. Pa. Feb. 24, 2015)..................19

*Com. v. Lawson*, 2015 WL 6114513 (Pa. Super. July 30, 2015)............17

*Com. v. LeBlanc*, 2015 WL 6663637 (Pa. Super. Sept. 2, 2015)............17

*Com. v. Simmons*, 662 A.2d 621 (Pa. 1995) ....................................16, 18

*Esposito v. Galli*, 2006 WL 2322487 (M.D. Pa. Aug. 9, 2006) ..............19

*Flagg v. Wynder*, 2008 WL 861498 (E.D. Pa. Mar. 27, 2008) ...............16

*Flores v. Satz*, 137 F.3d 1275 (11th Cir. 1998) .......................................9

*Gilles v. Davis*, 427 F.3d 197 (3d Cir. 2005) ...........................................6

*Golya v. Golya*, 2007 WL 2301085 (M.D. Pa. Aug. 9, 2007) ..................19

*Griffin v. Walbert*, 2012 U.S. Dist. LEXIS 4961
 (M.D. Pa. Jan. 17, 2012) ................................................................5, 21

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ..............................................6

*Hunter v. Bryant*, 502 U.S. 224 (1991) ....................................................6

*Hunter v. Bryant*, 502 U.S. 224, 112 S. Ct. 534,
 116 L. Ed. 2d 589 (1991).....................................................................6

*Jones v. Barth*, 2015 WL 221079 (E.D. Pa. Jan. 15, 2015) ...................19

*Kalomiris v. Monroe County Syndicate*, 2009 U.S. Dist. LEXIS 1264
(M.D. Pa. Jan. 8, 2009) ......................................................... 5

*Lane v. Franks*, 134 S. Ct. 2369 (2014) ..................................... 8

*Livers v. Schenck*, 700 F.3d 340 (8th Cir. 2012)...................... 9

*Luck v. Mount Airy No. 1,* 901 F. Supp. 2d 547 (M.D. Pa. 2012).......... 18

*Lum v. Bank of Am.*, 361 F.3d 217 (3d Cir. 2004) .................. 4

*Malley v. Briggs*, 475 U.S. 335, 106 S. Ct. 1092,
89 L. Ed. 2d 271 (1986)................................................. 21, 24

*McCune v. City of Grand Rapids*, 842 F.2d 903 (6th Cir.1988) ............ 9

*Morgan v. Gertz*, 166 F.3d 1307 (10th Cir. 1999)..................... 9

*Mullenix v. Luna*, 136 S.Ct. 305 (Nov. 9, 2015)....................... 7

*Mustafa v. Superintendent, SCI Dallas*, 2004 WL 1078500
(E.D. Pa. May 13, 2004)..................................................... 16

*Orsatti v. N.J. State Police*, 71 F.3d 480 (3d Cir. 1995) ........................ 24

*Penberth v. Krajnak*, 347 F. App'x 827 (3d Cir. 2009) ........................ 18

*Plumhoff v. Rickard*, 134 S. Ct. 2012 (2014)........................... 7

*Reichle v. Howards*, 132 S. Ct. 2088, 2094 (2012). ............................ 6, 8

*Revell v. Port Auth. of NY, NJ*, 598 F.3d 128 (3d Cir. 2010) .................. 3

*Rogala v. District of Columbia*, 161 F.3d 44 (D.C.Cir.1998) ................... 9

*Schultz v. Hughesville Borough*, 2011 WL 3273076
(M.D. Pa. July 29, 2011 ..................................................... 19

*Shelley v. Wilson*, 339 Fed. Appx. 136 (3d Cir. 2009) ........................ 4, 5

*Startzell v. City of Philadelphia*, 533 F.3d 183 (3d Cir. 2008) .............. 20

*Stolarik v. City of Wilkes-Barre*, 2013 U.S. Dist. LEXIS 155788
(M.D. Pa. Oct. 30, 2013) ..................................................... 22

*Taylor v. Barkes*, 135 S.Ct. 2042 (2015) ..................................... 8

*Taylor v. Waters*, 81 F.3d 429 (4th Cir.1996) ............................ 9

*United States v. Myers*, 308 F.3d 251 (3d Cir. 2002) ............................ 21

*White v. Glenn*, 2014 WL 5431200 (E.D. Pa. Oct. 27, 2014) .................. 18

*Wilson v. Russo*, 212 F.3d 781 (3d Cir. 2000) ......................... 21

*Wiltz v. Middlesex Cnty. Office of Prosecutor*, 249 F. App'x 944 (3d Cir.
2007)......................................................................... 18

*Wright v. City of Phila.*, 409 F.3d 595 (3d Cir. 2005)............................ 21

## Statutes

18 Pa.C.S. §5101 .................................................................20

18 Pa.C.S. §5105 .................................................................20

## I.   Statement of the Case:

### A.   Procedural History:

Ruling on Defendants' motion to dismiss, the Court dismissed several of Plaintiff's claims. Plaintiff's remaining claims are that 1) prosecutors and agents threatened witnesses before the grand jury proceedings began, 2) prosecutors and agents destroyed proffer notes, and 3) agents maliciously prosecuted Plaintiff without probable cause.

### B.   Facts:

The grand jury issued a subpoena to the House Republican Caucus on February 25, 2008, for campaign material. Ex. 4. A man called House Republican Campaign Committee from Plaintiff's phone line to say that a delivery of boxes of campaign material would be made, AC ¶69, 114(d) and 115(f), Plaintiff was normally at his desk, ¶146, and campaign material was then moved to HRCC, ¶69.

During the grand jury proceedings, witness proffer notes were destroyed pursuant to OAG policy when witnesses testified before the grand jury. *See* AC ¶114. Judge Lewis opinions on notes (ex. 1-2); *Com.*

1

155a

*v. Feese*, 79 A.3d 1101 (Pa. Super.), reargument denied (2013), appeal denied, 94 A.3d 1007 (Pa. 2014).[1]

After the grand jury recommended the charges against Plaintiff, and Agent Fiore charged Plaintiff with obstruction of justice, hindering prosecution, and conspiracy to each. Ex. 6. Plaintiff claims that notes do not exist for meetings with three grand jury witnesses against him: Nathan Fineman (the messenger who moved boxes within Representative Perzel's office), Lori Lochetto (Perzel's secretary who had boxes moved to Perzel's office and then to HRCC), and George Matthews (the HRCC employee who testified that a man called to tell him to expect a delivery of boxes). AC ¶114. At no point does Plaintiff explain how the proffer notes of these witnesses would have helped him.

Judge Wenner found probable cause to file charges (ex. 6 pp. 1-2), Judge Wenner then declined to dismiss the case at Plaintiff's preliminary hearing (ex. 7 p. 131), and Judge Lewis also declined to

---

[1]Plaintiff erroneously states that Judge Lewis dismissed the Boxgate charges for his co-defendants, which Plaintiff states resulted from the destruction of notes. AC ¶154-55. Actually, Judge Lewis held (and the Superior Court agreed) that the destruction of any notes did not violate the law or OAG policy. Judge Lewis opined about the prudence behind the practice. At the guilty plea or sentencing for every co-defendant, the Commonwealth dropped the Boxgate charges.

2

dismiss the case on a habeas motion (ex. 3 p. 2). The OAG later dropped the charges.

## II.   Question Presented:

Does Plaintiff state a claim for relief? No.

## III.   Argument:

### A.   Plaintiff must plead facts that plausibly show why he is entitled to relief.

"A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth. of NY, NJ*, 598 F.3d 128, 134 (3d Cir. 2010). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The claim must be "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* This Court is "not bound to accept as true a legal conclusion couched as a factual allegation" *Id.* (quoting *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679.

"In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Shelley v. Wilson*, 339 Fed. Appx. 136, 137 n. 2 (3d Cir. 2009) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004)). In *Shelley*, the Third Circuit held that a district court properly considered a "police incident report filed by the victim, the

4

158a

criminal complaint and affidavit of probable cause for an arrest

warrant, the state court docket, and the Pennsylvania Superior Court's

decision affirming Shelley's judgment of sentence…" *Id.* at 137.

The Third Circuit explained:

> [T]he documents… were either referenced in
> Shelley's complaint, were matters of public
> record, and/or were integral to the false arrest
> claim. Accordingly, we have no difficulty
> concluding that the District Court properly
> considered the documents.

*Id.* at 137 n.2. *See also Griffin v. Walbert*, 2012 U.S. Dist. LEXIS 4961

at n.3 (M.D. Pa. Jan. 17, 2012) (considering warrant); *Bingaman v.*

*Bingaman*, 2009 U.S. Dist. LEXIS 68448 at n.1 & n.2 (M.D. Pa. Aug. 5,

2009) (judicial notice of dockets); *Kalomiris v. Monroe County*

*Syndicate*, 2009 U.S. Dist. LEXIS 1264 at n.8 (M.D. Pa. Jan. 8, 2009).

## B. Plaintiff must show that Defendants violated clearly established law.

"Qualified immunity gives government officials breathing room to

make reasonable but mistaken judgments about open legal questions."

*Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011). "The qualified

immunity standard 'gives ample room for mistaken judgments by

protecting all but the plainly incompetent or those who knowingly

5

violate the law.'" *Gilles v. Davis*, 427 F.3d 197, 203 (3d Cir. 2005) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

Officials have qualified immunity so long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts consider "the state of the existing law at the time of the alleged violation and the [specific] circumstances confronting the officer." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d. Cir. 2010).

The law is "clearly established" when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that [his conduct] violates that right." *Anderson v. Creighton*, 483 U.S. 635, 649 (1987). "'[T]he right allegedly violated must be established, 'not as a broad general proposition,' *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam), but in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official, [*Anderson*, 483 U.S. at 640]." *Reichle v. Howards*, 132 S. Ct. 2088, 2094 (2012).

The Supreme Court reiterated this year, "Qualified immunity is no immunity at all if clearly established law can simply be defined as

6

the right to be free from unreasonable searches and seizures." *City & Cnty. of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1776 (2015). In recent years and <u>even last month</u>, the Supreme Court has made clear that the analysis must be fact-specific. *See also Mullenix v. Luna*, 136 S.Ct. 305, 308 (Nov. 9, 2015) (per curiam) (Analysis "must be undertaken in light of the specific context of the case… Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.") (citations omitted); *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014) ("[D]oing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."); *al-Kidd*, 131 S. Ct. at 2084 ("We have repeatedly told courts… not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") (citations omitted).

In other words, not only must the constitutional standard be clearly established, but **the case law must be clear enough to show the prosecutors and agents that they, in fact, violated the constitution**. To defeat qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (per curiam) (unanimous). The Court further grants qualified immunity on questions where judges disagree: "[i]f judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." *Reichle*, 132 S. Ct. at 2096 (citation omitted).

The Supreme Court has repeatedly found that qualified immunity shields officials where circuit precedent is unclear on the point or distinguishable. *Mullenix*, 136 S.Ct. at 308-12; *Taylor v. Barkes*, 135 S.Ct. 2042 (2015) (per curiam) (unanimous); *Sheehan*, 135 S.Ct. 1765; *Carroll*, 135 S.Ct. at 350; *Lane v. Franks*, 134 S.Ct. 2369, 2383 (2014) (unanimous); *Reichle*, 132 S.Ct. at 2094.

## C. The law is not clear that *Brady* can be violated without a trial and conviction.

It is not clear that *Brady* can be violated without a trial and conviction. In fact, the clear weight of authority bars *Brady* claims

8

162a

without a trial and conviction. *Livers v. Schenck*, 700 F.3d 340, 359 (8th Cir. 2012); *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999); *Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998); *Rogala v. District of Columbia*, 161 F.3d 44, 55–56 (D.C.Cir.1998) (per curiam); *Taylor v. Waters*, 81 F.3d 429, 435–36 & n. 5 (4th Cir.1996); *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir.1988).

The same holds true for the alleged destruction of impeachment evidence because Plaintiff can't impeach witnesses who never testify at trial against him. *See Com. v. Feese*, 79 A.3d 1101, 1113 (Pa. Super. 2013) ("In any event, neither Haines, Culp, nor Cherry McGill actually testified against Appellant at his trial. Thus, any value of prior inconsistent statements as impeachment material was rendered moot by their absence."). Because Plaintiff did not have a trial, much less a conviction, Plaintiff cannot bring claims for fabrication or destruction of evidence.

### D.   The law is not clear that destruction of proffer notes violates due process.

The destruction of the notes as required by official OAG policy in no way violates clearly established law under *Brady*, and the Superior Court affirmed Judge Lewis's decision saying so. *See* Judge Lewis

9

opinions on notes (ex. 1-2); *Com. v. Feese*, 79 A.3d 1101 (Pa. Super.), reargument denied (2013), appeal denied, 94 A.3d 1007 (Pa. 2014). Put simply, the practice of destroying proffer notes is not a clearly unconstitutional practice such that the prosecutors and agents should have known that the Constitution required them to violate OAG policy.

Although Plaintiff did not file any motion alleging prosecutorial misconduct after severance of his case, all of his co-defendants did. In ruling on their motion, Judge Lewis extensively reviewed the questions of whether the destruction of proffer notes violated due process and held that "no due process violation took place." Ex. 1 p. 3. Although Judge Lewis's decision is not binding on Plaintiff or this Court, his conclusion and the Superior Court's decision to affirm show that the prosecutors and agents acted reasonably when they followed OAG policy to destroy the proffer notes.

Judge Lewis explained:

> This court wishes to emphasize that the destruction of the notes is not inherently improper. Given the dramatic and negative connotation of the phrase "destruction of evidence," it is important to bear in mind that the destruction of such notes by investigators in a criminal matter is a common, and prudent,

10

practice. Such notes are very often shorthand and incomplete in nature, intended to serve only as an aid to the investigator in the preparation of his or her formal report. Little good would be served, and much confusion and administrative difficulty would be created, by a rule requiring preservation and disclosure of both the investigative report and the rough notes which underlie it.

In this instance, this court finds that the Commonwealth did not miscarry its obligations under *Brady* by executing its policy with respect to the proffer notes. There is no evidence of record to suggest materially exculpatory information was suppressed or lost. Inasmuch as Defendants contend the notes might have provided evidence of prior inconsistent statements made by potential Commonwealth witnesses, this court finds that such evidence is preserved in the Report of Investigation and the notes of testimony of the grand jury proceedings. Indeed, the examples of prior inconsistent statements included by Defendants in their Motion demonstrate the fertile basis for cross examination supplied.

This court acknowledges the argument made by Defendants that not all the proffer interviews conducted were properly memorialized in the Report of Investigation and that the grand jury transcripts do not adequately capture possible underlying inconsistent statements.

11

165a

However, Defendants will have broad latitude on cross examination to explore any such statements and present issues of credibility to the jury.

Ex. 1 pp. 3-4. Judge Lewis later reiterated during Brett Feese's appeal:

[L]ittle good would be served, and much confusion and administrative difficulty would be created, by a rule requiring preservation and disclosure of both the investigative report and the rough notes which underlie it. …

The Appellant was provided with the Grand Jury transcripts of 94 witnesses which included witnesses who testified at trial. Defense counsel had ample opportunities to cross-examine witnesses based on inconsistent statements made before the Grand Jury and counsel exercised those opportunities. This Court finds that the materials disclosed to the defense were sufficient to survive a claim of a *Brady* violation. …

In disposing of the Joint Motion, this Court heard oral argument, reviewed the authority submitted by the parties, and reviewed the case record. This Court determined that a per se *Brady* violation had not occurred as the notes had been destroyed in accordance with OAG internal policy. Additionally, the evidence of record did not indicate that *Brady* material had been lost or suppressed. The Order stated that the defense would be afforded broad latitude on cross-examination during the trial and was afforded such latitude. Therefore, this Court finds that it

12

166a

> appropriately determined that an evidentiary had not been warranted in disposition of the Joint Motion. …
>
> The Court extensively evaluated the newly-disclosed documents to determine which of the suppressed materials would have been admissible, and, if admissible, would have been favorable to the defendant and material to the outcome of the trial.
>
> However, as previously expressed in this opinion, the evidence of record here did not indicate that *Brady* materials had been lost or suppressed. The defense was supplied with the OAG's ROI along with the Grand Jury transcripts of the testimony of 94 witnesses that included the transcript of each trial witness.

Ex. 2 pp. 9, 12-14.

On appeal, the Superior Court agreed, after quoting the OAG policy, that "the OAG policy <u>requires</u> the destruction of interview notes once details have been memorialized in the ROI, with the noted exception of signed and dated witness statements, and substantially verbatim memorializations of witness statements." *Feese*, 79 A.3d at 1110 (emphasis by Court). Under these rulings, it is clear that the prosecutors and agents did not violate clearly established law when

167a

they destroyed proffer notes as required by OAG policy. In fact, the clear law shows that their actions were reasonable.

## E. The law is not clear that any allegedly falsified or destroyed evidence was exculpatory.

Plaintiff does not explain what witnesses falsified their testimony against him at the prosecutors and agents' behest, much less plausibly show how the altered testimony would have made a difference at his trial (if he had one). Plaintiff mostly complains of exculpatory witnesses within his knowledge that he believes the prosecutors and agents should have presented before the grand jury, but Plaintiff does not show a *Brady* violation because he could have called every exculpatory witness at his trial.

Nor does Plaintiff show how the destroyed proffer notes would have been exculpatory for him. Notably, unlike every single co-defendant, Plaintiff did not challenge the destruction of the notes or make any *Brady* claim at all in his criminal case.

On Feese's appeal, the Superior Court recognized that the destroyed proffer notes could not have prevented the use of exculpatory witnesses because Feese could still call the witnesses to testify:

14

168a

> To the extent that they could have provided
> exculpatory testimony, there is nothing of record
> to indicate why these witnesses could not have
> been called by the defense, particularly since the
> transcripts of the Grand Jury were clearly
> available to the defense before trial, and these
> particular excerpts from the Grand Jury
> testimony were set forth in the defendants' Joint
> Motion to Dismiss and, thus, known to Appellant
> prior to his trial. It is only the prior statements,
> and not the witnesses, that would have been
> rendered unavailable if the OAG destroyed
> interview notes related to those witnesses.

*Feese*, 79 A.3d at n.7. The same holds true for Plaintiff. Plaintiff does

not plausibly show how the notes would have helped him.

In paragraph 114, Plaintiff claims that notes do not exist for

meetings with three grand jury witnesses against him: Nathan

Fineman (the messenger who moved boxes within Representative

Perzel's office), Lori Lochetto (Perzel's secretary who had boxes moved

to Perzel's office and then to the House Republican Campaign

Committee), and George Matthews (the HRCC employee who testified

that a man called telling him to expect a delivery of boxes). At no point

does Plaintiff explain how the proffer notes of these witnesses would

15

169a

have helped him at trial (if he had one). Thus, Plaintiff does not plead a *Brady* violation.

### F. The law is not clear that the notes were impeachment evidence.

The law is not clearly established that Plaintiff could have used the proffer notes for impeachment anyway. In Pennsylvania, "A written report which is only a summary of the words of the victim and not verbatim notes from the victim cannot be used to impeach the witness on cross-examination since it would be unfair to allow a witness to be impeached on a police officer's interpretation of what was said rather than the witness' verbatim words." *Com. v. Simmons*, 662 A.2d 621, 638 (Pa. 1995). *See also Flagg v. Wynder*, 2008 WL 861498, at *13-14 (E.D. Pa. Mar. 27, 2008) (citing *Simmons*); *Mustafa v. Superintendent, SCI Dallas*, 2004 WL 1078500, at *4 (E.D. Pa. May 13, 2004) *R&R adopted*, 2004 WL 1490399 (June 30, 2004).

In a recent, albeit unpublished opinion, the Superior Court strongly rejected an identical claim as "baseless":

> Instantly, the prosecutor's notes could not be used as impeachment evidence as a prior inconsistent statement because the notes were not verbatim. *Simmons, supra; Commonwealth v. Woods*, 710 A.2d 626, 630 (Pa.Super.1998)

16

> (summary of a witness' statement is inadmissible
> as impeachment evidence unless witness adopted
> that statement as his own); Pa.R.E. 613.
> Similarly, the prosecutor's notes could not be
> used as substantive evidence. *Commonwealth v.
> Lively*, 610 A.2d 7, 10 (Pa.1992) ("a prior
> inconsistent statement may be used as
> substantive evidence only when the statement is
> given under oath at a formal legal proceeding; or
> the statement had been reduced to a writing
> signed and adopted by the witness; or a
> statement that is a contemporaneous verbatim
> recording of the witness's statements."); Pa.R.E.
> 803.1. Moreover, the notes… are plainly work
> product and do not even bear any semblance of
> transcribed interviews with witnesses. …
> Appellant's claims to the contrary are baseless
> and border on frivolous. Thus, the prosecutor's
> handwritten notes were not improperly withheld.

*Com. v. LeBlanc*, 2015 WL 6663637, at *3-4 (Pa. Super. Sept. 2, 2015).

*See also Com. v. Lawson*, 2015 WL 6114513, at *6 (Pa. Super. July 30, 2015) ("The court properly prohibited defense counsel from trying to impeach Officer Sampson's credibility with statements the officer did not make or adopt.").

These unpublished Superior Court decisions are not binding on this Court, but they show that the agents and prosecutors acted reasonably in believing that—under the clearly established law—the

17

171a

proffer notes were not impeachment material. Under *Simmons*, which is binding, the prosecutors and agents did not violate clear law in destroying notes that Plaintiff could not use for impeachment even if he had a trial.

### G. The law is not clear that Plaintiff was seized.

Plaintiff does not allege any Fourth Amendment "seizure." The Third Circuit has recognized that a pre-filing arrest alone cannot support a malicious prosecution claim:

> While Wiltz's complaint does allege that she was arrested, it does not allege that she was incarcerated, required to post bond, maintain contact with Pretrial Services, refrain from traveling, or that she endured any other "post-indictment" deprivation of liberty as a result of the legal proceedings.

*Wiltz v. Middlesex Cnty. Office of Prosecutor*, 249 F. App'x 944, 949 (3d Cir. 2007). *See also Penberth v. Krajnak*, 347 F. App'x 827, 829 (3d Cir. 2009) (arrest <u>and</u> 35-40 minute detention insufficient); *Luck v. Mount Airy No. 1,* 901 F. Supp. 2d 547, 556 (M.D. Pa. 2012) (arrest not enough); *White v. Glenn*, 2014 WL 5431200, at n.4 (E.D. Pa. Oct. 27, 2014) (same); *Bartow v. Thomas*, 2014 WL 2993786, at *5 (W.D. Pa. July 2, 2014) (same).

Plaintiff was released on unsecured bail.[2] While some courts have held that <u>secured</u> bail can be a Fourth Amendment seizure, courts have repeatedly held that <u>unsecured</u> bail is not. *See Black v. Montgomery Cty.*, 2015 WL 5568388, at *3 (E.D. Pa. Sept. 21, 2015); *Collins v. Jones*, 2015 WL 790055, at *9 (E.D. Pa. Feb. 24, 2015); *Jones v. Barth*, 2015 WL 221079, at *4 (E.D. Pa. Jan. 15, 2015); *Schultz v. Hughesville Borough*, 2011 WL 3273076, at *8 (M.D. Pa. July 29, 2011); *Golya v. Golya*, 2007 WL 2301085, at *7 (M.D. Pa. Aug. 9, 2007); *Esposito v. Galli*, 2006 WL 2322487, at *9 (M.D. Pa. Aug. 9, 2006); *Ankele v. Hambrick*, 286 F. Supp. 2d 485, 497 (E.D. Pa. 2003) aff'd, 136 F. App'x 551 (3d Cir. 2005).

Plaintiff also alleges that he had to surrender his passport, but the law is not clearly established that requiring pre-approval for international travel or restricting travel to within the United States is a Fourth Amendment seizure. Plaintiff was free to move about the country. Accordingly, Plaintiff cannot show that he suffered a Fourth Amendment seizure under the clearly established law.

---

[2] https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-22-CR-0002524-2010

## H.   Any reasonable agent would have believed probable cause existed.

The grand jury issued a subpoena to the House Republican Caucus on February 25, 2008, for campaign material. Ex. 4. Plaintiff concedes that a man called the House Republican Campaign Committee from Plaintiff's phone line to tell the HRCC to expect a delivery of boxes of campaign material, AC ¶69, 114(d) and 115(f), Plaintiff was normally at his desk, ¶146, and boxes of campaign material was then moved to HRCC, ¶69. The agents clearly had probable cause to believe he obstructed justice, 18 Pa.C.S. §5101, hindered prosecution, 18 Pa.C.S. §5105, and conspired to do so, 18 Pa.C.S. §903.

Plaintiff must show "lack of probable cause." *Startzell v. City of Philadelphia*, 533 F.3d 183, 204 (3d Cir. 2008). "[T]he establishment of probable cause as to any one charge is sufficient to defeat [Plaintiff's] Fourth Amendment claims." *Id.* at n.14. The Third Circuit has explained:

> Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested.

20

174a

*U.S. v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). "A police officer may be liable for civil damages for an arrest if 'no reasonable competent officer' would conclude that probable cause exists." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (quoting *Malley*, 475 U.S. at 341).

Because "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction, ... the evidentiary standard for probable cause is significantly lower than the standard which is required for conviction." *Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005). The evidence here clearly meets this low bar.

Plaintiff's claims of innocence "do not go to the appropriate probable cause inquiry." *Griffin v. Walbert*, 2012 U.S. Dist. LEXIS 4961, *22 (M.D. Pa. Jan. 17, 2012). In *Griffin*, this Court, recognizing the objective standard for probable cause, held that claims of improper motive could not give rise to an inference that the officers lacked probable cause to arrest:

> Plaintiff's well-pleaded facts may point to
> unseemly behavior on the part of some public
> officials and questionable motivation for actions
> taken, but, within the relevant legal framework,
> they do not even create an inference of

21

175a

> misconduct which would entitle the Plaintiff to
> relief.

*Id.* at \*22-23.

Whether Plaintiff is actually guilty is not for this Court to decide. The fact is that the agents had reason to believe that Plaintiff violated the law. *See also Stolarik v. Wilkes-Barre*, 2013 U.S. Dist. LEXIS 155788, \*12 (M.D. Pa. Oct. 30, 2013) ("Stolarik might have turned out to be correct, but at the time of the arrest it was reasonable for an officer confronted with these facts to discount Stolarik's statements as self-serving.").

## I. The agents did not initiate the prosecution.

In ruling on the motion to dismiss, this Court held "an officer may… be considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." *Zimmerman* v, 2015 WL 539783, at \*10 (emphasis added) (citation omitted).

Notably, the destruction of notes could not possibly fall within this exception and the prosecutors and agents destroyed the notes pursuant to OAG policy. It is implausible that the agents destroyed the notes

22

176a

without prosecutor knowledge; in fact, Plaintiff found out that the notes were destroyed <u>from the prosecutors</u>.

As for falsification of evidence, Plaintiff does not allege that the agents provided false information <u>to the prosecutors</u> or otherwise interfered with prosecutorial discretion. Rather, Plaintiff alleges the opposite: that the agents worked in tandem with the prosecutors to provide false information to the Court.

It is simply implausible that the agents duped the prosecutors in any way into taking Plaintiff's case; to the contrary, Plaintiff claims that the prosecutors were in on it. Accordingly, the agents cannot be liable for malicious <u>prosecution</u> under the clearly established law.

## J.    <u>Agents Fiore and Speaks' actions are presumed reasonable.</u>

The law presumes that Agents Fiore and Speaks acted reasonably. The Third Circuit has held that, "a police officer who relies in good faith on a prosecutor's legal opinion that the arrest is warranted under the law is presumptively entitled to qualified immunity from Fourth Amendment claims premised on a lack of probable cause." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 255-56 (3d Cir. 2010). Likewise, in the case of an arrest warrant approved by a judge, "only where the

warrant application is 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable,' will the officer lose the shield of immunity." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). *See also Kelly*, 622 F.3d at 254-55 (recognizing *Malley* is still good law).

The basis for arrest was confirmed when Judge Wenner  initially found probable cause to file charges (ex. 6 pp. 1-2), Judge Wenner later declined to dismiss the case at a preliminary hearing (ex. 7 p. 131), and Judge Lewis also declined to dismiss the case on a habeas motion (ex. 3 p. 2). As this Court has recognized, these determinations are "very strong evidence" of probable cause. *Zimmerman*, 2015 WL 539783, at *5. For qualified immunity purposes, these determinations are enough to show that Agents Fiore and Speaks are not clearly incompetent—a very low bar. Plaintiff does not overcome their presumption of reasonableness under *Kelly.*

### K.  It is implausible that Defendants fabricated evidence *before the grand jury was empaneled.*

This Court initially found "that a fuller record is necessary before it can decide whether the prosecutorial defendants are entitled to [absolute] immunity on claims that they fabricated evidence prior to the

initiation of the grand jury proceedings." *Zimmerman*, 2015 WL 539783, at *8 (emphasis added). However, it is clear that all evidence against Plaintiff surfaced after the grand jury proceedings began as Plaintiff was charged with moving boxes to hide evidence in violation of February 25th, 2008, <u>grand jury subpoena</u>. Ex 4 & 5 (2-25-08 & 2-29-08 subpoenas). Accordingly, the prosecutors are absolutely immune for all claims of evidence fabrication.

### L.   <u>It is implausible that then-AG Corbett knew of fabrication or destruction of evidence.</u>

In paragraphs 87-90, Plaintiff asserts that then-AG Corbett and not-yet AG Kelly knew of and directed the fabrication and destruction of evidence. These allegations cannot survive under *Iqbal*. The Court in *Iqbal* rejected similar conclusory allegations that AG Ashcroft and FBI Director Mueller knew of and directed Iqbal's harsh treatment for discriminatory reasons. 556 U.S. at 680-81. Plaintiff's conclusory allegations of knowledge and direction must also fail.

Plaintiff's allegations are implausible. Notably, Plaintiff lumps Corbett and Kelly in these paragraphs as one in the same even though, as this Court has recognized, Kelly did not become AG until years after Plaintiff was charged. Plaintiff does not claim that Corbett participated

in witness interviews or personally destruction notes. Plaintiff simply does not show that Corbett knew of exculpatory or fabricated evidence. With no idea what level of involvement Corbett has, Plaintiff simply guesses (as he guessed with Kelly). These conclusory allegations cannot suffice under *Iqbal*.

## IV. Conclusion:

For these reasons, this Court should dismiss all claims.

Respectfully submitted,

Lavery Law

s/ Frank J. Lavery, Jr.
Pennsylvania Bar No. 42370

s/ Josh Autry
PA Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
jautry@laverylaw.com
Counsel for Borough of Starrucca

Date: December 14, 2015

### Certification of Counsel

I certify that this brief complies with the word limit in Local Rule 7.8. The brief contains 4,989 words. I relied upon the word count feature in Microsoft Word to obtain this number.

<u>s/ Josh Autry</u>

Dated: December 14, 2015

## Certificate of Service

I certify that on this date, I served a true and correct copy of this filing through this Court's electronic case filing system to Devon M. Jacob, Esquire.

<div align="right">

s/ Amyra Wagner
Legal Secretary for Josh Autry

</div>

Date: December 14, 2015

FILE COPY

*Clerks*

| COMMONWEALTH OF PENNSYLVANIA | : IN THE COURT OF COMMON PLEAS |
| | : DAUPHIN COUNTY, PENNSYLVANIA |
| VS. | : |
| | : |
| | : |
| BRIAN J. PRESKI | : NO. 2583 CR 2010 |
| SAMUEL C. STOKES | : NO. 2584 CR 2010 |
| BRETT O. FEESE | : NO. 2585 CR 2010 |
| JILL A. SEAMAN | : NO. 2586 CR 2010 |
| DONALD H. McCLINTOCK | : NO. 2587 CR 2010 |
| PAUL E. TOWHEY | : NO. 2588 CR 2010 |
| JOHN M. PERZEL | : NO. 2589 CR 2010 |
| ELMER L. BOWMAN | : NO. 2590 CR 2010 |
| ERIC S. RUTH | : NO. 2591 CR 2010 |

## MEMORANDUM ORDER

AND NOW, this 29th day of July, 2011, upon consideration of Defendants' Joint

Motion to Dismiss Due to Prosecutorial Misconduct, filed July 1, 2011, the supplements and

responses thereto, and following oral argument on the matter, IT IS HEREBY ORDERED said

Motion is DENIED.

Defendants contend that the destruction of so called "proffer notes" by the Office

of the Attorney General contravenes the mandate of, *inter alia, Brady v. Maryland*, 373 U.S. 83

(1963) with respect to disclosure by the prosecution of exculpatory evidence. While Defendants'

trenchant argument on this matter is well-taken, this court cannot agree that Defendants' right to

due process has been violated.

As the Pennsylvania Supreme Court has written:

> The law governing alleged Brady violations is well-settled. In Brady, the
> United States Supreme Court held that the suppression by the prosecution of
> evidence favorable to an accused upon request violates due process where the
> evidence is material either to guilt or to punishment, irrespective of the good

1

183a

faith or bad faith of the prosecution. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused and that the duty may encompass impeachment evidence as well as directly exculpatory evidence.

*Commonwealth v. Lambert*, 884 A.2d 848, 853-854 (Pa. 2005)(internal citations and quotations omitted). The *Lambert* court continued:

On the question of materiality, the [Supreme Court of the United States] has noted that evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. The materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. Rather, the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Thus, there are three necessary components that demonstrate a violation of the Brady strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued.

*Id.*(internal citations and quotations omitted). However, the prosecution's duty under *Brady* and its progeny is not without limit. As the Pennsylvania Supreme Court noted:

[*B*]*rady* does not grant a criminal defendant unfettered access to the Commonwealth's files. *See, Commonwealth v. Edmiston*, 578 Pa. 284, 851 A.2d 883, 887 n.3 (Pa. 2004) (defendant has no general right under the Constitution or Brady to search Commonwealth files); *Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167, 1176 (Pa. 1999) ("The Commonwealth is, in the first instance, the judge of what information must be disclosed. ... 'Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance.'") (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 59, 107 S. Ct. 989, 1002, 94 L. Ed. 2d 40 (1987)); *Commonwealth v. Counterman*, 553 Pa. 370, 719 A.2d 284, 297 (Pa. 1998), cert. denied, 528 U.S. 836, 120 S. Ct. 97, 145 L. Ed. 2d 82 (1999) (Brady is not a general rule of discovery                    in                    criminal                    cases).

2

184a

*Lambert*, 884 A.2d 848, 853-854 (Pa. 2005). Additionally, "*Brady* does not require the disclosure of information that is not exculpatory but might merely form the groundwork for possible arguments or defenses." *Commonwealth v. Paddy*, 15 A.3d 431, 451 (Pa. 2011).

As a preliminary matter, this court recognizes that this is an atypical iteration of a *Brady* claim in several important respects. First, the evidence in question has been destroyed and cannot be evaluated to determine its potential exculpatory or impeachment value. Second, this claim arises prior to trial and so the retrospective analysis usually employed by courts, which examines any potential prejudice in the context of a jury verdict, is unavailable here[1]. That notwithstanding, the existing precedent, cited above, which describes the scope of the *Brady* duty impels this court to find no due process violation took place.

Here, the "proffer notes" in question were destroyed pursuant to an internal policy of the Office of the Attorney General. That policy also prescribed that "[a]ny details within original handwritten notes will be transposed into [an] investigative report[2]." This court cannot agree with Defendants that the destruction of the notes constitutes a *per se* due process violation.

This court wishes to emphasize that the destruction of the notes *is not inherently improper*. Given the dramatic and negative connotation of the phrase "destruction of evidence," it is important to bear in mind that the destruction of such notes by investigators in a criminal matter is a common, and prudent, practice. Such notes are very often shorthand and incomplete in nature, intended to serve only as an aid to the investigator in the preparation of his or her formal report. Little good would be served, and much confusion and administrative difficulty

---

[1] Indeed, although not cited by any party, this court notes the issue would perhaps better have been raised under the framework announced in *Commonwealth v. Snyder*, 963 A.2d 396 (Pa. 2011), which concerns the destruction of physical evidence.
[2] *See*, Commonwealth's Response to Defendant's Joint Motion to Dismiss Due to Prosecutorial Misconduct, July 15, 2011, "Exhibit A."

3

would be created, by a rule requiring preservation and disclosure of both the investigative report and the rough notes which underlie it.

In this instance, this court finds that the Commonwealth did not miscarry its obligations under *Brady* by executing its policy with respect to the proffer notes. There is no evidence of record to suggest materially exculpatory information was suppressed or lost. Inasmuch as Defendants contend the notes might have provided evidence of prior inconsistent statements made by potential Commonwealth witnesses, this court finds that such evidence is preserved in the Report of Investigation and the notes of testimony of the grand jury proceedings. Indeed, the examples of prior inconsistent statements included by Defendants in their Motion demonstrate the fertile basis for cross examination supplied.

This court acknowledges the argument made by Defendants that not all the proffer interviews conducted were properly memorialized in the Report of Investigation and that the grand jury transcripts do not adequately capture possible underlying inconsistent statements. However, Defendants will have broad latitude on cross examination to explore any such statements and present issues of credibility to the jury.

Because this court cannot find that the destruction of the proffer notes in question rose to the level of a due process violation, Defendants' Motion must be denied.

Richard A. Lewis, Judge

4

COMMONWEALTH OF PENNSYLVANIA     : IN THE COURT OF COMMON PLEAS
                                            : DAUPHIN COUNTY, PENNSYLVANIA
                                            :

                     V.                           :
                                            : NO. 338 MDA 2012
BRETT O. FEESE                            : (NO. 2585 CR 2010)
                                            : (NO. 1927 CR 2011)

## MEMORANDUM OPINION

       Appellant, Brett O. Feese, appeals his conviction of the following charges at docket

number 2585 CR 2010: six (6) counts of Conflict of Interest,[1] six (6) counts of Theft by

Unlawful Taking or Disposition,[2] six (6) counts of Theft of Services,[3] six (6) counts of Theft by

Deception,[4] six (6) counts of Theft by Failure to Make Required Disposition of Funds Received,[5]

and six (6) counts of Criminal Conspiracy.[6] Defendant also appeals his conviction of a single

count each of the following charges at docket number 1927 CR 2011: Hindering Apprehension

or Prosecution,[7] Obstructing Administration of Law or Other Governmental Function,[8] and two

(2) counts of Criminal Conspiracy.[9]

       Appellant raises seven issues on appeal. Appellant's Statement of Matters Complained

of on Appeal include: 1) whether the destruction by the Office of Attorney General (OAG) of

pre-trial interview notes, proffer notes or summaries of witness interviews which deprived

Defendant of any opportunity to review such notes or to effectively cross-examine such

witnesses at trial concerning such prior statements, constituted a violation of the United States

Constitution as interpreted by the United States Supreme Court in *Brady v. Maryland*, 373 U.S.

---

[1] 65 Pa.C.S. § 1103(a).
[2] 18 Pa.C.S. § 3921(a).
[3] 18 Pa.C.S. § 3926(a).
[4] 18 Pa.C.S. § 3922(a)(1).
[5] 18 Pa.C.S. § 3927(a).
[6] 18 Pa.C.S. § 903.
[7] 18 Pa.C.S. § 5105.
[8] 18 Pa.C.S. § 5101.
[9] 18 Pa.C.S. § 903.

83, 83 S.Ct. 1194 (1983), *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763 (1972), *Smith v. Cain*, 565 U.S. ___, 132 S.Ct. 627 (2012), and numerous other federal and state judicial decisions; the Constitution of the Commonwealth of Pennsylvania, the Pennsylvania Crimes Code, the Pennsylvania Rules of Civil Procedure, the Pennsylvania Rules of Professional Conduct, and clear, written policy of the Office of Attorney General; 2) whether the Pennsylvania House of Representatives has the constitutional and statutory right to regulate the working hours of its own employees; 3) whether it was error for the trial Court to permit the OAG to present evidence through multiple witnesses that elected members or employees of the Pennsylvania House Republican Caucus (HRC) committed the crimes of Conflict of Interest, Theft, and/or Conspiracy if they authorized or engaged in political or campaign activities during a "normal workday" as defined by "regular" daily hours, rather than by reference to the official HRC work schedule of 37.5 hours per week; 4) whether there was sufficient evidence presented by the prosecution at trial to prove beyond d a reasonable doubt that the Defendant authorized or directed any employee of the HRC to devote less than 37.5 hours per week to Legislative duties; 5) whether the Conflict of Interest provisions of the Public Employees Ethics Act, 65 Pa.C.S.A. §§1102 and 1103(a), are unconstitutionally vague and overbroad, or vague and overbroad as applied, under the United States and Pennsylvania Constitutions; 6) whether the trial Court erred in permitting prosecution witnesses to testify that the Defendant "had to know" about specific decisions, conversations, actions, contracts, or other matters of fact constituting material evidence of crimes charged; and, 7) whether sufficient evidence was presented by the prosecution at trial to prove beyond a reasonable doubt that the Defendant was guilty of any count of the Information charging Obstructing Administration of Law, Hindering Apprehension, or Conspiracy.

This opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

## FACTUAL BACKGROUND

Based on a criminal complaint filed on November 4, 2009, Appellant was charged with sixty-two (62) counts of Conflict of Interest, Theft, Obstructing the Administration of Law, Hindering Apprehension or Prosecution, and Conspiracy. Appellant was initially charged with nine (9) co-defendants[10] whose cases were disposed of prior to and during trial by way of guilty pleas. Appellant proceeded to trial on forty (40) of the initial sixty-two criminal charges along with co-defendant Jill Seaman. A jury trial was held for twenty-three (23) days spanning from September 19, 2011 through November 8, 2011. The jury convicted Appellant of all forty (40) charges.

The instant Appeal follows a lengthy jury trial during which a voluminous amount of evidence was presented and Defendant, Brett O. Feese (Feese/Appellant), was ultimately convicted of the crimes listed above. The convictions stem from the use of public funds to pay for the development of computer programs for use in campaign-related activities, the use of government staff, equipment and facilities to assist in the development of such programs, and the use of government staff to perform campaign-related activities during their HRC workday, by Appellant and the other named Defendants. The public funds were used to pay for contracts entered into by the HRC with GCR and Associates (GCR), Aristotle International (Aristotle), Labels and Lists for the development of the computer systems and databases which were fed data

---

[10] John M. Perzel, Docket No. 2589 CR 2010; Brian J. Preski, Docket No. 2583 CR 2010; Eric S. Ruth, Docket No. 2591 CR 2010; Elmer Bowman, 2590 CR 2010; Samuel Stokes, Docket No. 2584 CR 2010; Paul E. Towey, Docket No. 2588 CR 2010; Donald H. McClintock, Docket No. 2587 CR 2010; John R. Zimmerman, Docket No. 2524 CR 2010; Jill Seaman, Docket No. 2586 CR 2010.

3

that had been obtained by public funds ostensibly for legislative purposes. Trial evidence established that HRC District Office (DO) staff as well as the Republican Information Technology Staff (RITS) staff and equipment were used to further the development of the campaign-related technology and assist in political campaigns. Such campaign-related work whether it was work on particular political races, work with HRC contractors GCR, Aristotle or Labels and Lists, or fundraising activities was often conducted during the workday when HRC employees were to have been carrying out the legislative duties for which they were being paid with public funds. The value of the services paid for with public funds was worth several million dollars.

With respect to the timeframe that pertains to the instant case, Appellant held the following positions as a public employee: an elected member of the Pennsylvania House of Representative who held various leadership positions with the HRC, Director of the House Republican Campaign Committee (HRCC) and Chief Counsel for the HRC.

## PROCEDURAL HISTORY

On July 9, 2010, the OAG filed a criminal Information charging Appellant with nine (9) counts of Conflict of Interest, nine (9) counts of Theft by Unlawful Taking or Disposition, nine (9) counts of Theft by Deception, nine (9) counts of Theft of Services, nine (9) counts of Theft by Failure to Make Required Disposition of Funds Received, one (1) count of Hindering Apprehension or Prosecution, one (1) count of Obstructing Administration of Law or Other Governmental Function, and eleven (11) counts of Criminal Conspiracy, for a total of sixty-two (62) criminal charges[11]. Additionally, the OAG filed a criminal information on May 11, 2011 charging Appellant with a single count each of the offense of Hindering Apprehension or

---

[11] These charges are found at Dauphin County Docket Number 2010 C.R. 2585 and relate to the years 2001-2007.

4

Prosecution, Obstructing Administration of Law or Other Governmental Function, and two (2) counts of Criminal Conspiracy[12].

The OAG did not move to trial on twenty-two (22) counts that had been presented in the criminal information. Consequently, at the time of sentencing, the OAG moved to *nol pros* three (3) counts of conflict of interest, three (3) counts of Theft by Unlawful Taking or Disposition, three (3) counts of Theft of Services, three (3) counts of Theft by Deception, three (3) counts of Theft by Failure to Make Required Disposition of Funds Received, one (1) count of Hindering Apprehension or Prosecution, one (1) count of Obstructing Administration of Law or Other Governmental Function, three (3) counts of Criminal Conspiracy (Conflict of Interest/Theft), one (1) count of Criminal Conspiracy (Hindering Apprehension or Prosecution), and one (1) count of Criminal Conspiracy (Obstructing Administration of Law or Other Governmental Function). (Notes of Testimony Sentencing[13] at 5).

Appellant was sentenced to an aggregate of not less than four (4) years nor more than fourteen (14) years incarceration in a state correctional institution followed by state probation and was also ordered to pay restitution in the amount of one million dollars ($1,000,000.00) along with court costs and fines.

On February 13, 2012, Appellant filed a Notice of Appeal to the Pennsylvania Superior Court, and on February 17, 2012, this Court entered an Order which directed Appellant to file a statement of matters complained of on appeal within twenty one (21) days from the date of the Order. Additionally, the Order directed the appellant to provide a brief within twenty one (21) days of the filing of the statement of matters and thereafter, the Commonwealth was directed to

---

[12] These charges are found at Dauphin County Docket Number 2011 C.R. 1927 and relate to the years 2007-2009.

[13] Hereinafter N.T.S.

file a response within twenty one (21) days. The appellant filed a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) on March 8, 2012. On March 27, 2012, Appellant filed a Brief in Support of Statement of Matters Complained of on Appeal. On April 11, 2012, the Commonwealth filed a Brief in Response to Defendant's Brief in Support of Statement of Matters Complained of on Appeal. On April 13, 2012, Appellant filed a supplemental Brief in Support of Matters Complained of on Appeal.

<div align="center">DISCUSSION</div>

In his first issue on appeal, appellant contends that the destruction of witness interview notes, proffer notes or summary notes of witness interviews deprived appellant the opportunity to review the notes and thus, effectively cross-examine trial witnesses concerning prior inconsistent statements. Appellant argues that the action by the OAG in destroying the notes contravenes the United States Constitution, the Commonwealth of Pennsylvania's Constitution, the Pennsylvania Crimes Code, Rules of Criminal Procedure, Rules of Professional Conduct and the written policy of the OAG. Specifically, Appellant states that the OAG Report of Investigation (ROI) in this matter included partial summaries of interviews with 89 witnesses but does not include any summary of any interview of 94 other witnesses who testified before the grand jury, or the proffer statements or interview statements for the 89 witnesses whose statements were summarized in the ROI. Appellant also states that in a June 22, 2010 letter the OAG provided a list of 85 potential Commonwealth trial witnesses, but of the 85 possible witnesses listed, the ROI did not have a summary of any interview with 64 of them.

Appellant argues that the destruction of the notes of interview for the 94 individuals who testified before the grand jury violated Pennsylvania Rule of Criminal Procedure 573, the OAG's

<div align="center">6</div>

<div align="center">**6a**</div>

<div align="right">192a</div>

own policy set forth in OAG Chief Memorandum 2001-02, Pennsylvania law and the due

process principles espoused by the United States Supreme Court in *Brady v. Maryland*, 373 U.S.

83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972).

Pennsylvania Rule of Criminal Procedure 573 governs Pretrial Discovery and Inspection

in criminal cases.[14] In its Supplemental Brief in Support of Matters Complained of on Appeal,

Appellant argues that Pa.R.Crim.P. 573(B)(2)(a) is the provision which is applicable to the issue

raised on appeal concerning the destruction of notes by the Commonwealth. Rule 573(B)(2)(a)

provides:

> (B) Disclosure by the Commonwealth.
>
> (2) *Discretionary With the Court.*
>
> (a) In all court cases, except as otherwise provided in Rule 230
> (Disclosure of Testimony Before Investigating Grand Jury), if the
> defendant files a motion for pretrial discovery, the court may order
> the Commonwealth to allow the defendant's attorney to inspect and copy
> or photograph any of the following requested items, upon a showing that
> they are material to the preparation of the defense, and that the
> request is reasonable:
>
> (i) the names and addresses of eyewitnesses;
>
> (ii) all written or recorded statements, and substantially verbatim
> oral statements, of eyewitnesses the Commonwealth intends to call at
> trial;
>
> (iii) all written and recorded statements, and substantially verbatim
> oral statements, made by co-defendants, and by co-conspirators or
> accomplices, whether such individuals have been charged or not; and
>
> (iv) any other evidence specifically identified by the defendant,
> provided the defendant can additionally establish that its disclosure
> would be in the interests of justice.

Both parties cite to the case of *Commonwealth v. Appel*, for the proposition that pretrial

statements of witnesses are discoverable which: (1) have been reduced to writing; (2) relate to

---

[14] Pa.R.Crim.P. 573.

the witness' testimony at trial, and (3) are signed, adopted or otherwise shown to be substantially verbatim statements of that witness. *See Appel*, 689 A.2d 891, 907 (Pa. 1997) *citing Commonwealth v. Brinkley*, 505 Pa. 442, 480 A.2d 980 (1984). The Commonwealth acknowledges its obligations under Rule 573, as a general proposition, and under *Brady* and its progeny, by stating that *"Brady"* material must always be disclosed to the defendant. (Commonwealth's Brief in Response to Def. Brief in Support of Matters, p. 3, fn.1). However, the Commonwealth argues that the notes at issue on appeal were never of a nature that they would constitute proper discovery material. The OAG contends that the discussions with the witnesses referred to by Appellant took place in the presence of counsel and were part of negotiations with respect to the disposition of any possible criminal liability in their particular individual circumstances. The OAG argues that the discussions at issue were not formal interviews which would be recorded in an investigatory report, and any notes made were not intended as "an accurate and comprehensive memorialization of the contents of those discussions."

In arguing its position that the documents at issue were discoverable, Appellant attempts to apply a ruling by the Hon. Barry F. Feudale[15] issued on November 4, 2009, in the case of *Commonwealth v. Michael Veon*, Dauphin County No. 4656-2008 which was implemented by this Honorable Court on November 12, 2009. Judge Feudale's Opinion and Order addressed the discoverability of "proffer statements" and/or "proffer interview notes," or other notes and/or summaries of witness interviews. Judge Feudale's ruling in *Veon* ordered that the OAG provide to counsel for the Defendant "copies of all written or recorded statements, and substantially verbatim oral statements, of all witnesses the Office of Attorney General intends to call at trial.

---

[15] Presiding Judge of the 28th Statewide Investigating Grand Jury.

Such statements shall include the so-called "proffer statements" or "proffer interview notes."[16] Appellant argues that the OAG was required to disclose such documents in the instant matter as they are discoverable under Rule 573. Appellant further claims that by failing to do so, and by destroying certain documents, the OAG committed prosecutorial misconduct and violated Due Process. However, this Court fails to see how the consideration of a specific discovery request by counsel for an entirely different defendant, in an entirely different criminal prosecution that was based on a distinct factual scenario, can be applied and binding on this Court in this case.

As pointed out by this Court in its Memorandum Order dated July 29, 2011, which addressed a Joint Motion to Dismiss Due to Prosecutorial Misconduct, little good would be served, and much confusion and administrative difficulty would be created, by a rule requiring preservation and disclosure of both the investigative report and the rough notes which underlie it. Further, compelling disclosure under Rule 573(B)(2)(a), which Defendant referred to in his Supplemental Brief in Support of Statement of Matters Complained of on Appeal, is discretionary with the Court.

Additionally, Appellant contends that the OAG intentionally destroyed written proffer statements and/or notes of proffer interviews after the rulings were made in _Veon_ to conceal and destroy evidence favorable to the Defendant which actions resulted in gross prosecutorial misconduct. However, as the Commonwealth posits, and this Court agrees, the Commonwealth acted in accordance with its own internal policy as established in OAG Chief Memorandum 2001-02 which was effective August 1, 2001. That policy prescribes that "[a]ny details within original handwritten notes will be transposed into [an] investigative report. When an

---

[16] _Commonwealth v. Michael Veon_, Dauphin County Docket No. 2008 C.R. 4656, Nov. 12, 2009.

investigative report is approved…the original investigative notes will be destroyed."[17] Whether

the procedures in Memorandum 2001-02 were not followed by individuals involved in the *Yeon*

prosecution thereby resulting in the existence of proffer notes is of no moment in the present

matter.

Next, we will address whether Appellant was entitled to the documents at issue pursuant

*Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). In

Pennsylvania, when a claim has been made that the prosecution has withheld evidence for which

it had an obligation to disclose, the claim is examined in accordance with the three-prong test

established by *Brady* and its progeny: (1) whether the evidence at issue was favorable to the

accused, either because it is exculpatory or because it impeaches; (2) whether the evidence was

suppressed by the prosecution, either willfully or inadvertently; and (3) whether prejudice ensued

to the defendant. *Commonwealth v. Paddy*, 15 A.3d 431, 450 (Pa. 2011). The Supreme Court of

Pennsylvania surveyed the Commonwealth's caselaw interpreting *Brady* and explained:

> The law governing alleged Brady violations is well-settled. In Brady, the
> United States Supreme Court held that the suppression by the prosecution of
> evidence favorable to an accused upon request violates due process where the
> evidence is material either to guilt or to punishment, irrespective of the good
> faith or bad faith of the prosecution. The Supreme Court subsequently held
> that the duty to disclose such evidence is applicable even if there has been no
> request by the accused and that the duty may encompass impeachment
> evidence as well as directly exculpatory evidence.

*Commonwealth v. Lambert*, 884 A.2d 848, 853-854 (Pa. 2005)(internal citations and quotations

omitted). The *Lambert* court continued:

> On the question of materiality, the [Supreme Court of the United States] has
> noted that evidence is material if there is a reasonable probability that, had the

---

[17] *See*, Defendant's Brief in Support of Matters Complained of on Appeal, p.7.

evidence been disclosed to the defense, the result of the proceeding would have been different. The materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. Rather, the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Thus, there are three necessary components that demonstrate a violation of the Brady strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued. *Id.* (internal citations and quotations omitted).

However, the prosecution's duty under *Brady* and its progeny is not without limit. As the Pennsylvania Supreme Court noted:

[B]rady does not grant a criminal defendant unfettered access to the Commonwealth's files. *See, Commonwealth v. Edmiston,* 578 Pa. 284, 851 A.2d 883, 887 n.3 (Pa. 2004) (defendant has no general right under the Constitution or Brady to search Commonwealth files); *Commonwealth v. Williams,* 557 Pa. 207, 732 A.2d 1167, 1176 (Pa. 1999) ("The Commonwealth is, in the first instance, the judge of what information must be disclosed. ... 'Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance.'") (quoting *Pennsylvania v. Ritchie,* 480 U.S. 39, 59, 107 S. Ct. 989, 1002, 94 L. Ed. 2d 40 (1987)); *Commonwealth v. Counterman,* 553 Pa. 370, 719 A.2d 284, 297 (Pa. 1998), cert. denied, 528 U.S. 836, 120 S. Ct. 97, 145 L. Ed. 2d 82 (1999) (Brady is not a general rule of discovery in criminal cases).

Appellant relies on the act of destroying the notes at issue as the basis for his allegation that a *Brady* violation has been committed by the OAG. Appellant argues that the destroyed notes may have included exculpatory or impeachment evidence which defense counsel was not given that could have provided information on which to cross-examine trial witnesses. Appellant presents examples of inconsistent statements by witnesses which it uncovered in the transcripts of those particular witnesses' Grand Jury testimony to assert the position that such exculpatory or impeachment evidence would have appeared in the proffer notes or notes of interviews.[18] Appellant argues that Pennsylvania Rule of Evidence 613 envisions the ability to cross examine

---

[18] *See* Defendant's Brief in Support of Matters Complained of on Appeal pp. 10-12.

11

a witness regarding prior inconsistent statements and this right to cross examine in this manner was thwarted by the destruction of the documents at issue. Further, Appellant contends that no legitimate law enforcement purpose was served by the destruction of the notes. Appellant points to recent Federal caselaw, Pennsylvania criminal statutes, and a Pennsylvania Rule of Professional responsibility to argue how the actions of the OAG were intentional subversion of *Brady* such that Appellant was denied a fair trial.

The Commonwealth argues that Appellant's claim fails the three-prong *Brady* test. The Commonwealth states that it discharged its duty under Pa.R.Crim.P. 573, *Brady* and its progeny. The Commonwealth argues that Appellant bore the burden of establishing a *Brady* violation and a right to relief thereunder. The Commonwealth contends that Appellant has failed to specifically identify *Brady* materials which have been suppressed, rather, it argues that Appellant is speculating about what might have been in the destroyed notes. The Commonwealth points out that Appellant's examples of witnesses making inconsistent statements which would be material to use for impeachment purposes were gleaned from Grand Jury transcript testimony that was provided by the OAG.

The Appellant was provided with the Grand Jury transcripts of 94 witnesses which included witnesses who testified at trial. Defense counsel had ample opportunities to cross-examine witnesses based on inconsistent statements made before the Grand Jury and counsel exercised those opportunities. This Court finds that the materials disclosed to the defense were sufficient to survive a claim of a *Brady* violation.

Finally, with respect to this issue on appeal, Appellant also argues that the denial of an evidentiary hearing on the Joint Motion to Dismiss Due to Prosecutorial Misconduct (Joint

12

Motion) which raised the issue of the destruction of notes prior to trial was improper as a hearing was necessary to resolve the issue of the extent of the prosecutorial misconduct.

In disposing of the Joint Motion, this Court heard oral argument, reviewed the authority submitted by the parties, and reviewed the case record. This Court determined that a *per se Brady* violation had not occurred as the notes had been destroyed in accordance with OAG internal policy. Additionally, the evidence of record did not indicate that *Brady* material had been lost or suppressed. The Order stated that the defense would be afforded broad latitude on cross-examination during the trial and was afforded such latitude. Therefore, this Court finds that it appropriately determined that an evidentiary had not been warranted in disposition of the Joint Motion.

Appellant also supports his argument by citing to Federal cases.[19] A review of the cases reveals that they are factually distinguishable to the instant matter and not controlling law in Pennsylvania.

In *Cain* and *Kohring*, the respective Courts determined that evidence which should have been discoverable under *Brady* had been suppressed by the prosecuting authority. In *Cain*, the State of Louisiana did not dispute that type-written investigative notes of interviews with the prosecution's only eyewitness were favorable to the defendant and that they had not been disclosed to the defense counsel. *Cain*, 181 L.Ed.2d at 574. Also in *Cain*, the State of Louisiana obtained its conviction on the testimony of a single eyewitness who the U.S. Supreme Court determined that the witness had given statements to the police which were contradictory to his trial testimony and that the impeachment evidence would have established a reasonable

---

[19] *Smith v. Cain*, 565 U.S. ____, 132 S.Ct. 627 (2012); *United States v. Kohring*, 637 F.3d 895 (9th Cir. 2011); *United States v. Stevens*, (Crim. Case No. 08-231 (D.D.C)).

probability of a different verdict. In the present case, the vast amount of testimonial and documentary evidence presented by the OAG in prosecution of Appellant is in significant contrast to the case against the defendant in *Cain*. In the instant case, the evidence presented to the jury was comprised of numerous testifying witnesses as well as a voluminous amount of documents, as compared to the single eyewitness in *Cain*. In *Kohring*, the 9th Circuit Appellate Court also determined that *Brady* materials in the nature of thousands of pages of documents including handwritten notes, "FBI 302 reports," emails, memoranda and police reports had been suppressed by the prosecuting authority. The Court extensively evaluated the newly-disclosed documents to determine which of the suppressed materials would have been admissible, and, if admissible, would have been favorable to the defendant and material to the outcome of the trial. However, as previously expressed in this opinion, the evidence of record here did not indicate that *Brady* materials had been lost or suppressed. The defense was supplied with the OAG's ROI along with the Grand Jury transcripts of the testimony of 94 witnesses that included the transcript of each trial witness.

Next, Appellant presents the issue of whether Pennsylvania House of Representatives has the constitutional and statutory right and authority to regulate the working hours of its own employees. Appellant argues that the trial court erred by permitting the OAG to present evidence through multiple witnesses that elected members or employees of the HRC committed the crimes of Conflict of Interest, Theft and/or conspiracy if they authorized or engaged in political or campaign activity during a "normal workday" as defined by "regular" daily hours, rather than by reference to the official HRC work schedule of 37.5 hours per week. Appellant contends that the Pennsylvania House has independent constitutional and statutory authority to regulate its own affairs, including the working hours of employees, which authority cannot be

14

superseded by the judiciary or the OAG. The Appellant addressed both of these arguments together in his brief; therefore we shall address them together, also.

With respect to the authority of the House of Representatives to regulate the working hours of its employees, Appellant cites to Article III, Section 17 and Article II, Section 11 of the Pennsylvania Constitution, along with a Pennsylvania statute which creates two Legislative Management Committees under which each House caucus may hire and regulate its staff.[20] Appellant contends that based upon this constitutional and statutory authority the Republican Caucus Employee Policy Handbook (Employee Handbook) was promulgated and that it establishes HRC personnel policies and procedures. Based upon the language of the Employee Policy, Appellant asserts that it is clear that HRC employees were required to work "a minimum work week of 37.5 hours" not a specific set of hours such as 9:00 A.M. to 4:30 P.M. Appellant argues that this Court erred by allowing evidence of "normal work day" hours when specific hours were not anticipated by the policy handbook and therefore, it was improper for such evidence to be considered when determining if a crime had been committed when non-legislative work was done during a legislative employee's workday.

As an initial consideration we must bear in mind that "[a] trial court's ruling regarding the admissibility of evidence will not be disturbed unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *Commonwealth v. Owens*, 929 A.2d 1187, 1190 (Pa. Super. 2007) (internal citations omitted). In its brief, the Appellant asserts that the OAG's position that the introduction of workday evidence is a fact which gives context to the case is unsupportable because it is an

---

[20] 46 P.S. §42.121c.

attempt to impose as law or policy a "normal workday" schedule on the HRC without statutory

authority in contravention of the Separation of Powers Doctrine.

    The authority presented by Appellant for the proposition that the Pennsylvania House of

Representatives has the constitutional and statutory authority to regulate the working hours of its

employees does not specifically speak to "working hours." However, it is clear that pursuant to

46 P.S. §42.121c, the respective caucuses of the House are required to establish a "Legislative

Management Committee" who selects a staff administrator who, while supervised by the

Committee, "shall...administer the fiscal and personnel affairs of the caucus." Appellant

contends that based on this authority and the House's constitutional powers, the Employee

Handbook was promulgated and administered. Appellant claims that the constitutional and

statutory law upon which he relies provides the legal authority by which the HRC promulgated

and administered the Employee Handbook during the relevant time frame of 2000 through

2007.[21]

    As referenced in Appellant's brief, the Employee Handbook states that the "Regular

Work Week Schedule" consists of a "minimum work week of 37.5 hours." (*See* Appellant's

Brief In Support of Matters, p. 20). Appellant argues that the Employee Handbook sets "no daily

starting time and no daily ending time" so a policy of workday flexibility was adopted by the

HRC. However, witnesses testified that when hired they were told that the HRC working hours

were 9:00 A.M. to 4:30 P.M. (Notes of Trial Testimony[22] 10/7/11 at 74-76; 10/14/11 at 14-15;

75; 10/17/11 at 5, 70, 88; 10/21/11 at 27). The HRC Director of Human Resources from 2004-

2009 also stated that when she interviewed a potential caucus employee she told the person that

---

[21] This Court has not been asked to address the question of whether the authority is valid or invalid. The Employee Handbook was admitted as evidence at trial.
[22] Hereinafter "N.T."

the working hours were 9:00 A.M. – 4:30 P.M. (N.T. 10/25/11 at 24). Additionally, the section

of the Employee Handbook to which Appellant cites in his brief, states a policy for a "Half-Day

Schedule" which "constitutes leaving for the day at 12:45 or arriving for the day at 12:45(no

lunch hour is included)." (*Id.*) The specific hour designation for the half-day schedule, coupled

with the definite understanding of multiple HRC employees of the required hours at which they

were to be present at work runs counter to the Appellant's position that there was an inherent

policy of flexibility regarding when an employee's legislative-related work duties were to be

performed.

Additionally, Appellant argues that the OAG has breached the Separation of Powers in

that the General Assembly has the "exclusive authority to prescribe the number, duties,

compensation, and conditions of employment of its employees." (*See* Appellant's Brief, p. 21

*citing* Art. II (*sic*), Sec. 17). Appellant argues that the OAG, by introducing evidence regarding

daily work schedules of employees, has attempted to impermissibly mandate the working hours

of another branch of government. We cannot agree. The constitutional provision cited by

Appellant does not include the word "conditions."[23] Therefore, this Court disagrees with

Appellant's contention that evidence admitted of an employee working condition such as work

hours implicates a constitutional violation in the nature of the separation of powers. This Court

fails to understand how the evidence presented amounts to a mandate of HRC employee work

hours by the OAG. Also, as noted previously in our discussion of the Employee Handbook and

the testimony of various HRC employees, there was some understanding by HRC employees and

management of the expected work hours independent of any motive on the part of the OAG, as

perceived by Appellant, in introducing "workday" evidence.

---

[23] *See* Pa. Const. Art. III, § 17.

It was well within this Court's sound discretion to admit this evidence. This Court is satisfied that no separation of powers violation has been committed.

Next, Appellant argues that sufficient evidence was not presented at trial to prove that Appellant authorized or directed any employee of the HRC to devote less than 37.5 hours per week to legislative work or that any employee in fact worked less than 37.5 hours per week.

When reviewing a case where the sufficiency of the evidence produced is contested, the test is whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime of which he has been convicted. *Commonwealth v. Johnson*, 727 A.2d 1089, 1092 (Pa. 1999). It is well established that circumstantial evidence and inferences to be drawn therefrom can be sufficient to convict a defendant of a crime under the more stringent standard of proof beyond a reasonable doubt. *Commonwealth v. Breakiron*, 571 A.2d 1035 (Pa. 1990) *cert. denied*, 111 S. Ct. 224 (1990); *Commonwealth v. Aquado*, 760 A.2d 1181, 1184-85 (Pa. Super. 2000) citing *Commonwealth v. Harper*, 403 A.2d 536, 538 (Pa. 1979). Furthermore, in *Commonwealth v. Seibert*, the Superior Court set forth the following:

> "The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances."

*Seibert*, 622 A.2d at 363 (Pa. Super. 1993).

A voluminous amount of testimony and other evidence was presented during the course of the instant trial. Many witnesses who were working as HRC employees as part of Appellant's

staff for which he was responsible to supervise testified to performing campaign related work while being paid with taxpayer funds, including the amount of time in percentage form that was spent on non-legislative activities. (*See* N.T. 10/13/11 at 95-96; 132-135; 139-141; 173; 10/14/11at 10, 11-14; 16-17; 10/19/11 at 148-155; 10/20/11 at 127-129). It is not unreasonable for a jury to infer that employees who Appellant supervised were acting with direction. Further, evidence was presented to show that Appellant was specifically aware of non-legislative work, such as political fundraising, being performed by state employees under his supervision, in his office, during the workday. (N.T. 10/17/11 at 7-13; 24; 20-24; 67-74; 76-78; 85-87). This Court finds that sufficient evidence was presented to enable the jury to make inferences, evaluate witness credibility and draw conclusions.

Appellant also contends on appeal that the Conflict of Interest provisions of the Public Employees Ethics Act, 65 Pa.C.S.A. §§ 1102 and 1103(a), are unconstitutionally vague, or unconstitutionally vague as applied to this case.

When challenging the validity of a statute on the basis of vagueness, at the outset of analysis one must bear in mind that there is a strong presumption that legislation is constitutional. *Commonwealth v. Thur*, 906 A.2d 552, 561 (Pa. Super. 2006) *citing Pennsylvanians Against Gambling Expansion Fund, Inc. et al. v. Commonwealth of Pennsylvania*, 877 A.2d 383, 393 (Pa. 2005). Due process requires that a statute not be vague. *Thur*, 906 A.2d at 737 *citing Commonwealth v. Mayfield*, 832 A.2d 418, 422 (Pa. 2003). A penal statute is vague if it fails to give people of ordinary intelligence fair notice as to what conduct is forbidden, or if they cannot gauge their future, contemplated conduct, or if it encourages arbitrary or discriminatory enforcement. *Commonwealth v. Habay*, 934 A.2d 732, 738 *citing Commonwealth v. McCoy*, 895 A.2d 18, 30 (Pa. Super. 2006).

19

A statute may be challenged as vague in two ways: "(1) the statute is vague on its face, measured against hypothetical conduct that the language could arguably embrace (facial vagueness) or (2) the language is vague regarding the particular conduct of the of the individual challenging the statue (vague-as-applied). *Commonwealth v. Nesbit*, 575 A.2d 633, 635 (Pa. Super. 1990) *citing Oppenheim v. Commonwealth*, 459 A.2d 1308 (Pa. Commw. 1983). Absent the assertion of a First Amendment infringement the specificity of a statute is analyzed as a vagueness-as-applied challenge. *Nesbit*, 575 A.2d at 292-293 *citing Commonwealth v. Heinbaugh*, 354 A.2d 144 (Pa. 1976). A review of Defendant's Brief in Support of Statement of Matters Complained of on Appeal does not reveal an assertion of a First Amendment infringement. Therefore, the court will review Defendant's argument as a vagueness-as-applied challenge.

Appellant argues that the Ethics Act Conflict of Interest provisions subject a party to civil and criminal enforcement and that the terms of the statute are not definite enough to adequately inform a person as to what conduct could expose him to criminal prosecution. The Pennsylvania Superior Court has reviewed Pennsylvania's Conflict of Interest Statute in the context of a challenge asserting that the statute is void for vagueness and overbreadth both facially and as applied. *See Commonwealth v. Habay*, 943 A.2d 732. The Court in *Habay* found that the "straightforward language of the statute at hand …sets forth the crime of conflict of interest with sufficient definiteness that Appellant, and indeed any ordinary person, could understand and predict what conduct is prohibited. *Id. at 738*. Defendant asserts that doubt has been cast upon the holding in *Habay* by the United States Supreme Court Case in *Skilling v. United States*,561 U.S. ___, 130 S.Ct. 2896 (2010), in which the Court held that the "Honest Services Fraud

20

Statute"[24] was unconstitutionally vague as applied to a criminal theory of honest services wire fraud. The *Skilling* Court analyzed the statute by applying the principles that a penal statute must define a crime with sufficient definiteness to inform the ordinary person regarding what conduct is prohibited and in a way that does not encourage arbitrary and discriminatory enforcement. *Skilling*, 130 S.Ct. 2896 at 2927. To preserve the statute, the Court limited the application of the statute to the violation of fiduciary duty in the context of bribery and kickbacks. *Id.* at 2931. However, *Skilling* interprets federal law only and Appellant has not shown this Court that *Habay* is invalid state law.

Appellant argues that the "great weight of the criminal charges" did not pertain to any private pecuniary benefit to Appellant "unless the trivial number of fundraising letters issued from his office is deemed a criminal benefit"[25] so the rule in *Habay* should not apply. However, the facts of the case and the applicable law were presented to the jury who weighed the evidence and rendered a guilty verdict on all charges. Clearly, based upon the verdict rendered, the jury did not determine that Appellant's individual actions or his actions in relation to his co-conspirators were trivial.

Appellant also argues that it was error for the trial court to permit multiple prosecution witnesses to testify that the Defendant "had to know" about specific conversations, decisions, actions, contracts, or other matters of fact constituting material evidence of the crimes charged.

Appellant's position on this issue is that witnesses were permitted to testify that Appellant "had to know" about decisions, conversations, actions, contracts, sources of payments and other matters without testifying to what Appellant actually knew and this was error on the

---

[24] 18 U.S.C. § 1346.
[25] Appellant's Brief in Support of Matters Complained of on Appeal, p. 35.

part of the trial Court. Appellant goes on to argue that the testimony constituted lay opinion

testimony on facts that were already before the jury regarding an ultimate issue of fact in the case

and that the testimony's prejudicial nature outweighed any probative value. Appellant contends

that the lay opinion testimony essentially told the jury what result they should reach.

Once again, as stated above, "[a] trial court's ruling regarding the admissibility of

evidence will not be disturbed unless that ruling reflects manifest unreasonableness, or partiality,

prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *Commonwealth v.*

*Owens, supra.* Evidentiary rulings made by the trial court are reviewed under an abuse of

discretion standard and the trial judge enjoys broad discretion in determining whether lay

opinion based on personal knowledge may be helpful to the jury and whether admission of the

evidence will result in prejudice. *Lewis v. Mellor,* 393 A.2d 941(Pa. Super. 1978).

Opinion evidence can be offered, in certain instances, by either a lay witness or an expert

witness. Opinion testimony by lay witnesses even on an ultimate issue to be determined by the

trier of fact is permissible in Pennsylvania, within certain parameters. Pa.R.E. 701 and 704. Lay

witness testimony "...in the form of opinions or inferences is limited to those opinions or

inferences which are rationally based on the perception of the witness, helpful to a clear

understanding of the witness' testimony or the determination of a fact in issue...." *See* Pa.R.E.

701. A lay witness may express an opinion if it is based upon his own perceptions and helpful to

a clear understanding of his testimony or the determination of a fact in issue. *Lewis v. Mellor,*

393 A.2d at 946 (Pa. Super. 1978).

In his brief, Appellant does not specify for the court the witnesses and testimony he

deems erroneously admitted. Rather, he argues in a broader fashion by stating that the

22

Commonwealth was permitted to question "multiple witnesses" about "decisions, conversations, actions, contracts, sources of payments, or other matters..." that Appellant "had to know." (*See* Appellant's Brief in Support of Matters Complained Of on Appeal, p. 26). Without more specific guidance, this Court points to a few examples of when lay opinion testimony was admitted based on the trial Judge's sound discretion and in compliance with law.

Anthony Painter, Director of RITS during the timeframe relevant to this case, testified that Appellant was aware that legislative resources were being used to pay for campaign activities. (N.T. 10/6/11 P.M. at 29-33). Mr. Painter testified to support his opinion that it was based on his personal observations of Appellant's activities, including campaign activities, while he was the Director of RITS, his contacts with Appellant over email, and his contacts with other caucus personnel having contacts with Appellant. (*Id.*) Additionally, another witness, Eric Ruth, who worked in the RITS Office from 2003 until 2007, supported the opinion he rendered during the trial that Appellant knew that campaign-related work was being paid for with Commonwealth funds by describing an incident when he went to Appellant to discuss an invoice submitted by GCR which detailed such campaign work being done under the contract with the HRC. (N.T. 10/11/11 at 18-23). The invoices from GCR usually only stated "professional services." (N.T. 10/11/11 at 18-20). The invoice had been sent to the bipartisan purchasing department for payment processing. (*Id.*) Mr. Ruth testified that he and Mr. Painter went to Appellant's office with the invoice and showed it to him which resulted in Appellant making a phone call to Brian Preski to determine what should be done and providing direction on how to remedy the situation. (*Id.* at 20-21). Mr. Ruth stated that he "felt comfortable" going to Appellant with the problem, and the invoice scenario was not "news" to him because Appellant knew that GCR was being paid state money and not doing legislative work. (*Id.* at 21-22; *See*

23

*also* N.T. 10/6/11 A.M. at 44-50). These examples are clearly based on the witnesses' personal observations, interactions with Appellant, and the perceptions formed by those observations. This Court disagrees that it abused its discretion and committed an error by admitting lay opinion testimony.

Finally, Appellant claims that sufficient evidence was not presented by the prosecution at trial to prove beyond a reasonable doubt that the Defendant was guilty of any count of the Information charging Obstructing Administration of Law or Other Governmental Function, Hindering Apprehension or Conspiracy.

The charges were filed by the OAG based on handwritten documents including meeting notes taken by Appellant and/or Jill Seaman and provided to the OAG pursuant to subpoena that were alleged to have been falsified. Witnesses were presented who testified that they recalled saying or hearing certain statements in the recorded notes, but that others were false. After considering the voluminous amount of evidence presented at trial, the jury found Appellant guilty of committing these offenses.

Appellant makes two arguments to support his claim on appeal. First, he asserts that the notes provided to the OAG were not false. To support his argument, Appellant points to a specific entry in meeting notes presented at trial wherein Appellant was purported to have said that continued use of a particular computer program developed by GCR known as The Edge would be an ongoing crime as an example of one of the "falsehoods" asserted by the OAG. Appellant argues that one witness testified regarding the document that Appellant never made the statement but another witness testified that the statement was made at a different meeting.

24

Therefore, the Appellant contends that the "falsehood" in the notes was merely a lapse of memory or a contradiction of the witnesses' testimony concerning the accuracy of the notes.

The Appellant's first argument appears to go to the weight of the evidence rather than the sufficiency of the evidence. Appellant was provided the opportunity to cross examine the witnesses at trial wherein any contradiction in a witness's testimony or appearance of a memory lapse could have been elicited. The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Champney*, 574 Pa. 435, 443-444 (Pa. 2003) (internal citations omitted).

Next, Appellant asserts that even if it is assumed that the notes are false, he never provided the handwritten notes that formed the basis of the charges to the OAG or asked K&L Gates, counsel to the HRC, to provide them. He argues that the handwritten notes were obtained from his private counsel, Jane Penny, without his knowledge or consent, and given to K&L Gates who subsequently submitted them to the OAG pursuant to a subpoena. Therefore, Appellant claims that he did not commit an "affirmative act" to "provide" false information to law enforcement to qualify as an offense under the Obstruction of Administration of Law statute or Hindering Apprehension statute.

As stated above, when reviewing a case where the sufficiency of the evidence produced is contested, the test is whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime of which he has been convicted. *Commonwealth v. Johnson*, 727 A.2d at 1092 (Pa. 1999). Circumstantial

evidence and inferences to be drawn therefrom can be sufficient to convict a defendant of a crime under the more stringent standard of proof beyond a reasonable doubt and *Commonwealth v. Breakiron*, 571 A.2d 1035 (Pa. 1990) *cert. denied*, 111 S. Ct. 224 (1990); *Commonwealth v. Aquado*, 760 A.2d at 1184-85 (Pa. Super. 2000) and "[t]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Commonwealth v. Seibert*, 622 A.2d at 363 (Pa. Super. 1993).

During the course of the investigation by the OAG, which took place over years, several subpoenas were issued and served on the HRC requesting that broad categories of documents be produced to the OAG and the Grand Jury. A specific request for the handwritten notes was made by the OAG by way of a March 30, 2009 email to attorneys for the law firm of K&L Gates, counsel to the HRC, and subsequently referred to James Mann, senior legal counsel for the HRC for response. The March 30, 2009 email in which the OAG requested the documents specifically stated that "this should not require a new subpoena since it falls within the ambit of existing subpoenas." (N.T. 10/25/11 at 43). Nothing in the record indicates that any party's counsel disputed the fact that the handwritten notes that were requested were within the ambit of existing subpoenas. Attorneys for K&L Gates responded to the March 30, 2009 email request and Mr. Mann acted to comply with the request. (N.T. 10/21/11 at 85-87; N.T. 10/25/11 at 43-47).

Mr. Mann testified to reviewing subpoenas that had been served on the HRC during Appellant's tenure as the individual responsible for subpoena compliance for the HRC while the OAG investigation was in progress. (N.T. 10/21/11 at 81-84). Examples of documents requested in subpoenas in 2008, prior to Mr. Mann's employment with the HRC, include any

26

documents or records whether electronic or any other form starting January 1, 2002 for any campaign work performed regarding an extensive list of HRC employees; documents regarding the Edge[26]; and documentation, whether or not electronically stored, referencing Aristotle and certain named Aristotle employees, from January 1, 2003 to the present. (*Id.*)   The fact that subpoenas were already in place that requested the documents sought in the March 30, 2009 email is supported by the March 31, 2009 email response by K&L Gates that they "have the originals of the previously produced handwritten notes." (N.T. 10/25/11 at 43, 48-49; emphasis added).  Further, testimony presented by Mark Rush, Esquire, an attorney for K&L Gates, revealed that handwritten documents that were "not intact," or were a subset of a whole, had been delivered in November 2008 by Jill Seaman, and that the delivery of the documents was not in satisfaction of any particular request. (N.T. 10/25/11 at 49-51).  It was at this time that counsel for HRC realized that the documents that had been delivered were subject to existing subpoenas. (*Id.*)

Appellant was Chief Counsel to the HRC and in charge of compliance with subpoena requests prior to December 19, 2008, when Mr. Mann was hired and directed to assume subpoena compliance duties. (N.T. 10/21/11 at 77-79; N.T. 10/25/11 at 51).  Mr. Mann testified that while carrying out his duties he would report subpoena compliance activity with Appellant and Jill Seaman. (N.T. 10/21/11 at 87-88).  When Mr. Mann was acting to comply with the March 30, 2009 document request, he discovered that he could not find photocopies of certain originals which fell within the purview of the OAG's document request. (N.T. 10/21/11 at 85-86).  Mr. Mann was told by Jill Seaman that the missing originals were in the possession of Jane Penny, Esquire, Appellant's personal attorney at the time. (N.T. 10/21/11 at 86-87).  This

---

[26] The Edge was a GCR campaign-related program developed pursuant to an HRC contract.

selective set of handwritten notes were clearly within a grouping of documents which should have been produced much earlier than the March 2009 request, at a time when Appellant was charged with subpoena compliance. The selective set of handwritten notes, without explanation in the record, ended up in possession of his personal attorney. (N.T. 10/21/11 at 85-87; N.T. 10/25/11 at 48). Additionally, Mr. Rush testified that he did not consult with Jill Seaman regarding the missing notes because they were the property of the HRC. (N.T. 10/25/11 at 48).

Without resistance, counsel for the HRC produced the handwritten notes that the OAG requested under the auspices of existing subpoenas that had been served and partially responded to as far back as November 2008. The valid subpoenas requested documents that should have been produced much earlier than the March 2009 OAG request, specifically during a timeframe when Appellant was the responsible individual for complying with subpoenas for the HRC pursuant to the OAG's investigation. Missing handwritten notes that should have been produced at an earlier date were found in the possession of Appellant's personal attorney, without explanation as to how that came about. Testimonial evidence was presented that the notes which were produced were not accurate and/or false. The evidence presented was sufficient to permit a jury to draw inferences regarding the intentional action by Appellant to conceal and/or alter the handwritten notes to provide false information to law enforcement.

After a thorough review of the record and the issues presented, this Court finds that the judgment of sentence should not be vacated.

Memorandum Opinion dated: ___June 20, 2012___

RICHARD A. LEWIS, JUDGE

28

COMMONWEALTH OF PENNSYLVANIA   : IN THE COURT OF COMMON PLEAS
                               : DAUPHIN COUNTY, PENNSYLVANIA
                               :
            VS.                :
                               :
                               :
JOHN R. ZIMMERMAN              : NO. 2524 CR 2010
BRIAN J. PRESKI                : NO. 2583 CR 2010
SAMUEL C. "BUZZ" STOKES        : NO. 2584 CR 2010
BRETT O. FEESE                 : NO. 2585 CR 2010
JILL A. SEAMAN                 : NO. 2586 CR 2010
PAUL E. TOWHEY                 : NO. 2588 CR 2010
JOHN M. PERZEL                 : NO. 2589 CR 2010
ELMER L. "AL" BOWMAN           : NO. 2590 CR 2010
ERIC S. RUTH                   : NO. 2591 CR 2010

## ORDER

AND NOW, this 23rd day of March, 2011, following review of the Omnibus
Pre-trial Motions filed by the above captioned defendants, together with the various
memoranda filed by counsel for the defendants; and following review of the responses
of the Commonwealth to said motions, as well as a review of the notes of testimony of
the preliminary hearing held before Magisterial District Judge William Wenner; and
following extensive argument on said motions, IT IS HEREBY ORDERED as follows:

1

**Commonwealth v. John R. Zimmerman**
**2524 CR 2010**

The Petition for Writ of Habeas Corpus (styled as a Motion To Quash) filed on behalf of Defendant Zimmerman is hereby DENIED.

Defendant's Motion For Severance requesting a separate trial of defendants/offenses pertaining to charges of Hindering Apprehension, Obstructing Administration of Law and Criminal Conspiracy is GRANTED.

**Commonwealth v. Brian Preski**
**2584 CR 2010**

The Petition for Writ of Habeas Corpus filed by Defendant Preski is hereby DENIED. From a review of the transcript of the preliminary hearing before Magisterial District Judge William Wenner, this court is satisfied that the Commonwealth established a prima facie case.

Defendant Preski's Motion to Quash All Conspiracy Counts is DENIED.

All other motions joined in by this defendant are hereby DENIED.

**Commonwealth v. Samuel C. Stokes, Jr.**
**2584 CR 2010**

The Petition for Writ of Habeas Corpus filed by Defendant Stokes is hereby DENIED. Following a review of the transcript of the preliminary hearing before

2

216a

Magisterial District Judge William Wenner, this court is satisfied that the Commonwealth established a prima facie case.

Defendant Stokes' Motion to Dismiss Counts 36 Through 42 Inclusive or In The Alternative, To Order The Prosecution To Elect One Count Of Conspiracy Among The Various Counts Charged is hereby DENIED.

Defendant's Motion to Dismiss involving various theft counts as well as counts alleging a conspiracy to violate 18 Pa.C.S.A. §§ 3921(a) and 3922(a)(1) is DENIED.

All other motions joined in by this defendant are DENIED.

## Commonwealth v. Brett Feese
## 2585 CR 2010

The Petition for Writ of Habeas Corpus Counts 9, 18, 27, 36, 45 and 56, is hereby DENIED. This Court is satisfied following a review of the preliminary hearing transcript that the Commonwealth made out a prima facie case as to these charges. Additionally, the Motion To Dismiss and the Motion In Limine with respect to these counts are also DENIED.

The Petition for Writ of Habeas Corpus Counts 46, 47, 57, and 58 is hereby GRANTED. Following a reading of the transcript of the preliminary hearing, this Court finds that a prima facie case was not established as to Counts 46, 47, 57, and 58.

3

**46a**

217a

Based on this court's ruling on the Habeas Corpus petition with respect to Counts 46, 47, 57, and 58, it is not necessary to rule on the Motion to Dismiss (DeMinimus) and the Motion in Limine with respect to these counts.

All other motions filed or joined in by this defendant are hereby DENIED.

### Commonwealth v. Jill A. Seaman
### 2586 CR 2010

The Motion for Severance filed by Defendant Seaman is DENIED.

The Motion To Dismiss Conspiracy Counts Or To Require Election Of A Single Conspiracy Count is DENIED.

The Motion To Dismiss Conflict Of Interest Counts For Vagueness is DENIED.

The Motion In Limine To Exclude Evidence Of De Minimus Infractions is DENIED.

The Motion In Limine To Exclude Evidence That Non-Legislative Activities Occurred During A Prosecution Defined "Normal Workday" is DENIED.

The Motion To Dismiss Certain Theft Counts is DENIED.

All other Motions joined in by this Defendant are DENIED.

4

## <u>Commonwealth v. Paul E. Towhey, Jr.</u>
## 2588 CR 2010

The Motion To Dismiss Or Petition For Writ Of Habeas Corpus filed on behalf of Defendant Towhey is hereby DENIED.

All other motions joined in by this defendant are hereby DENIED, except with respect to the Motion For Severance filed on behalf of John R. Zimmerman requesting severance of defendants/offenses pertaining to certain charges of Obstructing Administration of Law, Criminal Conspiracy and Hindering Apprehension. Accordingly, based on Defendant Towhey's Motion To Adopt And Join In Motions Of All Co-Defendants, Counts 21, 22, 27, 28 of Defendant Towhey's information are hereby severed to be consolidated with the counts charging Defendant Bowman with the same offenses.

## <u>Commonwealth v. John M. Perzel</u>
## 2589 CR 2010

The Petition For Writ of Habeas Corpus filed by Defendant Perzel is GRANTED in part and DENIED in part.

Following a review of the notes of testimony from the preliminary hearing before Magisterial District Judge William Wenner, this court finds that a prima facie case was not presented with respect to Counts 81 (Conspiracy/Hindering Apprehension) and

5

219a

82 (Conspiracy/Obstructing Administration of Law), and as such the Petition For Writ of Habeas Corpus is GRANTED as to Counts 81 and 82 only.

With respect to Counts 1 through 80, the Petition For Writ of Habeas Corpus is hereby DENIED.

All other motions joined in by this defendant are hereby DENIED.

### Commonwealth v. Elmer Leroy Bowman
### 2590 CR 2010

Any and all motions joined in by this defendant are hereby DENIED.

### Commonwealth v. Eric S. Ruth
### 2591 CR 2010

The Defendant's Motion For Writ Of Habeas Corpus and Motion To Dismiss Charges Of Conflict Of Interest, Theft, Theft Of Services, Theft By Deception, Theft By Failure To Make Required Disposition Of Funds Received and Criminal Conspiracy are hereby DENIED.

All other motions joined in by this defendant are hereby DENIED.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Certain motions filed on behalf of one or more of the defendants captioned above have already been addressed by this court. To the extent that prior rulings may not have been directed to all defendants, this court rules as follows:

6

The Motion To Dismiss Conflict Of Interest Counts As Void For Vagueness, and joined in by all defendants, is DENIED.

The Motion To Dismiss Conspiracy Counts Or To Require Election Of A Single Conspiracy Count, and joined in by all Defendants, is hereby DENIED.

The Motion To Dismiss relative to certain theft counts (Theft of Services, Theft by Deception, Theft by Unlawful Taking) as inapposite to charged misconduct (statutory offenses excludes Commonwealth as victim) and joined in by all defendants is DENIED.

The Motion In Limine To Exclude Evidence That Non-Legislative Activities Occurred During Prosecution Defined "Normal Work Day" As A Violation Of Separation Of Powers Doctri9ne, and joined in by all defendants, is hereby DENIED.

The Motion To Dismiss The Information, Disqualify Office Of Attorney General, Appoint A Special Prosecutor And Stay All Proceedings is hereby DENIED.

_____
Richard A. Lewis, Judge

2011 MAR 23 PM 4: 05
DAUPHIN CO.
PENNA
OFFICE OF
CLERK OF COURTS

7



## STATEWIDE INVESTIGATING GRAND JURY
# ——— SUBPOENA ———

TO:  Custodian of Records          :SUPREME COURT OF PENNSYLVANIA
     House Republican Caucus       :97 M.D. MISC. DKT. 2006
     And/or Comptroller Alexis Brown   :DAUPHIN COUNTY COMMON PLEAS
                                    :NO. 561 M.D. 2006

    1.      YOU are ORDERED to appear as a witness before the PENNSYLVANIA STATEWIDE INVESTIGATING GRAND JURY, Strawberry Square Building [Walnut Street], Verizon Towers, Eighth Floor, The Honorable G. Thomas Gates Memorial Grand Jury Courtroom, Harrisburg, Pennsylvania, on Friday, March 7, 2008, at 8:30 O'clock A.M. to testify and give evidence regarding alleged violations of the laws of the Commonwealth of Pennsylvania and to remain until excused.

    2.      YOU are further ORDERED: [SEE ATTACHMENT]

FAILURE to attend may cause a warrant to be issued for your arrest and will make you liable under penalty of law for contempt of Court.

DATED:  February 25, 2008



Hon. Harold A. Thomson, Jr.
*Supervising Judge*

If you have any questions about your appearance, contact Deputy Attorney General Frank Fina, at 717.787.6346.

Notice:  5          Subpoena: 1203                    FSNOTES 001

COMMONWEALTH'S
EXHIBIT
3

212a                                         222a

# CERTIFICATION OF SERVICE

I HEREBY CERTIFY that the original subpoena was duly served on the person named herein on this _____ day of _____, 200___ at _____ o'clock by handing the same to him/her personally at

_____

NAME of person making service _____

TITLE of person making service _____

SIGNATURE _____

SWORN to and subscribed before me this _____ day of _____, 200___.

_____
Notary Public

## ATTACHMENT TO SUBPOENA NO. 1203

### TO PRODUCE THE FOLLOWING:

All documents and/or records, whether stored electronically or in any other form, regarding and/or providing evidence or record of the campaign work performed by the below named individuals at any time between January 1, 2002 and the present, including but not limited to the name of the campaign, the location of the campaign work, the date of the campaign work, and any details of the campaign tasks performed. "Campaign Work" as utilized in this subpoena should not be interpreted as limited to work performed in a legislative district or an ongoing campaign. The phrase refers to any campaign work, performed in any location, designed to assist an actual or potential political campaign. The phrase specifically does not include work on the creation, formulation or contemplation of legislation. The phrase does include, but is not limited to, any work on: candidate research; opposition candidate research; voter surveys; voter polling; campaign ads; campaign strategies; campaign budgets; or campaign themes.

| | |
|---|---|
| Acor | Debbie |
| Albert | Pamela |
| Aliano | Anthony |
| Alwine | Dana |
| Anderson | Joy |
| Archibald | Robert |
| Armstrong | Esther |
| Aviles | Norma |
| Barder | Lynn |
| Barnacle | Carol |
| Bartley | Kimberly |
| Bentzel | Susan |
| Betz | Connie |
| Blikle | Kathleen |
| Book | Bonnie |
| Bossart | Amy |
| Boyer | Theresa |
| Boyle | Susan |
| Brothers | Linda |
| Brown | Barbara |
| Brown | Dianne |
| Brown | Mark |
| Brown | Melanie |
| Brown | Pamela |
| Bugaile | Eric |
| Burkholder | Susan |
| Bushnell, II | William |
| Carr | Mary |
| Carroll | Theresa |

FSNOTES 003

224a

| | |
|---|---|
| Carver | Nancy |
| Cevasco | Heather |
| Cierebiej | Margaret |
| Clabaugh | Michelle |
| Clouser | Kathi |
| Cobick | Darrin |
| Conley | Marsha |
| Cooper, Jr. | Richard |
| Cotter | Winifred |
| Coyne | Donna |
| Croman | Melissa |
| Culp | Beth |
| Cutting | Carol |
| D'Innocenzo | Doris |
| Darby | Marion |
| Davis | Gary |
| Davis | Pamela |
| Deon | Lisa |
| Detweiler | Jamie |
| DiPietro | Barbara |
| Drabenstadt | Joanne |
| Dull | Stephen |
| Dumeyer | David |
| Duralja | Jennifer |
| Earhart | Sheila |
| Eaton | Stephen |
| Elia | Eleanor |
| Fassnacht | Janet |
| Filppone | Linda |
| Finnaren | Sarah |
| Fowler | Carol |
| Fry | Patricia |
| Galer | Shawne |
| Garrison | Rose |
| Geiger | Mary |
| Gibbs | Yvonne |
| Gob | Dawn |
| Godsey | Erica |
| Gomez | Kendall |
| Gould | Phyllis |
| Greenwood | Robert |
| Grell, II | Donald |
| Grove | Brian |
| Guida | Ralph |
| Gunderman | Karen |
| Hand | Paula |

FSNOTES 004

| | |
|---|---|
| Hanley, Jr. | John |
| Harless | Jerry |
| Harper | Sandra |
| Heckman | Karen |
| Henry | Patricia |
| Hess | Paula |
| Hetrick | Donna |
| Hoffman | Juanita |
| Horan | Maryann |
| Hostetter | Joan |
| Hunt | Joanne |
| Hussie | Edward |
| Janecko | Barbara |
| John, Jr. | David |
| Jones | Betty |
| Jones | Sharon |
| Kamman | Lynda |
| Kaster | Gale |
| Kauffman | Barbara |
| Kenley | Therese |
| Kistler | Susan |
| Knowles | Jerome |
| Koch | Lori |
| Krautheim | C. |
| Krick | Eileen |
| LaFaver | Ritchie |
| Lang | William |
| Laughlin, Jr. | William |
| Laut | Kathleen |
| Lieb, III | A. |
| Lindsey | Betsy |
| Linn, Sr. | Franklin |
| Lochetto | Lori Ann |
| Lochetto, Jr. | Frederick |
| Logan, Jr. | Herbert |
| Lorence | Albert |
| Lovendusky | Karen |
| Macut | Patricia |
| Malehorn | Susan |
| Markowski | Jeannine |
| May | Carolyn |
| May | Phillip |
| McAvoy, Jr. | Jerome |
| Menneely | Deborah |
| Miller | Harry |
| Miller | Joseph |

FSNOTES 005

| | |
|---|---|
| Miller | Randall |
| Mills | Marian |
| Murphy | Joseph |
| Myer, Jr. | Clarence |
| Nolan | Edward |
| Nye | Mary |
| O'Neil | Kimberly |
| Painter | John |
| Pancoe | Sandra |
| Pancoe | Stephen |
| Parker | Elaine |
| Pelletier | Maryanne |
| Preski | Brian |
| Pyne | Thomas |
| Rank | Sherri |
| Reddecliff | Carole |
| Reddecliff | David |
| Rhoads | Patricia |
| Rice | David |
| Rice | Linda |
| Richards | Julie |
| Romano | Eleanor |
| Rowe | Amy |
| Royer | Shannon |
| Runk | Bernadette |
| Rutter | Mary |
| Ryan | Mark |
| Sanna | Donna |
| Schaffner | Darlene |
| Schlegel-Culver | Lynda |
| Schwartz | Sharon |
| Scott | Jane |
| Sedesse | Judy |
| Segilia | Ann |
| Shatto | Jane |
| Shipman | Garth |
| Shutter | Barbara |
| Smith | Karen |
| Smyth | Jeannie |
| Sollenberger | Rebecca |
| Stokes | Samuel |
| Stuck | Suzanne |
| Stuck, Jr. | Robert |
| Swanson | Duaine |
| Taglang | Elizabeth |
| Taylor | William |

| | |
|---|---|
| Tomaselli | William |
| Troutman | Mary |
| Tuckey | Stephen |
| Turner | Carol |
| Updyke | Lucinda |
| Vacca | Joseph |
| Warren | Michele |
| Warriner | Diane |
| Washington | Becky |
| Wentzel | Kathryn |
| Whitcomb | Jacqueline |
| Wilkinson | Gail |
| Willis | Barry |
| Zimmerman | John |
| Zubeck, Jr. | John |



# STATEWIDE INVESTIGATING GRAND JURY
## —— SUBPOENA ——

TO:  **Custodian of Records**    :SUPREME COURT OF PENNSYLVANIA
       **House Republican Caucus**  :97 M.D. MISC. DKT. 2006
                                    :DAUPHIN COUNTY COMMON PLEAS
                                      :NO.  561  M.D. 2006

      1.        **YOU** are **ORDERED** to appear as a witness before the **PENNSYLVANIA STATEWIDE INVESTIGATING GRAND JURY,** Strawberry Square Building [Walnut Street], **Verizon Towers, Eighth Floor, The Honorable G. Thomas Gates Memorial Grand Jury Courtroom, Harrisburg, Pennsylvania, on Tuesday, March 4, 2008, at 8:30 O'clock A.M.** to testify and give evidence regarding alleged violations of the laws of the Commonwealth of Pennsylvania and to remain until excused.

      2.        **YOU** are further **ORDERED:**  To appear and produce forthwith:  any and all campaign documents or materials removed from Room B-02, in the basement of the Irvis Office Building, on February 26, 2008, or during the sixty days preceding.  You are further ordered to disclose the location of any and all other materials removed from this location during the period described.
**FAILURE** to attend may cause a warrant to be issued for your arrest and will make you liable under penalty of law for contempt of Court.

**DATED:  February 29, 2008**



COMMONWEALTH'S
EXHIBIT
36
5/25/16

_____
**Hon.  Harold A. Thomson, Jr.**
*Supervising Judge*

      If you have any questions about your appearance, contact Deputy Attorney General Frank Fina, at 717.787.6346.

229a

Notice:    **55**             Subpoena:  **1230**

# CERTIFICATION OF SERVICE

I HEREBY CERTIFY that the original subpoena was duly served on the person named herein on this ___29___ day of ___FEBRUARY___, 200 _8_ at ___2:30 pm___ o'clock by handing the same to him/her personally at ___OAG OFFICES - STRAWBERRY SQ - HARRISBURG. HRC PARALEGAL JILL SEAMAN.___

NAME of person making service ___ROBERT DRAWBAUGH___

TITLE of person making service ___SPECIAL AGENT BCI/CRD___

SIGNATURE _____

SWORN to and subscribed before me this ___29th___ day of ___February___, 200 _8_.

_____
**Notary Public**

Commonwealth of Pennsylvania
NOTARIAL SEAL
KAREN L. WATTERS, NOTARY PUBLIC
LEWISBURG BOROUGH, COUNTY OF UNION
MY COMMISSION EXPIRES SEPTEMBER 27, 2010

230a

# POLICE CRIMINAL COMPLAINT
## COMMONWEALTH OF PENNSYLVANIA
### VS.

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF: Dauphin

Magisterial District Number: 12-3-03
MDJ: Hon. William C. Wenner
Address: 1st Floor, Suite B, 5925 Stevenson Avenue
Harrisburg, PA 17112

Telephone: (717)545-0261

**DEFENDANT:** (NAME and ADDRESS):

| John | Richard | Zimmerman | |
|------|---------|-----------|----|
| First Name | Middle Name | Last Name | Gen. |

462 Roslaire Drive Hummelstown, PA 17036

## NCIC Extradition Code Type

- ☐ 1-Felony Full
- ☐ 2-Felony Ltd.
- ☐ 3-Felony Surrounding States
- ☐ Distance: _____
- ☐ 4-Felony No Ext.
- ☐ 5-Felony Pend.
- ☐ A-Misdemeanor Full
- ☐ B-Misdemeanor Limited
- ☐ C-Misdemeanor Surrounding States
- ☐ D-Misdemeanor No Extradition
- ☐ E-Misdemeanor Pending

## DEFENDANT IDENTIFICATION INFORMATION

| RACE | ETHNICITY | Docket Number | Date Filed | OTN/LiveScan Number | Complaint/Incident Number |
|------|-----------|---------------|------------|---------------------|---------------------------|
| ☒ White | ☐ Hispanic | CR-392-09 | 11/12/09 | K788045-0 | 36-553 |
| ☐ Asian | ☐ Non-Hispanic | DOB 12/09/1947 | | POB | |
| ☐ Black | ☐ Unknown | Add'l DOB / / | | SSN 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 | Add'l SSN - - |
| ☐ Native American | | | | | |

RECEIVED
Clerk of Courts
Dauphin County
Court of Common Pleas

MAY 2 8 2010

#2524 CR 2010

| ☐ Unknown | GENDER | First Name | Middle Name | Last Name | Gen. |
|-----------|--------|------------|-------------|-----------|------|
| | ☒ Male ☐ Female | AKA | | | |

| SID: | HAIR COLOR | | | EYE COLOR | | |
|------|------------|--|--|-----------|--|--|
| | ☒ GRY (Gray) | ☐ RED (Red/Aubn.) | | | | |
| Request Lab Services? ☐ YES ☐ NO | ☐ BLK (Black) | ☐ ONG (Orange) | ☐ BLN (Blonde / Strawberry) | ☐ GRN (Green) | ☐ GRY (Gray) | ☐ GRN (Green) ☐ PNK (Pink) |
| | ☐ BLU (Blue) | ☐ PLE (Purple) | ☐ WHI (White) | ☐ BLK (Black) | ☐ HAZ (Hazel) | ☐ MUL (Multicolored) |
| | ☐ BRO (Brown) | ☐ PNK (Pink) | ☐ XXX (Unk./Bald) | ☒ BLU (Blue) | ☐ MAR (Maroon) | ☒ XXX (Unknown) |
| | ☐ GRN (Green) | ☐ SDY (Sandy) | | ☐ BRO (Brown) | | |

| Driver License | State PA | License Number 19415913 | | Expires: 12/10/2013 | WEIGHT (lbs.) |
|----------------|----------|-------------------------|--|---------------------|---------------|
| DNA | ☐ YES ☐ NO | DNA Location | | | |
| FBI Number | | MNU Number | | | Ft. HEIGHT In. |
| Fingerprint Classification: | | | | | 6    1 |

## DEFENDANT VEHICLE INFORMATION

| Plate # | State | Hazmat ☐ | Registration Sticker (MM/YY) / | Comm'l Veh. Ind. ☐ | School Veh. ☐ | Oth. NCIC Veh. Code |
|---------|-------|----------|--------------------------------|--------------------|---------------|---------------------|
| VIN | | Year | Make | Model | Style | Color |

Office of the attorney for the Commonwealth   ☒ Approved   ☐ Disapproved because: _____

(The attorney for the Commonwealth may require that the complaint, arrest warrant affidavit, or both be approved by the attorney for the Commonwealth prior to filing. See Pa.R.Crim.P. 507.)

CDAG Frank G. Fina
(Name of the attorney for the Commonwealth)

_(Signature of the attorney for the Commonwealth)_

11/12/2009
(Date)

I, Special Agent Anthony J. Fiore                 #131
(Name of the Affiant)                             (PSP/MPOETC -Assigned Affiant ID Number & Badge #

of the Pennsylvania Office of Attorney General    PA065015A
(Identify Department or Agency Represented and Political Subdivision)   (Police Agency ORI Number)

do hereby state: (check appropriate box)

1. ☒ I accuse the above named defendant who lives at the address set forth above
   ☐ I accuse the defendant whose name is unknown to me but who is described as _____

   ☐ I accuse the defendant whose name and popular designation or nickname are unknown to me and whom I have
      therefore designated as John Doe or Jane Doe

   with violating the penal laws of the Commonwealth of Pennsylvania at     [301]     Harrisburg City ____
                                                                          (Subdivision Code)   (Place-Political Subdivision)

   in Dauphin County        [22]        on or about Dates set forth in the attached affidavit
                         (County Code)

# POLICE CRIMINAL COMPLAINT



| Docket Number: CR 392-09 | Date Filed: 11/12/2009 | OTN/LiveScan Number K 788095-0 | Complaint/Incident Number 36-553 |
|---|---|---|---|
| **Defendant Name** | First: John | Middle: Richard | Last: Zimmerman |

2. I ask that a warrant of arrest or a summons be issued and that the defendant be required to answer the charges I have made.

3. I verify that the facts set forth in this complaint are true and correct to the best of my knowledge or information and belief. This verification is made subject to the penalties of Section 4904 of the Crimes Code (18 PA.C.S.§4904) relating to unsworn falsification to authorities.

4. This complaint is comprised of the preceding Page, as well as the attached pages that follow, numbered ____ through ____, specifying offenses and Participants, if any.

The acts committed by the accused, as listed and hereafter, were against the peace and dignity of the Commonwealth of Pennsylvania and were contrary to the Act(s) of the Assembly, or in violation of the statutes cited.
**(Before a warrant of arrest can be issued, an affidavit of probable cause must be completed, sworn to before the issuing authority, and attached.)**

_____    _Nov. 12, 2009_    _Anthony J. Frost_ #131
                               (Date)                                          (Signature of Affiant)

AND NOW, on this date _November 12, 2009_ I certify that the complaint has been properly completed and verified.

An affidavit of probable cause must be completed before a warrant can be issued.

_____            _____
(Magisterial District Court Number)            (Issuing Authority)

# POLICE CRIMINAL COMPLAINT

| Docket Number: | Date Filed: | OTN/LiveScan Number | Complaint/Incident Number |
|---|---|---|---|
| CR-392-09 | 11/14-09 | K 788045-0 | 36-553 |
| Defendant Name | First: John | Middle: Richard | Last: Zimmerman |

The acts committed by the accused are described below with each Act of Assembly or statute violated, if appropriate :

(Set forth a *brief* summary of the facts sufficient to advise the defendant of the nature of the offense(s) charged. A citation to the statute(s) violated, without more, is not sufficient. In a summary case, you must cite the specific section(s) and subsection(s) of the statute(s) or ordinance(s) allegedly violated.)

| Inchoate Offense | ☐ Attempt 18 901 A | ☐ Solicitation 18 902 A | Conspiracy 18 903 | ☐ A1 (Engaging) | ☐ A2 (Aiding) | ☐ B (Knowledge) | ☐ Permitting (Title 75 Only) 75 1575 A |
|---|---|---|---|---|---|---|---|

| Lead? | Offense# | Section | Subsection | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |
|---|---|---|---|---|---|---|---|---|
| ☒ | 1 | 5105 | (a) | of the Title 18 | 1 | F3 | | |

PennDOT Data (if applicable) — Accident Number ___ ☐ Safety Zone ☐ Work Zone

Statute Description/Acts of the accused associated with this Offense:

SEE ATTACHED

| Inchoate Offense | ☐ Attempt 18 901 A | ☐ Solicitation 18 902 A | Conspiracy 18 903 | ☐ A1 (Engaging) | ☐ A2 (Aiding) | ☐ B (Knowledge) | ☐ Permitting (Title 75 Only) 75 1575 A |
|---|---|---|---|---|---|---|---|

| Lead? | Offense# | Section | Subsection | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |
|---|---|---|---|---|---|---|---|---|
| ☐ | 2 | 5101 | | of the Title 18 | 1 | M2 | | |

PennDOT Data (if applicable) — Accident Number ___ ☐ Safety Zone ☐ Work Zone

Statute Description/Acts of the accused associated with this Offense:

SEE ATTACHED

| Inchoate Offense | ☐ Attempt 18 901 A | ☐ Solicitation 18 902 A | Conspiracy 18 903 | ☒ A1 (Engaging) | ☒ A2 (Aiding) | ☒ B (Knowledge) | ☐ Permitting (Title 75 Only) 75 1575 A |
|---|---|---|---|---|---|---|---|

| Lead? | Offense# | Section | Subsection | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |
|---|---|---|---|---|---|---|---|---|
| ☐ | 3 | 5105 | | of the Title 18 | 1 | F3 | | |

PennDOT Data (if applicable) — Accident Number ___ ☐ Safety Zone ☐ Work Zone

Statute Description/Acts of the accused associated with this Offense:

SEE ATTACHED

# POLICE CRIMINAL COMPLAINT

| Docket Number:<br>CR-392-09 | Date Filed:<br>11/12/2009 | OTN/LiveScan Number<br>K 788095-0 | Complaint/Incident Number<br>36-553 |
|---|---|---|---|
| Defendant Name | First:<br>John | Middle:<br>R. | Last:<br>Zimmerman |

The acts committed by the accused are described below with each Act of Assembly or statute violated, if appropriate :

(Set forth a *brief* summary of the facts sufficient to advise the defendant of the nature of the offense(s) charged. A citation to the statute(s) violated, without more, is not sufficient. In a summary case, you must cite the specific section(s) and subsection(s) of the statute(s) or ordinance(s) allegedly violated.)

| Inchoate Offense | ☐ Attempt<br>18 901 A | ☐ Solicitation<br>18 902 A | Conspiracy<br>18 903 | ☒ A1<br>(Engaging) | ☒ A2<br>(Aiding) | ☒ B<br>(Knowledge) | ☐ Permitting (Title 75 Only)<br>75 1575 A |
|---|---|---|---|---|---|---|---|

| ☐ | 4 | 5101 | | of the | Title 18 | 1 | M2 | |
|---|---|---|---|---|---|---|---|---|
| Lead? | Offense# | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |

| PennDOT Data<br>(if applicable) | Accident<br>Number | | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|

Statute Description/Acts of the accused associated with this Offense:

SEE ATTACHED

| Inchoate Offense | ☐ Attempt<br>18 901 A | ☐ Solicitation<br>18 902 A | Conspiracy<br>18 903 | ☐ A1<br>(Engaging) | ☐ A2<br>(Aiding) | ☐ B<br>(Knowledge) | ☐ Permitting (Title 75 Only)<br>75 1575 A |
|---|---|---|---|---|---|---|---|

| ☐ | | | | of the | | | | |
|---|---|---|---|---|---|---|---|---|
| Lead? | Offense# | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |

| PennDOT Data<br>(if applicable) | Accident<br>Number | | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|

Statute Description/Acts of the accused associated with this Offense:

| Inchoate Offense | ☐ Attempt<br>18 901 A | ☐ Solicitation<br>18 902 A | Conspiracy<br>18 903 | ☐ A1<br>(Engaging) | ☐ A2<br>(Aiding) | ☐ B<br>(Knowledge) | ☐ Permitting (Title 75 Only)<br>75 1575 A |
|---|---|---|---|---|---|---|---|

| ☐ | | | | of the | | | | |
|---|---|---|---|---|---|---|---|---|
| Lead? | Offense# | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |

| PennDOT Data<br>(if applicable) | Accident<br>Number | | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|

Statute Description/Acts of the accused associated with this Offense:

POLICE CRIMINAL COMPLAINT
ATTACHMENT

JOHN R. ZIMMERMAN

**COUNT 1: HINDERING APPREHENSION OR PROSECUTION**
**(18 Pa.C.S. § 5105 – (Felony of the third degree))**
**MAXIMUM SENTENCE: 7 YEARS INCARCERATION, $15,000 FINE.**

A person commits an offense if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime he provides or aids in other means of avoiding apprehension or conceals or destroys evidence of the crime, or tampers with a witness, informant, document or other source of information, regardless of its admissibility in evidence or warns the other of impending discovery or provides false information to a law enforcement officer.

TO WIT:

On or about diverse dates between February 25-29, 2008, in Dauphin County, Pennsylvania, the above named defendant, while employed by the Commonwealth of Pennsylvania, intentionally hindered prosecution by concealing or destroying evidence of a crime by having boxes which were the subject of at least one statewide investigating grand jury subpoena moved from their original location to the Speaker Emeritus office area in the State Capitol, then having those boxes moved to the House Republican Campaign Committee offices or otherwise hidden from discovery by the grand jury, thereby committing the offense of Hindering apprehension or prosecution.

**COUNT 2: OBSTRUCTING ADMINISTRATION OF LAW OR OTHER**
**GOVERNMENTAL FUNCTION**
**(18 Pa.C.S. § 5101 – (Misdemeanor of the second degree))**
**MAXIMUM SENTENCE: 2 YEARS INCARCERATION, $5,000 FINE.**

A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

TO WIT:

On or about diverse dates between February 25-29, 2008, in Dauphin County, Pennsylvania, the above named defendant, while employed by the Commonwealth of Pennsylvania, intentionally obstructed, impaired or perverted the administration of law by having boxes which were the subject of at least one statewide investigating grand jury subpoena moved from their original location to the Speaker Emeritus office area in the State Capitol, then having those boxes moved to the House Republican Campaign Committee offices or otherwise hidden from discovery by the grand jury, thereby committing the offense of Obstructing administration of law or other governmental function.

**POLICE CRIMINAL COMPLAINT**
**ATTACHMENT**

JOHN R. ZIMMERMAN

**COUNT 3: CRIMINAL CONSPIRACY (HINDERING APPREHENSION OR**
**PROSECUTION)**
**(18 Pa.C.S. § 903 – (Felony of the third degree))**
**MAXIMUM SENTENCE:  7 YEARS INCARCERATION, $15,000 FINE.**
        A person is guilty of conspiracy with another person or persons to commit a crime if
with the intent of promoting or facilitating its commission he agrees with such other person or
persons that they or one or more of them will engage in conduct which constitutes such crime
or an attempt or solicitation to commit such crime or agrees to aid such other person or
persons in the planning or commission of such crime or of an attempt or solicitation to
commit such crime, and at least one person commits an overt act in furtherance of the
conspiracy.
        TO WIT:  On or about diverse dates between February 25-29, 2008, in Dauphin
County, Pennsylvania, the above named defendant agreed with Brett O. Feese and/or John M.
Perzel and/or Paul E. Towhey and/or other individuals to intentionally hinder prosecution by
concealing or destroying evidence of a crime by having boxes which were the subject of at
least one statewide investigating grand jury subpoena moved from their original location to
his Speaker Emeritus office area in the State Capitol, then having those boxes moved to the
House Republican Campaign Committee offices or otherwise hidden from discovery by the
grand jury, thereby committing the offense of Criminal conspiracy.

**COUNT 4: CRIMINAL CONSPIRACY (OBSTRUCING ADMINISTRATION OF**
**LAW OR OTHER GOVERNMENTAL FUNCTION)**
**(18 Pa.C.S. § 903 – (Misdemeanor of the second degree))**
**MAXIMUM SENTENCE:  2 YEARS INCARCERATION, $5,000 FINE.**
        A person is guilty of conspiracy with another person or persons to commit a crime if
with the intent of promoting or facilitating its commission he agrees with such other person or
persons that they or one or more of them will engage in conduct which constitutes such crime
or an attempt or solicitation to commit such crime or agrees to aid such other person or
persons in the planning or commission of such crime or of an attempt or solicitation to
commit such crime, and at least one person commits an overt act in furtherance of the
conspiracy.
        TO WIT:  On or about diverse dates between February 25-29, 2008, in Dauphin
County, Pennsylvania, the above named defendant agreed with Brett O. Feese and/or John M.
Perzel and/or Paul E. Towhey and/or other individuals to intentionally obstruct the
administration of law by concealing or destroying evidence of a crime by having boxes which
were the subject of at least one statewide investigating grand jury subpoena moved from their
original location to his Speaker Emeritus office area in the State Capitol, then having those
boxes moved to the House Republican Campaign Committee offices or otherwise hidden
from discovery by the grand jury, thereby committing the offense of Criminal conspiracy.

| COMMONWEALTH OF PENNSYLVANIA | : IN THE COURT OF COMMON PLEAS OF |
|---|---|
| | : DAUPHIN COUNTY, PENNSYLVANIA |
| V. | : |
| | : |
| ELMER L. BOWMAN | : No. 63 MD 2010 |
| BRETT O. FEESE | : No. 65 MD 2010 |
| DONALD H. McCLINTOCK | : No. 66 MD 2010 |
| JOHN M. PERZEL | : No. 64 MD 2010 |
| BRIAN J. PRESKI | : No. 62 MD 2010 |
| ERIC S. RUTH | : No. 69 MD 2010 |
| JILL A. SEAMAN | : No. 68 MD 2010 |
| SAMUEL C. "BUZZ" STOKES | : No. 67 MD 2010 |
| PAUL E. TOWHEY | : No. 70 MD 2010 |
| JOHN R. ZIMMERMAN | : No. 61 MD 2010 |

COPY

TRANSCRIPT OF PROCEEDINGS

PRELIMINARY HEARING

VOLUME II

BEFORE:   HONORABLE WILLIAM C. WENNER

DATE:   TUESDAY, MAY 25, 2010

PLACE:   COURTROOM NO. 1
DAUPHIN COUNTY COURTHOUSE
HARRISBURG, PENNSYLVANIA

DAUPHIN COUNTY COURT REPORTERS

1    Removed or hidden, when he participates
2  in it with this phone call on the 26th and then
3  when he either adds to or compounds the crimes
4  he's already committed by furthering the
5  conspiracy and furthering his crimes by lying
6  about it, the jury deserves to hear this evidence
7  because we presented enough for them to hear it.
8       THE COURT:  All right.  With respect to
9  the charges against Mr. Zimmerman, I'm going to
10 hold the list of charges for the Court of Common
11 Pleas.  I believe the Commonwealth has met a
12 prima facie burden.
13       (Proceedings concluded at 3:59 p.m.)
14
15
16
17
18
19
20
21
22
23
24
25

IN THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| John R. Zimmerman, | : | 1:13-cv-2788 |
|      Plaintiff | : | |
|      v. | : | Judge Kane |
| Thomas W. Corbett, Frank G. Fina, | : | |
| K. Kenneth Brown, Michael A. Sprow, | : | |
| Anthony J. Fiore, and Gary E. Speaks, | : | |
|      Defendants | : | Jury Trial Demanded |

## Order

This Court stays depositions pending resolution of the Motion for Judgment on the Pleadings. The parties shall continue to engage in written discovery. In all other respects, the case management schedule is stayed pending further order of Court.


_s/ Yvette Kane_____
Yvette Kane, District Judge
United States District Court

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN R. ZIMMERMAN, | : Civil Action No.: 1:13-cv-2788 |
| Plaintiff, | : |
| | : District Judge: Yvette Kane |
| v. | : |
| | : CIVIL ACTION – LAW |
| THOMAS W. CORBETT, et al., | : |
| Defendants. | : JURY TRIAL DEMANDED |

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## THE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

### RELEVANT PROCEDURAL HISTORY

On October 14, 2013, Plaintiff initiated this action by the filing of a Complaint (Doc. 1). On May 7, 2014, Plaintiff filed an Amended Complaint (Doc. 20). On June 4, 2014, the Defendants filed a motion to dismiss the Amended Complaint. On February 10, 2015, the Court issued an Order (Doc. 30) granting in part and denying in part the Defendants' motion to dismiss. On March 12, 2015, the Defendants filed an Answer (Doc. 33). On November 30, 2015, the Defendants filed a motion for judgment on the pleadings (Doc. 47). On December 14, 2015, the Defendants filed a brief in support of their motion (Doc. 49). This brief is filed in opposition to the Defendants' motion for judgment on the pleadings.

1

240a

## STATEMENT OF FACTS

For a complete statement of material facts, Plaintiff respectfully refers the Court to Plaintiff's Amended Complaint (Doc. 20) at ¶¶ 12-164. A review of the Defendants' Answer (Doc. 33), reveals that the Defendants admitted the allegations at paragraphs 33 & 162; failed to properly respond to the allegations at paragraphs 12-32, 34-111, 113, 115-122, 124, 126, 130-151, and 154-156; and denied the allegations at paragraphs 112, 114, 123, 125, 127-129, 152, 153, 157-161, and 163-164. Therefore, while the Defendants state otherwise,[1] the only undisputed facts are that Plaintiff was one of the nine staff members arrested (Doc. 20 at ¶ 33), and that for over two years, the Defendants refused to dismiss the criminal charges against him, even after Judge Lewis dismissed the related conspiracy charges involving the co-defendants (Doc. 20 at ¶ 162).

## QUESTION PRESENTED

Should the Court deny the Defendants' motion for judgment on the pleadings when (1) all material facts remain in dispute, (2) the motion largely seeks judgment on a Procedural Due Process claim that has not been asserted, (3) the motion prematurely reasserts the immunity issue, and (4) the factual record is not developed because for four months, the Defendants have failed to respond in discovery as required?

---

[1] For example, the Defendants state as a purported undisputed fact that "During the grand jury proceedings, witness proffer notes were destroyed pursuant to OAG policy when witnesses testified before the grand jury." Plaintiff, however, has alleged that both proffer notes and investigation notes were destroyed in violation of OAG policy. See Doc. 20 at ¶¶ 114 and 153. Importantly, the investigation notes were destroyed well before investigators testified before the grand jury, which left investigators to testify before the grand jury from summaries or memory. [Plaintiff may have inadvertently caused some confusion by inadvertently referring to investigation notes instead of proffer notes in the caption for the section that starts at paragraph 149 of the Amended Complaint.]

2

241a

# **ARGUMENT**

The Defendants filed a motion for judgment on the pleadings, after filing an Answer in which they either failed to properly respond, or denied all material facts. <u>See</u> Answer (Doc. 33). Based upon this fact alone, the Defendants' motion should be denied. <u>See</u>, <u>e.g.</u>, <u>Shapiro v. Marian Radiological Assocs. Inc.</u>, 73 Pa. D. & C.4th 318, 322 (Pa.Com.pl. 2005) ("in order to grant a motion for judgment on the pleadings, the facts must be undisputed.")

Moreover, the majority of the Defendants' motion seeks judgment for a Procedural Due Process claim. However, Plaintiff never asserted a Procedural Due Process claim. Rather, Plaintiff asserted state and federal malicious prosecution claims. <u>See</u> Amended Complaint at Counts I and II. Specifically, Plaintiff's complaint is that the Defendants maliciously prosecuted him without probable cause. Therefore, the Defendants' motion is of no relevance to the instant litigation.[2]

Finally, the Defendants renew their request for immunity. As discussed further below, however, in the Court's Order granting in part and denying in part the Defendants' motion to dismiss, the Court stated in relevant part, "Defendants may raise their immunity arguments at summary judgment, following development of the factual record in this case." <u>See</u> Order (Doc. 30). As the Court already decided that the

---

[2] Importantly, the <u>Brady</u> violations that occurred, while not separate claims, are strong evidence of the Defendants' maliciousness. Furthermore, while certain Defendants may be immune from being held civilly liable for certain conduct, said conduct is still evidence of the Defendants' malicious state of mind.

242a

immunity issue should not be raised again, or decided, until at the earliest, in a motion for summary judgment after the record is developed, the Defendants' motion should be denied.

### A. As the Court previously determined, Plaintiff pled facts that plausibly show why he is entitled to relief.

In Section A, the Defendants provide the Court with the applicable legal standard, i.e., "A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." <u>Revell v. Port Auth. of NY, NJ</u>, 598 F.3d 128, 134 (3d Cir. 2010). The Defendants previously filed a motion to dismiss, which on February 10, 2015, the Court granted in part and denied in part. <u>See</u> Order (Doc. 30). In denying in part the Defendants' motion, the Court stated in relevant part,

> Plaintiff's malicious prosecution claims in Counts One and Two against the remaining Defendants are **NOT DISMISSED** to the extent that they are premised on allegations that (1) the Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements[.]

The Defendants could have but did not file a motion for reconsideration of the Court's Order (Doc. 30). Instead, on March 12, 2015, the Defendants filed an Answer, in which they either failed to properly respond or denied the material facts. <u>See</u> Answer (Doc. 33). On September 21, 2015, Plaintiff served the Defendants with Interrogatories **(Exhibit 1)** and a Request for the Production of Documents ("RFP") **(Exhibit 2)**. On

the same date, Plaintiff served subpoenas on the Commonwealth of Pennsylvania ("Commonwealth") and the Office of Attorney General ("OAG"). On October 8, 2015, the Commonwealth and OAG served objections to the subpoenas. On October 22, 2015, the Defendants served 106 pages of "Supplemental Objections" **(Exhibit 3)** to the Interrogatories and RFP. On December 15, 2015, the Court issued an Order staying all deadlines but directing the Parties to continue with written discovery. <u>See</u> Order (Doc. 50). For over four months, however, the Defendants, have failed, and continue to fail, to respond to the Interrogatories and RFP, as required. Instead, the Defendants have essentially renewed their already decided motion to dismiss in the form of a motion for judgment on the pleadings.

**B.** **As the Court previously decided, the Defendants' request for immunity should not be decided until, at the earliest, in a motion for summary judgment after the record is developed.**

In Section B, the Defendants state the legal standard to be applied in determining whether or not the Defendants are entitled to immunity. As previously discussed, on February 10, 2015, the Court granted in part and denied in part the Defendants' motion to dismiss. <u>See</u> Order (Doc. 30). At that time, the Court stated in relevant part, "Defendants may raise their immunity arguments at summary judgment, following development of the factual record in this case." As the Court already decided that the immunity issue should not be raised again, or decided, until at the earliest, in a motion for summary judgment after the record is developed, and the record is not developed in large part because in their Answer, the Defendants either (1) failed to properly respond,

5

244a

or (2) denied the material facts; and for over four months the Defendants have failed to respond in discovery as required, the Defendants' motion should be denied.

### C. The Defendants' mistakenly request that the Court grant them immunity for a Procedural Due Process claim that was not asserted.

In Section C, the Defendants assert that they are entitled to immunity because "The law is not clear that Brady can be violated without a trial and conviction." While Plaintiff disagrees with the Defendants' legal conclusion, the Court need not decide the issue because Plaintiff did not assert a Due Process claim. Rather, Plaintiff asserted state and federal malicious prosecution claims. See Amended Complaint at Counts I and II.

To prevail on a § 1983 malicious prosecution claim, a Plaintiff must establish that: (1) Defendant(s) initiated a criminal proceeding; (2) the criminal proceeding ended in Plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) Defendant acted maliciously or for a purpose other than bringing plaintiffs to justice; and (5) Plaintiffs suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. See DiBella v. Borough of Beachwood, 407 F.3d 599 (3d Cir. 2005); Estate of Smith v. Marasco, 318 F.3d 497 (3d Cir. 2003).

Again, the issue of whether or not a trial and conviction is required in order to establish a Procedural Due Process Brady claim is not before the Court. However, the intentional destruction of exculpatory evidence, and the fabrication of evidence, for the purpose of initiating false criminal charges and maintaining a criminal prosecution, is strong evidence in support of elements 1, 3, and 4, of a malicious prosecution claim.

6

245a

**D. The Defendants' mistakenly request that the Court grant them immunity for a Procedural Due Process claim that was never asserted.**

In Section D, the Defendants assert that they are entitled to immunity because "The law is not clear that destruction of proffer notes violates due process." Again, while Plaintiff disagrees with the Defendants' legal conclusion, the asserted issue is not before the Court, as Plaintiff did not assert a Procedural Due Process claim. Rather, Plaintiff asserted state and federal malicious prosecution claims. <u>See</u> Amended Complaint at Counts I and II.

As the Defendants correctly note, Plaintiff did not join (and was not required to join) in the motion referenced by the Defendants, and decided by Judge Lewis, in the Co-defendants' underlying state criminal matter. If/when the Defendants respond to the four month overdue discovery responses, Plaintiff believes that he will be able to establish that (1) materially exculpatory information was suppressed or lost; (2) investigation and proffer notes were destroyed in violation of OAG internal policy; (3) investigation notes were not transcribed and approved by a supervisor before their destruction; and (4) investigation notes were destroyed as if they never existed or were reported by memory only.

The issue of whether or not the destruction of investigation and proffer notes is sufficient to establish a Due Process claim is not before the Court. However, the intentional destruction of investigation and proffer notes, in violation of OAG policy and law, for the purpose of initiating false criminal charges and maintaining a criminal

7

246a

prosecution, is strong evidence in support of elements 1, 3, and 4, of a malicious prosecution claim.

### E. The Defendants' mistakenly request that the Court grant them immunity for a Procedural Due Process claim that was never asserted.

In Section E, the Defendants assert that they are entitled to immunity because "The law is not clear that any allegedly falsified or destroyed evidence was exculpatory." The Defendants then conclude that "Plaintiff does not plead a Brady violation." The Defendants are correct that Plaintiff did not assert a Procedural Due Process Brady claim. Rather, Plaintiff asserted state and federal malicious prosecution claims. See Amended Complaint at Counts I and II.

The issue of whether or not the destroyed evidence is exculpatory is not before the Court. However, the intentional destruction of investigation and proffer notes, in violation of OAG policy and law, for the purpose of initiating false criminal charges and maintaining a criminal prosecution, is strong evidence in support of elements 1, 3, and 4, of a malicious prosecution claim.

### F. The Defendants' again mistakenly request that the Court grant them immunity for a Procedural Due Process claim that was never asserted.

In Section F, the Defendants assert that they are entitled to immunity because "The law is not clear that the notes were impeachment evidence." Plaintiff, however, did not assert a Procedural Due Process claim. Rather, Plaintiff asserted state and federal malicious prosecution claims. See Amended Complaint at Counts I and II.

247a

The issue of whether or not the destroyed evidence is impeachment evidence is not before the Court. However, the intentional destruction of investigation and proffer notes, in violation of OAG policy and law, for the purpose of initiating false criminal charges and maintaining a criminal prosecution, is strong evidence in support of elements 1, 3, and 4, of a malicious prosecution claim.

### G. The law is clear that Plaintiff suffered a seizure to the extent necessary to establish a malicious prosecution claim.

In Section G, the Defendants argue that "The law is not clear that Plaintiff was seized." The Defendants mistakenly refer to a "pre-filing arrest." However, no "pre-filing" arrest was alleged. Rather, *after* the filing of criminal charges, Plaintiff was taken into physical custody, forced to engage in a "perp-walk," and suffered an ongoing deprivation of liberty consistent with the concept of seizure as a consequence of being subject to bail conditions and having his passport confiscated. See Amended Complaint at ¶ 181. Plaintiff clearly suffered a seizure to the extent necessary to establish a malicious prosecution claim. See DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir.2005) (citation omitted).

### H. An objectively reasonable law enforcement officer would not have believed that probable cause existed to arrest the Plaintiff.

In Section H, the Defendants argue that "Any reasonable agent would have believed probable cause existed." This is an issue for the jury to decide. However, for the sake of argument, no objectively reasonable law enforcement officer would have

9

248a

believed that probable cause existed. The Defendants argue that the following facts alone establish *probable cause* that Plaintiff committed a criminal offense:

> The grand jury issued a subpoena to the House Republican Caucus on February 25, 2008, for campaign material. Ex. 4. Plaintiff concedes that a man called the House Republican Campaign Committee from Plaintiff's phone line to tell the HRCC to expect a delivery of boxes of campaign material, AC ¶69, 114(d) and 115(f), Plaintiff was normally at his desk, ¶146, and boxes of campaign material was then moved to HRCC, ¶69.

At best, the above establishes *reasonable suspicion*, not probable cause. If/when the Defendants respond to the four month overdue discovery responses, Plaintiff believes that he will be able to establish that the Commonwealth possessed, *but ignored,* evidence that vitiated probable cause:

    a. The Defendants knew that Lori Lochetto's and Plaintiff's presence or absence from the Capital could have been easily tracked, at least in part, through the access card system for the parking garage.

    b. The Defendants knew that persons who frequent the Capital referred to the entirety of Room 414, not just "Perzel's Office," as "Perzel's Office" but they failed to confirm what each witness meant when they referenced the location of "Perzel's Office."

    c. The Defendants knew that if Plaintiff was sitting at his desk, he could not see the front door to Room 414 or the conference room (where the boxes were likely located until Lochetto moved them on February 29, 2008).

    d. The Defendants knew that the boxes were not delivered to a location visible from Plaintiff's desk.

    e. The Defendants knew that multiple witnesses contradicted Lochetto's version of the events, i.e., that the boxes in question were placed in Perzel's *private* office on a date prior to February 29, 2008, the date that she actually moved the boxes into Perzel's private office.

f.  The Defendants knew that several telephones, if not all the telephones, *at each desk in Room 414, and within each office in Room 414*, had Plaintiff's telephone line installed on them.

g.  The Defendants knew that literally anyone in the Capital building (including but not limited to, capital police, the cleaning crew, Sandra Majors' staff of three, and a receptionist), had unfettered access to Room 414, and could have placed the call to the HRCC from multiple phones using Plaintiff's telephone line, and could have moved the boxes in question.

h.  The Defendants knew that George Matthews, HRCC, received a phone call from Perzel's office suite discussing the delivery of boxes of material. The phone call was a few days before the boxes were delivered to HRCC.

i.  Mark Miller, Supervisor of House Republican caucus messengers was recorded in the messenger log as being in Room 414, Perzel's office suite on Monday, February 25, 2008.

j.  The Defendants knew that the call in question was likely placed by Miller during his special trip to Room 414 as noted in the messenger log.

k.  The Defendants knew that Lochetto would admit that the Plaintiff was not present when she moved the boxes in and out of the Perzel office suite on February 25, 26, 27 and 29.

l.  The Defendants knew that Plaintiff was not present when Nathan Fineman delivered boxes to Room 414 on Monday, February 25, 2008.

m. The Defendants knew that the Messengers did not see Plaintiff in Room 414/"Perzel's Office" when they were in the office to deliver or move boxes.

The aforementioned facts that were known to the Defendants vitiate any claimed existence of probable cause.

### I. The agents initiated the prosecution.

In Section I, the Defendants argue that "Notably, the destruction of notes could not possibly fall within this exception and the prosecutors and agents destroyed the notes pursuant to OAG policy." Again, as previously discussed, whether or not the destruction of notes occurred pursuant to, and in accordance with, OAG policy, is a factual issue that has not yet been explored, in large part, because for over four months, the Defendants have failed to respond in discovery as required.

The Defendants further argue that "It is implausible that the agents destroyed the notes without prosecutor knowledge; in fact, Plaintiff found out that the notes were destroyed from the prosecutors." First, the alleged "implausibility" cannot be decided without a factual record, which cannot be developed until after the Defendants respond in discovery as required. Second, the alleged "implausibility" is a factual determination for the jury to decide. Third, the fact that Plaintiff learned about the destruction of the notes from prosecutors does not mean that (1) prosecutors knew about the destruction when it occurred, or (2) that prosecutors *ever* received the evidence/information contained in the destroyed notes.

The Defendants argue, "As for falsification of evidence, Plaintiff does not allege that the agents provided false information to the prosecutors or otherwise interfered with prosecutorial discretion." To the contrary, as the Court correctly stated, "the Court reads Plaintiff's amended complaint as alleging that both Fiore and Speaks were involved in the alleged fabrication of evidence prior to the grand jury proceedings, and with the

251a

alleged destruction of exculpatory evidence." See Memorandum (Doc. 29) at p. 20. Moreover, as the Court also correctly noted, "Fiore signed the criminal complaint and affidavit of probable cause, which Plaintiff alleges contains false or misleading statements." Id.

**J. Agents Fiore's and Speaks' actions, in destroying evidence and submitting a criminal complaint and affidavit of probable cause that contain false or misleading statements, is presumed to be unreasonable.**

In Section J, Defendants Fiore and Speaks renew their request for immunity, before the factual record is developed, and before summary judgment. Specifically, these Defendants appear to argue that they relied in good faith on a prosecutor's legal advice (although they fail to identify the prosecutor or the legal advice). Moreover, they argue that Judge Wenner bound the case over for court after a Preliminary Hearing (where the standard is *prima facie* as opposed to probable cause, and where exculpatory evidence is not presented). See Cosmas v. Bloomingdales Bros., 660 A.2d 83, 86 (Pa. Super. Ct. 1995). Finally, they argue that a *habeas* motion was denied.

This Court already correctly decided that "The Court agrees with Plaintiff that although the earlier probable cause determinations cited by Defendants are 'weighty evidence' of probable cause, these determinations are not conclusive evidence of probable cause that precludes Plaintiff's Section 1983 and state law malicious prosecution claims." Memorandum (Doc. 29) at p. 8 (citing Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 789 (3d Cir. 2000); Pardue v. Gray, 136 F. App'x 529, 533 (3d Cir. 2005); Marshall v. Penn Twp., Pa., 458 F. App'x 178, 181 n.4 (3d Cir. 2012); Kline

13

252a

v. Hall, No. 12-1727, 2013 WL 1775061, at *5 (M.D. Pa. Apr. 25, 2013); Bingaman v. Buhay, No. 06-2144, 2007 WL 707026, at *5 (M.D. Pa. Mar. 2, 2007)). Moreover, as a matter of law, it is not reasonable for the Defendants to rely on legal advice that is based on their destruction of exculpatory evidence, fabrication of evidence, and provision of misleading or false statements in sworn filings.

**K. The Defendants destroyed and fabricated evidence *before* the grand jury was empaneled.**

The Defendants' application of the law to the facts does not comport to what the courts likely intended. Pennsylvania is one of only two states, and the District of Columbia, that uses investigating, as opposed to indicting, grand juries. In Pennsylvania, grand juries are empaneled for 18-month terms that may be extended to 24 months, and can hear multiple unrelated cases. In Pennsylvania, since grand juries are empaneled for a set period of time, and hear whatever cases are ready to be heard during that timeframe, it is possible for a grand jury to be empaneled before a crime has been committed, is investigated, or a decision has been made to proceed to a grand jury.

While the Defendants are correct that the underlying events started with a subpoena issued by an already empaneled grand jury, the grand jury was investigating a different matter. It is undisputed that the alleged events underlying the criminal charges asserted against Plaintiff had not yet occurred when the subpoena issued. If/when the Defendants respond in discovery, discovery will reveal that the destruction of

investigation notes and the fabrication of evidence, occurred well before it was decided to present Plaintiff's case to the grand jury.

**L. Former AG Corbett knew of the fabrication and destruction of evidence.**

In Section L, Defendant Corbett renews his previously denied argument that Plaintiff failed to allege his personal involvement in the claims asserted. The Court, however, already decided this issue against Defendant Corbett.  Specifically, the Court stated,

> the Complaint also alleges that the "Defendants manipulated and threatened prospective grand jury witnesses," . . . Regarding Defendant Corbett, this averment sets forth that all Defendants – which the Court construes as inclusive of Defendant Corbett in his then-capacity as Attorney General – participated in the manufacturing of evidence prior in preparation for the grand jury proceedings.  The Court finds that this is sufficient to allege the personal involvement of Defendant Corbett regarding the manipulation of witnesses, and the Court will not dismiss him on this basis.

Memorandum (Doc. 29) at pp. 18-19.

Defendant Corbett argues that "Plaintiff's allegations are implausible."   As previously discussed, the alleged "implausibility" cannot be decided without a factual record, which cannot be developed until after the Defendants respond in discovery as required. Moreover, the alleged "implausibility" is a factual determination for the jury to decide.

15

254a

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the

Defendants' motion for judgment on the pleadings.


**Respectfully Submitted,**

_[signature]_

                                        **Date:  January 26, 2016**

**DEVON M. JACOB, ESQUIRE**
Pa. Sup. Ct. I.D. 89182
Counsel for Plaintiff

**JACOB LITIGATION**
P.O. Box 837, Mechanicsburg, Pa. 17055-0837
717.796.7733 | djacob@jacoblitigation.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN R. ZIMMERMAN,** | **: Civil Action No.: 1:13-cv-2788** |
| **Plaintiff,** | **: (Filed: 11/14/2013)** |
| | **:** |
| **v.** | **: District Judge: Yvette Kane** |
| | **:** |
| **THOMAS W. CORBETT, et al.,** | **: CIVIL ACTION – LAW** |
| **Defendants.** | **: JURY TRIAL DEMANDED** |

## CERTIFICATE OF SERVICE

I hereby certify that on the date listed below I electronically filed the foregoing with the Court using the CM/ECF system, which sent notification of such filing to the following person(s) at the following email addresses:

Frank J. Lavery, Jr., Esquire
Email: flavery@laverylaw.com

Josh Autry, Esquire
Email: JAutry@laverylaw.com

**DEVON M. JACOB, ESQUIRE**

Date:  January 26, 2016

17

256a

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN R. ZIMMERMAN,** | : Civil Action No.: 1:13-cv-2788 |
| **Plaintiff,** | : District Judge: Yvette Kane |
| | : |
| **v.** | : **CIVIL ACTION – LAW** |
| | : **JURY TRIAL DEMANDED** |
| **THOMAS W. CORBETT, et al.,** | : |
| **Defendants.** | : |

## FIRST SET OF INTERROGATORIES ADDRESSED TO DEFENDANTS
## PURSUANT TO RULE 33 OF THE FEDERAL RULES OF CIVIL PROCEDURE

**TO:  DEFENDANTS**

**c/o:  Timothy P. Keating, Esquire**
**Office of Attorney GeneraL**
**15th Floor, Strawberry Square**
**Harrisburg, PA  17120**

   **AND NOW** comes the Plaintiff, John R. Zimmerman, by and through his undersigned counsel, and the law firm of Jacob Litigation, and submits the following Interrogatories to the Defendants, and hereby requests that the Defendants respond to the following Interrogatories within 30 days, in accordance with Rule 33 of the Federal Rules of Civil Procedure, and the enclosed definitions and instructions:

**Definitions:**

   **"Defendants" or "Defendant"** shall mean one or all Defendants in this action: Thomas W. Corbett; Linda L. Kelly; Frank G. Fina; K. Kenneth Brown, II; Michael A. Sprow; Anthony J. Fiore; Gary E. Speaks; and/or the Office of Attorney General; and/or the Commonwealth of Pennsylvania, and/or any employer, officer, employee, representative, agent, or any other person acting on behalf of the Defendants, Office of Attorney General, and/or the Commonwealth of Pennsylvania.

   **"Plaintiff"** shall mean the Plaintiff in this action: John R. Zimmerman, and/or any representative, agent, or any other person acting on behalf of the Plaintiff.

   **"You," "yours"** shall mean one or all Defendants in this action: Thomas W. Corbett; Linda L. Kelly; Frank G. Fina; K. Kenneth Brown, II; Michael A. Sprow; Anthony J. Fiore; Gary E. Speaks; and/or the Office of Attorney General; and/or the Commonwealth of Pennsylvania, and/or any employer, officer, employee, representative, agent, or any other person acting on behalf of the

1

Defendants, Office of Attorney General, and/or the Commonwealth of Pennsylvania.

**"Document" or "Documents"** shall have the broadest meaning possible, and include but not be limited to, all hardcopy documents and files, and all electronic documents, files, information, or data, in its native format. Such documents would include but not be limited to incident reports, investigation files, photographs, audio, and video recordings, letters, correspondence, memoranda, minutes, transcripts, diagrams, sketches, contracts, agreements, investigation notes, notes regarding telephone conversations or personal conversations, notes of conferences or meetings, diaries, calendars, interoffice communications, hospital and medical records, statistical records, measurements, journals, books, magazines, brochures, newsletters, affidavits, statements, summaries, reports, studies, bills, receipts, logs, invoices, computer printouts, worksheets, and work papers. Electronic information or data would include but not be limited to Email; Word Perfect or Word documents; DOC, DOCX, XLR, XLS, XLSX, LOG, MSG, RTF, WPD, WPS, PDF, XPS, TIFF, TXT, MPG, ASF, AVI, MOV, MP4, SWF, VOB, MID, MP3, WAV, WMA, WMV, DAT, PPS, PPT, PPTX, ASP, HTML, ZIP, BAK, TMP, and ICS files; databases; calendars; computer usage logs; social media content and history; and Internet usage files. Such electronic information or data may reside on workstations, laptops, tablets, network servers, the cloud, third-party file hosting services, mobile devices, voicemail, and/or backup devices.

**"Identify," "Identity,"** when used in reference to an individual person, means to state such person's full name, present or last known address, telephone number, email address, and contemporaneous or last known position and business affiliation. When used in reference to a business organization or entity other than an individual, "identify" or "identity" means to state the full name, its principal business address, and the nature of the organization (e.g., corporation, partnership, etc.). When used in reference to a writing or document, "identify" or "identity" means to set forth its date, author, designated and actual recipients, type of writing or document, and identity or its present or last known custodian.

**"Incident"** means the occurrences that form the basis of a cause of action or claim for relief set forth in the Complaint, or in any other pleading or amended pleading.

**"Person" or "Persons"** include the singular and plural of natural persons, partnerships, associations, corporations, organizations, governments (including all instrumentalities, officers, agents, and subdivisions thereof) and all other business, legal or artificial entities.

**Instructions:**

(A)   All Interrogatories are to be answered in writing, verified, and served upon undersigned counsel within thirty (30) days upon service upon you in accordance with Federal Rule of Civil Procedure 26.  In answering these Interrogatories, you must furnish all information which is available to you, including that which has been obtained by and that which is now in the possession of your attorneys, employees, insurers, agents and other representatives, and not merely the information known by the individual or individuals preparing the response.

(B)   If you are unable to answer any of the within Interrogatories fully and completely, after exercising due diligence to secure the information necessary to make such full and complete

2

258a

answers, so state, and in addition, answer each such Interrogatory to the fullest extent possible, specifying your knowledge, and your inability to answer the remainder, and state whatever information or knowledge you may have concerning the unanswered portions thereof.

(C)     If you file objections to any of the Interrogatories propounded herein, you must nevertheless answer the remaining Interrogatories within the required period of time.

(D)     With respect to each Interrogatory, in addition to supplying the information asked for and identifying the specific documents referred to, identify all documents which are referred to in preparing your answer thereto.

(F)     These Interrogatories shall be deemed to be continuing so as to require you to supplement your answers in a timely fashion upon the discovery or creation of other documents coming within the terms of these Interrogatories between the time of your initial response hereto and final judicial determination of this action.

**Interrogatories:**

1.      Please identify all persons known to your attorney or you who have knowledge of the factual matters relating to this action. For each such person, state:
        (a)      the facts known by each person;
        (b)      when and to whom any of these persons have made statements;
        (c)      whether such statements were oral or reduced to writing; and
        (d)      identify the custodian of any recorded statements.
**ANSWER:**



2.      Please explain the procedure used to identify and preserve hard copy and electronic documents related to Plaintiff's Complaint or any Amended Complaint.
**ANSWER:**



3.      Please identify all physical evidence related to Plaintiff's Complaint or any Amended Complaint, and state whether or not the evidence is available for inspection.
**ANSWER:**



4.      Please identify all documents, transcripts, audio, and/or video, that ever existed, related to the events at issue in the present litigation, the litigation, or any investigation related to same, and identify the custodian of same.
**ANSWER:**

259a

5.     Please state whether or not your legal counsel, investigator, agent, employer, employee, or you, have conducted any investigation pertaining to this matter. If so, state:
      (a)     The nature/scope of the investigation;
      (b)     Date(s) the investigation took place;
      (b)     Name and title of person conducting the investigation;
      (c)     Whether any reports, notes, memoranda, audio, video, or photos were taken or prepared during the course of the investigation.
**ANSWER:**


6.     Please identify any conduct that any co-defendant engaged in during the incident that you believe to be unethical, in violation of any Commonwealth policy, and/or unlawful.
**ANSWER:**


7.     Please identify any aliases used by you or any co-defendant, to identify you or any co-defendant, or used by others to identify you or any co-defendant, including but not limited to: nicknames, Email addresses, screen names for websites, social media profiles, twitter profiles, Facebook profiles, LinkedIn profiles, and/or names or other information provided to conceal identity for any reason, including placing comments on websites.
**ANSWER:**


8.     Please identify any and all media personnel with who you have discussed, or provided any information or documents, regarding any matter related in any way to the events discussed in Plaintiff's Complaint or any Amended Complaint.  For each person identified, please provide:
      (a) Name and contact information;
      (b) Information or document provided;
      (c) Date the information or document was provided; and
      (d) The reason for providing the information or document.
**ANSWER:**


9.     Since neither the Commonwealth of Pennsylvania nor the Office of Attorney General will indemnify you for any punitive damages awarded against you, and since you will be required to personally pay any punitive damages awarded against you, please identify any/all insurance agreements/policies for which you are a named insured, including but not limited to any homeowners, renters, excess, or umbrella policies, by providing the following information:
      (a)     The name of the insurance carrier which issued the policy;
      (b)     The named insured under each policy and the policy number of each policy;
      (c)     The type(s) and effective date(s) of each policy;
      (d)     The date that you reported this lawsuit to the insurance carrier; and
      (e)     Claim number(s) related to your reported claim.
**ANSWER:**

10.    Please identify each and every person who was interviewed or interrogated during the Computergate and/or Boxgate investigations.  For each person identified, please provide the following information:

        (a) Name and contact information of person interviewed or interrogated;

        (b) Date(s) of interview(s) or interrogation(s);

        (c) Location(s) of interview(s) or interrogation(s);

        (d) Name and contact information of interviewer(s) or interrogator(s) and all persons who were present during the interview(s) or interrogation(s); and

        (e) Identify all documents prepared during interview(s) or interrogation(s), along with the custodian of same.

**ANSWER:**


11.    Please identify each Defendant, or OAG employee, agent, or attorney, who received compensation and/or benefits from the Commonwealth of Pennsylvania, for time spent engaging in non-work-related activities, including but not limited to, the following conduct: (a) sending or receiving email containing: (i) x-rated or pornographic information, photographs, or videos, (ii) jokes, or (iii) personal matters; (b) surfing the Internet; (c) shopping or performing other personal errands; (d) employees arriving late, taking extended lunches, or leaving early, without submitting required leave requests; (e) working for other employers or personal businesses, i.e., Defendant Sprow having students contact him at the OAG; and/or (f) working for politicians or political campaigns. For each person identified, please provide the following information:

        (a) Name and contact information of person;

        (b) Nature of the non-work related conduct;

        (c) Whether or not the identified person was, or will be, criminally prosecuted; and

        (d) The basis for any decision to criminally prosecute or not prosecute.

**ANSWER:**


12.    Please identify any ex parte conversation or communication between (a) any Defendant, or any other Commonwealth or OAG employee, agent, or attorney, and (b) the Computergate and Boxgate grand jury jurors, and/or the judge overseeing the grand jury (and/or his staff), while the Computergate/Boxgate investigation or prosecution took place.  For each conversation/communication identified, please provide the following information:

        (a) Names of participants;

        (b) Date of conversation/communication; and

        (b) Substance of conversation/communication.

**ANSWER:**

261a

13.     Please identify any ex parte conversation or communication between (a) any Defendant, or any other Commonwealth or OAG employee, agent, or attorney, and (b) Judge Richard Lewis, or any member of his staff, including but not limited to Clarke Madden, while the Computergate/Boxgate investigation or prosecution took place. For each conversation/communication identified, please provide the following information:

>    (a) Names of participants;
>    (b) Date of conversation/communication; and
>    (b) Substance of conversation/communication.

**ANSWER:**

14.     Please identify any ex parte conversation or communication between (a) any Defendant, or any other Commonwealth or OAG employee, agent, or attorney, and (b) Attorney Mark Rush, while the Computergate/Boxgate investigation or prosecution took place. For each conversation/communication identified, please provide the following information:

>    (a) Names of participants;
>    (b) Date of conversation/communication; and
>    (b) Substance of conversation/communication.

**ANSWER:**

15.     Please identify all confidential grand jury information/documents provided by the Defendants, or any other Commonwealth or OAG employee, agent, or attorney, to anyone not permitted by law, oath, or Commonwealth policy, to receive said information/documents, regarding the Computergate/Boxgate grand jury proceedings, i.e., information provided to the media or political campaigns.

**ANSWER:**

16.     Please identify any confidential or otherwise non-public information provided to the grand jury during the Computergate and Boxgate investigations.

**ANSWER:**

17.     Please identify any exculpatory evidence related to the criminal prosecution of Zimmerman.

**ANSWER:**

18.     Please identify any strategy to criminally charge Zimmerman for the purpose of turning him into a Commonwealth witness, or to prevent Zimmerman from being a defense witness in the House Republican trial.

**ANSWER:**

262a

19.    Please identify any person who expressed any critical comment or opinion regarding the Defendants', or of any other Commonwealth or OAG employee's, agent's, or attorney's, job performance, conduct, or handling of, the Computergate/Boxgate investigation or prosecution. For each opinion/comment identified, please provide the following information:

      (a) Names of participants;

      (b) Date of opinion/comment; and

      (b) Substance of opinion/comment.

**ANSWER:**


20.    Please identify the "phone calls" that Defendant Corbett identified as the basis for the criminal charges against Zimmerman, during Corbett's press conference, announcing the return of the presentment against Zimmerman and others.

**ANSWER:**


21.    Please identify and explain any media involvement in, or media coverage of, the Computergate/Boxgate related criminal arraignments, conducting a "perp walk," or any similar type event, or otherwise exposing the Computergate/Boxgate Defendants to any media coverage.

**ANSWER:**


22.    Please identify by pinpoint citation any grand jury testimony which you believe supports the existence of probable cause for any criminal charge asserted against Zimmerman.

**ANSWER:**



**Respectfully Submitted,**


_____          **Date:  September 21, 2015**

**DEVON M. JACOB, ESQUIRE**
Pa. Sup. Ct. I.D. 89182
Counsel for Plaintiff

**JACOB LITIGATION**
P.O. Box 837, Mechanicsburg, Pa. 17055-0837
717.796.7733 | djacob@jacoblitigation.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN R. ZIMMERMAN, | : Civil Action No.: 1:13-cv-2788 |
| Plaintiff, | : District Judge: Yvette Kane |
| | : |
| v. | : CIVIL ACTION – LAW |
| | : JURY TRIAL DEMANDED |
| THOMAS W. CORBETT, et al., | : |
| Defendants. | : |

## VERIFICATION

I/We declare pursuant to 28 U.S.C. § 1746 (Unsworn Declarations Under Penalty of Perjury),

under penalty of perjury, that my/our responses to these Interrogatories are true and correct.

_____       **Dated:**
**THOMAS W. CORBETT**

_____       **Dated:**
**FRANK G. FINA**

_____       **Dated:**
**K. KENNETH BROWN, II**

_____       **Dated:**
**MICHAEL A. SPROW**

_____       **Dated:**
**ANTHONY J. FIORE**

_____       **Dated:**
**GARY E. SPEAKS**

8

264a

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN R. ZIMMERMAN, | : Civil Action No.: 1:13-cv-2788 |
| Plaintiff, | : District Judge: Yvette Kane |
| | : |
| v. | : CIVIL ACTION – LAW |
| | : JURY TRIAL DEMANDED |
| THOMAS W. CORBETT, et al., | : |
| Defendants. | : |

## CERTIFICATE OF SERVICE

I hereby certify that on the date listed below, I served the foregoing Interrogatories via email on the following person:

**Lindsey A. Bierzonski, Esquire**
Email: lbierzonski@attorneygeneral.gov

**Timothy P. Keating, Esquire**
Email: tkeating@attorneygeneral.gov

_____
**DEVON M. JACOB, ESQUIRE**

Date: September 21, 2015

9

265a

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN R. ZIMMERMAN,** | : Civil Action No.: 1:13-cv-2788 |
| **Plaintiff,** | : District Judge: Yvette Kane |
| | : |
| **v.** | : **CIVIL ACTION – LAW** |
| | : **JURY TRIAL DEMANDED** |
| **THOMAS W. CORBETT, et al.,** | : |
| **Defendants.** | : |

## REQUEST FOR THE PRODUCTION OF DOCUMENTS
## ADDRESSED TO DEFENDANTS PURSUANT TO
## RULE 34 OF THE FEDERAL RULES OF CIVIL PROCEDURE

**TO:** **DEFENDANTS, OFFICE OF ATTORNEY GENERAL, AND COMMONWEALTH OF PENNSYLVANIA**

**c/o:** **Timothy P. Keating, Esquire**
**Office of Attorney GeneraL**
**15th Floor, Strawberry Square**
**Harrisburg, PA 17120**

    **AND NOW** comes the Plaintiff, John R. Zimmerman, by and through his undersigned counsel, and the law firm of Jacob Litigation, and submits the following Request for the Production of Documents to the Defendants, Office of Attorney General, and the Commonwealth of Pennsylvania, and hereby requests that the Defendants, Office of Attorney General, and the Commonwealth of Pennsylvania, respond to the following Request within 30 days, in accordance with Rule 34 of the Federal Rules of Civil Procedure, and the enclosed definitions and instructions:

**Definitions:**

    **"Defendants" or "Defendant"** shall mean one or all Defendants in this action: Thomas W. Corbett; Linda L. Kelly; Frank G. Fina; K. Kenneth Brown, II; Michael A. Sprow; Anthony J. Fiore; Gary E. Speaks; and/or the Office of Attorney General; and/or the Commonwealth of Pennsylvania, and/or any employer, officer, employee, representative, agent, or any other person acting on behalf of the Defendants, Office of Attorney General, and/or the Commonwealth of Pennsylvania.

    **"Plaintiff"** shall mean the Plaintiff in this action: John R. Zimmerman, and/or any representative, agent, or any other person acting on behalf of the Plaintiff.

**"You," "yours"** shall mean one or all Defendants in this action: Thomas W. Corbett; Linda L. Kelly; Frank G. Fina; K. Kenneth Brown, II; Michael A. Sprow; Anthony J. Fiore; Gary E. Speaks; and/or the Office of Attorney General; and/or the Commonwealth of Pennsylvania, and/or any employer, officer, employee, representative, agent, or any other person acting on behalf of the Defendants, Office of Attorney General, and/or the Commonwealth of Pennsylvania.

**"Document" or "Documents"** shall have the broadest meaning possible, and include but not be limited to, all hardcopy documents and files, and all electronic documents, files, information, or data, in its native format. Such documents would include but not be limited to incident reports, investigation files, photographs, audio, and video recordings, letters, correspondence, memoranda, minutes, transcripts, diagrams, sketches, contracts, agreements, investigation notes, notes regarding telephone conversations or personal conversations, notes of conferences or meetings, diaries, calendars, interoffice communications, calendars, journals, books, magazines, brochures, newsletters, affidavits, statements, summaries, reports, studies, bills, receipts, logs, invoices, computer printouts, worksheets, and work papers. Electronic information or data would include but not be limited to Email; Word Perfect or Word documents; DOC, DOCX, XLR, XLS, XLSX, LOG, MSG, RTF, WPD, WPS, PDF, XPS, TIFF, TXT, MPG, ASF, AVI, MOV, MP4, SWF, VOB, MID, MP3, WAV, WMA, WMV, DAT, PPS, PPT, PPTX, ASP, HTML, ZIP, BAK, TMP, and ICS files; databases; calendars; computer usage logs; social media content and history; and Internet usage files. Such electronic information or data may reside on workstations, laptops, tablets, network servers, the cloud, third-party file hosting services, mobile devices, voicemail, and/or backup devices.

**"Identify," "Identity,"** when used in reference to an individual person, means to state such person's full name, present or last known address, telephone number, email address, and contemporaneous or last known position and business affiliation. When used in reference to a business organization or entity other than an individual, "identify" or "identity" means to state the full name, its principal business address, and the nature of the organization (e.g., corporation, partnership, etc.). When used in reference to a writing or document, "identify" or "identity" means to set forth its date, author, designated and actual recipients, type of writing or document, and identity or its present or last known custodian.

**"Incident"** means the occurrences that form the basis of a cause of action or claim for relief set forth in the Complaint, or in any other pleading or amended pleading.

**"Person" or "Persons"** include the singular and plural of natural persons, partnerships, associations, corporations, organizations, governments (including all instrumentalities, officers, agents, and subdivisions thereof) and all other business, legal or artificial entities.

**<u>Instructions</u>:**

All Requests for Production of Documents are to be answered in writing, and served upon undersigned counsel in accordance with the Federal Rules of Civil Procedure, and the enclosed definitions and instructions. In answering these Requests for Production, you must furnish all documents that you possess, including that which has been obtained by and that which is now in the

267a

possession of your attorneys, employers, employees, insurers, agents and other representatives.

If you are unable to answer any of the Requests for Production fully and completely, after exercising due diligence to secure the document(s) necessary to do so, so state, and answer each such Request for Production of Documents to the fullest extent possible, specifying your knowledge, and your inability to answer the remainder, and state whatever information or knowledge you may have concerning the unanswered portions thereof.

If you file objections to any of the Requests for Production of Documents, you must nevertheless answer the remaining Requests for Production of Documents within the required period of time.

If any document is withheld on the grounds that it is privileged, or that it constitutes an attorney's work product, or for any other reason, please identify each such document by stating:

1. The type of document (e.g., letter, memoranda, etc.);
2. The date of the document;
3. The name and address of the author of the document;
4. The name and address of each recipient of the document;
5. The general subject matter of the document;
6. The name and address of the custodian of the document and the designation of the file(s) in which the document is located;
7. The precise basis on which the document is being withheld.

These Requests for Production of Documents shall be deemed to be continuing so as to require you to supplement your answers in a timely fashion upon the discovery or creation of other documents coming within the terms of these Requests for Production of Documents between the time of your initial response hereto and final judicial determination of this action.

## Document Requests

1. From 2006 to the present, all documents or electronically stored information: discussing the Office of Attorney General's or the Commonwealth of Pennsylvania's policies and practices related to document retention; preservation, storage, and production of electronically stored information; and employees' use of the Internet, social media, and/or personal or work email.

2. The job description, personnel file, and disciplinary file, for each Defendant.

3. All policies and/or procedures that governed, or should have governed, the Defendants' and/or any other OAG or Commonwealth employee's, agent's, or attorney's, conduct while investigating or prosecuting the Computergate and Boxgate cases.

4. All documents related to the Computergate/Boxgate investigation, including but not limited to, documents discussing the investigation referenced in paragraphs 35-37 of the First Amended

Complaint, or the movement of boxes; documents identified in any Initial or Supplemental Disclosures, or any documents obtained by third parties via subpoena.

5.  All notes or other documents, prepared by the Defendants or any other OAG employee, agent, or attorney, during, or as a result of, any witness interview or proffer statement. [If any such documents were prepared and subsequently destroyed, identify the destroyed document(s).]

6.  All written or electronic documents containing any information or documents evidencing or establishing that the Defendants, or any other OAG employee, agent, or attorney, received compensation and/or benefits from the Commonwealth of Pennsylvania, for time spent engaging in non-work-related activities, including but not limited to, the following conduct: (a) the sending or receiving of email containing: (i) X-Rated or pornographic information, photographs, or videos, (ii) jokes, or (iii) personal matters; (b) surfing the Internet; (c) shopping or performing other personal errands; (d) employees arriving late, taking extended lunches, or leaving early, without submitting required leave requests; (e) working for other employers or personal businesses, i.e., Defendant Sprow having students contact him at the OAG; and/or (f) working for politicians or political campaigns.

7.  All written or electronic documents resulting from, or related to, any non-work-related activities that the Defendants, or any other OAG employee, agent, or attorney, engaged in during time for which they received compensation and/or benefits from the Commonwealth of Pennsylvania, including but not limited to, the following activities: (a) the sending or receiving of email containing: (i) x-rated or pornographic information, photographs, or videos, (ii) jokes, or (iii) personal matters; (b) surfing the Internet; (c) shopping or performing other personal errands; (d) employees arriving late, taking extended lunches, or leaving early, without submitting required leave requests; (e) working for other employers or personal businesses, i.e., Defendant Sprow having students contact him at the OAG; and/or (f) working for politicians or political campaigns.

8.  All written or electronic *ex parte* correspondence, or similar type communication, on any subject, between (a) the Defendants, or any other Commonwealth or OAG employee, agent, or attorney, and (b) the Computergate and Boxgate grand jury jurors, and/or the judge overseeing the grand jury (and/or his staff), while the Computergate/Boxgate investigation or prosecution took place.

9.  All written or electronic *ex parte* correspondence, or similar type communication, on any subject, between (a) the Defendants, or any other Commonwealth or OAG employee, agent, or attorney, and (b) Judge Richard Lewis, or any member of his staff, including but not limited to Clarke Madden, while the Computergate/Boxgate investigation or prosecution took place.

10. All written or electronic correspondence, or similar type communication, on any subject, between (a) the Defendants, or any other Commonwealth or OAG employee, agent, or attorney, and (b) Attorney Mark Rush, while the Computergate/Boxgate investigation or prosecution took place.

11. All confidential grand jury information/documents provided by the Defendants, or any other Commonwealth or OAG employee, agent, or attorney, to anyone not permitted by law, oath, or Commonwealth policy, to receive said information/documents, regarding the Computergate/Boxgate grand jury proceedings, i.e., information provided to the media or political campaigns.

4

269a

12. Copies of all written or electronic Commonwealth or OAG scheduling logs, calendars, diaries, or similar documents, belonging to the Defendants, or of any other Commonwealth or OAG employee, agent, or attorney, in their native format, that contain any information regarding the Computergate/Boxgate investigation or prosecution, including but not limited to witness meetings, conference room scheduling.

13. All electronic or written documents identifying, containing, or discussing, any exculpatory evidence related to the criminal prosecution of Zimmerman.

14. All transcripts, or similar type written or electronic documents, recording any/all information provided to the Computergate/Boxgate grand jury, and all documents or other exhibits or demonstrative evidence presented to the grand jury.

15. All educational, instructional, or charges presented to the Computergate/Boxgate grand jury.

16. All drafts of any presentment related to the Computergate and Boxgate investigations.

17. All written or electronic documents containing or discussing any confidential or otherwise non-public information provided to the grand jury during the Computergate and Boxgate investigations.

18. All written or electronic documents discussing whether or not probable cause existed to criminally charge Zimmerman, including but not limited to, all documents discussing any strategy to criminally charge Zimmerman for the purpose of turning him into a Commonwealth witness, or to prevent Zimmerman from being a defense witness in the House Republican trial.

19. All written or electronic documents related to the continued criminal prosecution of Zimmerman on or after August 31, 2011.

20. All written or electronic documents containing any critical comments or opinions regarding the Defendants', or of any other Commonwealth or OAG employee's, agent's, or attorney's, job performance, conduct, or handling of, the Computergate/Boxgate investigation or prosecution.

21. All written or electronic documents containing any information from Defendant Fiori, or any other Defendant, Commonwealth, or OAG employee, agent, or attorney, disapproving of the Zimmerman investigation and/or prosecution.

22. All written or electronic documents containing any information identifying or discussing the "phone calls" that Defendant Corbett identified as the basis for the criminal charges against Zimmerman, during Corbett's press conference, announcing the return of the presentment against Zimmerman and others.

23. All written or electronic documents containing any information discussing media involvement in, or media coverage of, the Computergate/Boxgate related criminal arraignments, conducting a "perp walk," or any similar type event, or otherwise exposing the Computergate/Boxgate Defendants

to any media coverage, including but not limited to, press releases, or correspondences discussing political purposes.

**Respectfully Submitted,**

_____                    **Date: September 21, 2015**

**DEVON M. JACOB, ESQUIRE**
Pa. Sup. Ct. I.D. 89182
Counsel for Plaintiff

**JACOB LITIGATION**
P.O. Box 837, Mechanicsburg, Pa. 17055-0837
717.796.7733 | djacob@jacoblitigation.com

271a

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN R. ZIMMERMAN, | : Civil Action No.: 1:13-cv-2788 |
| **Plaintiff,** | : District Judge: Yvette Kane |
| | : |
| v. | : CIVIL ACTION – LAW |
| | : JURY TRIAL DEMANDED |
| THOMAS W. CORBETT, et al., | : |
| **Defendants.** | : |

## CERTIFICATE OF SERVICE

I hereby certify that on the date listed below I served the foregoing Request for the Production of Documents via email on the following person:

**Lindsey A. Bierzonski, Esquire**
Email: lbierzonski@attorneygeneral.gov

**Timothy P. Keating, Esquire**
Email: tkeating@attorneygeneral.gov

_____
**DEVON M. JACOB, ESQUIRE**

Date: September 21, 2015

272a

IN THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| John R. Zimmerman, | : | 1:13-CV-2788 |
| Plaintiff | : | |
| v. | : | Judge Kane |
| | : | |
| Thomas W. Corbett, Linda L. Kelly, | : | |
| Frank G. Fina, K. Kenneth Brown, | : | |
| Michael A. Sprow, Anthony J. Fiore, | : | |
| and Gary E. Speaks, | : | |
| Defendants | : | |

## Supplemental Objections

Defendants additionally object to the interrogatories and requests for production as follows:

**Interrogatories:**

1. **Identify all persons with knowledge of the factual matters relating to this action.**

a. **Overbroad**—This request is not reasonably limited in time.

b. **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as

1

273a

the affiant, a criminal complaint and affidavit of probable cause that
contained false and misleading statements.

    c.    **Vague**—Defendants believe that Zimmerman views this case
as bigger than it is, making it difficult to discern what information and
documents Zimmerman considers relevant.

    d.    **Burdensome and oppressive**—It is believed that the
documents and information from the grand jury proceedings and
criminal proceedings are voluminous and production would be very
difficult, time consuming, and expensive.

    e.    **Grand jury privilege**—All or part of the grand jury
proceedings may still be sealed, preventing production of these
documents. Defense counsel is in the process of obtaining the order
unsealing the grand jury proceedings to determine its scope.

    f.    **Other privileges**—Defense counsel has not yet obtained the
information or documents to review, but believe that at least some of
the documents will be protected by the attorney-client, work product,
deliberative process privilege, prosecutorial privileges, or by other law.

    g.    **Location**-The documents and information requested are in
the possession of the Attorney General's Office. Defense counsel is

currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j. **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

2. **State method of maintaining documents:**

a. **Overbroad**—This request is not reasonably limited in time.

b. **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the

275a

discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

    c.    **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

    d.    **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

    e.    **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

    f.    **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of

276a

the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j. **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

277a

3. <u>Identify all physical evidence related to Complaint or Amended Complaint</u>:

a. **Overbroad**—This request is not reasonably limited in time.

b. **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c. **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d. **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

278a

e.   **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f.   **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g.   **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h.   **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i.   **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned

7

279a

counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

      j.   **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

      4.   <u>Identify all evidence related to the events at issue:</u>

      a.   **Overbroad**—This request is not reasonably limited in time.

      b.   **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

      c.   **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

280a

d. **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f. **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

281a

h. **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j. **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

5. **Investigations related to this matter:**

a. **Overbroad**—This request is not reasonably limited in time.

b. **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants

282a

destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

      c.    **Vague**–Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

      d.    **Burdensome and oppressive**–It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

      e.    **Grand jury privilege**–All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

      f.    **Other privileges**–Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j. **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

6. <u>**Identify any wrongdoing by Defendants:**</u>

a. **Overbroad**—This request is not reasonably limited in time.

b.     **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c.     **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d.     **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e.     **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

285a

f. **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j.  **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

7.  <u>Identify aliases, e-mail addresses, and social media</u> <u>information for Defendants:</u>

a.  **Overbroad**—This request is not reasonably limited in time.

b.  **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c.  **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d.  **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and

287a

criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e.   **Grand jury privilege**–All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f.   **Other privileges**–Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g.   **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h.   **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections**–Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j. **Premature**–Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

k. **Harassing and oppressive**–This personal information is private, has nothing to do with this case, and is not reasonably calculated to lead to the discovery of relevant information.

8. <u>Identify media contacts related to events in Complaint or Amended Complaint:</u>

a. **Overbroad**–This request is not reasonably limited in time.

b. **Relevance**–Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness

17

289a

testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c. **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d. **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f. **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

290a

g. **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.3

j. **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

9. <u>**Identify homeowner, renter, excess, or umbrella insurance policies:**</u>

291a

    a.   **Overbroad**–This request is not reasonably limited in time.

    b.   **Relevance**–Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

    c.   **Vague**–Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

    d.   **Burdensome and oppressive**–It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

    e.   **Grand jury privilege**–All or part of the grand jury proceedings may still be sealed, preventing production of these

documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f. **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants

293a

and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j. **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

k. **Harassing and oppressive**—This personal information is private, has nothing to do with this case, and is not reasonably calculated to lead to the discovery of relevant information.

10. **Identify persons interviewed during Computergate and Boxgate investigations:**

a. **Overbroad**—This request is not reasonably limited in time.

b. **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

294a

c. **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d. **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f. **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location-**The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information.

295a

Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession-**It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections-**Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j. **Premature—**Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

11. **Identify any person in the Attorney General's Office who spent time on non-work related activities:**

a. **Overbroad—**This request is not reasonably limited in time.

b. **Relevance—**Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the

296a

discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c. **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d. **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f. **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of

297a

the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location-**The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession-**It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections-**Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j. **Premature—**Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

12. **Identify communications with grand jurors or presiding Judge:**

a. **Overbroad**—This request is not reasonably limited in time.

b. **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c. **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d. **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

299a

e. **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f. **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned

300a

counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j. **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

13. <u>Identify communications with Judge Lewis:</u>

a. **Overbroad**—This request is not reasonably limited in time.

b. **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c. **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

301a

d. **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f. **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

302a

h. **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j. **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

14. **Identify communications with Attorney Mark Rush:**

a. **Overbroad**—This request is not reasonably limited in time.

b. **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants

303a

destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c.    **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d.    **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e.    **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f.    **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

304a

g. **Location-**The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession-**It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections-**Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j. **Premature—**Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

15. **Identify any leaks of grand jury information by the Attorney General's Office:**

305a

a. **Overbroad**–This request is not reasonably limited in time.

b. **Relevance**–Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c. **Vague**–Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d. **Burdensome and oppressive**–It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege**–All or part of the grand jury proceedings may still be sealed, preventing production of these

documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f. **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants

307a

and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

 j. **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

 16. <u>**Identify any confidential information provided to grand jury:**</u>

 a. **Overbroad**—This request is not reasonably limited in time.

 b. **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

 c. **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

308a

d. **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f. **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

309a

h.   **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i.   **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j.   **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

17.   <u>Identify any evidence exculpatory for Zimmerman:</u>

a.   **Overbroad**—This request is not reasonably limited in time.

b.   **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants

310a

destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

    c.    **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

    d.    **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

    e.    **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

    f.    **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

311a

g.  **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h.  **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i.  **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j.  **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

18.  <u>**Identify any strategy to use Zimmerman as government witness or prevent his testimony for defense:**</u>

312a

a. **Overbroad**–This request is not reasonably limited in time.

b. **Relevance**–Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c. **Vague**–Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d. **Burdensome and oppressive**–It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege**–All or part of the grand jury proceedings may still be sealed, preventing production of these

documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f.     **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g.     **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h.     **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i.     **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants

42

314a

and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j. **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

19. <u>Identify any negative comment about Boxgate or Computergate prosecution or investigation:</u>

a. **Overbroad**—This request is not reasonably limited in time.

b. **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c. **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

315a

d. **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f. **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location-**The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

316a

h. **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j. **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

20. **Identify Zimmerman's phone calls that formed the basis of his charges:**

a. **Overbroad**—This request is not reasonably limited in time.

b. **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness

317a

testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c. **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d. **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f. **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

318a

g. **Location-**The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession-**It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections-**Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j. **Premature—**Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

21. <u>**Identify any media coverage of Computergate/Boxgate prosecutions:**</u>

319a

a. **Overbroad**–This request is not reasonably limited in time.

b. **Relevance**–Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c. **Vague**–Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d. **Burdensome and oppressive**–It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege**–All or part of the grand jury proceedings may still be sealed, preventing production of these

320a

documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f. **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location-**The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession-**It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections-**Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants

321a

and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j. **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

22. <u>Identify any grand jury testimony that supports Zimmerman's charges:</u>

a. **Overbroad**—This request is not reasonably limited in time.

b. **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c. **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

322a

d. **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f. **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

323a

h.    **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i.    **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j.    **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

**Requests for Production:**

1.    <u>All records of the Commonwealth's policies and practices relating to record retention and employee use of the Internet and e-mail.</u>

a.    **Overbroad**—This request is not reasonably limited in time.

324a

b. **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c. **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d. **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

325a

f.     **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g.     **Location-**The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h.     **Already in Zimmerman's possession-**It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i.     **Future objections-**Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

326a

j.     **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

2.     **Employment file for each Defendant:**

a.     **Overbroad**—This request is not reasonably limited in time.

b.     **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c.     **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d.     **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and

327a

criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege**–All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f. **Other privileges**–Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

328a

i. **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j. **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

k. **Harassing and oppressive**—This personal information is private and is not reasonably calculated to lead to the discovery of relevant information.

3. **All policies and procedures governing the Computergate and Boxgate cases:**

a. **Overbroad**—This request is not reasonably limited in time.

b. **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness

329a

testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c. **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d. **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f. **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j. **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

4. <u>**All documents related to the Computergate and Boxgate investigations:**</u>

331a

a. **Overbroad**—This request is not reasonably limited in time.

b. **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c. **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d. **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these

332a

documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f. **Other privileges**–Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants

333a

and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j. **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

5. **Documents prepared by Attorney General's Office relating to witness statements:**

a. **Overbroad**—This request is not reasonably limited in time.

b. **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c. **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

334a

d. **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f. **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

335a

h. **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j. **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

6. **Documents showing that any person in the Attorney General's Office spent time on non-work related activities:**

a. **Overbroad**—This request is not reasonably limited in time.

b. **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness

336a

testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c.     **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d.     **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e.     **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f.     **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

337a

g.   **Location-**The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h.   **Already in Zimmerman's possession-**It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i.   **Future objections-**Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j.   **Premature—**Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

7.   **Documents showing that any person in the Attorney General's Office spent time on non-work related activities:**

338a

a. **Overbroad**–This request is not reasonably limited in time.

b. **Relevance**–Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c. **Vague**–Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d. **Burdensome and oppressive**–It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege**–All or part of the grand jury proceedings may still be sealed, preventing production of these

339a

documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

     f.   **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

     g.   **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

     h.   **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

     i.   **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants

340a

and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j.  **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

8.  <u>**Communications with grand jurors or Judge presiding over grand jury**</u>:

a.  **Overbroad**—This request is not reasonably limited in time.

b.  **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c.  **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

341a

     d.    **Burdensome and oppressive**–It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

     e.    **Grand jury privilege**–All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

     f.    **Other privileges**–Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

     g.    **Location-**The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

342a

    h.    **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

    i.    **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.3

    j.    **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

    9.    <u>**Communications with Judge Lewis:**</u>

    a.    **Overbroad**—This request is not reasonably limited in time.

    b.    **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants

destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as
the affiant, a criminal complaint and affidavit of probable cause that
contained false and misleading statements.

    c.   **Vague**—Defendants believe that Zimmerman views this case
as bigger than it is, making it difficult to discern what information and
documents Zimmerman considers relevant.

    d.   **Burdensome and oppressive**—It is believed that the
documents and information from the grand jury proceedings and
criminal proceedings are voluminous and production would be very
difficult, time consuming, and expensive.

    e.   **Grand jury privilege**—All or part of the grand jury
proceedings may still be sealed, preventing production of these
documents. Defense counsel is in the process of obtaining the order
unsealing the grand jury proceedings to determine its scope.

    f.   **Other privileges**—Defense counsel has not yet obtained the
information or documents to review, but believe that at least some of
the documents will be protected by the attorney-client, work product,
deliberative process privilege, prosecutorial privileges, or by other law.

344a

g. **Location-**The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession-**It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections-**Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j. **Premature—**Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

10. <u>**Communications with Attorney Mark Rush:**</u>

a. **Overbroad—**This request is not reasonably limited in time.

b. **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c. **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d. **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

74

346a

f. **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location-**The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession-**It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections-**Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

347a

j.  **Premature**–Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

11.  **Leaked grand jury records by the Attorney General's Office:**

a.  **Overbroad**–This request is not reasonably limited in time.

b.  **Relevance**–Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c.  **Vague**–Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d.  **Burdensome and oppressive**–It is believed that the documents and information from the grand jury proceedings and

criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege–**All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f. **Other privileges–**Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location-**The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession-**It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

349a

i.    **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j.    **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

12.    <u>**Logs and calendars relating to Computergate or Boxgate prosecution or investigation:**</u>

a.    **Overbroad**—This request is not reasonably limited in time.

b.    **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as

350a

the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

    c.    **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

    d.    **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

    e.    **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

    f.    **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

    g.    **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is

351a

currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j. **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

13. **Evidence exculpatory for Zimmerman:**

a. **Overbroad**—This request is not reasonably limited in time.

b. **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the

discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

     c.    **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

     d.    **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

     e.    **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

     f.    **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of

353a

the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location-**The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession-**It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections-**Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j. **Premature—**Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

354a

14. **Grand jury transcripts or documents:**

a. **Overbroad**—This request is not reasonably limited in time.

b. **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c. **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d. **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these

documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f.    **Other privileges**–Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g.    **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h.    **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i.    **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants

356a

and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j.   **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

15.   **Charges to grand jury:**

a.   **Overbroad**—This request is not reasonably limited in time.

b.   **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c.   **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

357a

d. **Burdensome and oppressive**–It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege**–All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f. **Other privileges**–Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j. **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

16. **Presentment drafts:**

a. **Overbroad**—This request is not reasonably limited in time.

b. **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants

359a

destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as

the affiant, a criminal complaint and affidavit of probable cause that

contained false and misleading statements.

c. **Vague**—Defendants believe that Zimmerman views this case

as bigger than it is, making it difficult to discern what information and

documents Zimmerman considers relevant.

d. **Burdensome and oppressive**—It is believed that the

documents and information from the grand jury proceedings and

criminal proceedings are voluminous and production would be very

difficult, time consuming, and expensive.

e. **Grand jury privilege**—All or part of the grand jury

proceedings may still be sealed, preventing production of these

documents. Defense counsel is in the process of obtaining the order

unsealing the grand jury proceedings to determine its scope.

f. **Other privileges**—Defense counsel has not yet obtained the

information or documents to review, but believe that at least some of

the documents will be protected by the attorney-client, work product,

deliberative process privilege, prosecutorial privileges, or by other law.

360a

g. **Location-**The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession-**It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections-**Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j. **Premature—**Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

17. <u>**Confidential information provided to grand jury:**</u>

a. **Overbroad—**This request is not reasonably limited in time.

361a

b. **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c. **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d. **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

362a

f. **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

363a

j.  **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

18.  <u>**Documents related to Zimmerman's prosecution and charges:**</u>

a.  **Overbroad**—This request is not reasonably limited in time.

b.  **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c.  **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d.  **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and

364a

criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege—**All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f. **Other privileges—**Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location-**The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession-**It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

365a

i.    **Future objections**–Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j.    **Premature**–Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

19.    **Documents related to Zimmerman's prosecution after August 31, 2011:**

a.    **Overbroad**–This request is not reasonably limited in time.

b.    **Relevance**–Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as

366a

the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

      c.   **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

      d.   **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

      e.   **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

      f.   **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

      g.   **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is

367a

currently in the process of obtaining those documents and information.
Defendants further object to production of any information or records
not in their possession.

     h.   **Already in Zimmerman's possession**-It is believed that
Defendants provided Zimmerman all relevant documents and
information during his criminal case.

     i.   **Future objections**-Defendants, after receipt and review of the
believed responsive documents and information from the Attorney
General's Office, reserve the right to supplement. Further, undersigned
counsel is still in the process of initially meeting with the Defendants
and preserves Defendants' rights to assert additional objections when
they meet with counsel in the coming weeks.

     j.   **Premature**—Defendants cannot respond to the requests until
they have each met with defense counsel and defense counsel has
obtained the records from the Attorney General's Office.

     20.   <u>Documents related to criticisms of Computergate or Boxgate</u>
<u>prosecution or investigation:</u>

     a.   **Overbroad**—This request is not reasonably limited in time.

368a

b. **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c. **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d. **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

369a

f. **Other privileges—**Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location-**The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession-**It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i. **Future objections-**Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

370a

j. **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

21. <u>Documents related to internal criticism of Zimmerman prosecution or investigation:</u>

a. **Overbroad**—This request is not reasonably limited in time.

b. **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c. **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d. **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and

criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e. **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f. **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g. **Location**-The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h. **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

372a

i.   **Future objections**–Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

j.   **Premature**–Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

22.   <u>**Documents related to Zimmerman's phone calls that formed basis for his charges:**</u>

a.   **Overbroad**–This request is not reasonably limited in time.

b.   **Relevance**–Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as

the affiant, a criminal complaint and affidavit of probable cause that

contained false and misleading statements.

    c.    **Vague**—Defendants believe that Zimmerman views this case

as bigger than it is, making it difficult to discern what information and

documents Zimmerman considers relevant.

    d.    **Burdensome and oppressive**—It is believed that the

documents and information from the grand jury proceedings and

criminal proceedings are voluminous and production would be very

difficult, time consuming, and expensive.

    e.    **Grand jury privilege**—All or part of the grand jury

proceedings may still be sealed, preventing production of these

documents. Defense counsel is in the process of obtaining the order

unsealing the grand jury proceedings to determine its scope.

    f.    **Other privileges**—Defense counsel has not yet obtained the

information or documents to review, but believe that at least some of

the documents will be protected by the attorney-client, work product,

deliberative process privilege, prosecutorial privileges, or by other law.

    g.    **Location**-The documents and information requested are in

the possession of the Attorney General's Office. Defense counsel is

currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

      h.  **Already in Zimmerman's possession**-It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

      i.  **Future objections**-Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

      j.  **Premature**—Defendants cannot respond to the requests until they have each met with defense counsel and defense counsel has obtained the records from the Attorney General's Office.

    23.  <u>**Documents related to media coverage of Computergate or Boxgate prosecution or investigation:**</u>

      a.  **Overbroad**—This request is not reasonably limited in time.

103

375a

b.  **Relevance**—Defendants believe that Zimmerman seeks information and documents not reasonably calculated to lead to the discovery of relevant evidence. Judge Kane has limited this case to the following allegations: (1) the Defendants manufactured witness testimony prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed, as the affiant, a criminal complaint and affidavit of probable cause that contained false and misleading statements.

c.  **Vague**—Defendants believe that Zimmerman views this case as bigger than it is, making it difficult to discern what information and documents Zimmerman considers relevant.

d.  **Burdensome and oppressive**—It is believed that the documents and information from the grand jury proceedings and criminal proceedings are voluminous and production would be very difficult, time consuming, and expensive.

e.  **Grand jury privilege**—All or part of the grand jury proceedings may still be sealed, preventing production of these documents. Defense counsel is in the process of obtaining the order unsealing the grand jury proceedings to determine its scope.

f.   **Other privileges**—Defense counsel has not yet obtained the information or documents to review, but believe that at least some of the documents will be protected by the attorney-client, work product, deliberative process privilege, prosecutorial privileges, or by other law.

g.   **Location-**The documents and information requested are in the possession of the Attorney General's Office. Defense counsel is currently in the process of obtaining those documents and information. Defendants further object to production of any information or records not in their possession.

h.   **Already in Zimmerman's possession-**It is believed that Defendants provided Zimmerman all relevant documents and information during his criminal case.

i.   **Future objections-**Defendants, after receipt and review of the believed responsive documents and information from the Attorney General's Office, reserve the right to supplement. Further, undersigned counsel is still in the process of initially meeting with the Defendants and preserves Defendants' rights to assert additional objections when they meet with counsel in the coming weeks.

377a

j.     **Premature**—Defendants cannot respond to the requests until

they have each met with defense counsel and defense counsel has

obtained the records from the Attorney General's Office.

> Respectfully,
>
> Lavery Law
>
> s/ Frank J. Lavery, Jr.
> Pennsylvania Bar No. 42370
>
> s/ Josh Autry
> Pennsylvania Bar No. 208459
> 225 Market Street, Suite 304
> P.O. Box 1245
> Harrisburg, PA 17108-1245
> (717) 233-6633 (phone)
> (717) 233-7003 (fax)
> flavery@laverylaw.com
> jautry@laverylaw.com
> Counsel for Defendants

Date: October 22, 2015

378a

## Certificate of Service

I certify that today I served a true and correct copy of this document via First Class, U.S. Mail to:

> Devon M. Jacob, Esquire
> Jacob Litigation
> PO Box 837
> Mechanicsburg, PA  17055
> djacob@jacoblitigation.com

> s/ Aimee L. Paukovits
> Legal assistant to Frank J. Lavery,
> Jr., and Josh Autry

Date: October 22, 2015

IN THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| John R. Zimmerman, | : | 1:13-cv-2788 |
| Plaintiff | : | |
| v. | : | Judge Kane |
| Thomas W. Corbett, Frank G. Fina, | : | |
| K. Kenneth Brown, Michael A. Sprow, | : | |
| Anthony J. Fiore, and Gary E. Speaks, | : | |
| Defendants | : | Jury Trial Demanded |

## Reply Brief in Support of
## Motion for Judgment on the Pleadings

## I. Plaintiff concedes that his prosecutors did not violate clearly established law under *Brady*.

This Court on the motion to dismiss decided what <u>factual allegations</u> against Plaintiff's prosecutors may survive absolute immunity. Defendants properly ask this Court whether the remaining factual allegations form <u>a viable cause of action</u>.

Plaintiff concedes by omission that he cannot bring a *Brady* claim because he had no trial or conviction, and in doing so, that Defendants did not violate clearly established law under *Brady*. Plaintiff argues that the alleged *Brady* violations (fabrication and destruction of

1

380a

evidence) simply show Defendants' malice—an element of malicious prosecution.[1] Plaintiff misses the point.

This Court dismissed all allegations against Plaintiff's prosecutors for their probable cause determination—a necessary element to malicious prosecution. If absolute immunity means anything, it certainly means that Plaintiff cannot indirectly prove a claim that is barred directly. If Plaintiff's prosecutors are (as this Court held) immune for their probable cause determination, then Plaintiff does not get to skip that element of malicious prosecution; rather, Plaintiff must show a different cause of action based upon the remaining factual allegations—specifically, a cause of action that doesn't require him to prove an element for which the prosecutors retain absolute immunity.

This Court only left two factual allegations against Plaintiff's prosecutors: 1) that they fabricated evidence before the empaneling of the grand jury, and 2) they destroyed material, exculpatory evidence. Neither theory supports a cause of action because Plaintiff had no trial

---

[1] Of course, Plaintiff cannot show malice by allegations that Defendants followed the clearly established law; rather, Plaintiff must show Defendants intentionally violated the law to show that they acted maliciously. By conceding that Defendants' alleged destruction of evidence did not violate the clear law under *Brady*, Plaintiff leaves a substantial hole in his reasoning.

2

381a

or conviction.[2] For the same reason, Plaintiff cannot show any entitlement to relief under the clearly established law to overcome qualified immunity. As Plaintiff concedes that he does not allege fabrication or destruction of evidence as an independent cause of action (and could not if he wanted to), Plaintiff in effect concedes that <u>he has no cause of action left against the prosecutors</u>.

## II.   Plaintiff cites no clearly established law for the proposition that an unactionable *Brady* claim can be brought as a malicious prosecution claim.

Plaintiff does not even attempt to point this Court to any legal authority that permits an alleged *Brady* claim to be brought without a conviction and trial via a malicious prosecution claim. Plaintiff needs to show a cause of action under the clearly established law, but cannot. Plaintiff attempts to sidestep the above cited decisions, but points this Court to no applicable authority, much less binding authority, that permits a *Brady* claim under the <u>Fourth</u> Amendment.

---

[2] *Livers v. Schenck*, 700 F.3d 340, 359 (8th Cir. 2012); *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999); *Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998); *Rogala v. District of Columbia*, 161 F.3d 44, 55–56 (D.C.Cir.1998) (per curiam); *Taylor v. Waters*, 81 F.3d 429, 435–36 & n. 5 (4th Cir.1996); *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir.1988). *See also Com. v. Feese*, 79 A.3d 1101, 1113 (Pa. Super. 2013) ("[A]ny value of prior inconsistent statements as impeachment material was rendered moot by [the witnesses'] absence.").

## III. Plaintiff concedes that the state courts have repeatedly affirmed the destruction of notes.

Plaintiff concedes that Judge Lewis and the Superior Court supported the destruction of notes. *See* Judge Lewis opinions on notes (ex. 1 p. 3-4; ex. 2 p. 9, 12-14); *Com. v. Feese*, 79 A.3d 1101, 1110 & n. 7 (Pa. Super.), reargument denied (2013), appeal denied, 94 A.3d 1007 (Pa. 2014). Plaintiff offers no contrary legal authority to show that Defendants violated clearly established law by destroying notes. Without some authority condemning the practice, Defendants acted in unchartered waters and retain qualified immunity for the note destruction. In fact, the clear law supports their decisions.

## IV. Plaintiff does not attempt to explain how the notes could have helped him.

Plaintiff does not show that Defendants violated any clearly established law by destroying notes. Even if the missing notes were exculpatory, Plaintiff could have called any exculpatory witnesses at trial. *See Feese*, 79 A.3d at n.7. Plaintiff claims he lacks notes for three witnesses (AC ¶114); yet Plaintiff refuses to offer any explanation as to how the notes would have helped him at trial (if he had one). Plaintiff further concedes that the notes had no impeachment value under

4

383a

Pennsylvania law.[3] Upon examination, Plaintiff's claim of destruction of evidence falls flat.

## V. Plaintiff does not show a seizure under the clearly established law.

Initially, the law is not clearly established that an arrest alone is a sufficient seizure for a malicious prosecution claim.[4] Plaintiff concedes by omission that released on unsecured bail[5] is not either as Plaintiff did not have to put up any money.[6]

Plaintiff's only additional allegation is that he surrendered his passport, but Plaintiff does not point this Court to any authority that

---

[3] *Com. v. Simmons*, 662 A.2d 621, 638 (Pa. 1995). *See Flagg v. Wynder*, 2008 WL 861498, at *13-14 (E.D. Pa. Mar. 27, 2008) (citing *Simmons*); *Mustafa v. Superintendent, SCI Dallas*, 2004 WL 1078500, at *4 (E.D. Pa. May 13, 2004) *R&R adopted*, 2004 WL 1490399 (June 30, 2004). *See also Com. v. LeBlanc*, 2015 WL 6663637, at *3-4 (Pa. Super. Sept. 2, 2015) (unpublished) (such allegations "are baseless and border on frivolous"); *Com. v. Lawson*, 2015 WL 6114513, at *6 (Pa. Super. July 30, 2015) (unpublished).

[4] *See Wiltz v. Middlesex Cnty. Office of Prosecutor*, 249 F. App'x 944, 949 (3d Cir. 2007). *See also Penberth v. Krajnak*, 347 F. App'x 827, 829 (3d Cir. 2009) (arrest and 35-40 minute detention insufficient); *Luck v. Mount Airy No. 1,* 901 F. Supp. 2d 547, 556 (M.D. Pa. 2012) (arrest not enough); *White v. Glenn*, 2014 WL 5431200, at n.4 (E.D. Pa. Oct. 27, 2014) (same); *Bartow v. Thomas*, 2014 WL 2993786, at *5 (W.D. Pa. July 2, 2014) (same).

[5] https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-22-CR-0002524-2010

[6] *See Black v. Montgomery Cty.*, 2015 WL 5568388, at *3 (E.D. Pa. Sept. 21, 2015); *Collins v. Jones*, 2015 WL 790055, at *9 (E.D. Pa. Feb. 24, 2015); *Jones v. Barth*, 2015 WL 221079, at *4 (E.D. Pa. Jan. 15, 2015); *Schultz v. Hughesville Borough*, 2011 WL 3273076, at *8 (M.D. Pa. July 29, 2011); *Golya v. Golya*, 2007 WL 2301085, at *7 (M.D. Pa. Aug. 9, 2007); *Esposito v. Galli*, 2006 WL 2322487, at *9 (M.D. Pa. Aug. 9, 2006); *Ankele v. Hambrick*, 286 F. Supp. 2d 485, 497 (E.D. Pa. 2003) aff'd, 136 F. App'x 551 (3d Cir. 2005).

requiring pre-approval for international travel or restricting travel to

within the United States is a seizure. Indeed, every single U.S. citizen

has international travel restricted to at least some extent as the federal

government restricts or bans travel to other countries as it sees fit.

Even if Plaintiff's travel restriction constituted a seizure, the law is not

<u>clearly established</u> that it did.

## VI.   <u>Plaintiff concedes the factual basis for probable cause.</u>

Plaintiff concedes the following facts that show probable cause:

1.   The grand jury subpoenaed campaign material
     from the House Republican Caucus. Ex. 4.

2.   A man called the House Republican Campaign
     Committee from Plaintiff's desk line to tell the
     HRCC to expect a delivery of boxes of campaign
     material, AC ¶69, 114(d) and 115(f).

3.   Plaintiff was normally at his desk, ¶146.

4.   Boxes of campaign material were then moved to
     HRCC, ¶69.

To counter these facts, Plaintiff alleges that:

1.   Defendants could have tracked Lori Lochetto's
     whereabouts.

2.   Defendants did not confirm with each witness
     whether they were referring to all or part of the
     office.

3.   Plaintiff could not see the boxes from his desk.

4.     Some witnesses stated that the boxes were kept in Perzel's private office.

5.     Others could access Plaintiff's desk line.

6.     George Matthews, HRCC, received a phone call from Perzel's office suite about delivery of the boxes a few days before delivery.

7.     Mark Miller, supervisor of House Republican Caucus messengers, was in Perzel's office on February 25, 2008, and—according to Plaintiff—likely made the call.

8.     Plaintiff was not present when the boxes were moved.

Initially, Plaintiff does not explain how Lochetto's whereabouts would negate a reasonable belief that Plaintiff made a call to move campaign material out of a legislative office to avoid a subpoena. As far as whether Plaintiff could see the boxes and where the boxes were specifically located, Defendants had a reasonable belief that Plaintiff knew about the boxes so long as they had a reasonable belief that Plaintiff made the call about the boxes.

The key question then is whether Plaintiff alleges facts to show that Defendants lacked reason to believe that he made the call from his desk line. On this point, Plaintiff claims that others had access to his desk line, and that Miller must have made the call. But Plaintiff does

7

386a

not show that it was unreasonable to believe that Plaintiff made the call from his desk line. Plaintiff concedes that he was normally at his desk, and Plaintiff makes no allegations that Defendants had reason to believe he was not there at the time of the call. While others may have had access to Plaintiff's desk line, Defendants had reason to believe that Plaintiff was the man on his desk line.

## VII. Plaintiff alleges that the agents and prosecutors worked in tandem.

Plaintiff points to no binding law that permits officers or agents to be held liable for malicious prosecution at all. Accordingly, the agents are entitled to qualified immunity.

Under nonbinding case law, to hold the agents liable for malicious prosecution, Plaintiff admits that he must allege that they somehow interfered with prosecutorial discretion and tricked prosecutors into taking his case. While Plaintiff alleges that the agents made misleading statements and destroyed notes, he alleges that they did so as accomplices and conspirators with his prosecutors. Under the circumstances, Plaintiff does not allege that the agents in any way duped the prosecutors. To the contrary, Plaintiff alleges that the agents and prosecutors acted in lockstep.

387a

There certainly appears to be no clearly established law that permits agent or officer liability based upon allegations that the agents and prosecutors acted in unison and spoke with one voice. Thus, the agents are entitled to qualified immunity.

**VIII.** <u>**Plaintiff does not show that the agents lack a presumption of reasonableness for their probable cause determination.**</u>

The law presumes that Agents Fiore and Speaks acted reasonably when they determined probable cause. Judge Wenner initially approved the affidavit of probable cause to charge Plaintiff (ex. 6 pp. 1-2), Judge Wenner later declined to dismiss the case at a preliminary hearing (ex. 7 p. 131), and Judge Lewis also declined to dismiss the case on a habeas motion (ex. 3 p. 2).

Plaintiff relies upon this Court's determination that the state court rulings are only "weighty evidence" of probable cause, but ignores the fact that this Court did not consider qualified immunity. Plaintiff does not address whether this very strong evidence is enough to show that the agents acted reasonably, and thus, are entitled to <u>qualified immunity</u>. Plaintiff ignores the holdings in *Kelly v. Borough of Carlisle*, 622 F.3d 248, 255-56 (3d Cir. 2010), and *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995), that prosecutorial and judicial

9

determinations of probable cause presumptively shield the officer

relying upon their determinations with qualified immunity.

As explained above, Plaintiff does not overcome this presumption

by showing that probable cause is so lacking. The agents, like the

prosecutors and judges, had reason to believe that Plaintiff made the

call from his desk line to arrange the transport of campaign boxes out of

the legislature. Plaintiff certainly does not show that Agents Fiore and

Speaks are plainly incompetent.

## IX. <u>Plaintiff admits that his charges stem *from the grand jury proceedings.*</u>

Plaintiff admits that his charges stem from the alleged violation <u>of</u>

<u>a grand jury subpoena</u>. Ex 4 & 5 (2-25-08 & 2-29-08 subpoenas).

Plaintiff claims that the grand jury was investigating a "different

matter," but his claim runs contrary to his pleading. As detailed in

Plaintiff's amended complaint, the grand jury was investigating

Republican legislators and staff for campaigning out of the legislature.

As part of that investigation, the grand jury subpoenaed campaign

documents, and Plaintiff was accused of attempting to thwart the grand

jury's efforts. It is clear that Plaintiff's allegations of obstruction are

part and parcel of the grand jury he is accused of attempting to

obstruct. There is no possible way that Defendants fabricated testimony against Plaintiff <u>before the grand jury was empaneled.</u>

## X.   <u>Plaintiff concedes that the conclusory allegations against AG Corbett mirror the dismissed allegations against AG Kelly.</u>

Plaintiff admits that he lumps the not-dismissed AG Corbett and the dismissed AG Kelly together as one in the same, showing the implausibility of his conclusory allegations against both. Unlike the remaining Defendant, Plaintiff makes no specific allegations against Corbett for fabrication or destruction of evidence. Plaintiff does not deny that the allegations against AG Corbett are just as conclusory as the allegations against AG Ashcroft in *Iqbal.*

Respectfully submitted,

Lavery Law

<u>s/ Frank J. Lavery, Jr.</u>
Pennsylvania Bar No. 42370

<u>s/ Josh Autry</u>
PA Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
flavery@laverylaw.com
jautry@laverylaw.com

Date: February 9, 2016     Counsel for Defendants

11

390a

## Certificate of Service

I certify that on this date, I served a true and correct copy of this filing through this Court's electronic case filing system to Devon M. Jacob, Esquire.

s/ Amyra Wagner
Legal Assistant for Josh Autry

Date: February 9, 2016

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN R. ZIMMERMAN,** | **: Civil Action No.: 1:13-cv-2788** |
| **Plaintiff,** | **: District Judge: Yvette Kane** |
| | **:** |
| **v.** | **: CIVIL ACTION – LAW** |
| | **: JURY TRIAL DEMANDED** |
| **THOMAS W. CORBETT, et al.,** | **:** |
| **Defendants.** | **:** |

## PLAINTIFF'S MOTION FOR THE COURT TO
## AMEND ITS ORDERS DATED FEBRUARY 10, 2015 (DOC. 30), AND
## DATED JUNE 22, 2015 (DOC. 42), PURSUANT TO 28 U.S.C. § 1292(b)

AND NOW comes the Plaintiff, John R. Zimmerman, by and through his undersigned counsel, and the law firm of Jacob Litigation, A Civil Rights Law Firm, pursuant to 28 U.S.C. § 1292(b), to respectfully request that the Court amend its Orders dated February 10, 2015 (Doc. 30), and dated June 22, 2015 (Doc. 42), to include language indicating that the Court is of the "opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), so that Plaintiff may file a Petition in the Third Circuit. See FED. R. APP. P. 5(a). In support thereof, Plaintiff avers as follows:

1.      On November 14, 2013, Plaintiff filed the instant matter, pursuant to 42 U.S.C. § 1983, seeking damages.

2.      On May 7, 2014, Plaintiff filed an Amended Complaint (Doc. 20).

3.      The Defendants filed a motion to dismiss the Amended Complaint (Docs. 21 & 24).

4.      On February 10, 2015, the Court issued an Order granting in part and denying in part the motion to dismiss (Doc. 30).

5.      Of relevance to the instant motion, the Court granted Defendants Corbett's, Fina's, Brown's and Sprow's request for absolute immunity for their actions occurring before the Pennsylvania investigative grand jury. (Doc. 29 at pp. 11-15 and 19).

6.      Specifically, the Court stated, in relevant part, the following:

Plaintiff attempts to sidestep the immunity issue in part by arguing that Defendants are not immune from their activities concerning the grand jury. (Doc. No. 27 at 11.) Plaintiff contends that the grand jury in this matter was "investigative" grand jury rather than an "indicting" grand jury, because grand juries in Pennsylvania do not have the power to issue indictments. See 42 Pa.C.S. § 4548. This distinction does not alter the immunity analysis. As the Court discussed above, a prosecutor's activity before a grand jury is entitled to absolute immunity. See, e.g., Burns v. Reed, 500 U.S. 478, 490 n.6 (1991) (noting that "there is widespread agreement among the Courts of Appeals that prosecutors are absolutely immune from liability under [Section] 1983 for their conduct before grand juries"). That a Pennsylvania grand jury merely has the power to recommend charges, rather than to indict, is irrelevant; the function of the prosecutor in either scenario is the same: to present the state's case and evidence. See Buckley, 509 U.S. at 273 ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial

2

393a

proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.") As Defendants note, Plaintiff's argument asks the Court to conclude that prosecutors are not immune for the activities before Pennsylvania grand juries. Such a conclusion threatens to hinder a prosecutor's ability to present the state's evidence, and therefore runs counter to the well-established justifications behind the doctrine of prosecutorial immunity. See Imbler, 424 U.S. at 427-28 (observing that a lack of absolute immunity for prosecutors would "disserve the broader public interest" by, inter alia, "prevent[ing] the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system."); see also Hughes v. Long, 242 F.3d 121, 125 (3d Cir. 2001) ("The 'functional approach' [to prosecutorial immunity] . . . evaluates the effect that exposure to particular forms of liability would likely have on the appropriate exercise of that function.").

(Doc. 29 at pp. 11-15) (footnotes removed).

7.     With respect to the remaining claims, the Court denied the Defendants' request for immunity without prejudice.

8.     The Defendants did not file a motion for reconsideration of the Court's Order denying their request for immunity for the remaining claims, or file an appeal related to same.

9.     Plaintiff, however, filed a motion for reconsideration of the Court's Order (Doc. 30), granting Defendants Corbett's, Fina's, Brown's and Sprow's request for absolute immunity for their actions occurring before the investigative grand jury.  (Doc. 38).

10.     On June 22, 2015, the Court issued an Order (Doc. 42), denying Plaintiff's motion for reconsideration.

11.     On October 14, 2015, the Defendants obtained new counsel.

12.     On November 30, 2015, the Defendants filed a motion for judgment on the pleadings, reasserting their immunity argument. (Doc. 47).

13.     On July 15, 2016, the Court issued an Order (Doc. 70) denying the Defendants' motion for judgment on the pleadings.

14.     On August 12, 2016, the Defendants filed a Notice of Appeal. (Doc. 73).

15.     Pursuant to Rule 4(a)(3) of the federal Rules of Appellate Procedure,

> **Multiple Appeals.** If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later.

16.     As such, since the Defendants filed a Notice of Appeal on August 12, 2016, Plaintiff has until on or before August 26, 2016 (tomorrow), to file an appeal.

17.     Plaintiff is not permitted to appeal the Court's decision to grant the Defendants absolute immunity for their actions occurring before the investigative grand jury until after the remaining claims are resolved.

18.     However, in light of the Defendants' appeal of this Court's *denial* of their request for immunity with respect to some claims, in the interest of judicial economy, it would make better sense for the Third Circuit to review this Court's *grant* of immunity, now, as well.

4

19.    Doing so will significantly shorten the already protracted litigation, and save the taxpayers and litigants a considerable amount of money.

20.    Specifically, if the Defendants' instant appeal is granted, Plaintiff intends to appeal this Court's granting of Defendants Corbett's, Fina's, Brown's and Sprow's request for absolute immunity for their actions occurring before the investigative grand jury; thus, the Third Circuit will be required to consider *two* appeals.

21.    In the alternative, if the Defendants' instant appeal is denied, after the remaining claims are resolved, Plaintiff similarly intends to appeal this Court's granting of Defendants Corbett's, Fina's, Brown's and Sprow's request for absolute immunity for their actions occurring before the investigative grand jury; thus, again, the Third Circuit will be required to consider *two* appeals.

22.    Moreover, in the latter scenario, if the second appeal is granted, the case will be remanded to this Court for *further discovery and possibly a second trial*.

23.    In light of the fact that the Defendants have filed an appeal of this Court's denial of their request for immunity, it simply makes sense for the immunity decision to be reviewed in its entirety now, instead of piecemeal.

24.    In this regard, while the case is pending in the District Court, Plaintiff would need to petition the Third Circuit for permission to appeal this Court's *grant* of immunity.

5

396a

25.    Rule 5(a) of the Federal Rules of Appellate Procedure provides in

relevant part, the following:

> **Petition for Permission to Appeal.**
> (1) To request permission to appeal when an appeal is
> within the court of appeals' discretion, a party must file a
> petition for permission to appeal. The petition must be
> filed with the circuit clerk with proof of service on all other
> parties to the district-court action.
> (2) The petition must be filed within the time specified by
> the statute or rule authorizing the appeal or, if no such time
> is specified, within the time provided by Rule 4(a) for
> filing a notice of appeal.
> *(3) If a party cannot petition for appeal unless the district
> court first enters an order granting permission to do so or
> stating that the necessary conditions are met, the district
> court may amend its order, either on its own or in response
> to a party's motion, to include the required permission or
> statement. In that event, the time to petition runs from
> entry of the amended order.*

26.    28 U.S.C. § 1292(b) provides in relevant part, the following:

> When a district judge, in making in a civil action an order
> not otherwise appealable under this section, shall be of the
> opinion that such order involves a controlling question of
> law as to which there is substantial ground for difference
> of opinion and that an immediate appeal from the order
> may materially advance the ultimate termination of the
> litigation, he shall so state in writing in such order. The
> Court of Appeals which would have jurisdiction of an
> appeal of such action may thereupon, in its discretion,
> permit an appeal to be taken from such order, if application
> is made to it within ten days after the entry of the
> order: *Provided, however*, That application for an appeal
> hereunder shall not stay proceedings in the district court
> unless the district judge or the Court of Appeals or a judge
> thereof shall so order.

397a

27.    It remains Plaintiff's contention that this Court's grant of absolute immunity to the prosecutorial Defendants for their actions before the investigative grand jury is a clear error of law, that if not corrected now (especially in light of the Defendants' appeal of the Court's denial of their request for immunity with respect to other claims), will result in a significant waste of resources as a result of the need to litigate multiple appeals, redo discovery, and possibly conduct multiple trials.

28.    Moreover, there is no incentive for either the Plaintiff or the Defendant to consider resolving the case until after the Third Circuit decides the immunity issue in its entirety.

29.    Finally, the legal issue of whether or not prosecutors enjoy *absolute immunity*, as opposed to *qualified immunity*, for their actions before *investigating* grand juries as opposed to *indicting* grand juries is significant, and will have great impact on how prosecutors conduct themselves going forward.

30.    Wherefore, in light of the Defendants' Notice of Appeal, it is respectfully requested that the Court amend its Orders dated February 10, 2015 (Doc. 30), and dated June 22, 2015 (Doc. 42), to include language indicating that the Court is of the "opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), so that Plaintiff may file the requisite Petition. See FED. R. APP.

P. 5(a).

31.    On August 15th and 22nd, 2016, undersigned counsel sought the Defendants' concurrence in the relief requested within this motion.

32.    On August 23rd, 2016, defense counsel advised that he had not heard back from the Defendants, and that he had given them until the close of business on August 24th, 2016, in which to respond.

33.    As of the time of the filing of this motion, undersigned counsel has not heard from defense counsel regarding whether or not the Defendants concur in the relief requested in this motion.

34.    In light of the August 26, 2016, appeal deadline, and the fact that this motion fully explains the issue and the requested relief, undersigned counsel does not intend to file a brief in support of this motion within 14 days. See Middle District LR 7.5 ("Within fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion.").

**Respectfully Submitted,**

_____

**DEVON M. JACOB, ESQUIRE**
Pa. Sup. Ct. I.D. 89182
Counsel for Plaintiff

**JACOB LITIGATION**
P.O. Box 837, Mechanicsburg, Pa. 17055-0837
717.796.7733 | djacob@jacoblitigation.com

Date:  August 25, 2016

8

399a

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN R. ZIMMERMAN,** | **: Civil Action No.: 1:13-cv-2788** |
| **Plaintiff,** | **:** |
| | **: District Judge: Yvette Kane** |
| **v.** | **:** |
| | **: CIVIL ACTION – LAW** |
| **THOMAS W. CORBETT, et al.,** | **:** |
| **Defendants.** | **: JURY TRIAL DEMANDED** |

## CERTIFICATE OF SERVICE

I hereby certify that on the date listed below I electronically filed the foregoing with the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

**DEVON M. JACOB, ESQUIRE**

**Date:  August 25, 2016**

9

400a

## Combined Certifications

I certify that:

1.    I am a member in good standing of the Bar of this Court.

2.    The text of the electronic version of this filing, which has been emailed to the Court, is identical to the text of the hard copies that have been sent to the Clerk's Office. The electronic copy has been scanned with the most recent version of Malwarebytes.

3.    On this date, a copy of this filing was served by this Court's electronic case filing system and also addressed as follows:

Devon Jacob, Esquire

s/ Josh Autry

Dated: October 25, 2016